ACCEPTED
04-15-00276-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
5/4/2015 9:23:55 PM
KEITH HOTTLE
CLERK

No. _____

04-15-00276-CV

IN THE FOURTH COURT OF APPEALS

SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS

5/4/2015 9:23:55 PM

KEITH E. HOTTLE
Clerk

DESCON CONSTRUCTION, L.P., Relator

_____

From the 229th District Court of
Starr County, Texas
Case No. DC-14-46

_____

**ORIGINAL PETITION FOR WRIT OF MANDAMUS**
_____

Karen L. Landinger
State Bar No. 00787873
klandinger@cbylaw.com
Stephanie O'Rourke
State Bar No. 15310800
sorourke@cbylaw.com
Stanley W. Curry, Jr.
State Bar No. 05274000
scurry@cbylaw.com
Robert M. Smith
State Bar No. 18677400
rmsmith@cbylaw.com
Gabriel S. Head
State Bar No. 24055642
ghead@cbylaw.com
Cokinos, Bosien & Young
10999 IH-10 West, Suite 800
San Antonio, Texas  78230
(210) 293-8700 (Office)
(210) 293-8733 (Fax)
ATTORNEYS FOR RELATOR,
DESCON CONSTRUCTION, L.P.

**EMERGENCY RELIEF REQUESTED**

No. _____

DESCON CONSTRUCTION, L.P., Relator

_____

## IDENTITY OF PARTIES AND COUNSEL

_____

Relator certifies that the following is a complete list of the parties, the attorneys, and other person who has any interest in the outcome of this lawsuit.

**Relator:**

Descon Construction, L.P.

**Counsel for Defendant/Relator**
**Descon Construction, L.P.:**

| **Trial:** | **Appellate:** |
|---|---|
| Stephanie O'Rourke | Karen L. Landinger |
| Stanley W. Curry, Jr. | Cokinos, Bosien & Young |
| Robert M. Smith | 10999 IH-10 West, Suite 800 |
| Gabriel S. Head | San Antonio, Texas   78230 |
| Cokinos, Bosien & Young | (210) 293-8700 (Office) |
| 10999 IH-10 West, Suite 800 | (210) 293-8733 (Fax) |
| San Antonio, Texas   78230 | klandinger@cbylaw.com |
| (210) 293-8700 (Office) | |
| (210) 293-8733 (Fax) | |
| sorourke@cbylaw.com | |
| scurry@cbylaw.com | |
| rmsmith@cbylaw.com | |
| ghead@cbylaw.com | |

**Respondent:**

The Honorable Ana Lisa Garza
District Judge
229th Judicial District Court of Starr County
Starr County Courthouse
401 N. Britton Avenue, Room 304
Rio Grande City, Texas  78582
(956) 487-2636 (Office)
(956) 487-4093 (Fax)
alglaw1@aol.com
asaenz@co.starr.tx.us


**Counsel for Interested Parties:**

Attorneys for Interested Party, Rio Grande City CISD
Norman Jolly
Michael B. Jolly
Law Office of Norman Jolly
405 Main, Suite 1000
Houston, Texas  77002
(713) 237-8383 (Office)
(713) 237-8385 (Fax)
normanjollypc@sbcglobal.net
mikejolly@aol.com
lawjp@earthlink.net
ericjarvis@rocketmail.com
twentysixpoint2@me.com
medina_nancy@sbcglobal.net

Attorneys for Interested Party, Rio Grande City CISD
Martie Garcia Vela
100 West 5th Street
Rio Grande City, Texas  78582
(956) 488-8170 (Office)
(956) 488-8129 (Fax)
martie.garcia@gmail.com

Attorneys for Interested Party, ERO International, L.L.P.
John R. Griffith
Griffith Law Group
801 E. Fern Avenue, Suite 170
McAllen, Texas 78501
(956) 971-9446 (Office)
(956) 971-9451 (Fax)
jrg@rgvfirm.com
gh@rgvfirm.com

Attorneys for Interested Party, Halff Associates, Inc. and Menton J. Murray, III, P.E.
Grant Gealy
Mills Shirley, L.L.P.
3 Riverway, Suite 100
Houston, Texas 77058
(713) 571-4206 (Office)
(713) 225-0844 (Fax)
ggealy@millsshirley.com
psutton@millsshirley.com

Attorneys for Interested Party, AAS Consulting, Inc. d/b/a Advance Air Systems
Douglas M. Walla
Andrew M. Williams & Associates
5909 West Loop South, Suite 550
Bellaire, Texas 77401
(713) 840-7321 (Office)
(713) 839-1302 (Fax)
doug@amwlawfirm.com
admin2@amwlawfirm.com
admin1@amwlawfirm.com

Attorneys for Interested Party, C.A. Ray & Son Painting Contractors, Inc.
Marc E. Villarreal
R. Kyle Hinkle
Hinkle & Villarreal, P.C.
719 S. Shoreline Blvd., Suite 300
Corpus Christi, Texas 78401
(361) 883-0620 (Office)
(361) 883-0612 (Fax)
mvillarreal@southtxdefense.com
rkhinkle@southtxdefense.com
afrees@southtxdefense.com

Attorneys for Interested Party, Faires Plumbing Co., Inc.
David J. Dunn
Dunn, Weathered, Coffey, Rivera & Kasperitis, P.C.
611 S. Upper Broadway
Corpus Christi, Texas 78401
(361) 883-1594 (Office)
(361) 883-1599 (Fax)
Dunndj@swbell.net
vanesa@dwcrk.net
kellycreel@swbell.net

Attorneys for Interested Party, Limon Masonry, Inc.
Brian C. Lopez
Brittany C. Cooperrider
Engvall & Lopez, L.L.P.
1811 Bering, Suite 210
Houston, Texas 77057
(713) 787-6700 (Office)
(713) 787-0070 (Fax)
blopez@eltexaslaw.com
bcooperrider@eltexaslaw.com
mmufti@eltexaslaw.com

Attorneys for Interested Party, C & M Contracting, Inc.
David C. Garza
Liliana Elizondo
Garza & Garza, L.L.P.
680 East St. Charles, Suite 300
P.O. Box 2025
Brownsville, Texas, 78250
(956) 541-4914 (Office)
(956) 542-7403 (Fax)
dgarza@garzaandgarza.com
lelizondo@garzaandgarza.com

Attorneys for Interested Party, RGV-R&R Construction Services, L.L.C.
David W. Medack
James P. Davis
Heard & Medack, P.C.
9494 Southwest Freeway, Suite 700
Houston, Texas 77074
(713) 772-6400 (Office)
(713) 772-6495 (Fax)
dmedack@heardmedackpc.com
jdavis@heardmedackpc.com
Mloonahm@heardmedackpc.com
Chernandez@heardmedackpc.com

Attorneys for Interested Party, Daniel Vasquez, Individually and d/b/a Twin City Glass
John A. Guerra
Louis A. Gross
Brock Person Guerra Reyna, P.C.
17339 Redland Road
San Antonio, Texas 78247-2304
(210) 979-0100 (Office)
(210) 979-7810 (Fax)
jguerra@bpgrlaw.com
lgross@bpgrlaw.com
cvaldez@bpgrlaw.com
cmahoney@bpgrlaw.com
laniol@bpgrlaw.com

Attorneys for Interested Party, Zarate Suspended Ceiling, Inc.
John A. Guerra
Louis A. Gross
Brock Person Guerra Reyna, P.C.
17339 Redland Road
San Antonio, Texas 78247-2304
(210) 979-0100 (Office)
(210) 979-7810 (Fax)
jguerra@bpgrlaw.com
lgross@bpgrlaw.com
cvaldez@bpgrlaw.com
cmahoney@bpgrlaw.com
laniol@bpgrlaw.com

Attorneys for Interested Party, Zarate Suspended Ceiling, Inc.
Michael G. Dunnahoo
Rymer, Moore, Jackson & Echols, P.C.
2801 Post Oak Blvd., Suite 250
Houston, Texas 77056
(713) 626-1550 (Office)
(713) 626-1558 (Fax)
mdunnahoo@rmjelaw.com
lkelly@rmjelaw.com

Attorneys for Interested Party, D&J Site Construction, Inc.
David J. Dunn
Dunn, Weathered, Coffey, Rivera & Kasperitis, P.C.
611 S. Upper Broadway
Corpus Christi, Texas 78401
(361) 883-1594 (Office)
(361) 883-1599 (Fax)
Dunndj@swbell.net
vanesa@dwcrk.net
kellycreel@swbell.net

Attorneys for Interested Party, Perez Consulting Engineers
Gregory N. Ziegler
Dean Siotos
Macdonald Devin, P.C.
3800 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270-2130
(214) 744-3300 (Office)
(214) 747-0942 (Fax)
Gziegler@MacdonaldDevin.com
dsiotos@macdonalddevin.com
mwhite@macdonalddevin.com
Lholsomback@macdonalddevin.com
Dpainter@macdonalddevin.com

Attorneys for Interested Party, KBM Air Conditioning, Inc.
Jason L. West
Brock Person Guerra Reyna, P.C.
17339 Redland Road
San Antonio, Texas 78247-2302
(210) 979-0100 (Office)
(210) 979-7810 (Fax)
jwest@bpgrlaw.com

Attorneys for Interested Party, Tri City Steel and Fabrication, Inc.
Thomas A. Mailloux II
Brock Person Guerra Reyna, P.C.
17339 Redland Road
San Antonio, Texas 78247-2302
(210) 979-0100 (Office)
(210) 979-7810 (Fax)
tmailloux@bpgrlaw.com
blawrence@bpgrlaw.com

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF CONTENTS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ix

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xiii

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xvi

STATEMENT OF JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xvii

STATEMENT OF ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xvii

ISSUES PRESENTED.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xviii

     I.        Respondent abused her discretion by ordering the joinder of additional individuals and entities pursuant to Rule 28

     II.      Respondent abused her discretion by asserting jurisdiction over parties that have not been served

     III.    Mandamus is proper because Respondent issued orders beyond her jurisdiction

     IV.    Mandamus is proper because Relator has not adequate remedy at law

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     *A.*      *Descon Construction, L.P. is an existing legal entity that does not do business in any other name and is not known by any other name.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     *B.*      *RGCCISD brought suit against Descon Construction, L.P..* . . . . . . . . . . . . 3

     *C.*      *After the pleadings deadline, and two weeks before trial, RGCCISD amended its pleadings to add multiple new parties.* . . . . . . . . . . 3

     *D.*      *RGCCISD filed documents confirming that Descon Construction, L.P. is a separate  and existing legal entity.* . . . . . . . . . . . . . . . . . . . . . . . . . 4

E.     *Descon Construction, L.P. confirms that it is a separate and existing legal entity.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

F.     *After being made aware that Descon Construction, L.P. is a legal entity and the only proper defendant, RGCCISD added more parties claiming that they were interchangeable under Rule 28.* . . . . . . . . . 5

G.     *Descon Construction, L.P. filed verified proof that it is a separate existing legal entity and the proper Defendant.* . . . . . . . . . . . . . . 6

H.     *Descon Construction, L.P. moved for continuance or abatement so that the parties could be corrected or, if added, could conduct discovery.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.     *RGCCISD filed business records affidavit of a website builder who did work for one of the newly named parties.* . . . . . . . . . . . . . . . . . . . . . 7

J.     *Respondent allowed RGCCISD to add six new parties just ten days before trial, and refused to grant a continuance or abatement.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

K.     *Respondent ordered counsel for Descon Construction, L.P. to act as counsel for the six separate individuals and entities even after being informed of non-representation and potential conflict.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENTS AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

A.     *Standard of Review.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

B.     *It is an abuse of discretion to join parties under Rule 28 without proof that any of the parties are doing business under an assumed name.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      1.     Descon Construction, L.P. is a legal entity separate from any of the newly added parties. . . . . . . . . . . . . . . . . . . . . 10

2. To invoke Rule 28, RGCCISD had to prove that the six new parties were, in fact, doing business under an assumed name. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

3. There is no evidence that any of the six additionally named parties were doing business as Descon Construction, L.P.. . . . . . . 14

4. Rule 28 cannot be used to join additional defendants to the law suit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

C. *It is an abuse of discretion to assert jurisdiction over parties that have not been served.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

1. Only defendants who have been sued and served are subject to the jurisdiction of the trial court.. . . . . . . . . . . . . . . . . 17

2. RGCCISD sued and served only Descon Construction, L.P.. . . . . . 19

D. *Mandamus is proper because Respondent issued orders beyond her jurisdiction.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

E. *Mandamus is proper because Relator has no adequate remedy at law.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

VERIFICATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

APPENDIX AND RECORD. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

    **Tab 1:**    May 1, 2015 Hearing Transcript of Pretrial Motions

    **Tab 2:**    Defendant Descon Construction, L.P.'s Supplemental Objection and Motion to Strike Plaintiff's Thirteenth Amended Original Petition (all versions) and Motion to Abate and Response to Plaintiff's Rule 28 Motion

**Tab 3:**      Plaintiff's TRCP 28 Motion to Substitute Named Defendants Omitted by Defendants' Disclosures and to Compel Defendants to Properly Identify Any Other Parties

**Tab 4:**      Plaintiff's TRCP 28 Motion to Substitute Named Defendants Omitted by Defendants' Disclosures and to Compel Defendants to Properly Identify Any Other Parties

**Tab 5:**      Plaintiff's Thirteenth Amended Original Petition (dated March 20, 2015)

**Tab 6:**      Plaintiff's Thirteenth Amended Original Petition (dated April 24, 2015)

**Tab 7:**      Plaintiff's Thirteenth Amended Original Petition (dated April 27, 2015)

**Tab 8:**      Defendant Descon Construction, L.P.'s Objection and Motion to Strike Plaintiff's Thirteenth Amended Original Petition

**Tab 9:**      Plaintiff's Thirteenth Amended Original Petition (dated April 29, 2015)

**Tab 10:**     Plaintiff's Notice of Intent to Use Business Records

# INDEX OF AUTHORITIES

**Cases:**

*BACM 2002 PB2 Westpark Dr. LP v. Harris County Appraisal Dist.*,
    No. 14-08-00493-CV, 2009 WL 2145922
    (Tex. App.—Houston [14th Dist.] June 21, 2009, no pet.). . . . . . . . . . . . . . . . . 13

*Chilkewitz v. Hyson*,
    22 S.W.3d 825 (Tex.1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Cockrell v. Estevez*,
    737 S.W.3d 138 (Tex. App.—San Antonio 1987, no writ). . . . . . . . . . . . . . . . . 18

*In re Allcat Claims Serv., L.P.*,
    356 S.W.3d 455 (Tex. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Ford Motor Company*,
    165 S.W.3d 315 (Tex. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Freedom Bible Research Inst.*,
    No. 04-14-00550-CV, 2014 WL 5838941
    (Tex. App.—San Antonio Nov. 12, 2014, no pet.). . . . . . . . . . . . . . . . 15, 16, 18, 21

*In re Green Oaks Hosp. Subsidiary, L.P.*,
    297 S.W.3d 452 (Tex. App.—Dallas 2009, no pet). . . . . . . . . . . . . . . . . 20, 21

*In re McAllen Med. Ctr., Inc.*,
    275 S.W.3d 458 (Tex. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*In re Prudential Ins. Co. of Am.*,
    148 S.W.3d 124 (Tex. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 21, 22

*In re Suarez*,
    261 S.W.3d 880 (Tex. App.—Dallas 2008, no pet.). . . . . . . . . . . . . . . 20, 21

*In re SW. Bell Tel. Co.*,
    35 S.W.3d 602 (Tex. 2000) (orig. proceeding). . . . . . . . . . . . . . . . . . . . . . . . . 21

*In re Team Rocket, L.P.*,
256 S.W.3d 257 (Tex. 2008).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*KAO Holdings, L.P. v. Young*,
261 S.W.3d 60 (Tex. 2008).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*KM-Timbercreek, LLC v. Harris Cnty. Appraisal Dist.*,
312 S.W.3d 722 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). . . . . . . 13, 14

*Manufacturers' Hanover Trust Co. v. Kingston Investors Corp.*,
819 S.W.2d 607 (Tex. App.—Houston [1st. Dist.] 1991, no writ).. . . . . . . . . . . 12

*Mapco, Inc. v. Carter*,
817 S.W.2d 686 (Tex. 1991).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 19

*Reid Road Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.*,
337 S.W.3d 846 (Tex. 2011).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Roe v. Ladymon*,
318 S.W.3d 502 (Tex. App.—Dallas 2010, no pet.).. . . . . . . . . . . . . . . . . . . . 11

*Rosenthal v. Terrazo Nat'l Tile & Marble, Inc.*,
742 S.W.2d 55 (Tex. App.—Houston [14th Dist.] 1987, no writ). . . . . . . . . . 19, 20

*Seidler v. Morgan*,
277 S.W.3d 549 (Tex. App.—Texarkana 2009, pet. denied). . . . . . . . . . . . . . . 12

*Sixth RMA Partners v. Sibley*,
111 S.W.3d 46 (Tex. 2003).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16, 17

*W & F Transp., Inc. v. Wilhelm*,
208 S.W.3d 32 (Tex. App.—Houston [14th Dist.] 2006, no pet.). . . . . . . 12, 19, 20

*Walker v. Packer,*
827 S.W.2d 833 (Tex. 1992).. . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 21, 22, 23

*Werner v. Colwell*,
909 S.W.2d 866 (Tex. 1995).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

xiv

**Codes and Rules:**

Tex. Bus. Orgs. Code § 152.056. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Tex. Bus. Orgs. Code § 154.001(a)(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Tex. Gov't Code § 22.221(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xvii

Tex. R. Civ. P. 28.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Tex. R. Civ. P. 124.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

Tex. R. App. P. 52. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Texas Uniform Limited Partnership Act,
Tex. Rev. Civ. Stat. Ann. art. 6132b, § 45 (expired). . . . . . . . . . . . . . . . . . . . 9, 11

Texas Revised Uniform Partnership Act.
Business Organizations Code § 152.001 et. seq.. . . . . . . . . . . . . . . . . . . . . . . 10, 11

## STATEMENT OF THE CASE

This is a construction defect case. Real Party in Interest, Rio Grande City Consolidated Independent School District ("RGCCISD"), brought suit against Descon Construction, L.P. in the case of *Rio Grande City Consolidated Independent School District v. Descon Construction, L.P.*, Cause No. DC-14-46, for negligence, breach of contract, and implied warranty of good and workmanlike manner. Descon Construction, L.P. appeared and answered.

Less than two weeks before trial, RGCCISD filed their Thirteenth Amended Original Petition which named six new separate and distinct parties to the action. RGCCISD also filed a motion to substitute parties under Rule 28, claiming that all of the six newly named individuals and entities were also known as, or doing business as, Descon Construction, L.P. Descon Construction, L.P. filed objections and affidavit evidence establishing that it was a separate legally existing entity as named, and was the proper party to the suit. Descon Construction, L.P. also sought to abate or continue the suit based on the attempt to join new unserved individuals and entities.

On May 1, 2015, Respondent, The Honorable Ana Lisa Garza, Judge Presiding in the 229th Judicial District Court of Starr County, Texas, entered orders denying all of Descon Construction, L.P.'s objections and motions to strike both the amended pleadings and Rule 28 motion. Respondent granted Real Party in Interest's Rule 28 motion joining six unserved individuals and entities. Respondent also denied Descon Construction, L.P.'s motion to abate

or continue the action. This case is set for jury trial on May 11, 2015. A request for emergency relief is being filed with this motion.

## STATEMENT OF JURISDICTION

This Court of Appeals has jurisdiction over this matter under 22.221(b) of the Texas Government Code, which provides "[e]ach court of appeals for a court of appeals district may issue all writs of mandamus, agreeable to the principles of law regulating those writs, against a judge of a District or County court in the court of appeals district."

## STATEMENT REGARDING ORAL ARGUMENT

In light of this Court's previous rulings, Relator believes that the matters in this Petition are well settled. Therefore, Relator does not seek oral argument at this time. However, in the event that Real Party in Interest requests and is granted oral argument, Relator also requests argument.

# ISSUES PRESENTED

I.      Respondent abused her discretion by ordering the joinder of additional individuals and entities pursuant to Rule 28.

II.     Respondent abused her discretion by asserting jurisdiction over parties that have not been served.

III.    Mandamus is proper because Respondent issued orders beyond her Jurisdiction.

IV.    Mandamus is proper because Relator has not adequate remedy at law.

TO THE HONORABLE FOURTH COURT OF APPEALS:

Pursuant to Texas Rule of Appellate Procedure 52, Relator, Descon Construction, L.P., requests this Court issue a writ of mandamus directing The Honorable Ana Lisa Garza, Judge Presiding in the 229th Judicial District Court of Starr County, Texas, to vacate its order granting RGCCISD's Rule 28 motion, allowing RGCCISD to file amended pleadings, and denying Relator's objections and motion to strike the amended pleadings and motion for abatement and continuance.

## STATEMENT OF FACTS

Respondent has entered an order allowing RGCCISD to join six separate and distinct individuals and entities to a lawsuit one week before trial. (**Tab 1**, p. 26). Respondent refused to grant a continuance or abate the action so that the six new parties could conduct discovery or prepare a defense. (**Tab 1**, p. 26). None of the six new parties have been served. The trial court based its ruling entirely on Rule 28. (**Tab 1**, p. 26).

***A.    Descon Construction, L.P. is an existing legal entity that does not do business in any other name and is not known by any other name.***

Descon Construction, L.P. is a Texas limited partnership. (**Tab 2**, Exhibit C) (**Tab 3**, Exhibit A) (**Tab 4**, Exhibit E & F). On January 2, 2004, Descon Construction, L.P. entered into a contract with RGCCISD for the construction of La Grulla Elementary School. (**Tab 2**, Exhibits C & C-A). The only parties to the contract were Descon Construction, L.P. and RGCCISD. (**Tab 2**, Exhibits C & C-A). The project was completed in 2005. (**Tab 2**, Exhibit C).

1

In 2006, Texas Descon, L.P. was formed. (**Tab 2**, Exhibit C). Texas Descon, L.P. is a separate legal entity from Descon Construction, L.P. (**Tab 2**, Exhibit C) (**Tab 2**, Exhibit A). Texas Descon, L.P.'s general partner is Descon 4S, LLC. (**Tab 2**, Exhibit C). Through a negotiated arms-length agreement, Texas Descon, L.P. purchased the goodwill of Descon Construction, L.P. (**Tab 2**, Exhibit C). It did not acquire Descon Construction, L.P.'s liability in general, or as related to the RGCCISD contract. (**Tab 2**, Exhibit C).

In 2009, Descon Construction, L.P. filed a certificate of cancellation indicating that it was closing its business. (**Tab 4**, Exhibit G). Its general partner at the time was Descon Management, L.L.C.[1] (**Tab 4**, Exhibit G). Descon Construction, L.P. was reinstated on September 2012. (**Tab D**, Exhibits E & F). Its general partners at the time of reinstatement were Descon Management, L.L.C. and Maco Management, L.L.C. (**Tab 4**, Exhibits F & J). Maco Management, L.L.C. has since dissolved. (**Tab 3**, Exhibit A). Descon Management, L.L.C. is an existing limited liability corporation and continues to be the general partner of Descon Construction, L.P. (**Tab 3**, Exhibit A). Since the time it was reinstated, Descon Construction, L.P. has existed as a recognized legal entity in the State of Texas through the present date (**Tab 2**, Exhibit C) (**Tab 3**, Exhibit A) (**Tab 4**, Exhibits E & F).

---

[1]Descon Management, L.L.C. was dissolved in December, 2009 and was reinstated in 2012. (**Tab 3**, Exhibit A).

2

***B.*** ***RGCCISD brought suit against Descon Construction, L.P.***

On January 29, 2014, RGCCISD brought suit against Descon Construction, L.P. for negligence, breach of contract, and implied warranty of good and workmanlike manner. Descon Construction, L.P. appeared and answered. In the lawsuit, RGCCISD seeks more than $15 million dollars in damages.

The deadline for RGCCISD to file supplemental and amended pleadings was April 14, 2015. (**Tab 2**, Exhibits A & B). From the inception of suit until that deadline, RGCCISD filed numerous amended petitions. RGCCISD's "Thirteenth Amended Original Petition" was filed on March 20, 2015. (**Tab 5**). Each petition, including the RGCCISD's "Thirteenth Amended Original Petition" named Descon Construction, L.P. as the Defendant. (**Tab 5**).

***C.*** ***After the pleadings deadline, and two weeks before trial, RGCCISD amended its pleadings to add multiple new parties.***

On April 24, 2015, ten days after the pleading deadline, RGCCISD filed another petition that was also titled "Plaintiff's Thirteenth Amended Original Petition." (**Tab 6**). In that pleading, however, "RGCCISD sues Texas Descon, L.P. fka Descon Construction, L.P., for purposes of enforcing its substantive rights, pursuant to Texas Rule of Procedure 28." (**Tab 6**).

On April 27, RGCCISD filed another petition that was also titled "Plaintiff's Thirteenth Amended Original Petition." (**Tab 7**). This time, RGCCISD took a shotgun approach to naming new parties and added "J. Wayne Medlin aka/dba Descon 4S, L.L.C., aka/dba Descon Construction, L.P., aka/dba Texas Descon, L.P.,". . . alleging that "each

named entity and person are doing business under assumed names and as defendants pursuant to Texas Rule of Civil Procedure 28 and may sue the partnerships, assumed or common names of defendants for purposes of RGCCISD enforcing its substantive rights." (**Tab 7**.). RGCCISD also named Michael C. Smith as a partner of Texas Descon, L.P. RGCCISD asserted that, under Rule 28, no service of process was necessary. (**Tab 7**).

### D. RGCCISD filed documents confirming that Descon Construction, L.P. is a separate and existing legal entity.

At the time it filed its new pleadings, RGCCISD also filed a motion pursuant to Rule 28 to "substitute named defendants omitted." (**Tab 3**). In that motion, RGCCISD asserted that all of the named entities were operating under an assumed name (presumably, but not identified, as Descon Construction, L.P.) and, therefore, were parties to the existing suit. (**Tab 3**). In support of this allegation, RGCCISD attached a web page purportedly published by Texas Descon, L.P., which claims that it was formed as a successor company to carry on the tradition and reputation of Descon Construction, L.P. (**Tab 3**. Exhibit A).

However, one of the other exhibits attached to RGCCISD's motion is a Maintenance Correction Memorandum to Entity Record which confirms that Descon Construction, L.P. was in existence and had been reinstated. (**Tab 3**, Exhibit A). A certificate of reinstatement for Descon Construction, L.P. was also included in RGCCISD's exhibits. (**Tab 3**, Exhibit A). The tax clearance letters and reports were also attached. (**Tab 3**, Exhibit A). Therefore, RGCCISD's motion was accompanied by significant evidence establishing that Descon

4

Construction, L.P. was re-instated and now is a separate and existing legal entity. (**Tab 3**, Exhibit A).

**E.** ***Descon Construction, L.P. confirms that it is a separate and existing legal entity.***

On April 28, 2015, Descon Construction, L.P. filed its objection and motion to strike the amended pleadings. (**Tab 8**). As part of their objections, Descon Construction, L.P. confirmed that Descon Construction, L.P. was an existing entity that was not doing business under an assumed name. (**Tab 8**). Descon Construction, L.P. also affirmed that Texas Descon, L.P. is not its successor in liability for the contract. (**Tab 8**).

On the same day, Descon Construction, L.P. filed a second amended answer containing verified denials as to the identity and capacity of Descon Construction, L.P. as an entity also known as or doing business under any other name. (**Tab 2**, Exhibit C-C).

**F.** ***After being made aware that Descon Construction, L.P. is a legal entity and the only proper defendant, RGCCISD added more parties claiming that they were interchangeable under Rule 28.***

On April 29, 2015, fifteen days after the pleading deadline and after being notified of the correct party name, RGCCISD filed yet another Thirteenth Amended Petition.[2] (**Tab 9**). This time, RGCCISD modified the title slightly by adding "(b)" on the end of the title, thus titling the document, "Plaintiff's Thirteenth Amended Original Petition (b)." (**Tab 9**). In this 4th version of RGCCISD's Thirteenth Amended Petition, RGCCISD named "J. Wayne

---

[2]The fact that RGCCISD has filed four 13th Amended Petitions not only makes referring to the record difficult, but violates the rules of civil procedure. *See* Tex. R. Civ. P. 46 ("The original petition, first supplemental petition, second supplemental petition, and every other, shall each be contained in one instrument of writing.").

Medlin aka/dba Descon Management, L.L.C., aka/dba Maco Management, L.L.C., aka/dba Michael C. Smith aka/dba Descon 4S, L.L.C., aka/dba Descon Construction, L.P., aka/dba Texas Descon, L.P., each individually, dba and fka Descon Construction, L.P." RGCCISD again asserts that no service is necessary under Rule 28. (**Tab 9**). RGCCISD accompanied its petition with an amended "TRCP 28 Motion to Substitute," and reattached the same exhibits confirming that Descon Construction, L.P. is a legal and existing separate entity. (**Tab 9**).

### G.   *Descon Construction, L.P. filed verified proof that it is a separate existing legal entity and the proper Defendant.*

Consequently, on April 30, 2015, Descon Construction, L.P. filed its supplemental objection and motion to strike RGCCISD's Thirteenth Amended Original Petition and motion to abate and response to RGCCISD's Rule 28 motion. (**Tab 2**). In that motion, Descon Construction , L.P. again confirmed that it was a legal existing entity, that it was the proper party to the suit, and that it was not known by any other name. (**Tab 2**, Exhibit C). Descon Construction, L.P. also detailed the relationships of each of the separate individuals and entities. (**Tab B**, Exhibit C). In support of its motion and objections, Descon Construction, L.P. attached the affidavit of Michael C. Smith, who confirmed that Descon Construction, L.P. is an existing Texas limited partnership and that it was a separate and distinct entity from Texas Descon, L.P. (**Tab 2**, Exhibit C). Smith also confirmed that Descon Construction, L.P. has never done business as Texas Descon, L.P. (**Tab 2**, Exhibit C).

6

**H.** *Descon Construction, L.P. moved for continuance or abatement so that the parties could be corrected or, if added, could conduct discovery.*

In addition to establishing proof of its existence as the correct defendant and only party to the contract, Descon Construction, L.P. moved the Court to abate or continue the case. (**Tab 2**, Exhibit C). None of the newly added parties had been served.

**I.** *RGCCISD filed business records affidavit of a website builder who did work for one of the newly named parties.*

On the day that the matter was set for hearing, RGCCISD filed a notice of intent to use business records of a company named MPC studios. (**Tab 10**). The attached records contain correspondence with Texas Descon, L.P. The records contain a handwritten note by an unidentified individual that notes that Texas Descon, L.P. entered into a licensing agreement with Descon Construction, L.P. for its goodwill. (**Tab 10**). The handwritten notes are undated. (**Tab 10**).

**J.** *Respondent allowed RGCCISD to add six new parties just ten days before trial, and refused to grant a continuance or abatement.*

On May 1, 2015, just ten days before trial, Respondent heard the parties' competing motions. (**Tab 1**, pp. 13-26). No evidence was presented that any of the proposed new parties were doing business as, or were known as, Descon Construction, L.P. (**Tab 1**, pp. 13-26).

Despite the uncontroverted evidence that Descon Construction, L.P. is a separate and existing legal entity, Respondent granted RGCCISD's Rule 28 motion and allowed it to join six new parties. (**Tab 1**, p. 26). Respondent also denied Descon Construction, L.P.'s motion

to abate or continue the trial. (**Tab 1**, p. 26). It is undisputed that none of the new parties have been served.

**K.** ***Respondent ordered counsel for Descon Construction, L.P. to act as counsel for the six separate individuals and entities even after being informed of non-representation and potential conflict.***

After issuing orders, Respondent verbally ordered counsel for Descon Construction, L.P. to produce information regarding the registered agents for the six newly named parties and ordered that counsel make those parties available for trial. (**Tab 1**, pp.168-172). Counsel explained that they did not represent any party other then Descon Construction, L.P. and that representation of those entities could cause conflict. (**Tab 1**, pp.168-172). Despite counsel's clear admonishments regarding conflict, the court demanded that counsel produce the information in one hour, before 5:00 p.m. that day. (**Tab 1**, p. 172). Under threat of contempt, counsel for Descon Construction, L.P. conducted a public records search through the secretary of state to provide the identity and address of the registered agents of each of the six different entities.

**SUMMARY OF THE ARGUMENT**

Mandamus relief is proper when a trial court exerts jurisdiction over individuals and entities that have not been served and are not before the court. Respondent in this case entered an order commanding six new persons and entities to trial with one week of notice. None of the individuals or entities have appeared or even been served.

Respondent's ruling is based on Texas Rule of Civil Procedure 28, which allows for the substitution of names when it is shown that the defendant already involved in the litigation was doing business under another name. Significantly, the rule governs substituting names for one entity, not adding or joining parties. Rule 28 is procedural and does not change the substantive rights of parties.

The Texas Supreme Court and this Court have made it clear that, before Rule 28 can be invoked, there must be evidence that the parties sought to be substituted are actually doing business in the assumed name. Evidence that a person or entity is referenced by a common name is not sufficient to invoke Rule 28.

None of the evidence presented even suggests that any of the newly named individuals or entities are doing business as Descon Construction, L.P. Instead, the evidence conclusively established that all of the entities are separate legal entities and individuals doing business in their own name. Therefore, Rule 28 has no application to the facts of this case.

Respondent's order results in a ruling that each of the general partners, limited partners, registered agents, and entities sharing a common registered agent are interchangeable for purposes of service, discovery, and liability. There is no interpretation of any law in the State of Texas to support such a complete and total disregard for the Texas Uniform Limited Partnership Act. Nor is there any interpretation of law in the State of Texas to support the notion that individuals and entities can be dragged into court on one week's notice to answer claims in excess of $15 million when they have not even been served.

9

Respondent's abuse of discretion in this matter is clear. Because Respondent is asserting jurisdiction over individuals and entities that have not been served or appeared, no showing that Relator lacks an adequate remedy at law is required. However, under the extreme facts of this case, Descon Construction, L.P. has no adequate remedy at law.

## ARGUMENT AND AUTHORITIES

### A.    *Standard of Review.*

"A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *In re Ford Motor Company*, 165 S.W.3d 315, 317 (Tex. 2005) (quoting *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex. 1992)). A trial court has no discretion in determining what the law is or applying the law to the facts, even when the law is unsettled. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 (Tex. 2004). A clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Walker,* 827 S.W.2d at 840.

### B.    *It is an abuse of discretion to join parties under Rule 28 without proof that any of the parties are doing business under an assumed name.*

**1.    Descon Construction, L.P. is a legal entity separate from any of the newly added parties.**

Descon Construction, L.P. is a limited partnership as defined by the Texas Revised Uniform Partnership Act. Although the partnership was temporarily dissolved after the completion of the contract giving rise to the underlying claims, it was fully reinstated in

10

2012, before RGCCISD brought suit. It remains an existing legal entity, and has appeared

and answered in the underlying suit to confirm that it is the properly named party.

In 1993, the Texas Legislature passed the Texas Revised Uniform Partnership Act

(TRPA) in 1993 and which "unequivocally embrace[d] the entity theory[3] of partnership by

specifically stating . . . that a partnership is an entity distinct from its partners." Tex. Rev.

Civ. Stat. Ann. art. 6132b-2.01, Comment of Bar Committee-1993; *see In re Allcat Claims

Serv., L.P.*, 356 S.W.3d 455, 463-64 (Tex. 2011). The TRPA, codified in the Texas Business

Organizations Code, plainly provides that "[a] partnership is an entity distinct from its

partners," and "[a] partner is not a co-owner of partnership property." Tex. Bus. Orgs. Code

§§ 152.056, 154.001(c). Further, it is the partnership interest that is a partner's "personal

property for all purposes." *Id.* § 154.001(a); *see Reid Road Mun. Util. Dist. No. 2 v. Speedy

Stop Food Stores, Ltd.*, 337 S.W.3d 846, 855 (Tex. 2011) (noting that the general partner of

a limited partnership is not an owner of the limited partnership's property).

The fact that Texas recognizes limited partnerships, and other business organizations,

as separate legal entities means that a limited partnership and the partners thereto are not

interchangeable in court proceedings. *See Roe v. Ladymon*, 318 S.W.3d 502, 515-16 (Tex.

App.—Dallas 2010, no pet.) (holding that limited partner is a distinct legal entity from the

partnership and is not bound by an arbitration agreement, even when the limited partner

---

[3]Under the entity theory of partnership law the partnership is an entity separate and distinct from its partners. See 1 Alan R. Bromberg & Larry E. Ribstein, Bromberg and Ribstein on Partnership § 1.03(a)-(b) (Release No. 31, 2011-12 Supp.).

11

signed as a representative of the partnership); *W & F Transp., Inc. v. Wilhelm*, 208 S.W.3d 32, 45-46 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (holding that individuals would have been liable for work performed under d/b/a name, but that once the individuals formed a corporation, they could rely on the corporate form to shield them from individual liability); *Manufacturers' Hanover Trust Co. v. Kingston Investors Corp.*, 819 S.W.2d 607, 611 (Tex. App.—Houston [1st. Dist.] 1991, no writ) (holding that court could not force the sale of property owned by a Texas limited partnership in a suit against the partners, where the Texas limited partnership was not a party). Under Texas Law, Descon Construction, L.P. is a separate and distinct legal entity from any of the other named defendants.

**2.      To invoke Rule 28, RGCCISD had to prove that the six new parties were, in fact, doing business under an assumed name.**

For a party to take advantage of Rule 28[4] and sue in its common name, "there must be a showing that the named entity is in fact doing business under that common name." *Seidler v. Morgan*, 277 S.W.3d 549, 553 (Tex. App.—Texarkana 2009, pet. denied). For example, although others may commonly and informally use the name of the premises location to refer to a particular entity, this does not mean that the entity is "doing business under" the premises name as an assumed or common name. *Id*.

---

[4]Rule 28 provides: Any partnership, unincorporated association, private corporation, or individual doing business under an assumed name may sue or be sued in its partnership, assumed or common name for the purpose of enforcing for or against it a substantive right, but on motion by any party or on the court's own motion the true name may be substituted. Tex. R. Civ. P. 28.

12

Examples of evidence that proves a person or entity is doing business under an assumed name include evidence that an entity was making demands and notices under the assumed name or that combined accounting procedures, such as payments on accounts, with the entity sought to be joined. *Sixth RMA Partners v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003) (holding that Sixth RMA used the assumed name RMA Partners by sending notices on RMA Partners letterhead and collecting debts owed to Sixth RMA under the name RMA Partners). However, records such as tax statements, appraisal records, and account information which indicate that one entity may refer to itself as another entity is not evidence that the entities are actually doing business as one another. *KM-Timbercreek, LLC v. Harris Cnty. Appraisal Dist.*, 312 S.W.3d 722, 730 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (references to separate entity in property records did not show that the entity was operating under an assumed name); *see BACM 2002 PB2 Westpark Dr. LP v. Harris County Appraisal Dist.*, No. 14-08-00493-CV, 2009 WL 2145922, at *6–7 (Tex. App.—Houston [14th Dist.] June 21, 2009, no pet.) (finding HCAD's designation of BACM as the property owner instead of Parkwest Place in its records was insufficient to show the operation in an assumed name).

In *KM-Timbercreek, LLC*, the appellant complained that the trial court erred in denying its Rule 28 motion to substitute the name Timbercreek with Yorktown. 312 S.W.3d at 730. In support of its argument, the appellant pointed to evidence that Yorktown was the property owner according to tax records as evidence that Timbercreek was operating under

13

the name Yorktown. *Id.* However, the Houston First Court of Appeals rejected the argument stating:

> This argument ignores the specific language used in Rule 28, which frames the appropriate inquiry as not whether HCAD refers to or addresses an entity by a particular name, but whether that entity actually does business under the common name. Although HCAD's appraisal records, account information, property tax statements, notice of appraised value, and order determining protest might be some evidence that HCAD refers to Timbercreek as Yorktown, without more, it is not evidence that Timbercreek conducts its business under the common name of Yorktown.

*Id.* These cases demonstrate the distinction between an entity that is known by a different name and entity that does business using a different name.

### 3. There is no evidence that any of the six additionally named parties were doing business as Descon Construction, L.P.

To support its Rule 28 motion, RGCCISD submitted documents of the Secretary of State and Texas Comptroller of Public Accounts. Those documents merely establish the separate legal existence of the limited partnerships and limited liability corporations that Respondent added to the proceeding. These documents, if anything, negate the application of Rule 28 because the entities took legal steps to demonstrate their separate legal existence.

The only other documents that RGCCISD submitted in support of their Rule 28 motion was a snapshot of a page from Texas Descon, L.P.'s website.[5] That website indicates that Texas Descon, L.P. entered into a licencing agreement with Descon Construction, L.P.

---

[5]To be admissible as proof, a business records affidavit must be served on the other party at least 14 days before trial. Tex. R. Evid. 902 (1)(A). The affidavit, which was served on the day of hearing and less than 14 days before trial was not properly before the court.

14

in 2006 – before Descon Construction, L.P. was re-instated as a limited partnership. Even if

Texas Descon, L.P.'s statements could be imputed to Descon Construction, L.P., the

statements merely show that Texas Descon, L.P. has a right to Descon Construction, L.P.'s

reputation and tradition. It does not show that Descon Construction, L.P. is doing business

as Texas Descon, L.P. Nor does its show that Texas Descon, L.P. is doing business as

Descon Construction, L.P. The distinction is important.

In *In re Freedom Bible Research Inst.*, this Court previously granted mandamus relief

from an order that allowed "Freedom Bible Research Institute" and "Body of Christ Camp"

to be substituted, pursuant to Rule 28 of the Texas Rules of Civil Procedure, for the parties

named in the lawsuit as "Fred McCulloch and Betty McCulloch d/b/a Freedom Bible

Research Institute, A Free Church a/k/a Body of Christ Camp." No. 04-14-00550-CV, 2014

WL 5838941, at *4 (Tex. App.—San Antonio Nov. 12, 2014, no pet.). There, this Court

observed:

> Rule 28 is a procedural rule that simply provides that if an individual or entity conducts business under an assumed name, it may be sued in that name. *See* Tex. R. Civ. P. 28; *Chilkewitz v. Hyson*, 22 S.W.3d 825, 830 (Tex. 1999). Under this rule a suit against FBRI would be effective to commence a suit against Fred and Betty because Fred and Betty filed an assumed name certificate and were doing business as Freedom Bible Research Institute. The McClintocks' position poses the opposite that the suit against Fred and Betty was effective to commence a proceeding against FBRI and the Camp. Such a conclusion would require some evidence that FBRI and the Camp were doing business as Fred and Betty McCulloch.

*Id.*

Even if the web site of Texas Descon, L.P. constituted some evidence that Descon Construction, L.P., as currently organized and reinstated, was doing business as Texas Descon, L.P., such fact would not be effective to commence a suit against Texas Descon, L.P. The problem, as in *In re Freedom Bible Research*, is that RGCCISD brought suit against Descon Construction, L.P. *See id.* To commence a proceeding against Texas Descon, L.P., there would have to be evidence that Texas Descon, L.P. was doing business as Descon Construction, L.P., which the website disproves. Unlike the defendants in *Sixth RMA*, there is no evidence that Descon Construction, L.P. was actually doing business under the name Texas Descon, L.P., or that Texas Descon, L.P. was actually doing business under the name Descon Construction, L.P. *See* 111 S.W.3d at 52-53.

Moreover, none of the evidence submitted by RGCCISD even suggests that Descon Management L.L.C., Michael C. Smith, J. Wayne Medlin, Descon 4S L.L.C., or Maco Management, L.L.C. were doing business as Descon Construction, L.P. or vice versa. None of the evidence submitted suggests that any of the newly named parties interacted with RGCCISD through an assumed name at any time through the completion of the underlying contract. Yet, Respondent ordered each of these separate and existing entities to be joined by name – without service – a week before trial. Respondent's actions constitute an abuse of discretion. *See In re Freedom Bible Research Inst.*, 2014 WL 5838941, at \*4 (abuse of discretion shown where trial court ordered the substitution of parties without proof that the entities were doing business under an assumed name).

16

**4.      Rule 28 cannot be used to join additional defendants to the law suit.**

Plaintiff cited *Sixth RMA Partners, L.P.*, for the proposition that the individuals and entities identified in Plaintiff's Thirteenth Amended Petition could be added to the lawsuit. *See* 111 S.W.3d at 53. However, Plaintiff ignores the holding in *Sixth RMA*: "Rule 28 requires that the correct legal name be *substituted*." *See* 111 S.W.3d at 53 (emphasis added). The Supreme Court's holding mirrors the text of Rule 28: "on a motion by any party or on the court's own motion the true name may be *substituted*." Tex. R. Civ. P. 28 (emphasis added). In other words, any time that a Rule 28 motion is granted, the number of the defendants in the case should always remain the same; only the name should change.  This is why Rule 28 is a procedural mechanism that does not alter substantive rights. In this case, Plaintiff attempted to join six additional defendants to the lawsuit under the guise of a Rule 28 motion to substitute names.  Respondent granted the false Rule 28 motion, adding six defendants to the case and abusing her discretion in doing so.

**C.      *It is an abuse of discretion to assert jurisdiction over parties that have not been served.***

**1.      Only defendants who have been sued and served are subject to the jurisdiction of the trial court.**

No judgment may be rendered against a person who has been neither sued nor served. *See, e.g.,* Tex. R. Civ. P. 124. Unless and until a person has been sued and served, that person is not a party to the lawsuit, and is not subject to the trial court's jurisdiction. *Mapco, Inc. v. Carter*, 817 S.W.2d 686, 687 (Tex. 1991). The purpose of citation is to give the court

17

jurisdiction over the defendant, satisfy due-process requirements, and to give the defendant the opportunity to appear and defend. *Cockrell v. Estevez*, 737 S.W.3d 138, 140 (Tex. App.—San Antonio 1987, no writ). A judgment cannot be rendered against a defendant unless the defendant was served with process, accepted or waived service, or made an appearance. Tex. R. Civ. P. 124; *Werner v. Colwell*, 909 S.W.2d 866, 869-870 (Tex. 1995); *Mapco, Inc. v. Carter*, 817 S.W.2d 686, 687 (Tex. 1991).

In *KAO Holdings, L.P. v. Young*, the plaintiff sued the limited partnership, and not the general partner, but nonetheless obtained a default judgment against both. 261 S.W.3d 60, 61 (Tex. 2008). The Texas Supreme Court stated as follows:

> Partners against whom judgment is sought should be both named and served so that they are on notice of their potential liability and will have an opportunity to contest their personal liability for the asserted partnership obligation.

*Id.* at 64 (footnote omitted).

Respondent's order is a ruling that forces six named individuals and entities to trial without the benefit of service, discovery, or defense. As to Descon Construction, L.P., it forces Descon Construction, L.P. to trial under theories of joint and several liability that have not been developed. Respondents use of Rule 28 to eviscerate Relator's substantive rights constitutes a clear abuse of discretion. *See In re Freedom Bible Research Inst.*, 2014 WL 5838941, at *4 (abuse of discretion shown where trial court ordered the substitution of parties without proof that the entities were doing business under an assumed name). Lack of

jurisdiction is fundamental error – an objection to lack of jurisdiction may be raised at any time, and that objection cannot be waived. *See id*; *Mapco, Inc.*, 817 S.W.2d at 687.

**2.     RGCCISD sued and served only Descon Construction, L.P.**

Up until April 24, 2015, Descon Construction, L.P. was the only party to be named in this proceeding. As of this date, Descon Management, L.L.C., Michael C. Smith, J. Wayne Medlin, Descon 4S, L.L.C. and Maco Management, L.L.C. have not been served. Yet, Respondent has ordered Descon Management, L.L.C., Michael C. Smith, J. Wayne Medlin, Descon 4S, L.L.C., and Maco Management, L.L.C. to appear at trial and answer RGCCISD's charges against them. The evidence submitted by both the Relator and the Real Party in Interest confirms that each of the named parties and individuals are separate existing legal entities.

A lawsuit against A d/b/a B is only a lawsuit against A, when A and B are separate legal entities. *See W & F Transp., Inc. v. Wilhelm*, 208 S.W.3d 32, 46 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (recognizing the difference between (I) individuals doing business under an assumed name, and (ii) individuals doing business through an actual business entity); *Rosenthal v. Terrazo Nat'l Tile & Marble, Inc.*, 742 S.W.2d 55, 56 (Tex. App.—Houston [14th Dist.] 1987, no writ) (petition against "Bennett Rosenthal, individually and doing business as 9201 Partnership, Ltd." "plainly allege[d] a cause of action against only one defendant."). When a plaintiff sues and serves A d/b/a B, assuming B is an entity

19

separate and distinct from A, then the jurisdiction of the trial court has not attached to B. *See id.* Instead, the plaintiff must separately sue and serve the other legal entity.

RGCCISD has tried to blur the line between the separate and distinct legal entities by inserting the phrase "aka/dba" in between each entity and individual. However, this act is merely one of nomenclature and does not change the identity or substantive rights of the separately existing entities. *See W & F Transp., Inc.*, 208 S.W.3d at 46; *Rosenthal*, 742 S.W.2d at 56. Therefore, Respondent does not have jurisdiction over Descon Management, L.L.C., Michael C. Smith, J. Wayne Medlin, Descon 4S, L.L.C. or Maco Management, L.L.C. because those individuals and business entities have not been served. Nonetheless Respondent has issued an order making those individuals and business entities parties to RGCCISD's lawsuit, and making Descon Construction, L.P. jointly and severally liable for their actions.

**D.      *Mandamus is proper because Respondent issued orders beyond her jurisdiction*.**

"Generally, mandamus relief lies when the trial court has abused its discretion and the relator has no adequate remedy by appeal." *In re Suarez*, 261 S.W.3d 880, 882 (Tex. App.—Dallas 2008, no pet.). "If an order is void, however, a relator need not show it does not have an adequate remedy to be entitled to mandamus relief." *In re Green Oaks Hosp. Subsidiary, L.P.*, 297 S.W.3d 452, 456 (Tex. App.—Dallas 2009, no pet). When a trial court issues an order beyond its jurisdiction, the order is void, constitutes an abuse of discretion, and is correctable by mandamus without a showing that the relator lacks an

20

adequate appellate remedy. *In re SW. Bell Tel. Co.*, 35 S.W.3d 602, 605 (Tex. 2000) (orig. proceeding); *In re Green Oaks Hosp. Subsidiary, L.P.*, 297 S.W.3d at 456; *In re Suarez*, 261 S.W.3d at 882. When a trial court allows for improper substitution pursuant to Rule 28 and asserts jurisdiction over separate entities, a relator lacks an adequate remedy at law and is entitled to mandamus relief without further showing. *In re Freedom Bible Research Inst.*, No. 04-14-00550-CV, 2014 WL 5838941, at *3 (Tex. App.—San Antonio Nov. 12, 2014).

### E.    *Mandamus is proper because Relator has no adequate remedy at law.*

In the alternative, Descon Construction, L.P. would show that the combined actions of Respondent in adding six new and unserved parties ten days before trial, denying abatement and continuance, and ordering counsel for Relator to act as counsel for the six newly named parties, is so extreme as to render this an exceptional case where mandamus relief is appropriate. The adequacy of an appellate remedy must be determined by balancing the benefits of mandamus review against the detriments. *In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008) (citing *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004). In evaluating benefits and detriments, a court must consider whether mandamus will preserve important substantive and procedural rights from impairment or loss. *In re Team Rocket, L.P.*, 256 S.W.3d at 262. In *Prudential*, the Supreme Court departed from the categorical view of mandamus entitlement espoused in *Walker*[6] and instructed that the

---

[6] 827 S.W.2d 833, 839 (Tex. 1992).

21

adequacy of an appellate remedy depends on the circumstances of a case and that mandamus is appropriate when the benefits of mandamus review outweigh the detriments. *Prudential,* 148 S.W.3d at 137. By 2008, the Texas Supreme Court made the extent of its departure from *Walker* clear when it focused specifically on the unnecessary costs and delays that would be incurred if mandamus was denied to correct an abuse of discretion. *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 466 (Tex. 2008). A reviewing court must consider whether mandamus will spare litigants and the public "the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings." *Team Rocket*, 256 S.W.3d at 262 (quoting *Prudential*, 148 S.W.3d at 136).

In *Prudential*, the Supreme Court has recognized that "[m]andamus review of significant rulings in exceptional cases may be essential to preserve important substantive and procedural rights from impairment or loss." 148 S.W.3d at 136. Several of those important substantive and procedural rights are lost under the trial court's orders which results in liability for Descon Construction, L.P. for the acts and associations of six or more separate entities who have no time to prepare a defense, and whose interests may stand in conflict to those interests of Descon Construction, L.P.. Additionally, due to the timing of the court's orders on the eve of trial, Descon Construction, L.P. has no opportunity to participate in discovery and develop defenses responsive to theories of assumed name, common name, d/b/a, a/k/a, limitations and joint and several or vicarious liability.

22

It is beyond dispute that there will be a substantial waste of the litigants' time and money if they were to proceed to trial without the error being corrected. At a minimum, such action will result in a convoluted appeal of a trial projected to last between three to four weeks. Where a trial court's error will cause a waste of judicial resources, an appellate court may properly consider that factor in determining the adequacy of an appeal to remedy the error in question. *See Walker*, 827 S.W.2d at 843. Furthermore, RGCCISD's untimely Thirteenth Amended Petition inserts new issues into the case that were never pleaded and are completely baseless, e.g. correct application of partnership liability law and piercing the corporate veil doctrine. By allowing RGCCISD to add six new parties and denying the motion for continuance, the Respondent is forcing litigants to proceed to a trial on issues that no one has prepared for.

Descon Construction, L.P. asserts that it is the only rightful party before this Court. However, even if the individuals and entities listed in RGCCISD's Thirteenth Amended Petition are proper defendants, a stay of the proceedings is necessary. If any of the other named and unserved parties were forced to trial at this stage in the proceedings, they would be forced with choosing between (i) waiving personal jurisdiction and trying a case with a week of preparation and (ii) allowing RGCCISD to take a default judgment against them.

The potential waste of resources, when combined with the possibility that any subsequent appeal may be hindered by Descon Construction, L.P.'s inability to conduct discovery to build an adequate appellate record, supports the conclusion that an appeal would

23

not adequately protect the parties rights. Relator submits that mandamus review should issue here to spare private parties and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Relator Descon Construction, L.P., respectfully requests that this Honorable Court grant a Writ of Mandamus directing the 229th District Court of Starr County, Texas to:

1. Vacate its order granting Plaintiff's First Amended Rule 28 Motion to Substitute Named Defendants and to compel defendants to properly identify any other parties.

2. Grant Relator's Motion to Strike the 13th Amended Petition (all versions) and to continue or abate.

3. And for any other relief to which Relator may be entitled.

Respectfully submitted,

COKINOS, BOSIEN & YOUNG
10999 IH-10 West, Suite 800
San Antonio, Texas  78230
(210) 293-8700 (Office)
(210) 293-8733 (Fax)


Date:  May 4, 2015                    By: /s/ *Karen L. Landinger*

Karen L. Landinger
State Bar No. 00787873
klandinger@cbylaw.com
Stephanie O'Rourke
State Bar No. 15310800
sorourke@cbylaw.com
Stanley W. Curry, Jr.
State Bar No. 05274000
scurry@cbylaw.com
Robert M. Smith
State Bar No. 18677400
rmsmith@cbylaw.com
Gabriel S. Head
State Bar No. 24055642
ghead@cbylaw.com

ATTORNEYS FOR RELATOR,
DESCON CONSTRUCTION, L.P.

STATE OF TEXAS  §
BEXAR COUNTY  §

## **VERIFICATION**

Before me, the undersigned notary, on this day personally appeared ROBERT M. SMITH, the affiant, a person whose identity is known to me. After I administered an oath to affiant, affiant testified:

"My name is ROBERT M. SMITH. I am capable of making this verification. The facts in this affidavit are within my personal knowledge and are true and correct.

"I am Counsel for Relator. The copies of the transcript, motions, pleadings, and evidence contained in the Appendix are true and correct copies of the originals. Descon Construction, L.P. has been unable to obtain certified copies of the exhibits due to the exigency of the circumstances.

_____
ROBERT M. SMITH

Sworn to and subscribed before me by ROBERT M. SMITH on the 4th day of May, 2015.

TERRIE A. EDWARDS
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
FEB. 29, 2016

_____
Notary Public in and for the State of Texas

26

**CERTIFICATE OF SERVICE**

I certify that a copy of the *Original Petition for Writ of Mandamus* was served on the following on the 4th day of May, 2015:

*RESPONDENT*

    The Honorable Ana Lisa Garza
    District Judge
    229th Judicial District Court of Starr County
    Starr County Courthouse
    401 N. Britton Avenue, Room 304
    Rio Grande City, Texas  78582
    (956) 487-2636 (Office)
    (956) 487-4093 (Fax)
    alglaw1@aol.com
    asaenz@co.starr.tx.us

*INTERESTED PARTIES*

    Attorneys for Interested Party, Rio Grande City CISD
    Norman Jolly
    Michael B. Jolly
    Law Office of Norman Jolly
    405 Main, Suite 1000
    Houston, Texas  77002
    (713) 237-8383 (Office)
    (713) 237-8385 (Fax)
    normanjollypc@sbcglobal.net
    mikejolly@aol.com
    lawjp@earthlink.net
    ericjarvis@rocketmail.com
    twentysixpoint2@me.com
    medina_nancy@sbcglobal.net

    Attorneys for Interested Party, Rio Grande City CISD
    Martie Garcia Vela
    100 West 5th Street
    Rio Grande City, Texas  78582
    (956) 488-8170 (Office)
    (956) 488-8129 (Fax)
    martie.garcia@gmail.com

Attorneys for Interested Party, ERO International, L.L.P.
John R. Griffith
Griffith Law Group
801 E. Fern Avenue, Suite 170
McAllen, Texas 78501
(956) 971-9446 (Office)
(956) 971-9451 (Fax)
jrg@rgvfirm.com
gh@rgvfirm.com

Attorneys for Interested Party, Halff Associates, Inc. and Menton J. Murray, III, P.E.
Grant Gealy
Mills Shirley, L.L.P.
3 Riverway, Suite 100
Houston, Texas 77058
(713) 571-4206 (Office)
(713) 225-0844 (Fax)
ggealy@millsshirley.com
psutton@millsshirley.com

Attorneys for Interested Party, AAS Consulting, Inc. d/b/a Advance Air Systems
Douglas M. Walla
Andrew M. Williams & Associates
5909 West Loop South, Suite 550
Bellaire, Texas 77401
(713) 840-7321 (Office)
(713) 839-1302 (Fax)
doug@amwlawfirm.com
admin2@amwlawfirm.com
admin1@amwlawfirm.com

Attorneys for Interested Party, C.A. Ray & Son Painting Contractors, Inc.
Marc E. Villarreal
R. Kyle Hinkle
Hinkle & Villarreal, P.C.
719 S. Shoreline Blvd., Suite 300
Corpus Christi, Texas 78401
(361) 883-0620 (Office)
(361) 883-0612 (Fax)
mvillarreal@southtxdefense.com
rkhinkle@southtxdefense.com
afrees@southtxdefense.com

Attorneys for Interested Party, Faires Plumbing Co., Inc.
David J. Dunn
Dunn, Weathered, Coffey, Rivera & Kasperitis, P.C.
611 S. Upper Broadway
Corpus Christi, Texas 78401
(361) 883-1594 (Office)
(361) 883-1599 (Fax)
Dunndj@swbell.net
vanesa@dwcrk.net
kellycreel@swbell.net

Attorneys for Interested Party, Limon Masonry, Inc.
Brian C. Lopez
Brittany C. Cooperrider
Engvall & Lopez, L.L.P.
1811 Bering, Suite 210
Houston, Texas 77057
(713) 787-6700 (Office)
(713) 787-0070 (Fax)
blopez@eltexaslaw.com
bcooperrider@eltexaslaw.com
mmufti@eltexaslaw.com

Attorneys for Interested Party, C & M Contracting, Inc.
David C. Garza
Liliana Elizondo
Garza & Garza, L.L.P.
680 East St. Charles, Suite 300
P.O. Box 2025
Brownsville, Texas, 78250
(956) 541-4914 (Office)
(956) 542-7403 (Fax)
dgarza@garzaandgarza.com
lelizondo@garzaandgarza.com

Attorneys for Interested Party, RGV-R&R Construction Services, L.L.C.
David W. Medack
James P. Davis
Heard & Medack, P.C.
9494 Southwest Freeway, Suite 700
Houston, Texas 77074
(713) 772-6400 (Office)
(713) 772-6495 (Fax)
dmedack@heardmedackpc.com
jdavis@heardmedackpc.com
Mloonahm@heardmedackpc.com
Chernandez@heardmedackpc.com

Attorneys for Interested Party, Daniel Vasquez, Individually and d/b/a Twin City Glass
John A. Guerra
Louis A. Gross
Brock Person Guerra Reyna, P.C.
17339 Redland Road
San Antonio, Texas 78247-2304
(210) 979-0100 (Office)
(210) 979-7810 (Fax)
jguerra@bpgrlaw.com
lgross@bpgrlaw.com
cvaldez@bpgrlaw.com
cmahoney@bpgrlaw.com
laniol@bpgrlaw.com

Attorneys for Interested Party, Zarate Suspended Ceiling, Inc.
John A. Guerra
Louis A. Gross
Brock Person Guerra Reyna, P.C.
17339 Redland Road
San Antonio, Texas 78247-2304
(210) 979-0100 (Office)
(210) 979-7810 (Fax)
jguerra@bpgrlaw.com
lgross@bpgrlaw.com
cvaldez@bpgrlaw.com
cmahoney@bpgrlaw.com
laniol@bpgrlaw.com

Attorneys for Interested Party, Zarate Suspended Ceiling, Inc.
Michael G. Dunnahoo
Rymer, Moore, Jackson & Echols, P.C.
2801 Post Oak Blvd., Suite 250
Houston, Texas 77056
(713) 626-1550 (Office)
(713) 626-1558 (Fax)
mdunnahoo@rmjelaw.com
lkelly@rmjelaw.com

Attorneys for Interested Party, D&J Site Construction, Inc.
David J. Dunn
Dunn, Weathered, Coffey, Rivera & Kasperitis, P.C.
611 S. Upper Broadway
Corpus Christi, Texas 78401
(361) 883-1594 (Office)
(361) 883-1599 (Fax)
Dunndj@swbell.net
vanesa@dwcrk.net
kellycreel@swbell.net

Attorneys for Interested Party, Perez Consulting Engineers
Gregory N. Ziegler
Dean Siotos
Macdonald Devin, P.C.
3800 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270-2130
(214) 744-3300 (Office)
(214) 747-0942 (Fax)
Gziegler@MacdonaldDevin.com
dsiotos@macdonalddevin.com
mwhite@macdonalddevin.com
Lholsomback@macdonalddevin.com
Dpainter@macdonalddevin.com

Attorneys for Interested Party, KBM Air Conditioning, Inc.
Jason L. West
Brock Person Guerra Reyna, P.C.
17339 Redland Road
San Antonio, Texas 78247-2302
(210) 979-0100 (Office)
(210) 979-7810 (Fax)
jwest@bpgrlaw.com

Attorneys for Interested Party, Tri City Steel and Fabrication, Inc.
Thomas A. Mailloux II
Brock Person Guerra Reyna, P.C.
17339 Redland Road
San Antonio, Texas 78247-2302
(210) 979-0100 (Office)
(210) 979-7810 (Fax)
tmailloux@bpgrlaw.com
blawrence@bpgrlaw.com

*/s/ Karen L. Landinger*

Karen L. Landinger

32

IN THE FOURTH COURT OF APPEALS

SAN ANTONIO, TEXAS


Descon Construction, L.P., Relator

_____

From the 229th District Court of
Starr County, Texas
Case No. DC-14-46

_____

## APPENDIX*

**Tab 1:**    May 1, 2015 Hearing Transcript of Pretrial Motions

**Tab 2:**    Defendant Descon Construction, L.P.'s Supplemental Objection and Motion to Strike Plaintiff's Thirteenth Amended Original Petition (all versions) and Motion to Abate and Response to Plaintiff's Rule 28 Motion

**Tab 3:**    Plaintiff's TRCP 28 Motion to Substitute Named Defendants Omitted by Defendants' Disclosures and to Compel Defendants to Properly Identify Any Other Parties

**Tab 4:**    Plaintiff's TRCP 28 Motion to Substitute Named Defendants Omitted by Defendants' Disclosures and to Compel Defendants to Properly Identify Any Other Parties

**Tab 5:**    Plaintiff's Thirteenth Amended Original Petition (dated March 20, 2015)

**Tab 6:**    Plaintiff's Thirteenth Amended Original Petition (dated April 24, 2015)

**Tab 7:**    Plaintiff's Thirteenth Amended Original Petition (dated April 27, 2015)

**Tab 8:** Defendant Descon Construction, L.P.'s Objection and Motion to Strike Plaintiff's Thirteenth Amended Original Petition

**Tab 9:** Plaintiff's Thirteenth Amended Original Petition (dated April 29, 2015)

**Tab 10:** Plaintiff's Notice of Intent to Use Business Records

# Tab 1

COURT REPORTER'S RECORD

VOLUME 1 OF 1 VOLUMES

TRIAL COURT CAUSE NO. DC-14-46

| | | |
|---|---|---|
| RIO GRANDE CITY | ) | IN THE DISTRICT COURT |
| CONSOLIDATED INDEPENDENT | ) | |
| SCHOOL DISTRICT ET AL | ) | |
| | ) | |
| v. | ) | DUVAL  COUNTY, TEXAS |
| | ) | |
| DESCON CONSTRUCTION, ERO, | ) | |
| LIMON MASONRY, C & M, | ) | |
| TRI CITY GLASS, ET AL | ) | 229TH JUDICIAL DISTRICT |

_____

PRETRIAL MOTIONS

_____

On the 1st day of May, 2015, the following proceedings came to be heard in the above-entitled and numbered cause, in the courtroom of the 229th Judicial District Court, at the Starr County Courthouse in Rio Grande City, Texas, before the Honorable Ana Lisa Garza, District Judge.

These proceedings were reported by computerized stenotype machine by Mr. Ramiro Hernandez, Official Court Reporter for the 229th Judicial District; court reporter's record produced by computer with software-assisted translation of shorthand symbols to English.

APPEARANCES:

MR. NORMAN JOLLY
MR. MICHAEL B. JOLLY
MR. HAMILTON G. RUCKER
ATTORNEYS AT LAW
405 MAIN, SUITE 1000
HOUSTON, TEXAS 77002
PHONE: 713-237-8383
FAX: 713-237-8385
ATTORNEYS FOR PLAINTIFF

MS. MARTIE GARCIA VELA
ATTORNEY AT LAW
100 WEST 5TH STREET
RIO GRANDE CITY, TEXAS 78582
PHONE: 956-488-8170
FAX: 956-488-8129
ATTORNEY FOR PLAINTIFF

MILLS SHIRLEY LLP
MR. GRANT GEALY, PARTNER
ATTORNEY AT LAW
ONE CITY CENTRE
3 RIVERWAY, SUITE 100
HOUSTON, TEXAS 77056
PHONE: 713-225-0547
FAX: 713-225-0844
E-MAIL: ggealy@millsshirley.com
ATTORNEY FOR HALFF ASSOCIATES, INC

ANDREW M. WILLIAMS & ASSOCIATES
MR. DOUGLAS M. WALLA, OF COUNSEL
ATTORNEYS AT LAW
5909 WEST LOOP SOUTH, SUITE 550
BELLAIRE, TEXAS 77401
PHONE: 713-840-7321
FAX 713-839-1302
EMAIL: doug@amwlawfirm.com
ATTORNEY FOR AAS CONSULTING, INC.

Heard By The Honorable Ana Lisa Garza, District Judge
229th Judicial District: Starr, Duval & Jim Hogg Counties, Texas

APPEARANCES CONTINUED

HEARD & MEDACK, P.C.
MR. JAMES "JIM" DAVIS
ATTORNEYS AT LAW
9494 SOUTHWEST FREEWAY, SUITE 700
HOUSTON, TEXAS 77074
PHONE: 713-772-6400
FAX: 713-772-6495
E-MAIL: jdavis@heardmedackpc.com
ATTORNEYS FOR R & R CONSTRUCTION


RYMER, MOORE, JACKSON & ECHOLS, P.C.
MR. MICHAEL G. DUNNAHOO
ATTORNEYS AT LAW
2801 POST OAK BOULEVARD, SUITE 250
HOUSTON, TEXAS 77056
PHONE: 713-626-1550
FAX: 713-626-1558
E-MAIL: mddunnahoo@rmjelaw.com
ATTORNEYS FOR ZARATE SUSPENDED CEILINGS


GARZA & GARZA, L.L.P
MR. DAVID C. GARZA
ATTORNEYS AT LAW
680 E. SAINT CHARLES, SUITE 300
BROWNSVILLE, TX. 78520
PHONE: 956-541-4914
FAX: 956-542-7403
E-MAIL: dgarza@garzaandgarza.com
ATTORNEYS FOR C & M CONTRACTING


ROERIG, OLIVEIRA & FISHER, L.L.P.
MR. DAVID G. OLIVEIRA
ATTORNEYS AT LAW
SUITE 9, PRICE PLAZA BUILDING
855 WEST PRICE ROAD
BROWNSVILLE, TEXAS 78520
PHONE: 956-542-5666
FAX: 956-542-0016
E-MAIL: doliveira@rofllp.com
ATTORNEYS FOR DESCON CONSTRUCTION

APPEARANCES CONTINUED


COKINOS, BOSIEN & YOUNG
MR. JOHN SMITH, MR. GABRIEL S. HEAD, MR. JAY FARWELL
ATTORNEYS AT LAW
10999 WEST IH-10, SUITE 800
SAN ANTONIO, TEXAS 78230
PHONE: 210-293-8713
FAX: 210-293-8733
EMAIL: jfarwell@cbylaw.com
ATTORNEYS FOR DESCON

HINKLE & VILLARREAL, P.C.
MR. R. KYLE HINKLE
ATTORNEYS AT LAW
719 S. SHORELINE, SUITE 300
CORPUS CHRISTI, TEXAS 78401
PHONE: 361-883-0620
FAX: 361-883-0612
E-MAIL: rkhinkle@southtxdefense.com
ATTORNEYS FOR C. A. RAY AND SON


DUNN, WEATHERED, COFFEY, RIVERA & KASPIRITIS, P.C.
MR. PAT KASPIRITIS
ATTORNEYS AT LAW
611 S. UPPER BROADWAY
CORPUS CHRISTI, TEXAS 78401
PHONE: 361-883-1594
FAX: 361-883-1599
ATTORNEYS FOR FAIRESS CONSTRUCTION AND FOR D & J SITE
CONSTRUCTION

ENGVALL & LOPEZ, LLP
MR. BRIAN C. LOPEZ, PARTNER
MS. BRITTANY CRAVENS COOPERRIDER, ASSOCIATE
1811 BERING DRIVE, SUITE 210
HOUSTON, TEXAS 77057
PHONE: 713-787-6700
FAX: 713-787-0070
E-MAIL: blopez@eltexaslaw.com, bcooperrider@eltexaslaw.com
ATTORNEYS FOR LIMON MASONRY

APPEARANCES CONTINUED

MR. JASON WEST
ATTORNEY FOR KBM AIR CONDITIONING


MACDONALD DEVIN
MR. GREGORY N. ZIEGLER, SHAREHOLDER
ATTORNEYS AT LAW
3800 RENAISSANCE TOWER
1201 ELM STREET
DALLAS, TEXAS 75270
PHONE: 214-744-3300
FAX: 214-747-0942
EMAIL: gziegler@macdonalddevin.com
ATTORNEYS FOR PEREZ CONSULTING ENGINEERS


MR. JOHN A. GUERRA
MR. LOUIS A. GROSS
ATTORNEYS AT LAW
17339 REDLAND ROAD
SAN ANTONIO, TEXAS 78247-2304
PHONE: 210-979-0100
FAX: 210-979-7810
ATTORNEYS FOR ZARATE SUSPENDED CEILING, INC., AND
DANIEL VASQUEZ, D/B/A TWIN CITY GLASS


MR. JOHN R. GRIFFITH, MR. OSCAR O. LOPEZ
ATTORNEY AT LAW
801 E. FERN AVENUE, SUITE 170
MCALLEN, TEXAS 78501
PHONE: 956-971-9446
FAX: 956-971-9451
ATTORNEY FOR ERO INTERNATIONAL, LLP

THE COURT:  If you want to start coming forward so we can see what we are going to take first, in what order we are going to take it up first.  My first question to everybody is -- okay, gentlemen, go ahead and make your appearances for the record.  We are now on record on DC-14-46 Rio Grande City I.S.D. versus Descon Construction LP et al.  If we can go ahead and start with the plaintiffs.

MR. N. JOLLY:  Good morning, Your Honor, Norman Jolly, Mike Jolly, Hamilton Rucker, Marty Vela.  I think that's all of us for the Plaintiff.  And James Parker.

THE COURT:  Okay.  I was going to say well you've got another guy standing there and you are not saying anything.

MR. N. JOLLY:  Sorry.

THE COURT:  Okay.  And now for the defense, if y'all will just start at this table.

MR. GEALY:  Grant Gealy for Halff Engineering.

MR. WALLA:  Doug Walla for AAS Consulting Inc.

MR. DAVIS:  James Davis for R & R Construction.

MR. DUNNAHOO:  Michael Donnahoo for Zarate Suspended Ceilings.

MR. GARZA:  Good Morning, Your Honor, David

Garza on behalf of C & M Contracting.

MR. OLIVEIRA: David Oliveira for Descon. I apologize, I don't haveM a card.

THE COURT: That's okay.

MR. SMITH: Robert Smith for Descon.

MR. HEAD: Gabriel Head for Descon.

MR. FARWELL: Jay Farwell for Descon.

MR. HINKLE: Kyle Hinkle for C. A. Ray and Son.

MR. KASPERITIS: Your Honor, Pat Kasperitis for appearing for David Dunn for D & J Site Construction and for Fairess Plumbing.

MR. B. LOPEZ: Brian Lopez and Brittany Cooperrider for Limon Masonry.

MR. WEST: Jason West for KBM Air Conditioning.

MR. ZIEGLER: Greg Ziegler for third-party defendant Perez Consulting Engineers.

MR. GUERRA: John Guerra, co-counsel for Zarate Suspended Ceilings and we also represent together with Bruce Gross for Twin City Glass.

THE COURT: Is that everybody?

MR. N. JOLLY: Everyone that's here, but there are some people missing.

THE COURT: That's tough because it's 10:00,

and I am not going wait.  So we are going forward.

Okay.  Y'all can be seated.  So I think the first thing

we probably should do is take up if there's any more

motions for leave to designate responsible third

parties.  I know that I see that Limon Masonry filed

that motion so is there anyone here for Limon Masonry?

MR. B. LOPEZ:  Your Honor.

THE COURT:  You need to come forward and

identify yourself because my court reporter is not going

to remember your names.  You are too many so that's --

MR. B. LOPEZ:  Yes, ma'am.  Brian Lopez for

Limon Masonry.  We did have the Motion for Leave to Name

New Parties, Descon I believe also filed that.

MR. SMITH:  Yes, Your Honor.

MR. B. LOPEZ:  If Descon files that we'll

withdraw because we are in agreement for Limon.

THE COURT:  I think I already granted that.

MR. N. JOLLY:  This is a new one.

THE COURT:  This is a new one?

MR. B. LOPEZ:  Yes.

THE COURT:  Okay, so you are going to abandon

that pleading.

MR. B. LOPEZ:  Yes because Descon is in

agreement with us.

MR. N. JOLLY:  We are not because they want to

delay the case and sue another party, bring him in, by citation, not just designate.

THE COURT: Well, with reference to designation, I mean, is that correct that you actually want to bring them in other than just designate them?

MR. SMITH: Yes, Your Honor.

THE COURT: We are too late in the game don't you think?

MR. SMITH: Well, Your Honor, if I could quickly explain. There was a particular, uh -- Robert Smith for Descon -- there was a particular, uh, Plaintiff's expert, uh, Mr. Wallace, who prepared a report and who complained in his report or said in his report that Perez Engineers was the responsible party with regard to complaints about design and, uh, we took -- his deposition actually was supposed to have been taken a couple months ago and he just flat did not get it on his calendar and it was pushed back a month when he was available again so we just took his deposition about not even a month ago, Your Honor, and Mr. Wallace at that time said my, my report was generated and was based upon looking at documentation that was not the correct documentation. The correct documentation was a submittal that was submitted and I didn't realize that and we asked him if he had changed

his, uh, report at any time and he said, "No, a decision was made between me and the other experts and Plaintiff's counsel not to change my report.  I am here today to give my opinions about it."  And he gave his opinions and he said, "My ultimate opinion is that this wall needs to be replaced.  My opinion has not changed with regard to that."  We requested him and his background was that no Perez was not the responsible party for that because they weren't involved in the design of what was actually built, that it was a new entity, a new company Pavestone that generated the documentation with regard to the construction of that particular wall and their engineer that developed the design of that wall.  Descon had a purchase order and purchased the wall materials as well as the engineered drawings.  So, at the deposition of Mr. Wallace for the first time we hear that, no, Perez is not the responsible party for that wall, Pavestone and their engineer is, uh, but we never changed our report, we never gave any heads up that we're changing our report, that we have looked at anything else, or that anything has changed.  We came back and within, uh, days we waited for the transcript and within days the, uh, motion was filed to join them as a, uh, third-party with regard to the lawsuit and also to designate them as a

responsible third-party.

Your Honor, uh, we went ahead and, uh, we believe that we have done it timely. He has known, Mr. Wallace has known since our reports, our expert reports were generated back in August. We said wait a minute, Wallace has looked at the wrong documents. Uh, so he's known since August that he had looked at the wrong documents. And during that time period he didn't look at them until shortly before his depo and then he changed his opinions. So, that's why we are seeking at this late date to bring in a third-party and to not only just designate them as a responsible third-party, but we actually have a contractual claim against them, via our purchase from them of this wall system including the engineered drawings that now for the first just weeks ago Plaintiff says is defective engineering, defective design.

THE COURT: Well, if you were dealing with them wouldn't you have known about it? You just said that.

MR. SMITH: We knew about them but their complaint was about Perez, who is in the lawsuit.

THE COURT: What's your response?

MR. SOLIS:

MR. N. JOLLY: Nothing personal but counsel is

not -- either hasn't read the transcript of the witness or has not been informed what it accurately states because what the witness said was that he had not changed his opinion and that the design was adequate. That's on page 113 of the transcript. May I hand it to you?

THE COURT: Okay.

MR. N. JOLLY: So the -- all the superfluous stuff about the block changing, that didn't change his opinion. The metal engineers and engineer that works at the block company and in some other state didn't come out to the job, didn't install anything, didn't do one single thing at the job. The submittal engineer is not being criticized. The opinion is still the same. This is just the same to delay the case.

THE COURT: You don't have a problem with the designation just having them brought in to the lawsuit.

MR. N. JOLLY: Exactly. As we said before you get your third-party designation now and in between now and when the jury gets the charge you can decide whether or not the jury should get that party's name submitted.

THE COURT: Right. That's what I am asking.

MR. N. JOLLY: We would object at that time, uh --

THE COURT: Depending on what the evidence

shows.

MR. N. JOLLY: Correct. But at this time that's --

THE COURT: I am going to allow him to bring him in as a third-party designation, but not as a party into the lawsuit. It's too late.

MR. N. JOLLY: May I have this back, Your Honor?

THE COURT: Yes. Okay so we are done with Descon's Motion for Leave to File Third-party Petition and Designate Responsible Third-party, and with Limon Masonry's Motion for Leave to Designate, that was abandoned. Is there any other motions for leave to designate any other parties? (pause) Okay. So we've gotta whole lot of motions to strike, motions to exclude, motions for summary judgment.

MR. OLIVEIRA: David Oliveira for Descon, we have a Motion to Strike 13th Amended Petition on the basis they have added six new parties that have not been served and we believe that, uh, it's too late in the game and I think if you take that motion up and you agree with us, that, uh, that you won't have to argue the other hundred motions that are pending.

THE COURT: Okay, let me look for that because that's not on my list.

THE COORDINATOR:  Yes it's just that they have been filing --

THE COURT:  So y'all are still filing.

THE COORDINATOR:  Whose motion is that, please?

THE COURT:  Descon's.

MR. OLIVEIRA:  Descon's motion, Motion to Strike, it's Objections and Motion to Strike Plaintiff's 13th Amended Original Petition.

THE COURT:  Thirteenth amended?

MR. OLIVEIRA:  Thirteenth amended original petition.

THE COURT:  Okay.

MR. OLIVEIRA:  We have a hard copy.

THE COURT:  I have one.

MR. OLIVEIRA:  Okay.

THE COURT:  Okay let's go ahead and take that up.

MR. OLIVEIRA:  Okay, Your Honor, basically the Plaintiffs recently filed four pleadings captioned Plaintiff's 13th Amended Original Petition.  In three editions of the pleadings they purport to join six to eight new parties:  Texas Descon LP, uh, Wayne Medlin Descon Management LLC, MayCo Management, LLC, Michael Smith, and then Descon 4S LLC.  Three of these four

additions of the pleadings were served on April 24th, 27th and 29th of, uh, this year, just in other words in the last two weeks or well actually one of them in the last, uh, two days ago I guess.

Uh, obviously, Your Honor, we object to, uh, for a number of reasons. First and foremost the deadline for joinder of parties was, uh, I believe in June 27th, 2014, almost a year ago. Secondly, the deadline to file supplemental or amended pleadings which these aren't was April 14th. So, they are clearly, they have blown two different deadlines.

Your Honor, additionally, they haven't served any of these people. Uh, an answer won't be due wouldn't be due anyway even if they served them before, uh, uh, before the trial date of Monday, and obviously these are new parties that are going to require -- be required to hire, uh, additional counsel and hire their own counsel and, uh, I don't see how we can go to trial with six to eight new parties.

MR. N. JOLLY: Done? Judge they are not new parties. May I approach? Your Honor, the defendants are incorrectly named so they are not new parties and, uh, you know, I've known David a long time, I don't expect him to be familiar with Rule 28, but it's mainly something that is, uh, inures to the benefit of a

plaintiff, not always but usually.  And, uh, and the reason is is because it's there to prevent the shenanigans that have been going on.  So namely with regard to Descon's failure to identify these parties as potential parties in their disclosures, you know, ha, ha, I am not going to call anyone any names or make any accusations --

THE COURT:  Well don't do that.

MR. N. JOLLY:  -- but just to, to come in here and say some submittal engineer is a potential party and try to bring him into the case, but not tell us that Descon has changed its name, is, uh, completely inappropriate.  Those names should have been given to us a long time ago and it's a good thing the legislature thought of this in advance and that's why they wrote Rule 28.  The Supreme Court has looked at it, looked at it many times.  The landmark case is called RMA Partners, uh, 2003, Texas Supreme Court case.  And in that case the same arguments --

THE COURT:  So in other words, you did some research and found out that they had different names or they had changed here names.

MR. N. JOLLY:  Right.

THE COURT:  In the last however long.

MR. N. JOLLY:  Right.  In this, this -- the

drama gets even deeper because this is something we found out when we were told at a recent meeting with the guy that tried to resolve this case that Descon didn't exist any more, that they were defunct, so of course we take statements like that pretty seriously and our internet guru got online and found a company online named Texas Descon LP.  It's Exhibit A.  It's the first screen shot on the home page.  And you can see right there on Exhibit A that, uh, this gentleman, Michael Smith says on January 25th, 2006 Descon Construction -- which isn't the exact name of the Descon entity in this case, it's Descon Construction LP, and if you read further, "was renamed to its successor company," something that should have been given to us in disclosures a long time ago.  Texas Descon LP.  Entering a license agreement.  Something else that should have been given to us a long time ago.  To carry on the tradition and reputation of Descon Construction LP which is the correct name of the party to the construction agreement in this case.  Signed by its representative -- this is significant -- Wayne Medlin also known as Jerry Medlin, Jerry Wayne Medlin, J. Medlin.  He goes by a variety of different abbreviations.  The successor company, Texas Descon LP was found by Michael Smith. You know, and the rules have changed about what you can

get from the Secretary of State now, so this is the --

this is it.  This is all you can get.  The other things

you can keep them in your back pocket, naming the

partners, uh, things that should have been given to us

in disclosures but weren't, those sorts of things that

are now not filed with the Secretary of State, the

things that are filed with the Secretary of State are

right here and it goes from 1975 up 'til present.

Dissolved, reinstated, same two guys, over and over

again, Mr. Medlin, Mr. Smith.  Change in the name around

2012, it's the same people, same address on 10th Street,

things that should have been given to us in disclosures.

MR. OLIVEIRA:  Your Honor --

MR. N. JOLLY:  I am not finished, David, thank

you.

MR. OLIVEIRA:  I'm sorry, she looked at me, I

have a response.

MR. N. JOLLY:  There's more.  So to our

astonishment, I guess, you know, something new happens

every day that's good isn't it?  We actually get an

affidavit from the gentleman, Mr. Smith, in this

response claiming that this website was not created with

his authority, and I think that was last Friday?  Well

so we gotta subpoena you know, you know -- I didn't know

this, but you go to the bottom of a website, and then

whoever dreams up that website their name is down there, and then whoever owns the website is called, uh, domain registration, but we don't get that information. We should have been given it in disclosures, but the domain registration says Texas Descon. We have to go over to Ireland or Switzerland to find out who actually owns that. Or, we could get it in disclosures.

So --

THE COURT: Well I would opt to going to Switzerland.

MR. N. JOLLY: Agreed. Agreed.

(Laughter).

THE COURT: So, uh, so we take a subpoena and we go over to this MPC studios and got the documents from MPC studios yesterday. May I approach? The, the MPC studios is the entity that created the Texas Descon LP successor, renamed, formerly known as the party that contracted to build this building. They are Descon. And that's what Rule 28 says. If Mr. Medlin and Mr. Smith are operating these entities by whatever Descon name they are calling it today, those two guys are doing business as Descon Construction, Descon Construction LP, Texas Descon, it doesn't frankly matter, and what the Supreme Court has said is you don't have to serve them, they are separate legal entities, the Supreme Court says

it doesn't matter, uh, you don't have to serve.  Them if there is a fact question -- and there is -- then it's a question of fact for the Court.  They don't have to be served.  That is completely wrong.  The Texas Supreme Court addresses that in RMA Partners.  They don't have to be served.  The Supreme Court says that if some facts established that these two gentlemen are operating these Descon entities as their assumed name, their common name, then it is presumed they were served from the original filing of the lawsuit and had been on notice since day one.  Mr. Medlin is the representative in the contract, Mr. Medlin was the registered agent, he and Mr. Smith had been in business together for seven five years -- 35 years, it's -- that's in his affidavit where he claimed -- and you notice everybody dealing with MPC, their name is the same name.  I guess they are his sons, his rogue sons, cooking up this website.  So, you know, gonna live by the sword you got to die by it.  The gentlemen, or parties, their names need to be substituted pursuant to rule 28.  All of the same arguments have been made repeatedly, they were made at the Supreme Court and they failed.

The second reason that these folks are in this case is because they contracted to be in the case.  The contract -- and by the way these very same --

Mr. Griffith is here now. The very same issues relate to ERO. ERO changed its name and has an assumed name that they actually filed. Oh, the Supreme Court -- I'm sorry, a different Court not the, not the Court in RMA Partners, a different Court that has interpreted Rule 28 has said I don't even have to go get the assumed name certificate. There just has to be a fact question. So if you go to the actual contract -- may I approach? These are just a few pages from the agreement. This is the contract to construct Grulla Elementary that's the subject of this litigation. And you can see there on the first page the owner is the Rio Grande City Consolidated Independent School District. The contractor Descon Construction LP. That's the company that's been renamed, according to it's website, Texas Descon LP. And the reason I give you 4th page of the agreement is because there's legal significance to Mr. Medlin being the contractor's representative. And he signs the document Wayne Medlin, President. He had written on there "partner" but he struck that out because the names of the partners haven't been given to us. To this day they don't have to file them with the Secretary of State. He struck that out because I guess he didn't -- he was thinking about this in advance, I don't know.

The very last page, this paragraph 13.2, Your Honor, is the reason that Mr. Medlin's signature and name as the representative is significant because he agreed to bind himself, him, his partners, the unnamed partners that we can't get from the secretary any more, successors, Texas Descon LP, legal representatives, Mr. Medlin is their legal representative signing this document.  He personally bound himself to the covenant, agreements, and obligations in the contract documents.  Contract documents includes the construction agreement, the addendum, the plans, the spec, the project manual, it goes on and on.

THE COURT:  Okay, well I think I get it.

MR. N. JOLLY:  The only difference with this clause and the clause with ERO is ERO's clause says "with regard to these covenants" it doesn't also say with regard to these covenants and contract documents.  That's the only difference.  Either way the partners, successors --

THE COURT:  Are you done?

MR. N. JOLLY:  -- and representatives are all parties.

THE COURT:  Are you done?

MR. N. JOLLY:  I think so.

THE COURT:  Short response.

MR. HEAD: Gabriel Head on behalf of Descon. Mr. Jolly has not only confused everything with respect to entities that --

THE COURT: I am not confused. Just give me the response without making --

MR. HEAD: Michael C. Smith is the person who is a partner. Michael C. Smith has an affidavit. That's Descon LP. He wants to sue Texas Descon LP who is not -- it was not created by Michael C. Smith, it was created by a wholly different person, Michael D. Smith. They are not entities that are related. He has in his affidavit that Descon LP is still in existence and he also says he never assigned this contract to Texas Descon. Mr. Jolly cites Texas Rule of Civil Procedure 28 which says you can sue somebody in their correct name but nowhere in that Supreme Court case does it say you you don't have to serve them. As a matter of fact there are Texas Supreme Court cases and other cases under Rule 28 that say you still have the serve the person, and if he wanted to hold all these partners and these different entities to a judgment, as a matter of fact the Civil Practice and Remedies Code section 31 says you can't have a judgment against a person who has not received citation. All we are asking is give them citation. The rule says you can sue somebody under their legal name.

Yes you can name them but you still have to serve them. Wayne Medlin is the registered agent for Descon LP. Michael D. Smith is the registered agent for Texas Descon LP. He also wants to bring in Mr. Medlin individually when he signed the contract in his capacity as President of Descon LP. He also wants to bring in Mr. Michael C. Smith individually. He's not been served at all. He also wants to bring in another general partner, MayCo Management LLC. Their registered agent is Michael C. Smith. They have not been served either. What Mr. Jolly is trying to do is hold Descon liable for actions there by other people, other parties, other individuals, other entities that on their own need to be served.

The other thing that he's trying to do is essentially pierce the corporate veil which he's not pled. How is Mr. Smith, Michael C. Smith liable for a contract he's not a signatory to? Neither is Texas Descon LP. And in his affidavit he says Texas Descon was never assigned or sold the contract. Texas law says even if you are a successor company, you are not liable for the previous company's liabilities unless they have been specifically, it specifically says liabilities have to be bought. There's no evidence of that. What we have is a website. He's going off of a website which

one of the managers for Descon LP says, "I didn't write". Even in all that stack, that affidavit, you will not find the name Michael C. Smith, you'll find the name Michael D. Smith, two totally different people. So what Mr. Jolly has done is he's trying tried to say there's this conspiracy. There's this web that we didn't disclose this information. Well they are not proper parties, that's why we didn't disclose it. They are not a successor company. They didn't build the school. The person who built the school was Descon LP. They signed the contract. They have been served. We are here. The other people haven't been served, they don't have lawyers. So all we are saying is, if you want those people in the suit, you got to serve them with citation. It's a fundamental due process. Even when you read Rule of Civil Procedure 28 it doesn't even mention citation in there. It says that you can sue somebody under their assumed name. Sure he doesn't have to have an assumed name certificate, but one doesn't exist. Mr. Smith's affidavit says that Texas Descon didn't operate under assumed name for this project. Texas Descon didn't even exist until 2006 and this school was completed in 2005. So these breach of contract actions again these other people, we believe that they are inappropriate. But even if Mr. Jolly

feels they are appropriate, these people should be served with citation and allowed to defend themselves because my client, Descon, we may have claims against them and we can't try a lawsuit on other people's actions, which he's trying to hold us for.

THE COURT:  Okay, well the Court is going to go ahead and deny your Motion to Strike the 13th Amended Petition and I am going to grant Plaintiff's First Amended T.R.C.P. 28 Motion to Substitute Named Defendants Omitted by Defendants' Disclosures and to compel defendants to properly identify any other parties and you are to do that by today.

Okay what else do we have to take up?  Well we have got a lot but I don't know what order you all want to take these in.  We have a lot of motions for summary judgment, no evidence motions for summary judgment, we've got traditional motions for summary judgment.

MR. ZIEGLER:  Your Honor, Grez Ziegler for Perez Engineering.  Uh, the last time we had a hearing I had a summary judgment and I argued it in front of you. I was the last party brought in.  I would kind of like to be the first party let out if I could since I was the last one brought in, uh, less than three months ago.  I don't believe we have a ruling.

THE COURT:  Which is the one that I ruled on?

THE COORDINATOR:  Yes, there was and there was an order.

MR. ZIEGLER:  Yes, ma'am.

THE COORDINATOR:  No, I don't have an order on that, on yours.

MR. ZIEGLER:  So we refiled it yesterday.

THE COORDINATOR:  You did?

MR. ZIEGLER:  Yes.

THE COURT:  Because I did make a ruling on that did I not?

THE COORDINATOR:  Yes, and it was granted.

THE COURT:  Your motion was granted.

THE COORDINATOR:  It's just that we didn't have an order.

THE COURT:  Everything is by eFiling now.

MR. ZIEGLER:  Yes, Your Honor, so we have, uh, when he filed it somehow I know you probably know this there are probably thousands of eFilings, so I think it got lost in the thousands of eFilings, but yesterday at the Court coordinator's request we filed it again.

THE COURT:  The district clerk's office just started doing this how long ago?

DEPUTY DISTRICT CLERK:  Six months ago.

THE COURT:  So, it goes to them and they send it to our Court.  So maybe that's why.

THE COORDINATOR: We'll get the order right now.

MR. ZIEGLER: If that's the case, I have nothing else to bring to the Court's attention.

THE COURT: You are excused.

MR. ZIEGLER: Thank you, Your Honor.

THE COURT: Thank you, sir. Okay. Is there any other motions that it would make sense to take them first before I start taking up all the motions for summary judgment? I know there was a Plaintiff's Motion to Compel and for Sanctions.

MR. WEST: Judge, Jason West for KBM Air Conditioning. I only answered in this case in the last two weeks. I have filed a Motion for Leave to File a Late Motion for Summary Judgment. I filed the Motion for Summary Judgment but I also filed a Motion for Continuance given my late arrival to this case. Uh, it may be beneficial to the Court to go ahead and hear my Motion for Leave to File the Motion for Summary Judgment and the Motion for Summary Judgment. That would in theory make the Motion for Continuance moot if, uh, I am let out of the case.

THE COURT: Okay. That makes sense. Do you have an objection to doing it that way?

MR. N. JOLLY: To let his client out of the

case?

THE COURT:  Yes.

MR. N. JOLLY:  KBM?  No objection to let his client out of the case.

THE COURT:  Okay.

MR. N. JOLLY:  Which I assume you are withdrawing your continuance, Jason.

MR. WEST:  Obviously, if I am out of the case, I will withdraw my Motion for Continuance.

THE COURT:  Okay, well then I need an order.

MR. HEAD:  Your Honor, the Plaintiff has not sued them, Descon has sued them.  Descon recently dropped their claims against KBM.

MR. WEST:  If I may, Judge, uh, when I initially filed my Motion for Summary Judgment there was claims pending from the Plaintiff and Third-party Plaintiff.  Subsequently I spoke with Plaintiff's counsel, he has stated to me that they are -- his client is not making any claims for damages related to my client's scope of work.

THE COURT:  Okay.

MR. N. JOLLY:  That's correct.

MR. WEST:  And --

MR. N. JOLLY:  Which is H.V.A.C. installation exclusively.

THE COURT: Okay.

MR. WEST: And in my understanding of the law would be that that essentially moots, uh, most of the complaints that -- well all the complaints they would have against me on their third-party petition.

MR. HEAD: Uh --

THE COURT: Well, you have to state your name for the record.

MR. HEAD: I'm sorry. I'm trying to find the motion, I apologize, Your Honor. Gabriel Head on behalf of Descon. If the plaintiff is dropping all claims related to the construction of the H.V.A.C. system, then --

MR. N. JOLLY: No, no, no, no. No, no. I hate to interrupt.

MR. HEAD: Well I, I -- well you got to get it right.

MR. N. JOLLY: Well I did. I thought I said related to the H.V.A.C. installation. That's it. That's all KBM did.

MR. HEAD: Okay. Well then I don't understand what claims you still are making on the construction site.

MR. N. JOLLY: The air-conditioning system needs to be cleaned, it needs to be cleaned because

there's so much dirt going into the building but it doesn't need to be cleaned because it wasn't installed incorrectly.

MR. HEAD: Okay.

THE COURT: Okay you are saying it was not installed.

MR. N. JOLLY: It was installed correctly --

THE COURT: Okay.

MR. N. JOLLY: -- and the things that need to be done to the H.V.A.C. --

THE COURT: It's that you said not installed correctly.

MR. N. JOLLY: Did I say that? I hate to do that.

THE COURT: So it was installed correctly in other words.

MR. N. JOLLY: That's right.

THE COURT: Okay.

MR. N. JOLLY: I sent an e-mail to Jason of our expert that said the same thing and he said if you'll just come say it on the record that's good enough for me.

MR. HEAD: -- I guess --

THE COURT: I'm seeing if it's on the list. Sir, state your name and state what you wanted to say.

MR. HEAD: Gabriel Head for Descon. In our response there's a section of, of Mr. Holder, which is Plaintiff's expert report, saying that specifically what he says is that there's design issues.

THE COURT: Who is Mr. Holder?

MR. HEAD: One of their experts.

THE COURT: Okay.

MR. HEAD: And then he says that this design issue should have been caught specifically with the VAV boxes and it wasn't constructed in accordance with the code. If they are saying that they are not making that claim any more, that would have been something that KBM Air did.

MR. N. JOLLY: The installer, the installer doesn't determine whether it follows code, it's the NEP Engineer.

MR. WEST: He just said it's a design issue.

MR. N. JOLLY: It's a design issue, Your Honor.

MR. HEAD: If that's what they are saying then the only claim that we have left against KBM Air was that in accordance with their subcontract they were supposed to provide us with insurance that had a certificate and named us as an additional insured and if he has that and I missed it.

(Mr. West showing him a document.)

MR. WEST: That was attached to your motion for summary judgment response.

MR. HEAD: It doesn't show us as an additional insured.

MR. WEST: Certificate holder?

MR. HEAD: That's right. As a matter of fact I can show you exactly what it's supposed to look like and it's not there.

MR. WEST: Judge, if I may give this to you so you can take a look at it.

THE COURT: It does say certificate holder Descon Construction.

MR. HEAD: Your Honor, it says certificate holder but on the subcontract -- we are trying to find our response in all these motions. (pause).

MR. WEST: Judge, if I may during the pause I don't want to waste any time. We are going to make an argument that regardless of their position on the certificate, the reality is there's been no claims made against my client, whether they are listed as an additional insured or not, there's no damages related to that, and we should be let out on that issue.

MR. HEAD: If he's dropped his claims on that

issue then --

THE COURT: He has.

MR. HEAD: -- then he's correct.

THE COURT: That's on the record so KBM Air-conditioning Motion for Continuance is now moot, that's taken off the list, KBM air-conditionings Motion for Leave to File a Motion for Summary Judgment is denied because it's now moot also.

MR. HEAD: Well but not on the construction issue. He's supposed to provide us with insurance that names us as an additional insured and that certificate does not. It just says we are a certificate holder. It has to specifically name us as additional insured and he has provided no evidence that it does do that.

MR. WEST: And, Judge, our position would be again if there's no claims against us, they have suffered no harm.

MR. HEAD: That's not true. It doesn't matter with additional insurance whether or not the claims are related to him. They -- we are an insurance holder of their policy, whether it's their work or not. He's now arguing the policy. What we are arguing is that KBM didn't provide us with that, and they were supposed to pursuant to the contract.

THE COURT: And what does that have to do with

the motion for summary judgment?

MR. HEAD:  He filed a No-evidence Motion for Summary Judgment, we filed a Breach of Contract action against him for failure to provide that insurance.

MR. WEST:  But judge the, the insurance still only applies to the extent that you are making a claim against our scope of work.

MR. HEAD:  No, that's the indemnity, not the insurance.

THE COURT:  So what you are saying that they have to stay?

MR. HEAD:  I am saying they didn't give us the insurance they are supposed to.  We are supposed to have that insurance and we have gotta Breach of Contract claim against them for failure to provide it.  Our damages haven't been determined because we don't know what they are yet.  It's a simple breach of contract action.

THE COURT:  Aren't you putting the cart before the horse?

MR. HEAD:  No.  No.  We are supposed to have the additional insurance right now as part of this case. Technically that additional insurance is supposed to have kicked up and be paying my client for the defense of this case.  Because we didn't get it, because he

didn't provide the certificate, my client doesn't have the benefit of what it contracted for.

THE COURT: Are you saying that naming them as a certificate holder is pretty much the same thing --

MR. WEST: Well that was --

THE COURT: -- as additional insured?

MR. WEST: That is my argument, Judge. To me it sounds like he has a dispute with his insurance company. This sounds like an insurance dispute which probably isn't really the matter that's before the Court today and in this trial.

THE COURT: It kind of does sound like that, sir.

MR. HEAD: But it's not. It would be an insurance dispute if the insurance company would deny that they are an additional insured. We don't have anything to give them. Or, if they say you are an additional insured but we are not going to give you coverage. That would be between me and them. But in order to even get there I have to give them a certificate that shows us as being additional insured. That one does not. It just says we are a certificate holder. There's supposed to be a box on there that says additional insured. It's not there.

MR. WEST: My argument would be that this,

this is an issue again that sounds like an insurance issue that's really not right for decision -- shouldn't really be a part of this litigation. This is a construction defect case.

MR. GUERRA: If I may, I am John Guerra, co-counsel with Mr. West. If the only issue that I am hearing then is whether or not we -- my client designated them as an additional insured, as I understand the pleadings then, Plaintiff is not making a claim that our client did anything wrong in terms of the installation.

THE COURT: Right.

MR. GUERRA: So therefore the claims against Descon have nothing to do with the work our client did. So they can't be held liable to the Plaintiff for any work our client did if the Plaintiff is not complaining about the work our client did.

THE COURT: I agree.

MR. GUERRA: So, therefore this whole insurance thing is moot to try and keep us in, and I don't see how our client should be held liable or kept in this case for trial.

MR. HEAD: They are mixing apples and oranges, Your Honor. Pursuant to the contract that says that you are supposed to provide us insurance on -- it, it, it --

it's, uh, paragraph nine of the subcontract. Provide us insurance in accordance with exhibits 2 and exhibits 3. This is exhibit 3. And if I may, Your Honor. See what it says right there? In the box it says name Descon LP as an additional insured. Well KBM's does not do that. So, it's not an argument with the insurance company because we can't even make that argument yet. They were supposed to provide us with that. So, we have nobody to argue with.

THE COURT: But doesn't there have to be a finding first that they did something wrong before this kicks in?

MR. HEAD: That would be indemnity. That would be the indemnity, which is a contractual indemnity. Our insurance -- there doesn't have to be a finding --

THE COURT: So they are not saying they did -- the Plaintiffs are not saying they did anything wrong but you are.

MR. HEAD: No, I am saying that irrespective of whether or not they did anything wrong, we are supposed to have insurance coverage because when you are an additional insured --

THE COURT: But what does that have to do with the summary judgment? That's an insurance issue.

MR. HEAD:  It's not, though, it's a breach of contract issue between Descon and KBM.  It Has nothing to do with the insurance company.

THE COURT:  But you are not before the Court on a breach of contract between the two of you.

MR. HEAD:  I am.

MR. WEST:  In the third-party petition they have pled a breach of contract.

THE COURT:  Oh.

MR. WEST:  I would note that in the contract they are relying on it mentions the fact that no payments will be approved for the subcontractor without these documents having been issued to the general contractor.  Look, we have been paid in full.  Obviously when we provided the certificate of liability to them at the time, they accepted it.  I -- look I don't think there's a breach of contract here.  Everybody was happy with it, we provided the documents that we were supposed to, it lists them as a certificate holder.  If, if there is an issue here it sounds like it's a dispute between them and the insurance company and that's something that's really not proper for this Court at this time and it doesn't seem like a reason to keep us in this case.

MR. HEAD:  Your Honor, again he's mixing apples and oranges.  I don't have a dispute with the

insurance company. I have a dispute with them because they didn't give me the insurance that I contracted for. I have no insurance company to go to. Now I do have a breach of contract action against him --

THE COURT: Which you are claiming should be before this jury?

MR. HEAD: Yes, because it says specifically in our petition that they were supposed to provide us among other things insurance in accordance with the contract. His motion is strictly about the work he performed, not about the insurance he provided. His -- this issue that he's arguing is not even before you in accordance with his motion.

THE COURT: But your breach of contract is no it about the work he performed, it's about the failure to provide this insurance. Right?

MR. HEAD: It's about -- well I sued them for both. He's come after the issues saying there's no defects with our work. Plaintiff has dropped those saying he's not pursuing even us for the defects with the installation of the H.V.A.C.

THE COURT: Doesn't it make sense to sever that portion of the lawsuit, if you have this breach of contract issue, to prevent confusion of the issues with the jury?

MR. HEAD:  But I don't know if --

THE COURT:  Because they are going to be hearing this defect case which they are not making allegations about a defect in respect to their work, so if it's all a breach of contract between the two of you, with respect to these insurance issues, shouldn't it be severed in order not to confuse the jury?

MR. HEAD:  No, it shouldn't because it's all the same -- it's all the same project, it's all the same contracts.  I am entitled to bring my compulsory counterclaim against him in this action.

THE COURT:  Well I can sever it though.

MR. HEAD:  Then we don't -- part of what we are telling the jury is we didn't get these things that we were supposed to get.  He breached the contract.

THE COURT:  But you are going to be talking about insurance to the jury?

MR. HEAD:  I am going to be talking about the breach of the contract to the jury.

THE COURT:  That you are not a named policy holder in accordance a with the contract.

MR. HEAD:  That's right.  I'm not.

MR. WEST:  But, Judge, one last thing I would like to raise.  If you'll notice on that certificate of insurance, it was provided back to them, back to them at

the time of this contract. More than four years have passed, the breach of contract statute of limitations is four years. If that's their argument for how we breached the contract and not our scope of work, that's -- I mean at the end of the day that's an easy winner.

MR. HEAD: Well it's not an easy winner because these issues didn't even come up. We are entitled to the discovery rules --

THE COURT: But didn't you contract this breach of the contract and this was signed in '05.

MR. HEAD: It was but we didn't know it was a breach until we got sued and then we went to go look --

THE COURT: Wouldn't you have noticed at the time that the contract was entered into that you were listed as a certificate holder and not an additional insured?

MR. HEAD: No. Not necessarily.

THE COURT: Why not? I mean you are noticing it now, what kept you from noticing it then?

MR. HEAD: The timing --

THE COURT: You all relied upon that and acted upon that when you did the work and you accepted --

MR. HEAD: We accepted the certificate.

THE COURT: -- the contract and the

certificate and you didn't argue back then that you were not listed as an additional insured, that you were just listed as a certificate holder, and now how many years later after 2005 are you bringing this up?

MR. HEAD: We didn't know we needed to bring it up or that it was a breach of contract until we got sued for defect.

THE COURT: But you accepted this document back when the construction was being performed.

MR. HEAD: But we didn't know it was a breach at the time.

THE COURT: But you would have still had to have had yourself listed as an insured and not as a certificate holder. Correct?

MR. HEAD: We would have to have ourselves listed as a certificate holder but, Your Honor, it's a fact issue --

THE COURT: As an additional insured not as a certificate holder. Not then.

MR. HEAD: It is a fact issue whether or not they named us as an additional insured on the policy. They didn't bring it up in their motion, they didn't bring up anything about payment and acceptance or anything like that in their motion, and so there's no evidence on this issue before the Court.

THE COURT: Well --

MR. HEAD: Except for the our showing that they breached the contract per the contract provision article nine --

THE COURT: But how are you showing that?

MR. HEAD: We submitted the contract and their certificate that does not name us as an additional insured. He's saying now that by merely being a holder you are. Well that's a fact question. It's not a legal question.

MR. WEST: Judge, I --

MR. HEAD: And he didn't raise statute of limitations either.

MR. WEST: The reality is they knew at the time that they weren't listed as an additional insured. It's a form that they require in their contract. In fact we are not supposed to receive a single payment until we provide that form to them, but we are here today because we finished the project, we got paid, it was all done way back in 2005, 2006, and to be honest with you one of the reasons this wasn't raised as an issue is because our understanding of the breach of the contract initially was related to our scope of work, which has been resolved, thanks to Mr. Jolly's position, on behalf of the Plaintiff. They are raising this kind

of as a red herring to try to keep us in the case, uh, and probably to be honest with you to keep our motion for continuance alive, when at the end of the day, uh, there's no harm.  They again -- our scope of work is not at issue.  We are out of the case.

MR. HEAD:  Your Honor, he's arguing things that are nowhere in his motion, and he could have filed a response to my motion on these specific issues and he did not.  The fact of the matter is that KBM was sued over a year ago.  And, it's -- we sued them, we served them.  He filed a motion for summary judgment, we filed a response that said you breached the contract.  He's raised -- he has not raised any issue.  We have raised a fact issue saying that you did not provide that insurance that you were supposed to.  He has not put any evidence before the Court that that is wrong.  He's come up here and he's argued it but he's not given any evidence, and pursuant to a no-evidence motion, we have given you some evidence to raise a fact issue on whether or not that certificate gives us the insurance that we are supposed to.

MR. WEST:  The last thing I'll say, Judge, is the contract which they attached to their own motion speaks to the fact that we weren't supposed to get paid, we weren't supposed to move forward with the project

unless we provided the certificate. We provided the certificate, you have it in front of you, it was attached to their motion, it shows that in 2005 they had this information.

THE COURT: Right.

MR. WEST: The statute of limitations is going to apply to any argument that can be made.

THE COURT: Okay, so with reference to your Motion for Continuance you are dropping it, with reference to your Motion for Leave to File Late Motion for Summary Judgment you are dropping that -- or you are pursuing that and asking that I grant your Motion for Summary Judgment?

MR. WEST: That is correct, Your Honor.

THE COURT: Okay well then that relief that you are requesting is hereby granted. Submit your orders to that effect.

MR. WEST: We have submitted them electronically, Your Honor, I believe they'll be with the Court already.

THE COURT: Okay. So you submitted three orders. With the -- or you are going to abandon the Motion for Continuance so that's going to be considered abandoned.

MR. WEST: That's correct.

THE COURT:  So then I am going to grant your Motion for Leave to File the Late Motion for Summary Judgment and grant the Motion for Summary Judgment and what about for the severance?

MR. WEST:  Judge, we would ask that we be severed from the action.  I think that there's really no argument to keep us in at this point.

THE COURT:  Okay, all that is granted.

MR. WEST:  I have the orders here but I have also filed them electronically.

THE COURT:  Yeah, well give them to me so I can have them so I can keep track of what I am doing.

MR. WEST:  There you go, Judge.

THE COURT:  I am going to sign these, Ana.

THE COORDINATOR:  Okay.

MR. WEST:  Obviously with the Motion to Sever we'll need a new case number.

THE COURT:  Right.

THE COORDINATOR:  It will be DC-14-46-A.

THE COURT:  Go ahead and write it in here. Okay and then we had Plaintiff's Motion to Compel and for Sanctions.

MR. OLIVEIRA:  Judge, if I could real quick just to get a clarification on your previous ruling, I understand you denied our motion to strike the 13th

amended petition but we also have.

THE COURT:  Yes.

MR. OLIVEIRA:  Part of the relief we requested was to abate slash continue the case until the parties get served and, uh, I just needed a ruling on that as well.

THE COURT:  I am going to deny that.

MR. OLIVEIRA:  Thank you, Your Honor.

MR. WALLA:  Your Honor if I may, Doug Walla for AAS Consulting.  Our motion is almost identical to Mr. West's motion.  We also had an H.V.A.C.-related party.  We did what's called the testing and air balancing.  We didn't install the A. C. we just tested it after it was installed and wrote up a report.  The Plaintiff has no claims against us whatsoever.  Uh, the only -- I filed a Motion for Summary Judgment seeking complete dismissal.  Uh, the -- Descon has their breach of contract claim against us, the same as he had with Mr. West.  The fundamental difference is we actually provided insurance.  Maryland Casualty Company now Zurich N. A., uh --

THE COURT:  So your form says additional insured.  Rather than just certificate holder.

MR. WALLA:  Yes, and they are -- and Zurich has actually picked up their defense and is defending

them now as an additional insured. So, we --

THE COURT: Even though the Plaintiffs are claiming that you did not wrong.

MR. WALLA: That's correct.

THE COURT: Is that what you are doing or not?

MR. N. JOLLY: We have not suit AAS, Your Honor.

THE COURT: So you have no opposition to AAS's Motion for Summary Judgment and No-evidence Motion for Summary Judgment.

MR. N. JOLLY: Well on this party here the only thing I could say in response to that question is we take no position and, uh --

THE COURT: So you could care less if they stay in or stay out.

MR. N. JOLLY: As much as I like Doug, you know, if he deserves for his client to get out, I really haven't studied their motions, I frankly don't know anything about it.

THE COURT: You haven't made any claims against their client's work?

MR. N. JOLLY: I am not positive. I don't know. I could say I don't think we have, but right now I just haven't studied the test and balance issues. I could confer with the attorney from our office that

covered the engineer's deposition and get back to you.

THE COURT:  You might want to do that.

MR. HEAD:  That would be helpful for us.

MR. WALLA:  Mr. Jolly, your last petition dismissed AAS, made no claim against AAS.

MR. N. JOLLY:  Correct.

MR. WALLA:  So there's no pending claim against AAS.

MR. N. JOLLY:  There no pending cross-claims against any of the subcontractors to any party that has a contract with my client.

MR. WALLA:  And in my motion for summary judgment, Bill Holder and Ed Stacy, your two experts related to H.V.A.C., both said that they had no problem with the TAB work and that they -- no damage resulted from the TAB --

THE COURT:  With reference to what work?

MR. WALLA:  It's called TAB.

MR. N. JOLLY:  Test and balance.

MR. WALLA:  Test and balance.  TAB.  Once KBM or another contractor puts the air-conditioning system in, we go out and check the air flow, and the water flow, and the humidity and all that stuff --

THE COURT:  Okay.

MR. WALLA:  And their two experts -- and their

testimony is attached to my Motion for Summary

Judgment -- uh, they said in the Exhibit A and B, I

believe to my Motion for Summary Judgment --

MR. SOLIS: I take Doug at his word. If

that's what the testimony is, and it's attached the his

motion for summary judgment, I take him at his word,

provided he doesn't leave before we get to the, uh,

motion to equalize strikes.

THE COURT: Okay.

MR. WALLA: I'll stay here for that.

MR. N. JOLLY: Thank you Doug.

MR. WALLA: And the other issue would be we

actually did provide the insurance and Zurich is

defending them so that whole argument that they had is

moot.

MR. HEAD: If he's saying there's not any

questions with respect to construction of their work

then --

THE COURT: I would be listening to this, Mr.

Jolly, if I were you.

MR. N. JOLLY: I'm listening, Your Honor.

MR. HEAD: If he's saying --

THE COURT: Because he said the word

construction.

MR. N. JOLLY: That's what they do. They, you

know --

THE COURT: I don't know, I mean, I just want to make sure because --

MR. SOLIS: If Doug has a summary judgment and points out that our experts have no complaints against AAS I take him at his word.

MR. HEAD: If what he's saying is that they don't have any issues with the construction and the test and balance, then no.

THE COURT: You are not opposed. That's what he just said.

MR. HEAD: What is the difference between we contracted with them to perform the test and balance --

THE COURT: No, that's what I -- I'm asking you.

MR. HEAD: Yes.

THE COURT: I'm saying that's what he just said. Do you agree with that?

MR. HEAD: I am trying to make sure I understand what Mr. Jolly says because each time I speak he stands up as though I'm wrong. I am just trying to make sure I understand.

MR. N. JOLLY: Well let's put it this way.

THE COURT: He's not opposed to the summary judgment. Are you?

MR. HEAD: Uh, (pause) Well we raised our issues and it's kind of the same as KBM. Is what it sounds like.

THE COURT: So you are opposed to me letting them out.

MR. HEAD: It sounds like it's the same issue with KBM

MR. WALLA: Well it isn't, because your issue with KBM --

THE COURT: I am going to grant your Motion for Summary Judgment.

MR. WALLA: Thank you, Your Honor. We did provide the insurance and you know that. So I filed this --

MR. HEAD: I might agree then, but you got it.

THE COURT: Okay, gentlemen, stop talking to each other, that's inappropriate.

MR. WALLA: That order was e-Filed and it includes a severance. Would that be a dash B?

THE COORDINATOR: Yes. That would be B.

THE COURT: Okay. Then we had Fairess Plumbing Company Inc.'s amended No-evidence Motion for Summary Judgment.

MR. KASPERITIS: Your Honor, Pat Kasperitis, I filed that on behalf of Fairess --

THE COURT:  Am I pronouncing that right?

MR. KASPERITIS:  Uh, Fairess --

THE COURT:  Fairess.

MR. KASPERITIS:  Yes.

THE COURT:  Okay.

MR. KASPERITIS:  Our motion is along the lines of the same thing.  Mr. Jolly has -- none of the experts for Mr. Jolly's -- that he's presented for deposition have made any complaints about the plumbing and that's what we pointed out on our summary judgment so on that end I don't believe there's a liability issue regarding Fairess.  The contractual issues are the same.  The summary judgment evidence that they filed in response.

THE COURT:  Same thing.

MR. KASPERITIS:  Each one -- they used three letters for my client, for my client -- not for my client, for my client's insurers about the insurance coverage.  Each of the three letters say you are an additional insured.  So, there's no dispute that they got named as an additional insured, and there's no dispute that the plumbing wasn't an issue in any of the--

MR. HEAD:  We don't oppose.

THE COURT:  Okay.  Well then Fairess' Motion for Summary Judgment -- the Amended No-evidence Motion

for Summary Judgment is hereby granted.

MR. KASPERITIS:  When I filed the motion and the orders I did not file an order of severance so I am going to have to supplement that.

THE COURT:  Okay.  If you'll do that that will be C.

THE COORDINATOR:  C.

THE COURT:  Okay.  If you'll take care of that.

MR. KASPERITIS:  Yes, Your Honor, I will.  Oh what they gave me was a front and back.  I think you want two pages, right?  I filed it electronically.

THE COURT:  You can scan it, right?

THE COORDINATOR:  Yes, we can scan it.

THE COURT:  She can Stan it.  If you'll give it to me I'll sign it and she can scan it.

MR. KASPERITIS:  Okay, thank you.

THE COURT:  Thank you, sir.  Okay then we had Zarate Suspended Ceilings' Traditional and No-evidence Motion for Summary Judgment.

MR. DUNNAHOO:  Mike Donnahoo and John Guerra here for Zarate.  Judge, similar issues in this case. My client, however, didn't have anything to do with the air-conditioning.  My client installed the suspended ceilings.

THE COURT: Okay.

MR. DUNNAHOO: My client also installed some sheetrock walls and laid some roll insulation on top of the suspended ceilings. We were sued for breach of contract, breach of warranty, negligence, et cetera. In depositions none of Plaintiffs' experts and none of Plaintiff's fact witnesses had any complaints or criticisms of the work that Zarate performed. Where it gets interesting is that Descon claims that Zarate Suspended Ceilings was responsible for installing what's called rigid board insulation inside CMU walls, two inch thick.

THE COURT: That's like the pink stuff?

MR. DUNNAHOO: Yes, two inch thick boards that are adhered somehow. We never provided any submittals for that, that was never contemplated by the contract. The division that our roll installation belongs in is 07212, a construction division, that's a standard. Also that is board insulation, but we didn't do the board installation, and Descon knows that. Descon bought the board insulation. Descon knows that another subcontract in this case installed that rigid board installation because Descon's superintendent wrote down on a daily basis what each subcontractor was doing. Again this is a traditional evidence -- motion for no evidence --

traditional evidence motion for summary judgment sorry.

THE COURT: Ha, ha. Traditional. Right.

MR. DUNNAHOO: Exactly so in exhibit L I provided, uh, about 2 months worth of superintendent daily job logs where they indicate that it's some other subcontractor that's doing that. So, not only do we not do it, not only do we not submit it, but Descon had knowledge back in August of 2004 that we weren't doing what this is that they are saying we were supposed to do now, installing the rigid board insulation. The statute of limitations has run. We didn't do the work, they know we didn't to it, but the statute has run. Negligence statute has run, all the other limitations have run. There's no evidence. Plaintiff is not making any claim against us for our work. The only one is Descon and Descon knows who the correct party is, but Descon is going to try to keep us in this case anyway.

MR. HEAD: Your Honor, the Plaintiff has raised issues with the board installation, I think there's no dispute about that. Pursuant to their contract Zarate's contract it does say they shall provide all labor, materials, equipment, and insurance for board and bat installation. We are talking about the board insulation. He's saying somebody else performed it. They had a contractual obligation to us

to make sure that it was done in accordance with the subcontract and accordance with all building codes. That's what we contracted for. What they are trying to get up here and say now is well somebody else installed it. Well you had a contractual obligation to us to make sure it was installed correctly and that's, that's what's before the Court. Whether it was -- the Plaintiff says it was not installed correctly, and that's what we had a contract with them to do. Doesn't matter who installed it. They had an obligation to us to make sure it was installed correctly. It doesn't matter who bought it. They had an obligation to us to install it correctly.

THE COURT: Did you hire two different people to do it or what? Because the contract with them says they should do it but then why did the other people do it?

MR. HEAD: That is a fact question that I can't answer right now, but their contract says that they are responsible to us for it.

Additionally, there's the insurance issue that we discussed with KBM that I am assuming that the Court is fully apprised regarding the certificates and additional insured information, so I won't go into that any further, but that's the issue is their contract --

THE COURT: Doesn't that seem like a factual question here? If your contract says you are supposed to do it but somebody else did it, and his manager that was on the site was saying, you know, they checked somebody else in as doing it, but I mean you've gotta contract that says you are responsible.

MR. DUNNAHOO: When they see that we are allegedly not performing the work that we all allegedly agreed to do, when they see that we are not doing it, that gives rise to their claim against us for breach of contract. The discovery rule does not apply to toll limitations because they had actual knowledge. These are -- Exhibit L our documents that Descon produced --

THE COURT: You are claiming that somebody else did it, they hired someone else to do it, and they never asked you to go oversee and check and see if the other people were doing it right.

MR. DUNNAHOO: Exactly.

THE COURT: And your Traditional Motion for Summary Judgment Evidence supports that position.

MR. DUNNAHOO: Correct, Your Honor, and one more thing. There is no evidence that we did the work. They are trying to say alternatively that since the Plaintiff is complaining that something was done wrong, that liability somehow flows to us. Well there's --

THE COURT: All of your evidence is attached to your Tradition Motion for Summary Judgment, okay? So I am going to hold that in abeyance and look at all that and I will give you all a decision by this afternoon.

MR. DUNNAHOO: Thank you, Your Honor.

MR. HEAD: Thank you, Your Honor.

THE COURT: So I can look at the attached evidence.

MR. HEAD: And can I add one thing or are you finished with this?

THE COURT: No, go ahead.

MR. HEAD: I was going to say that he's only focusing on the labor aspect of it. Now but there's another important part of it is was the installation done correctly. We allege that there's nothing wrong with the installation, but the Plaintiff says there is something wrong with it. So we just discovered that there was an issue with the installation last year.

MR. N. JOLLY: I just have a point. I believe that the party that installed the actual bat installation was R & R.

MR. DUNNAHOO: I think it was actually Limon Masonry, that's what the Descon superintendent wrote down daily.

MR. N. JOLLY: Okay so R & R didn't do the

bat.

MR. DAVIS:  James Davis for R & R Construction.  This might be a good point to interject.  I filed a No-evidence Motion for Summary Judgment.  In answer to your question Norman, R & R did -- the only section of sheet waterproofing which is the rigid board installation at the retaining wall, a $3,000 contract.

MR. N. JOLLY:  Oh.

MR. DAVIS:  My understanding is that the Limon Masonry did all the pink insulation for the remainder of the CMU walls.  So --

MR. N. JOLLY:  I was just going to ask who.  I thought R & R did the bat -- the rigid board insulation.

THE COURT:  NO, you are saying that who did it?

MR. HEAD:  Well the person who is written down on the daily logs as actually installing it is Limon Masonry.  We have a contract with Zarate that says that they will install and it will be done correctly, so whoever installs it installs it.

THE COURT:  Right.  I mean, I hear what you are saying.  So Perez was already let out on their motion for summary judgment.  Right?

THE COORDINATOR:  That's correct.

MR. N. JOLLY:  Yes, ma'am.

THE COURT: So then we have third-party Perez' Second Traditional Motion for Summary Judgment and we took care of that.

THE COORDINATOR: That's been taken care of.

THE COURT: And then we have C. A. Ray and Son Painting Contractors Inc., Motion for Summary Judgment.

MR. HINKLE: Kyle Hinkle for C. A. Ray and Son Painting.

THE COURT: What's your last name, sir?

MR. HINKLE: Hinkle.

THE COURT: Hinkle okay.

MR. HEAD: I may be able to short cut this. These are kind of the same arguments brought up and if the Plaintiffs have month issue with the painting, then we don't need to discuss it.

THE COURT: Do you have any issue with C. A. Ray and Son Painting Contractor?

MR. N. JOLLY: Well, I mean, if counsel is telling us that the only thing C. A. Ray did was paint, that would be true, we would have no issues with the paint, assuming that's what their contract says.

MR. HINKLE: Yes.

THE COURT: So no one objects to letting them out.

MR. N. JOLLY: We don't.

THE COURT: I am going to grant C. A. Ray and Son Painting Contractor's Motion for Summary Judgment. Then we have, uh -- let me take up all the summary judgments and then I'll look at the other motions. R & R Construction Services', uh, No-evidence Motion for Summary Judgment.

MR. DAVIS: Yes, Your Honor, James Davis again for R & R Construction. Uh, in the Plaintiff's most recent petition, as we have already discussed, they dismissed all of our claims against the subcontractors including R & R. I think Descon, uh, has the only remaining claims and they include, uh, breach of contract, negligence, however in their response to my summary judgment the only evidence that they submitted was on the breach of contract for failing to provide insurance certificate. Uh, I think we have discussed this. My -- and I've gotta motion and order for severance, I think it's more proper in a declaratory judgment action to discuss the insurance issues between Descon and my client's insurers.

MR. HEAD: Your Honor, we have already argued this. I think it's a breach of contract between the contractor and the subs, it doesn't relate to insurance, but since you heard us before I won't go into it.

THE COURT: I am going to grant R & R's Motion

for No-evidence Motion for Summary Judgment and that will be severed into D. now.

MR. DAVIS: Thank you, Your Honor, here's an order.

THE COURT: Thank you.

MR. DAVIS: Thank you.

THE COURT: Then we have, uh, Daniel Vasquez d/b/a Twin City Glass' No-evidence Motion for Summary Judgment and for Severance.

MR. GUERRA: John Guerra and Louis Gross for Twin City Glass.

MR. GROSS: Good morning, Your Honor.

THE COURT: Morning.

MR. GROSS: Your Honor, if I may.

THE COURT: Go ahead.

MR. GROSS: My client installed the exterior window system, the exterior doors, and the curtain wall system at the elementary school. There have been no complaints about the doors or the curtain wall system to date from any of the Plaintiffs. Plaintiff has not made a claim at this point against my client.

THE COURT: Well I am granting your Motion for Leave to File Late Motion for Summary Judgment by the way.

MR. GROSS: Thank you, Your Honor.

THE COURT: Okay. What is the, uh, Plaintiff's position here? No allegations of anything, any wrongdoing?

MR. N. JOLLY: The Plaintiff is not making a claim against any of the subcontractors.

THE COURT: Okay.

MR. N. JOLLY: But, uh, I know that Twin City installed the windows, and there's plenty of complaints about the windows. We make those claims directly to the party that we have privity with, so --

MR. HEAD: And --

MR. N. JOLLY: We are not agreeing that between City's scope of work is released.

MR. HEAD: Yes, Your Honor, the Plaintiff has made claims specifically with respect to clerestory windows and with respect to the window system installed. They are saying that --

THE COURT: So this is different than with any of the other subs that have been let out up to now because there are complaints.

MR. HEAD: Yes, Your Honor.

THE COURT: With reference to the work that Twin City Glass did.

MR. HEAD: Yes, Your Honor.

THE COURT: Okay.

MR. HEAD: And I can show you the sections in the expert reports where they show -- where they allege leaks in the clerestory windows as another issue with respect to whether or not there was supposed to be a sill pan in the window system that they provided and installed, and Plaintiffs made complaints about both of these. We had a subcontractor --

THE COURT: As are you.

MR. HEAD: Yes.

MR. GROSS: Your Honor, if we can break down the actual claims that the expert Joan Partida is making, we would argue that these are not any issues necessarily related to the clerestory window or the functioning of the clerestory window. These are issues that are related to other subcontractors' work. It just happens to be some leaking that was found in the area of the clerestory window.

And, Your Honor, the only issue has been with one or two clerestory windows in this entire school. And specifically there's an argument that there's been deterioration of the ceiling joints there, Your Honor. Now this is ten years after the fact that somebody is coming in and saying your ceiling joints are gone. There's been expert testimony from Plaintiff's expert that that's basically the life of ceiling joints.

Generally they don't even last that long, Your Honor, and there's been testimony that there's been no maintenance schedule with the ceiling joints from the school.  So, we would argue, Your Honor, that that's not necessarily any evidence of any wrongdoing on the part of my client.

We also argue, Your Honor, that a sill pan was not utilized.  A different window system was in fact utilized for this particular school.  It's a system that actually costs more that utilized molients to drain off water as opposed to an aluminum framing sill pan system.  Now this system was more expensive, it was installed by our client, it was approved by the architect, it was approved by the general contractor, Your Honor, and we would argue that this new system there's been no arguments that this new system in fact failed, uh, just that it wasn't done per, uh, the original contracts which were subsequently changed, Your Honor.  So, uh, we would argue that none of the evidence that has been presented has anything to do with, uh, the scope of work of my clients.

MR. HEAD:  Your Honor, he filed a no-evidence motion saying there's no evidence.  These are all fact issues.  Mr. Partida stated in his deposition, he was asked do you see any leaking around the clerestory

windows, he says yes.  Now he also finds the reasons why and those are the ones I told you.

THE COURT:  I am going to deny Twin City's Motion for Summary Judgment.

MR. GROSS:  Thank you, Your Honor.

THE COURT:  Is there any other summary judgments, traditional or no-evidence?  (pause) Okay I don't see any more.

Okay, now we have a bunch of motions to strike and exclude expert testimony and motions to compel, so what I will take up --

MR. GRIFFITH:  Your Honor, John Griffith for ERO as an administrative matter, uh, we have agreed to the severance for Perez Consulting Engineers, uh, and both, uh, Perez and ERO have dropped their nonsuit of their motions for sanctions and attorneys fees against each other.  The attorney for, uh, Perez wanted to leave and I told him I would make that announcement and we'll submit an order on the severance but we agreed to the severance.

THE COURT:  Okay.

THE COORDINATOR:  That would be then E? DC-14-46-E?  On the Perez?

MR. GRIFFITH:  Perez motion for severance.

THE COURT:  No, she's saying the new cause

number on the severed cause. We hadn't given them a number?

THE COORDINATOR: No.

THE COURT: That would be E then.

MR. GRIFFITH: I will submit an order.

THE COURT: Okay. Let's start with Limon Masonry's Motion to Strike Affidavit and Exclude Appraisal Report. Are you all ready for that?

MS. COOPERRIDER: Yes, Your Honor. Essentially the issue with this --

THE COURT: You need to state your name for the record.

MS. COOPERRIDER: It's Brittany Cooperrider. The issue with the affidavit is that Thelma Ruelas, who works for the school district, signed an affidavit saying she's the maker and keeper of this appraisal report. This was produced after Ms. Ruelas' deposition, even though the record was created before her deposition. We never had a chance to question her about it at her deposition, and the issue is that I don't believe she's the appropriate person to be sponsoring an appraisal report because she didn't say in her deposition that she is an appraiser or made or kept these records. I believe an appraisal was performed probably in anticipation of this litigation so the

Plaintiffs could prove up their damages and they are trying to introduce it through her, and I believe the more appropriate party would be whoever for American Appraisal had prepared that appraisal report, and all of that evidence is in the Motion To Strike.

MR. SMITH:  If I could, I want at --

THE COURT:  State your name.

MR. SMITH:  Robert Smith for Descon.  Descon did join in and adopt, uh, Lemon's arguments and motion with regard to this, and I just have one thing I would like to add, if that's all right.  With regard to the appraisal -- purported appraisal report that she is, uh, supposedly discussing with regard to Ms. Ruelas' affidavit, Court should note it's attached to the motion and it's attached to the affidavit, is that it is two pages out of I believe a 48 page or 38 page document.  Uh, there is no appraisal attached to it, there is only, uh, the final dollar numbers.  Uh, it appears to be an insurance-related document, uh, for, uh, I assume renewals or insurability, but without having any of the other portions of that document or the attachments to that document we have no idea as to what it is.  They have basically excerpted the one -- the two pages --

THE COURT:  So y'all didn't get that in

discovery?

MR. SMITH: We did not get that in discovery, Your Honor.

THE COURT: Did you request it?

MR. SMITH: We have requested it since it was attached as that document. We have asked where's the rest of the document.

MR. N. JOLLY: We'll get that to them, but no one ever asked for an appraisal report ever in the litigation, and the Plaintiff produced it because it's their business record and Ms. Ramey is the custodian of that record because she's the business director. School districts are required to insure their property for replacement cost and replacement cost for Grulla is relevant, uh, highly probative information because, uh, you have to know whether or not the damages for remediation exceed the replacement cost of the property because you can't get more than replacement costs for remediation in Texas. So, the documents is a business record kept by the school district, uh, it's been properly noticed, there's a business records affidavit, timely, following the rules. Uh, I can tell you the other 45 pages are, are the other properties. Uh, but we will go get them and, uh, produce them.

THE COURT: Okay.

MS. COOPERRIDER: Your Honor, my objection would still be this is hearsay because it's being offered for proof that the building cost $60 million. We have never had a chance to question anyone who prepared the appraisal, and Ms. Ruelas is just -- I guess we have to accept it as truth that this is the fact. We would like to see the underlying facts and be able to question whoever prepared this, how that was prepared --

THE COURT: Who prepared the appraisal?

MR. N. JOLLY: You know, we go to these depositions and if someone neglects to ask a question what's the replacement cost of this building according to Rio Grande City School District, that's not -- I can't force them to ask the appropriate questions. This is something that's relevant to any remediation claim is whether the remediation exceeds the value of the property, whether it's a car, any improvement to real property. Who did the appraisal? I don't know the author of the appraisal but I know that the document is a business record kept by Rio Grande City School District in the ordinary course of business, and then they have to then take that number and insure the building with a replacement cost policy.

MS. COOPERRIDER: Your Honor, the key part of

the rule is made and kept by.  That's what the rule requires.  The affidavit sponsoring to be a hearsay exception made.  It wasn't made by Rio Grande City Schools.  It was made by American Appraisal, the appraisal company who prepared this report.  And if it had been disclosed we would have asked about that, we would have asked to depose someone from American Appraisal, but it wasn't pruduced until just on the eave of trial.

MR. N. JOLLY:  The rule doesn't say made by.

THE COURT:  Okay.  I am going to deny your motion to strike.  Okay.  Then we have Limon Masonry's Motion to Exclude Expert Testimony from John Kenneth O'Bannon.

MR. GARZA:  Can I take the lead on that, Your Honor?

THE COURT:  I'm sorry?

MR. GARZA:  Can I take the lead on that?  I have one filed for C & M Contracting.

THE COURT:  Okay sure.

MR. SMITH:  And Descon.

THE COURT:  So these are similar -- these are -- all these three defendants are all filing motions to exclude the testimony from John Kenneth O'Bannon.

MR. SMITH:  Yes, Your Honor.

THE COURT:  Okay, well go ahead and state that on the record.  Which defendants are pursuing this motion?

MR. SMITH:  Your Honor, Robert Smith for Descon.  Descon has joined in the motions filed by the other two parties.

THE COURT:  Which is Limon, Descon and who else?

MR. GARZA:  C & M Contracting Inc.

MR. GRIFFITH:  And ERO, Your Honor.

THE COURT:  Okay.  Here's Descon's.

MR. GRIFFITH:  They are all the same motions.

THE COURT:  So it's Descon's, Lemon's, and who are the other two defendants that joined in?

MR. GRIFFITH:  ERO.

THE COURT:  ERO and who else?  ERO, Limon, Descon and?

MR. GARZA:  C & M Contracting.

THE COURT:  C & M.

MR. GARZA:  Yes, Your Honor.

THE COURT:  Okay.

MR. GARZA:  Your Honor, may I provide you with a courtesy copy of what was e-Filed?

THE COURT:  Sure.

MR. GARZA:  And there's two cases behind the

motion, Your Honor.

THE COURT: Okay.

MR. GARZA: As I understand the present posture with the Court's prior rulings, and what has been stated by Plaintiff's counsel's statements, when we filed that motion there was no -- there was a cross-claim against all the subcontractors. My client C & M is a subcontractor. The school district has made it clear there's no claims being made against the subcontractors. So, the remaining claims against me are by Descon, which was the general contractor with which I had a contract. They are seeking breach of contract, contribution, indemnity, all that from us. But this motion is still extremely important to my client because the claims that the Plaintiff is making against Descon, if it prevails on the claims dealing with the roof system -- my client did the roof. If it prevails on the claims dealing with the roof that potential figure or amount could be assessed against me if Descon prevails on its claims against me.

THE COURT: Okay.

MR. GARZA: I know the Court has a lot of documents in front of it. The Court has heard a lot of things and I could -- what we did, Your Honor, is I went through Mr. O'Bannon's testimony and highlighted his

testimony and I would like to just repeat it for the Court, but I am going to give you the real short version of what Mr. -- of what my motion says.

THE COURT: Okay.

MR. GARZA: Mr. O'Bannon acknowledges he has no specialized knowledge, training, skill, or experience dealing with roofs, roof systems, or roof installations. Mr. O'Bannon picks up the phone one day, calls a buddy of his, and says can you prepare a quote for me on replacing the roof system at Grulla Elementary? And I'll assume that this buddy has, you know, knowledge about roofs and stuff. That buddy then prepares a one-page quote, which is attached as Exhibit A to my motion, Your Honor, (pause) Should be there.

THE COURT: What exhibit did you say?

MR. GARZA: I think it's Exhibit A.

THE COURT: I have Exhibit B right after the end of your motion, and that's the videotape deposition.

MR. GARZA: It's attached there but I want to get the -- here it is. 23-C. Here, Your Honor. Your Honor this is, uh, co-counsel with me *Monica Wilkins.

MS. WILKINS: Hello.

MR. GARZA: This is what the Plaintiff -- or I am going to say not the Plaintiff, but this is what someone is going to try to show against my client. This

one-page document, not even signed by Mr. McIntyre.  Now this is what it is.  So then I put in my motion and I went through a series of detailed questions with Mr. O'Bannon, and what I just want to do is highlight --

THE COURT:  Y'all can sit down back there.

MR. GARZA:  I want to highlight in my argument right now, uh, there's a lot of quotes out of -- you can see my motion is not very long, Your Honor, and I attached the relevant parts, but as to this one-page document I asked him specifically.  "He did no independent investigation to confirm the validity of those figures?"  He said he does not consider himself an expert on roofing systems, that he has no specialized knowledge concerning installation or construction of roofing systems, and that he "has no specific training dealing with the installation or construction of roofing systems."  That quote is meant to be a complete replacement of the roof system that's been there through ten years and weathered various storms.  It goes on and I ask him as to that one-page quote on page six of my motion.  I am citing from his testimony.  Uh, he did not receive any other documents to support that quote from Mr. McIntyre, he did not do any of the independent investigations to confirm the validity of Mr. McIntyre's figures, he has no documents in his file confirming

Mr. McIntyre's quote, he does not know what methodology was used to come up with the figures on his quote, he has no documents that Mr. McIntyre relied on for his calculation on his quote.  He does not know what publications, if any, Mr. McIntyre relied on for his calculation and his quote.  He has no idea what treatises, if any, Mr. McIntyre relied on for his calculations.  He has no idea what books, if any, Mr. McIntyre relied on for his calculations.  He has no figures from Mr. McIntyre for labor to perform the replacement of the roof, and he did no independent investigation to determine what the labor cost would be for replacing the roof.  O'Bannon has no information on prices that will be needed for the materials to be used to replace the roof at Grulla Elementary School.  In my motion I also point out, uh, that, uh, he had no knowledge whether Mr. McIntyre had ever built or worked on the school building in South Texas including Starr County.  Uh, doesn't have any idea about what Mr. McIntyre may have done in South Texas.  What Mr. O'Bannon has done is has been basically an estimator for 32 years.  What he did is he got information from different sources and some of the other parties will address some of his points, but it's clear under the case law, Your Honor, and I know there's a limit of

time.  His testimony --

THE COURT:  Well whatever we don't finish by noon we can take up at 1:30 because I've gotta to swear a new attorney in at lunch time.

MR. GARZA:  His testimony, Mr. O'Bannon's testimony, as to my client C & M and as to the issues of roof repair and roof replacement, constitutes no evidence.  Now there's a lot of cases cited and I don't need to tell the Court because the Court knows very well, you know, the Robinson and Daubert and stuff.  What I do have, Your Honor, are two cases involving your predecessor, cases here from the 229th District Court, which were reversed and rendered because they let in expert testimony which should not have been allowed in.  And I know the Court's time is valuable and the last thing you would want to do is have to try a case for several weeks and then at the end just reversed and rendered because expert testimony came in that should not have come in.

THE COURT:  And the Plaintiff shouldn't want that either.

MR. GARZA:  And the Plaintiff should not want that either.  There's two cases.  One was Texas Mutual Insurance Company and I provided the Court with copies of those cases.  That's a workers comp case and it dealt

with medical, uh, causation.

THE COURT: Which case is that?

MR. GARZA: Texas Mutual, but I am no not really going to speak to that one very much --

THE COURT: Okay. That's 143 SW 3rd, 117.

MR. GARZA: They are both reversed and rendered from the 229th, your Court predecessor, both writ denied or review denied by the Texas Supreme Court. The one I would like to show to the Court would be the Goodyear case, Your Honor.

THE COURT: Okay.

MR. GARZA: And if you go to page 9 of the Goodyear case -- and I will point out that the Plaintiff had filed a response to my motion to exclude Mr. uh, O'Bannon and Mr. O'Bannon talks about how he's been there for 32 years and done estimating and so forth. And as I read this case I sort of came to the conclusion that I could take a little part of this decision. If the Court goes to the bottom of page 9 where the foot note 116 starts.

THE COURT: Okay. I see that. Talks about this expert that was excluded and resulted in the reversal and rendering of the case. Yet a man that had a bachelor's degree in chemist, a Master degree in Polymer Science and Engineering -- he had a lot of

credentials. And it goes on and says, "Although Crate's background includes research generally into the adhesion of properties of various materials, none of his experience is specific to tires. He has no background in tires, does not consider himself an expert on them. He admitted the vast amount of his experience in failure analysis has been related to products other than tires."

And then you go further down and you get to about 7 or 8 lines up it says where the Court finds it says, "Although this background may have enabled Crate to discuss adhesion failures generally, he was not qualified to opinion on the specifics of the actual subject matter for which he was called to testify. Accordingly we hold that Crate was not qualified as an expert in the field of tire failure analysis, therefore his testimony amounts to legally insufficient evidence to a manufacturing defect." And very simply, Your Honor, uh, if the Court would take the time and read the motion entirely it basically says you have an expert who has no specialized knowledge, training, et cetera in roofing systems. He gets a one page quote that the Court has in front of you. He says, "I have no on his supporting documentation." And even if I concede to the other parties that he has 30 or 32 years of experience as a cost estimator, he would sort of be like Mr. Crate.

He may have been a cost estimator for 32 years just like Mr. Crate may have been talking about adhesion issues for 32 years or many years, but he was not an expert in this particular field.  Mr. O'Bannon didn't get up and say I am an expert on roofs, I know what it costs to replace a roof, I replaced a hundred roofs in my lifetime, none of that.  And that in a nutshell, Your Honor, is our argument.

So he would move to strike and exclude all this testimony, his testimony as it relates to roof and roof repairs.

THE COURT:  Okay.  Mr. Jolly?

MS. COOPERRIDER:  Your Honor, I would just like to say we join Mr. Garza's argument.  This is Limon --

THE COURT:  Right, it's on the record that all four defendants joined in that argument.

MS. COOPERRIDER:  We have our own motion pending.  We just have to put on our own summary judgment evidence.  The one page quotes are the same --

THE COURT:  I mean, if it's the same argument I get it.

MS. COOPERRIDER:  Okay.  Thank you, Your Honor.

THE COURT:  Okay.  Mr. Jolly?

MR. N. JOLLY:  Yes, Your Honor.  I believe Mr. Garza started out explaining that Kenny O'Bannon is not a roofer.  That's true.  He's an estimator.  He's not a mason.  He's not an H.V.A.C. installer, he's an estimator.

THE COURT:  What is an estimator?

MR. N. JOLLY:  An estimator calculates remediation costs.

THE COURT:  And that's all he does.

MR. N. JOLLY:  That's right.  And he relies on the other experts who opinion whether or not the work is necessary, and this gentleman opines on whether or not the charges are reasonable in our community.

THE COURT:  Do you have another guy that's doing the roof issues?

MR. N. JOLLY:  Correct.

THE COURT:  Do you?

MR. N. JOLLY:  Yes, Your Honor.

THE COURT:  And he's listed as an expert also?

MR. N. JOLLY:  Yes, Your Honor.  Mr. O'Bannon --

THE COURT:  He's going to talk about the same thing pretty much?

MR. N. JOLLY:  The other expert is the one who says that the work is necessary.  And the case --

THE COURT: And does not talk about how much it's going to cost or does also talk about how much it's going to cost?

MR. N. JOLLY: The other experts can rely upon the estimator, and the estimator can rely upon the people who say the work needs to be done. So, they all --

THE COURT: But what I am saying does the roofer also talk about how much it's going to cost or he just says what needs to be done?

MR. N. JOLLY: They can do both. They can do both.

THE COURT: Okay.

MR. N. JOLLY: There is no redundancy because the roof expert is relying upon the estimator and vice versa. I will point out this is not a comp case and medical causation is not relevant. Tire tread separation is a whole other gig. There's a case if you haven't heard of is called McGinty versus Hennen.

THE COURT: Do you have the cite?

MR. N. JOLLY: It's a June -- Texas Supreme Court, June 29th, 2012. That is the landmark case on construction estimators testifying in Texas.

THE COURT: What is the, uh, what's the style?

MR. N. JOLLY: M-C-G-I-N-T-Y. And I apologize

I don't have the case with me.

THE COURT: Okay.

MR. N. JOLLY: McGinty versus Hennen, H-E-N-N-E-N. Real interesting case. The estimator on that case had actually estimated some pending matters that we had, and we immediately terminated him and located someone else and low and behold we found Kenny O'Bannon. So, we actually acted on this case and made sure we located someone that was appropriate. Mr. O'Bannon's line item response to every complaint about his testimony is on Exhibit A to our response. He goes through and explains in the italics portions. It's an affidavit. He explains his response to every complaint that's been made.

The other complaint that the estimate or the quotes from subs are on one page. I think the other complaint was he didn't take any measurements and that's true. He may have taken some measurement, but for the most part he doesn't take measurements. He doesn't need to. He has the plans. The measurements are on the plans. So the fact that the man didn't measure everything in the building is irrelevant. He has all the measurements. The complaint about the estimate or the estimates from subs for the mason or roofer or whoever that Kenny accumulates from the people that he

can trust and know are reliable in the community, the complaint that it is on one page is really -- doesn't have much merit, and the reason I say so is because each of those for the various trades and portions of work for the remediation, they may have been on one page and then he ends up with numerous pages, and come to find out when the architect was estimating this building before they ever built it, the architect, who is not an estimator, the architect used one page to estimate the entire costs for the whole building.

THE COURT: Well I mean I have found that there's a lot of people that say a lot of things but end up saying nothing.

MR. N. JOLLY: Right.

THE COURT: And there's some people that say a few words and say a lot.

MR. N. JOLLY: Right.

THE COURT: So.

MR. N. JOLLY: Exactly. Exactly and it turns out that Mr. Ochoa used some national standards, Kenny O'Bannon uses national standards, R. S. means. It turns out Mr. Ochoa was almost spot on to maybe the tune of 200, 300 thousand dollars and this is the pre-bid formulation for raising the money, coming up with the plan and going out for bid. I mean, the one thing

Mr. Ochoa did do right was he got the estimate pretty close.

THE COURT:  Is this mine or yours?

MR. N. JOLLY:  You can have it.  And he did that on one page.  So, I don't think that just because he has a single page --

THE COURT:  I am going to read the cases.

MR. N. JOLLY:  Yes, Your Honor.

THE COURT:  I am going to read the cases as submitted by Mr. Garza and I am going to read that, uh, case that you say is a landmark case for estimators, and then I will make a decision with reference to that.

MR. GARZA:  May I briefly respond, Your Honor?

THE COURT:  Of course.  Of course.

MR. GARZA:  I didn't bring Mr. Lewis' deposition, but he was their roof expert that talks about that the roof needs to be replaced.  My recollection is that he as well as the other -- well I am just going to talk about the roof.  He was not going to give opinions on the cost of the repair or replacing the roof.  He deferred to Mr. O'Bannon.

THE COURT:  Okay.

MR. GARZA:  Mr. McGuire, the one-page estimate that you have for the roof, he's not listed as an expert for the Plaintiff, and so Mr. O'Bannon is relying on

hearsay from Mr. -- from the -- on that one page to give his testimony. Again it's going to be very simple. They are expecting him to get up there --

THE COURT: So Mr. McGuire is not an expert?

MR. GARZA: He's not an expert, he's not identified as an expert in this case. All his -- I mean what Mr. O'Bannon is going to tell us is hearsay that he's relying on from that person. But when I asked him show me what you got from this person, he got nothing. And we are a week from trial so it's too late for them to go supplement and start sending me stuff.

THE COURT: McGuire is not an expert? Or listed as an expert?

MR. GARZA: I keep saying McGuire but whatever his name is.

THE COURT: Is it McGuire or McGinty -- what is the?

MR. N. JOLLY: McGinty is the Supreme Court case.

THE COURT: Right.

MR. N. JOLLY: Well we --

THE COURT: But the one page from the -- that was given to the estimator that the estimator relied upon, what was his name?

MR. N. JOLLY: I don't know who he's referring

to.

MR. GARZA: I'm sorry, McIntyre.

THE COURT: McIntyre.

MR. GARZA: Jerry McIntyre is not designated as an expert by anybody in this case and I don't have anything on him. All I have is this one-page quote that's supposed to support a $675,000 replacement of the roof. And you can read the references in Mr. O'Bannon's deposition, and it's clear when I asked him what do you have from Mr. McIntyre, he has zero, except the one-page document. So my examination of him is what do you have for Mr. McIntyre --

THE COURT: So you are saying he's not relying on another expert.

MR. GARZA: He's not relying on another expert, he's relying on a page that was sent to him.

MR. N. JOLLY: We disclosed, retained testifying experts, they produced their reports, the bases for their reports are attached. This is the way estimating is done by getting quotes.

THE COURT: Okay, well I'll look at the cases and make a decision.

MR. GARZA: Thank you, Your Honor.

THE COURT: Okay and then we have about 15 minutes left so I don't know if there's something we can

take up in 15 minutes. Like I say I would rather work through lunch all the time, but today I've got to swear somebody in. So we have got Plaintiff's Motion to Compel and for Sanctions. We've got Plaintiff's Motion to Compel Defendants to Produce the Full and Complete Expert Files and Everything Referred to and Relied upon.

MR. N. JOLLY: That's been satisfied, Your Honor.

THE COURT: Okay, that one has been satisfied.

MR. N. JOLLY: Correct. Those are both Plaintiff's motions.

THE COURT: Were both satisfied?

MR. N. JOLLY: Well they were late but I am not going to have a tantrum about it.

THE COURT: You are not going to push the Motions to Compel and for Sanctions.

MR. N. JOLLY: I got it.

THE COURT: Okay.

MR. N. JOLLY: You know, I, I, I am not going to push it.

THE COURT: Okay, then we've got Descon's Motion, uh, to Strike or Exclude Evidence on Plaintiffs Claims for Attorneys Fees. How long is that going to take to argue?

MR. FARWELL: Your Honor, Jay Farwell for

Descon.  Not very long.

THE COURT:  Well I mean if you say five minutes --

MR. FARWELL:  I think --

THE COURT:  -- if everyone can argue and respond within five minutes I'll take it up, if not we are going to take up after lunch because I have to go and swear this guy in.

MR. N. JOLLY:  It will take seconds only. There's a new Supreme Court case that just came out I believe April that says --

THE COURT:  What is the cite of that case?

MR. N. JOLLY:  I don't believe I know the cite, I know it was just last month and a lot of people --

THE COURT:  Maybe not a cite but a number. Something I can refer to.

MR. N. JOLLY:  It's in their motion.

MR FARWELL:  Your Honor, the Plaintiff --

THE COURT:  State your name.

MR FARWELL:  Jay Farwell.

THE COURT:  Okay.

MR FARWELL:  The Plaintiff in this case has pled for and is asking for attorneys fees under section, uh, what is it 38.001 of the Civil Practice and Remedies

Code for a breach of contract.

THE COURT:  And you are arguing for Descon.

MR FARWELL:  I am arguing for Descon.

THE COURT:  Because it's Descon's motion.

MR. FARWELL:  Descon Construction is a limited partnership.

MR. N. JOLLY:  We agree.  We agree that the Supreme Court says you can't collect attorneys fees from a partnership.

MR FARWELL:  Your Honor, if I could finish my argument.

THE COURT:  Well if he's agreeing to -- he's agreeing that he's not entitled to attorneys fees. Right?

MR. N. JOLLY:  From the partnerships.  You are entitled to recover attorneys fees from corporations or people and that's it.

THE COURT:  Is that your argument?

MR FARWELL:  That's my argument, Your Honor.

THE COURT:  So then if --

MR FARWELL:  If he is not -- if he'll just say on the record that he's not, uh, seeking attorneys fees from any partnerships, then, uh --

MR. N. JOLLY:  I didn't say general partners, I didn't say people, I didn't say corporations.

THE COURT: Okay. Well let's make it very clear exactly what you are saying, Mr. Jolly, because I don't want to be back here on this issue.

MR. N. JOLLY: Right. No one can collect attorneys fees in Texas any more against a partnership or an LLC that is a pass through partnership. But if the LLC is a corporation you can.

THE COURT: Do you agree with that?

MR FARWELL: Yes, Your Honor.

THE COURT: Okay.

MR. N. JOLLY: You can collect fees from a corporation and a person.

THE COURT: Well then --

MR. N. JOLLY: And that's it.

MR FARWELL: Just so the record is clear though, then the Plaintiff is not seeking attorneys fees from Descon Construction LP in this case.

MR. N. JOLLY: Well I think I made it real clear. Descon Construction LP is a partnership but it's partners are responsible for the attorneys fees if it's a person or a corporation.

MR FARWELL: Well I don't agree with that statement of the law but I want to make sure I understand that the Plaintiff is not seeking --

THE COURT: Okay well submit --

MR FARWELL: -- attorneys fees from a partnership.

THE COURT: Submit an order that both of you sign that says he's not pursuing attorneys fees as against any partnership in accordance with the last, uh, I guess decision --

MR. N. JOLLY: Well it's like this. If a partnership can't pay its debts then it's partners owe them. So we got to make it real clear that he's not going to put together something knocking out the Plaintiff's right to recover attorneys fees from people.

THE COURT: Right.

MR. N. JOLLY: Or corporations.

THE COURT: Right.

MR. N. JOLLY: Who were the owners, successors and partners --

THE COURT: So my ruling is as to any person or corporation he can, insofar as the law allows him to collect attorneys fees or recover attorneys fees or claim attorneys fees against thoseentities, but as to any partnerships, which would be in violation of the latest Supreme Court ruling, he cannot. Is that correct?

MR FARWELL: Very good, that's very clear, Your Honor. Just for the record --

THE COURT: Okay and submit an order that says that and but do give me the case. Or that, uh, the name of the case.

MR FARWELL: Flemming and Associates versus Barton, 425 SW 3rd, 560 --

MR. N. JOLLY: No, it's the later case.

MR FARWELL: It's a 14th Court of Appeals case in 2014.

MR. N. JOLLY: No, sir. No, sir. The Supreme Court case, that one had petition granted. The Supreme Court case was after that case wasn't it? No? While the petition was pending? Isn't there a Supreme Court case cited?

MR FARWELL: Petition has been filed in the case.

MR. N. JOLLY: If that's not the correct case I'll give it to you.

THE COURT: Okay.

MR FARWELL: I believe that could be the correct case.

THE COURT: Okay. Anything else gentlemen? I mean that's all I had on my list. Is there more stuff? That needs to be heard?

MR. GRIFFITH: Your Honor, ERO had a, uh, Robinson Motion to Exclude the Testimony of the

Non-design Professionals testifying as to design defects. I don't think Plaintiff's counsel is opposed because for the most part his experts, his non-design experts say they were not going to testify or were not qualified to testify --

THE COURT: Tell me that again. It's ERO's motion for what?

MR. GRIFFITH: Daubert Motion to Exclude the Testimony of Plaintiff's Non-design Professionals Regarding Alleged Design Defects. Again Mr. uh, Holder, uh, I think Krismer, the rest of them, they said since they are not design professionals they are not going to have any design opinions, but I wanted to make sure. It's almost like a prophilactic measure. That's the order.

MR. N. JOLLY: Is this something that was set today?

MR. GRIFFITH: Yes.

THE COURT: I mean I didn't have it on my list. Was it filed.

THE COORDINATOR: No, it was not on the list, but I am going the check here.

THE COURT: I had not seen it.

MR. N. JOLLY: This is really limine stuff, Judge.

MR. GRIFFITH:  Yes, I would agree this would normally be limine, but typically if it's something that I don't want to get in front of the jury.  I'll do a motion to exclude, that way it's ruled on ahead of time and we don't have to argue when it comes up.  That's the only reason I did it, but yeah in general this would be limine but I wanted to exclude it or have a resolution of it before trial.

MR. N. JOLLY:  We, we -- well we have limine that -- this goes both ways.  They on the one hand you don't want someone opining on architecture, but on the other hand they want the janitor to opine on air-conditioning design.  So it's in our limine. Really, really, if we want to take up the whole limine right now that could take severa hours and we are willing to stay here to do that.

THE COURT:  Wait a minute, we are going to take up the limine today.

MR. N. JOLLY:  Okay good.

THE COURT:  We'll do it after lunch.

THE COORDINATOR:  It was set for final pretrial as well.

THE COURT:  Because we are set for final pre-trial today.  We are going to take up everyhting. We are not going to be arguing anything on jury

selection day.  There's no way.  We are -- all we are going to do jury selection day is pick a jury and start a trial.  Everything --

MR. N. JOLLY:  All right.

THE COURT:  -- else we are hearing today.  So, I will have you all back here at 1:30 with any other issues that you want me to take up.  Including this one.

MR. OLIVEIRA:  Your Honor, if I could make a suggestion.  I don't think we have sat down with, with, uh, Norman on the motion in limine.

THE COURT:  Have lunch have lunch together.

MR. OLIVEIRA:  We should have.

THE COURT:  I am ordering you to have lunch together.  Go to I guess you can go to Casa De Adobe, there's probably room for all of you upstairs or something.

MR. OLIVEIRA:  If not, if the other thing --

THE COURT:  Or go to Caro's or somewhere.

MR. OLIVEIRA:  If we can get together maybe before we, uh, give us a little bit of time.

THE COURT:  Do you all want -- guys you all are not listening here.  Okay, so focus.  So why don't y'all go I've a quick lunch, if you want to eat together eat together, if you don't want to I can't force you to do that.  But, be back here by 1:00.  Start talking.

See what you can work out and agree upon and I guess 1:30 is not going to be enough time for you all to agree on anything, so I guess I can get back on the bench at 2:00.

MR. OLIVEIRA: That's fine, Your Honor, give us an hour.

THE COURT: That way you can just shorten your arguments and, uh, get your agreements together and whatever y'all can't agree upon then I will decide, but that way I am not sitting here saying well judge we did agree to number one and didn't agree to number two but then maybe number 3 and -- no. I mean, y'all sit down, talk, work on whatever you have to work out, and whatever you can't work out I'll take it up at 2:00.

MR. OLIVEIRA: Be happy to do that thank you, Your Honor.

THE COURT: If y'all want to leave your stuff here nobody is coming in, nobody is going to take it, nobody is interested in it I'm sure.

(This is the end of the morning session for Friday May 1, 2015, Judge Garza, Starr County, Texas.)

(P.m. session for Friday May 1, 2015, Judge Garza, Starr County, Texas.)

THE BAILIFF: All rise, the 229th District Court is back in session, Honorable Ana Lisa Garza presiding.

THE COURT: Okay. The record will reflect we are back on the record in cause number DC-14-46. We took care of all the hearings in the morning, however, we do have some pre-trial matters and motions in limine. So do you want to go ahead and let me know what the agreements are? Or better yet what the agreements are not. So let's start with the motion in limine.

MR. N. JOLLY: There's a number of agreements and disagreements. We are still working on Lemon's.

THE COURT: See y'all were supposed to confer about all this stuff before you even got here.

MR. N. JOLLY: We have been working on it real hard.

MR. GRIFFITH: There's so many parties. I don't care, it doesn't matter to me if there's 1, 9, 20, or a hundred. You were supposed to confer on your motions in limine before you came here.

MR. SMITH: I am ready to proceed, Your Honor.

THE COURT:  Well but you didn't confer.

MR. N. JOLLY:  We did.

MR. SMITH:  We did.  We have.

THE COURT:  I told you to to do it at lunch time.

MR. N. JOLLY:  That's true we did blow it on that.

THE COURT:  Did you exchange witness lists?

MR. SMITH:  We did.

THE COURT:  Exhibit lists?

MR. N. JOLLY:  Yes.

MR. SMITH:  Everything has been exchanged.

THE COURT:  Did you do proposed jury charges? I know that in th end --

MR. N. JOLLY:  Yes.

MR. SMITH:  Yes.

THE COURT:  We don't know what's going to happen when the evidence but you are supposed to exchange --

MR. SMITH:  It was all exchanged.

MR. N. JOLLY:  That's been done.

MR. SMITH:  It's all been done.

THE COURT:  So it's just the in limine?

MR. N. JOLLY:  That and the motion to equalize strikes.

THE COURT: Okay.

MR. N. JOLLY: And because Doug Walla is staying around here for that, could we do that now so he can hit the road? His client has been released.

THE COURT: Okay.

MR. N. JOLLY: By summary judgment.

THE COURT: Okay. Well let's take care of the motions to equalize strikes, unless Mr. Walla wants to bill more hours while he sits here and waits.

MR. N. JOLLY: Yeah. I think he's ready to get back to Houston.

THE COURT: Okay, let's go ahead and take care of the motion to equalize strikes.

MR. N. JOLLY: Remember, Your Honor, last time we were here we indicated that the, uh, Descon and the third parties they are not, uh, adverse to one another, they are essentially one side, and, uh, there had been an inadvertent production of an e-mail indicating there was to be conference calls between the Defendants. Uh, they inadvertently produced that to the Plaintiff. The conference call has been cancelled, but it seemed to imply at minimum that there had been previous plans for future defense strategy conference meetings, whatever you want to call it. Uh, so we sent some discovery out for joint defense agreements and everybody of course

said that there weren't any, but on the other hand, they are cooperating and they are meeting and we are not invited to meetings, we are not invited to conference calls. And so I have known Doug a long time and I asked him to stay here, to tell you his opinion on that.

MR. WALLA: I don't know that I really have an opinion on it. I can tell you that, uh, we had a couple conference calls among counsel for the various Defendants. I don't know if all the Defendants were on those conference calls. I participated in one myself and one of our associates participated in one. I don't know if there were any more beyond that. That's the only two that I can think of.

The substance of any of those conference calls I cannot get into, I am going to assert that that's privileged, it's work-product among other things, and I can't talk about work-product. That privilege continues whether I am out of the case or in the case.

I can say "Yes" or "No," yes we had, uh, two scheduled or maybe three scheduled telephone conferences of which two I can tell you without reservation of that. The third one never happened and the substance of them I can't talk about.

MR. N. JOLLY: And the Plaintiffs were never invited to these conference calls and it always involved

Descon and the third parties that Descon and ERO had sued.  Right?

MR. WALLA:  I know it involved some Defendants, which ones I don't remember.  I know I was involved and I know Descon was involved, beyond that I don't know.

MR. N. JOLLY:  The point is there's no antagonism between the parties notwithstanding the third-party claims and they are one side and they should get the same number of strikes.

MR. SMITH:  Your Honor, if I could respond.

THE COURT:  Well go ahead and argue your motion.  I mean, what are you --

MR. N. JOLLY:  That's it.

THE COURT:  What are you requesting?

MR. N. JOLLY:  The Court has discretion to determine if there is antagonism or if there is not antagonism and on the one hand they want to file third-party claims and drag their subs in, but on the other hand they want to strategize and not act antagonistic throughout the case to the prejudice of the Plaintiff.  And then on the other hand they are going to get together during jury selection and assist each other with strikes.  So, at a bear minimum they should be ordered no communication whatsoever on strikes, but

right now we are asking for you to decide, and it is within your discretion, it's in the rule -- the cited rules in our motion, it's, it's, uh, towards the end in the two hundreds right before jury selection. I can't tell you the exact number, but it's in that range, and antagonism, the question of antagonism is a question for you. If they get ten strikes and we get six then they get to strike more people when they are not antagonistic. So, we are asking you to decide that they are one side and to equalize the strikes.

MR. SMITH: Your Honor, basically --

THE COURT: You need to identify yourself for the record.

MR. SMITH: I'm sorry. Robert Smith representing Descon. Basically I believe Limon has filed a response, we filed a response to this. Basically there is more than ample evidence that there is antagonism certainly exhibited through the Summary Judgment motions that we went through this morning. Uh, we have attached copies of interrogatory answers and request for disclosures responses where Descon is seeking, uh, their claims against all the third parties. Uh, with regard to that, seeking monitary damages and different amounts for the different parties. We made claims and are seeking claims with regard -- for example

the glass people with issue to their glass work, we sought with regard to the different products and the different work that the different third parties have done. There's been ample, ample showing of, uh, of the fact that there are claims, realistic claims that are being made and there is antagonism between the parties.

With regard to, uh, the action that Plaintiff's counsel is discussing, I don't believe that there has been a single --

THE COURT: Sir, you can sit down and then stand up when it's your turn.

MR. B. LOPEZ: Yes, ma'am.

MR. SMITH: I don't believe there's been a single telephone call in this case where everybody was involved in or even around the majority was involved in. Uh, there have been discussions related to matters, uh, totally unrelated to, uh, or totally related to issues, uh, regarding for example scheduling and like that, that have no --

THE COURT: Well but if it was just scheduling then you would have had the plaintiffs involved also wouldn't you?

MR. SMITH: No, ma'am, because the way the scheduling in this matter took place was we contacted Plaintiff's counsel and said here's what we need for

depositions, give us dates. They gave dates to my lawfirm. My lawfirm then went to all the other Defendants, third-party Defendants and said these are the dates that Plaintiff's counsel has given us, let's get together and figure out which ones are acceptable to the most people to get these depose done. We acted as the intermediary on it and that was as to all 21 depositions with the exception of the last one which was handled by Limon Masonry.

THE COURT: Well then if that's all it was then why can't Mr. Walla say that? That's not privileged.

MR. SMITH: Well there were others.

THE COURT: If you were just talking about setting up depositions and things of that nature.

MR. SMITH: We addressed settlement issues, we addressed a lot of things, but we did not collude with regard to the defense of the case.

MR. WALLA: My only concern is I don't think I can talk about any substance whether it's insubstantial substance or substantial substance, if that's a way to phrase it, because I think once you open that door the whole enchilada is subject to privilege in my opinion and I don't -- it's kind of an ethical slippery slope and I don't want to cross that line. So, I freely admit

we had a conference call.

MR. N. JOLLY:  Mr. Smith is saying there's scheduling, they are scheduling depose, but they are not including us in scheduling?  I mean all the parties need to be involved in scheduling, you know, and I mean if --

THE COURT:  I am going to grant the motion to equalize the strikes.

MR. N. JOLLY:  Thank you, Your Honor.

THE COURT:  Okay, what else?  You are excused, Mr. Walla.

MR. WALLA:  Thank you, Your Honor.

MR. N. JOLLY:  Thank you, Doug.

THE COURT:  What about the motions in limine?  Let's start with Descon and get me the hard copies of those motions.  Or let's start with the Plaintiff's and Descon and then we'll take it from there.

MR. SMITH:  Do you want Descon to address the Plaintiff's first or Plaintiffs to address Descon's first.

THE COURT:  Let me have Plaintiffs address Descon first and then anybody else's after that.  And then we'll go through each individual Defendant that's staying in this case.

MR. N. JOLLY:  Can I remain seated?

THE COURT:  Yes, go ahead.

MR. N. JOLLY: Thank you, Judge. We agree to number 1, we disagree --

THE COURT: Hold on. Hold on. We are starting with Plaintiff's motion in limine.

MR. N. JOLLY: Oh, okay. Let's take it from there and start with, you know, granted -- what's agreed and what's not agreed. So, let's start with page 2.

MR. N. JOLLY: 1, 2, 3 are agreed.

THE COURT: Okay, so I am going to grant those. Okay.

MR. N. JOLLY: Four is denied -- I'm sorry, disagreed. Ha, ha, ha.

THE COURT: Okay, so then I need to decide number four. Right?

MR. N. JOLLY: That really is something that would depend on how they asked the question.

THE COURT: I am not even getting this.

MR. N. JOLLY: Well you see the thing is that there's one lawyer in particular who isn't here and he wanted to know how things worked at our office and I told him that was none of his business: Who is the time keeper, I asked him to tell us what he meant by time keeper -- I mean the point is that the attorney is keeping the time. If he wants names of other people at my office it's just privileged that's all.

THE COURT: I am going to grant -- I mean or talk to me.

MR. SMITH: Your Honor, the issue with regard to the time keeper is that, uh, when we are provided, if we are provided with time sheets or background sheets with regard to the claim for attorneys fees, uh, one of the issues will be well who figured out or who kept track of the time that's recorded here.

THE COURT: Like a paralegal's time or what?

MR. SMITH: We have not been presented with any time records so far, but yes it would be like if Mr. Jolly has an entry for 50 hours for researching something, all right, who kept track of that 50 hours to figure out whether it's reasonable and necessary?

THE COURT: Well I assume he would.

MR. N. JOLLY: That's right.

THE COURT: That's how I did it when I was still practicing law, I mean, I kept my own track of my own hours.

MR. SMITH: I would assume so, Your Honor, but we don't know that because we don't have the records.

THE COURT: Well you don't have them yet.

MR. SMITH: No. I understand and that's -- that would be the question. It may be in the records. It may list who the time keeper is.

THE COURT: I am just going to carry that over.

MR. SMITH: Okay.

THE COURT: Okay number five.

MR. SMITH: There was an issue with regard to, uh, the subject schools are pretty good. Uh, somebody raised an objection with regard to that language. I don't remember who it was.

MR. GRIFFITH: The --

MR. SMITH: It was with reference to the language pretty good that they had an issue with it. Uh, as far as asking questions about well did this work, was it okay --

THE COURT: Fact witnesses cannot speculate of expert subject matters, and I am not going to allow that so I am going to grant that. Number six.

MR. GRIFFITH: Can you grant modified just as to expert subject matter because there's going to be a lot of -- if we ask somebody like a A/C tech about it being hot or cold and they say no.

THE COURT: That's not expert material.

MR. GRIFFITH: Right but I think if we ask them --

THE COURT: Give me some credit here. I mean, if the question is is it hot or cold and they are asking

a lay witness that, that's not expert testimony.  And I can overrule or sustain an objection there.  I am not -- I -- and I don't think anybody is going to go out there and argue well all the, you know, all the students and principles and teachers said that everything was pretty good so then obviously there's nothing wrong with this school.  I mean, is that what you all are referring to here or what?  That's not expert opinion and, you know, to confuse the jury by asking one of the principles or administrators when you went out to the school what did you think about it?  Oh well I thought the school was pretty good or I thought it was, you know, decent.  Well, what are y'all referring to here?

MR. GRIFFITH:  All we want to make sure is that if we ask somebody did you have any problems with something particular that it won't be construed as expert testimony.  The people can make observations about whether the wall is sweating or not.

THE COURT:  Yeah, I mean, --

MR. GRIFFITH:  -- or the ceiling tiles --

THE COURT:  -- if you have an administrator on the stand and you are asking him questions about the air-conditioning, was it cool, was it hot, it was fine.  Well I am going to allow that.  You don't need an expert to say is it hot or cold or reasonably cool or whatever.

I mean, no.  I mean that -- some of these motions in limine.

MR. N. JOLLY:  Sorry, Your Honor.

THE COURT:  Yeah ha, ha I mean.  I am going to grant that and I am going to keep a close eye on that and like I tell you an administrator, school principal, teacher, even a student can tell you oh we thought it was pretty cool in here.  I know you are not going to have students testifying, I don't think, but I mean we all know what is expert testimony and what is not.  So, anyway.

Number 6, personal income of Plaintiff's experts and income or revenue of Plaintiff's expert or attorney, I mean, that's granted.  I don't even think that you would even object to that would you?

MR. SMITH:  Our only issue with it was whether it addressed the, uh, income or revenue of the experts with regard to the work on this --

THE COURT:  No, of course you can ask them how much are you getting paid.

MR. N. JOLLY:  We don't object to that.

THE COURT:  That's different than asking can I go to your house in Tahiti or don't you have 20 houses across the United States or across the world -- well not the United States but all over the world or, you know,

how much do you make, what was your income last year.  I mean, I think that's irrelevant, but you can certainly ask questions about how much money are you getting paid for this, are you getting paid 300 dollars an hour, 250 dollars an hour, I mean that's -- you all already know that, I don't have to tell you.  Okay, number seven that should be granted.  I certainly don't think anybody has an issue with that.  Does anybody have an issue with number 7?

MR. SMITH:  Somebody did.  I don't remember who.

THE COURT:  Well it's not happening.  That's granted.  The source of any funds used to design or construct --

MR. N. JOLLY:  That was agreed.

THE COURT:  9?

MR. N. JOLLY:  9 is disputed.

MR. GEALY:  Your Honor, there are MET expert that testified in another lawsuit which I was involved.

THE COURT:  Which expert?

MR. GEALY:  Edgar Stacy, and he's their air-conditioning expert, and he testified in that case essentially to the exact opposite of what he's testifying in this case.  At his deposition he acknowledged that and in fact changed his testimony in

this case on some of those issues that he had testified to opposite in another case. Now, he's already changed his opinion to now be consistent with it so I am not sure that's going to be an issue but I just don't want to get caught up in some argument, uh, that there's a limine on that when he's already acknowledged it, he's already changed his opinion, uh, under sworn testimony.

THE COURT: Why would you bring in his testimony from another school?

MR. GEALY: Because he testified the exact opposite in this case and then when confronted with this --

THE COURT: Regarding his expert opinion?

MR. GEALY: Right and when confronted with his prior testimony he changed his opinion in this case.

MR. N. JOLLY: This deals with establishing that the other building is substantially similar to Grulla Elementary before you can do that. That's all it addresses.

MR. GEALY: These were not issues that were related just to the building, they were relate to --

THE COURT: You are allowed to -- you have wide latitude in cross-examination, so I am going to deny that one. Okay number ten.

MR. SMITH: Number ten was agreed in

reciprocal for both parties.

THE COURT: Okay. Number 11.

MR. SMITH: Was agreed, 12 was agreed, Your Honor.

THE COURT: 13?

MR. SMITH: Somebody had an issue with 13.

MR. B. LOPEZ: Brian Lopez for Limon Masonry. I want to make sure that we are able to talk about not necessarily using the words fulfilling their mission statement, but that the school is open and operational, kids have been able to go there. I want to make sure that we are able to establish that through the testimony.

THE COURT: But that doesn't have anything to do with construction defects. I mean, we could have -- this courtroom could be full of termites and we are still conducting courtroom business and that doesn't mean that that should be given any weight to whether or not there's a, you know, a defect here or not or that the guys that came and did the pest control did it right or did it wrong. I am going to grant number 13. I think that goes without saying. This is a small community, people know that people are going to school, and that people are going to Grulla Elementary. No. I mean, I am going to grant their, uh, request and you are

not going to talk about it because people already know and I am not going to let you confuse them by saying well yeah the school is -- everybody is going to school so that must mean there's nothing wrong. I don't know, I mean, I don't think that it makes any sense to be able to go into that or talk about that.

MR. OLIVEIRA: Your Honor, I think where it comes in is on damages. I mean, you are talking about, uh, is the school, uh, still fit to be used. Uh, I think those are factors that a jury can, can hear and so I think it is relevant, I think it should come in.

THE COURT: Well I don't. So y'all, you know -- I disagree. Number 14.

MR. SMITH: Agreed.

THE COURT: 15?

MR. SMITH: Number 15 somebody had an issue with that.

MR. N. JOLLY: Limon Masonry. That was Brian Lopez' objection about Limon Masonry.

MR. GRIFFITH: Your Honor, I actually joined in it too and I think the concern was that it crossed on Plaintiff's expert to be pretty wide-ranging. We are not going to say the words find millions in damages, but I want to talk about what they do, their methodology.

THE COURT: You will be allowed to ask them

isn't it true that you always get hired by the

Plaintiff's side.

MR. GRIFFITH:  Those are the questions.

THE COURT:  Or 90 percent of your work is

from -- because I practiced law on both sides and that's

par for the course.  If you are going to hire an expert

that always testifies for the defense, like some doctors

that we had before in the Valley, and other times you

know I was on the Plaintiff's side and when, you know,

hired people that generally, you know, saw things our

way, if you will, I don't know if that should be on the

record Ramiro or not, that was a long time ago.  But,

nevertheless I will allow you to go into that.  You will

be allowed to cross examine the experts fully about

isn't it true that you always get hired by one side or

the other.  They can do it to the defense experts and

the defense lawyers can do it to the Plaintiff's

experts.  You can go into that.  I don't know if you can

say and you always find millions of dollars in damages.

I mean, I think -- well let me think.

MR. GRIFFITH:  They always find damages and

they are always going to say to our experts well you

never find damages.

THE COURT:  Well true.

MR. N. JOLLY:  That's not true.  There's been

buildings that these guys have looked at and they didn't find anything wrong, so to sit there and say that, it's not true.

MR. GRIFFITH:  Well if it's not supported by the evidence.

THE COURT:  Then say no it's not true.

MR. N. JOLLY:  I'm sorry.

THE COURT:  Then the expert will say no it's not true.

MR. N. JOLLY:  Yeah.  Right.  That's true.  Or say not true.

THE COURT:  Yes it's true that -- well okay, we are all getting off the subject here.  I am going to deny number 15 and you can -- you have wide latitude in your cross-examination on both sides.

MR. GRIFFITH:  Thank you, Your Honor.

THE COURT:  Number 16.

MR. SMITH:  I believe 16, 17 and 18 are agreed.  On 19 there was an issue raised on that.

THE COURT:  Is there leaks at all campuses?  I mean is that a fact?

MR. GRIFFITH:  Actually it is true with regard to air.  Air comes and goes out of buildings everywhere. Plumbing leaks, water leaks, no.  So I mean it's just so vague it's kind of hard to make a motion in limine if

there are leaks in the building.

THE COURT: I am going to grant the Plaintiff's request. You are not going to go around saying there's leaks at all campuses, no. Okay number 20.

MR. SMITH: There was an issue with that, uh --

THE COURT: Why would you bring that up?

MR. GRIFFITH: The only reason this one came up was because of the issue of failure to mitigate. I mean, obviously the Plaintiff has obligation to mitigate and this seemed to tread into that area. Plan or does not plan to make repairs, well they have a duty to mitigate so to the extent that's an issue on the attempted limine to talk about it. They need to repair as they go also.

THE COURT: Well, I mean, I think that depends on the kind of repair. If it's just a plumbing leak, of course they have -- they should, you know, they have a responsibility to mitigate that, I mean, they --

MR. GRIFFITH: Well if they have --

THE COURT: If they have like the, I mean, if the roof is caving in, I mean --

MR. GRIFFITH: Agreed but for example the chiller goes down and they are not fixing it because

they want to replace it with another chiller and then they run the building with one chiller for a year. That's all their decision, and that's their failure to mitigate. They could have fixed or replaced and they chose not to. Those are elements that are going to go into the case.

THE COURT: Well but that's not exactly what number 20 says.

MR. GRIFFITH: True and that's why I wasn't really sure, I mean it doesn't say we cannot bring their failure to mitigate.

THE COURT: I think Mr. Jolly is talking about the future. If they get a recovery are they going to make the repairs or are they required to make the repairs, and I don't think you should go into that, so I am going to grant number 20.

MR. GRIFFITH: If they made a recovery yeah we would agree.

THE COURT: But, you know, if it's little things, you know, we'll see. That's not what number 20 says. Okay, number 21.

MR. SMITH: 21, Your Honor, the issue with that was, uh, their requirement or duty to continue to maintain the facilities and the machinery and specifically for example the H.V.A.C. system in

accordance with manufacturer's, uh, information on it, and like that.  Uh, there is going to be an issue as to whether the school district conducted proper maintenance or conducted the required maintenance and repairs and they were questioned with regard to, uh, whether they went outside of the internal maintenance department to obtain bids or request for proposals, uh, with regard to repairs that they are claiming in this lawsuit.  I believe that, uh, whether -- what their history was and how many times they went and obtained any bids or request for proposals is certainly as relevant as how many internal work orders did you have and then -- within the school district to do the school as well.

THE COURT:  Mr. Jolly?

MR. N. JOLLY:  I am confused.

THE COURT:  I am too.  Because I mean for you to have -- I mean, I presume there was discovery exchanged whereby you were given some information about what repairs were done on each specific item that they are claiming is defective or not designed properly or malfunctioning or whatever.

MR. N. JOLLY:  I will withdraw that one. How's that?

THE COURT:  Okay.  I mean, you did exchange discovery in that regard.  Right?

MR. SMITH: We did, Your Honor, and we have been provided with thousands and thousands of records regarding maintenance, repairs --

THE COURT: Okay. He's withdrawing that one anyway. Okay, number 22 that any other building or the subject buildings --

MR. SMITH: We are in agreement.

THE COURT: Okay number 23?

MR. SMITH: I didn't have a problem with that but somebody did.

THE COURT: Did anyone have an issue with that, 23? Okay that's granted. Number 24. Is that agreed or not?

MR. SMITH: That was not. There's going to be an issue as to whether or not any certain employees or employees of the school district requested, uh, repairs because the repairs -- the request for repairs, according to the testimony, uh, is an internal process where it comes from -- the maintenance department is over here in part of the school district as a whole, and the school is the one they generate a work order or work request or contract request, uh, from the school district and it goes out to the maintenance department and then goes out. So, there's going to be definitely an issue as to whether or not the school itself has

issued or requested any repairs.

THE COURT: But like requested from Descon or from any subs or from whoever?

MR. SMITH: Well we asked and addressed it with regard to Descon or any subs and, and, all that was a separate issue, but even requesting it internally.

MR. GRIFFITH: Your Honor, really this is the failure to mitigate. That's the concern we have with all these repairs. They say we can't discuss it. That keeps us from discussing one of our affirmative defenses which is their failure to mitigate. They have an obligation and duty to mitigate. As long as we can bring up failure to mitigate issues, then we have no problem with any of this.

THE COURT: Uh-huh.

MR. GRIFFITH: With the caveat that we can discuss failure to mitigate to the extent it's applicable.

THE COURT: Mr. Jolly?

MR. N. JOLLY: I'll withdraw that.

MR. GRIFFITH: That covers 23 true 27 as long as we can discuss failure to mitigate --

MR. N. JOLLY: No, we disagree that emergency doesn't need to be declared on number 25, we disagree.

THE COURT: Okay, number 25 I mean y'all --

y'all are gonna argue that --

MR. SMITH: One of their experts opines that it's a life safety issue and there will be an issue and I'm sure testimony with regard to what the life safety issue is and whether an emergency has been declared.

MR. N. JOLLY: The life safety issue was solved with rerouting the buses and putting up some "caution don't pass this line" tape.

THE COURT: I am going to grant number 25.

MR. B. LOPEZ: May I chime in quickly on that one? The one issue on the life safety is that he actually says quote "it is my obligation to inform you that I have observed defects that in my professional opinion pose a threat of serious injury." Those are his words.

THE COURT: Right.

MR. B. LOPEZ: So certainly that needs to go towards an emergency. We believe that we have the --

THE COURT: He just said it had been resolved.

MR. B. LOPEZ: I think we disagree as to whether or not it had been resolved.

THE COURT: No, that it was resolved by someone going in there and taking other measures and --

MR. B. LOPEZ: So the measures with the possibility of the walls falling down has been resolved.

THE COURT: That's what he just said. Didn't you just say that?

MR. N. JOLLY: The errors --

THE COURT: I mean he didn't specify which ones.

MR. N. JOLLY: The areas were cordoned off.

MR. N. JOLLY: The condition still exists.

THE COURT: He's saying the safety measures that they took was, I guess, keeping kids out of that area?

MR. N. JOLLY: Right.

MR. B. LOPEZ: We are not talking about the retaining walls, we are talking about the actual walls of the school. You are saying there are no kids that are going there by the school -- by the walls of the school.

MR. N. JOLLY: The areas of concern have been cordoned off.

MR. B. LOPEZ: Okay.

THE COURT: Okay. Number 26.

MR. SMITH: I think that's agreed.

THE COURT: Number 27.

MR. SMITH: 27 relates to the same issues on mitigation and whether they maintain. We believe that we should be allowed to go into the question or the

issue of mitigation since that's one of our defenses and whether they complied with their obligation to maintain their own equipment.

MR. N. JOLLY: The problem with this is that they try to get the janitor, uh, to say that if there was anything wrong with the structural masonry he could fix it. The janitor resolved any problems.

THE COURT: We'll carry that over, we'll carry that over, and depending on who the witness is, and y'all can approach the bench on that.

MR. N. JOLLY: Thank you.

THE COURT: Okay, number 28.

MR. SMITH: 28 somebody raised a -- oh yeah.

MR. GRIFFITH: Your Honor --

MR. N. JOLLY: We'll withdraw that one. 28 is withdrawn.

THE COURT: Number 29?

MR. N. JOLLY: 29 agreed.

MR. SMITH: Agreed.

THE COURT: 30?

MR. SMITH: 30 is the same as the prior one that you addressed regarding emergency conditions.

MR. N. JOLLY: That's repetitive isn't it?

MR. SMITH: Yes.

MR. N. JOLLY: Withdrawn.

MR. SMITH: 31 --

THE COURT: Is 31 agreed or not?

MR. SMITH: It was not agreed.

MR. GRIFFITH: It's not agreed. It goes to argument. They can't limine out -- I guess the caviat is if we can't say there's no such thing as a perfect building then we have to acknowledge that there are -- all buildings are perfect? I mean it doesn't make any sense. I mean to me that's just not really the subject for motion in limine, it's argument.

MR. N. JOLLY: Carry that one over, Your Honor.

MR. GRIFFITH: Truly you I can not say there's such a thing as a perfect building. No one can say that.

THE COURT: No one can say that there's such a thing as a perfect building.

MR. GRIFFITH: Right so why am I liminied from say there's no such thing.

THE COURT: Because it's kind of a matter of perception, right?

MR. GRIFFITH: Yeah.

THE COURT: Yeah, let's just carry that over and see how it applies here. Number 32.

MR. SMITH: That wasn't agreed to. I don't

remember what the issue was or who had the issue.  I believe that it goes over to the same ideas of safe environment and the emergency --

THE COURT:  I guess we can carry that over and--

MR. SMITH:  Okay.

THE COURT:  -- and see what you are going to do with that.

MR. SMITH:  Uh, 33, I think the issue there was, uh, that there were -- I don't believe that anybody is going to say until the lawyers were hired, but there will be a, uh, issue as to when the problems arose was during that time period.

THE COURT:  Well I am going to grant that.  I am going to grant number 33.

MR. SMITH:  Okay, number 34 Plaintiff has the medical personnel to maintain the subject schools.  Uh, with regard to that, uh, the, the issue is not necessarily that they have adequate personnel to maintain the schools, but that if they passed an adequate number of people to this particular school, that they had issues with maintenance and all that they have by testimony the phones and the personnel to do it, but they didn't do it.

MR. N. JOLLY:  There's no maintenance expert

designated.

THE COURT: I am going to grant number 34. Number 35? Is that granted or not?

MR. SMITH: That was agreed. 36 was agreed. 37 agreed. 38 -- actually 38, 39, 40, 41, 42, were all agreed. 43 was agreed. And then somebody had an issue on 44.

MR. GRIFFITH: No.

THE COURT: Mr. Jolly, what are you saying there? I mean, I don't understand that one.

MR. N. JOLLY: We just had problems with, uh, attorneys asking fact witnesses basically to answer a jury charge question.

THE COURT: Well they know they -- I mean, you can't ask a lay witness anything that's required from an expert witness. I mean, but then there could be objections, I mean, that the person is not qualified to make such a -- let's just carry that one over and see how it applies.

MR. SMITH: Okay.

THE COURT: Number 45.

MR. SMITH: I think we agreed to 45, 46, 47, both 47s.

THE COURT: Ha, ha. 47 and 47 A.

MR. SMITH: 48. 48, 49, 50, 51 and 52 I

believe were all agreed to. Number 53 --

THE COURT: We are not going to talk about insurance. So that should be granted and that's granted.

MR. SMITH: Number 54 was agreed. Number 55 --

MR. GEALY: Your Honor, let me address number 55. This is Grant Gealy. This is on the HVAC air conditioning system. If what we are talking about is the question to the head maintenance person from La Grulla who is in charge of maintaining the HVAC system, if he has any problems with it that he's been unable to resolve and getting an answer. That's all I want to ask. I am not going to ask him about, you know, design issues, but I do want to be able to ask him about his experience in being the head maintenance guy of the H.V.A.C. system

THE COURT: Would there be a problem with that question? I don't think that's an expert opinion.

MR. N. JOLLY: Well, provided it stops right there because it typically doesn't.

THE COURT: Yeah, that's where it would stop.

MR. GEALY: The reason I say that is because it does say do you have a problem.

THE COURT: Let's carry it over. I am not

going to have a problem with that question of a maintenance person, you know, as long as you be careful where you are going with that, I mean, obviously they have no expertise.

MR. GEALY: Right and I don't intend to ask him design questions.

THE COURT: You can ask him questions about his experience with the unit or whatever. Okay, number 56.

MR. SMITH: 56, 57, 58, 59, 60 were agreed to.

THE COURT: Okay.

MR. N. JOLLY: 61 is withdrawn.

THE COURT: Okay.

MR. SMITH: 62.

MR. N. JOLLY: Limon Masonry.

MR. B. LOPEZ: On 62, Judge, that goes back to the latitude you talked about on cross examination. Questioning these experts to talk about that this is their line of work to go from school to school and find these problems. It's not unique just to this one.

MR. N. JOLLY: This is for charges for other schools.

THE COURT: I am not going to allow that. I grant number 62. I already said you could ask them general questions in cross-examination about do you

always get hired -- isn't it true you always get hired by the plaintiffs, and you always find something wrong with the schools, and fine.  But you can't go into -- you went to Roma I.S.D. and you found this problem with Roma aI.S.D., and then you went to a school in San Antonio South or whatever and you did the same thing and you got paid so much money for it, no.

MR. B. LOPEZ:  Not relevant.

THE COURT:  No.  I don't think so.

MR. B. LOPEZ:  Okay.

THE COURT:  Number 63.

MR. N. JOLLY:  That's withdrawn.  Redundant.

THE COURT:  64?

MR. SMITH:  We agreed.

THE COURT:  65?

MR. SMITH:  65 actually 65 and 66 goes again to the mitigation issue and, uh, we believe that we should be allowed to go into, uh, the maintenance history and all as to mitigation of damages.

THE COURT:  I don't think the Plaintiffs have a problem with the mitigation issue per se, do you gentlemen?

MR. N. JOLLY:  No.  No.

THE COURT:  I mean nobody wants this case to come back, no matter what.  So I mean we all know what

the law is and you get mitigation. If you pled it, if it's relevant, it comes in.

MR. N. JOLLY: Yes, ma'am.

MR. SMITH: I believe that was the only issue that was raised with those two.

THE COURT: So I mean 65 and 66 I guess we would carry over.

MR. SMITH: Okay.

THE COURT: Because mitigation does come in.

MR. SMITH: 67 we agreed. 68 there was an issue of that about some prior lawsuit or --

THE COURT: That's granted, that's not relevant.

MR. SMITH: Okay.

THE COURT: Number 69?

MR. SMITH: 69 was agreed, 70 and 71 were agreed. 72, uh, was not agreed.

MR. GRIFFITH: Your Honor, the only reason I was concerned about 72, obviously an expert cannot testify to something which they are not qualified. I don't even know why that would be the subject of a motion in limine.

MR. N. JOLLY: That's withdrawn.

THE COURT: Okay.

MR. GRIFFITH: Your Honor, since we are

arguing about experts. We have that order excluding testimony from non-design professionals as to design expertise. Basically what we talked about this morning before we realized we had all the motions in limine. Uh, I don't know if counsel has a problem with that if it works both ways. If the do non-design experts cannot testify about design issues only the design experts can, and I know from taking their -- the Plaintiff's experts depositions the non-design experts all said they weren't going to talk about design so I don't think there's really a problem to exclude that.

MR. B. LOPEZ: Your Honor, I have one clarification on the motion in limine. Number 68 it does mention the Plaintiff. I just want to make sure that that goes to all parties. In other words what's good for the Plaintiff is also good for the Defendants as well.

THE COURT: Exactly.

MR. B. LOPEZ: Thank you, Your Honor.

MR. N. JOLLY: All these limine orders apply to every party in the case. Right?

THE COURT: Right.

MR. N. JOLLY: Thank you, Your Honor.

MR. GRIFFITH: That's even better.

THE COURT: So, with those last statements

that Mr. Griffith just made what is your position on that, Mr. Jolly?  I mean, are you in agreement that the non-design experts are not going to talk about design defects?

MR. N. JOLLY:  No.  There are experts who will testify to the practical effect of the design defect on the building system and what he's trying to do is he's trying to exclude Mr. Holder's testimony about the effect of the air-conditioning design and we are not going to agree to that.  The man is not a professional engineer.  He's not the one providing the opinion about what is defective with the design, but he installed air-conditioning systems and evaluated those systems for over 50 years.  So, he can opine on what the effect of the design has on the practical -- on the system.

MR. GRIFFITH:  Your Honor, the concern I have is as you knokw now the certificate of merit is required just like with doctors now, to sue engineers and architects you actually have to have an architect or engineer in the field make those opinions that they did something wrong.  That's the way the State legislature has required the proof to be, and so my concern is that you can't just get a person that is an HVAC contractor or person that does exactimate programs and have them opine that the design professionals did or did not do

something properly. I mean, that clearly is not allowed. It would be like having a lay person testify a doctor did something wrong. That's not allowed.

MR. N. JOLLY: And -- I'm sorry.

MR. GRIFFITH: And so, so my concern is that before one of the design professionals -- non-design professionals --

THE COURT: Can we get like into specifics here? Because you are talking in a very broad manner.

MR. GRIFFITH: Uh-huh.

THE COURT: Is there a motion that you have before the Court --

MR. GRIFFITH: Yes.

THE COURT: -- where you are trying to strike one of his experts based on these statements that you are making that you've gotta design -- a non-design expert talking about a design defect. Is there a specific expert that you are seeking to strike so that we can just go ahead and argue that motion.

MR. GRIFFITH: I am not striking, I am limiting the testimony. Bill Holder has a lot of things he can say to this jury that are completely valid for him to say. He just can't get into design perameters and even he acknowledged that. That's my concern. I don't know what they are going to testify to --

THE COURT: Well then why --

MR. GRIFFITH: We want to do a motion in limine and before they bring up design issues we approach. That might be better than just excluding it.

THE COURT: Do you have an issue with that procedure?

MR. N. JOLLY: I would suggest carrying it because --

THE COURT: Yeah, let's carry it.

MR. N. JOLLY: When you hear the man's testimony you are going to immediately --

THE COURT: We'll carry it. When it gets to that point you can approach the bench.

MR. GRIFFITH: As long as before they solicit any design --

THE COURT: Right.

MR. GRIFFITH: -- expertise from a non-design professional, we have a chance to discuss it with you.

THE COURT: Right, we'll approach the bench and if we have to take it outside the presence of the jury, we'll do that. Okay.

MR. GRIFFITH: Thank you, Your Honor.

THE COURT: Okay, so that was the Plaintiff's motion in limine. Correct?

MR. SMITH: Yes, Your Honor.

THE COURT: Now, we have Descon's. Let me look at that one. And then before you leave we need to talk about the trial, how long y'all think it's going to take. And I am not going to be taking breaks just so you know. Even though I have Court the Duval County, or Jim Hogg County, I will will get a visiting Judge to go to those counties. I am not going to break in between the trial, I am not going to do that, and I think somebody said it was going to take three weeks. No it's not. We'll be here at 8:00 o'clock in the morning and if we have to go through 6, 7 or 8:00 o'clock at night, we are going to do that. If we have to work on the weekend, we are going to do that. We are not going to take three weeks to try this case. So FYI, if you have vacation plans or whatever, sorry. We are going to try this case until we finish it. Just so you know. So you might as well get cosy here here. Get a hotel room because you are going to spend a lot of time in Starr County and you are going to do it in an efficient manner. If we have to start at 7 a.m., and I can get the jury here at 7 am, that's what we'll do. So I hope you are all early risers.

MR. OLIVEIRA: Can we have an agreement, uh, that, uh, I guess by 5:00 p.m., uh, each day that, uh, whoever is presenting witnesses will agree to tell you

who the witnesses are?

THE COURT: Absolutely. You are going to do that.

MR. OLIVEIRA: Because that will expedite things a lot.

THE COURT: Yes, because you are going to, you know, you are not going to be trying, you know, preparing for cases that are, I mean, for witnesses that are not even going to be called until three days later, you are going to prepare for the witnesses that are going to be called the next day. So, yes you all need to exchange, you know, witness list and, you know, you don't have to strategize -- give away your whole strategy, but you do have to tell each side what witnesses you are going to call the next day so they can prepare. I mean, that's fair game here. Come on.

MR. OLIVEIRA: It does expedite things. I guess if we do start on Monday, assuming that we get to any witnesses on that Monday after voir dire, we just could ask that by Friday afternoon they tell us who their first one or two witnesses will be.

THE COURT: Okay. They are going to tell you what their first four witnesses are going to be and then y'all are going to do the same.

MR. OLIVEIRA: Okay.

THE COURT: Are we starting at 9 or at 1:30 for jury selection?

ASSISTANT COORDINATOR: Jury is 1:30.

MR. OLIVEIRA: We won't get into my witnesses on Monday then.

THE COURT: Probably not. And you are not going to take hours upon hours on voir dire either.

MR. OLIVEIRA: How much time will you give us on voir dire?

THE COURT: I mean you do have to ask them obviously a lot of questions, do you have kids in school, are they teachers, are they affiliated with the school in any way shape and form. I understand you have to get into that in voir dire and voir dire the jury completely. I think we got some -- I hope we brought some extra -- Eduina. I hope we gotta lot of extra jurors because last time we almost didn't make it.

ASSISTANT COORDINATOR: Yes, ma'am.

THE COURT: Did we get extra jurors called?

ASSISTANT COORDINATOR: We requested 550.

THE COURT: How much do we usually request?

ASSISTANT COORDINATOR: 400.

THE COURT: 400. So we have 550 coming in. I probably should have gotten more. Hopefully that will be enough if not I'll send the sheriff to go bring them

in.

MR. GRIFFITH:  We haven't talked about -- you are talking about equalizing strikes for side but would it be like 12 per side?

THE COURT:  We'll talk about that in a few minutes at the end or we'll talk about it that morning but I just want you all to make, you know, don't make any assumptions that we are going to be breaking in the middle of the trial because that just -- that's bad news for both sides.  I mean, people can -- people start talking in front of the juries, they go to restaurants, then somebody talks about it a little too loud, so then they hear something.  I don't go for that.  I don't like that.  I mean we are going to try this case and we are going to do it efficiently, and we are going to start early in the morning, and we are going to work late in the evenings, and I think the jury would probably appreciate that anyway.  I know most jurors do want to work late because they don't want to be here for three to four weeks.  Then they are going to end up hating one side or the other, and whoever is the hated one will be in a lot of trouble.  So, I mean y'all have to, you know, you don't have to say the same thing five times because if you do, I mean, you know, all of you have tried a lot of cases, I don't have to tell you.  We've

all been on the ends of zero verdicts and, you know, 52 million dollars verdicts, so we kind of already know that. Nobody is --

MR. GRIFFITH: We tried --

THE COURT: I don't see any spring chickens in the courtroom.

MR. GRIFFITH: We tried these cases before and they typically take 3 weeks or 4 weeks just so you know, you may want to consider paying the jury a little extra because they are going to be there for -- I mean there really is, even if we work 7 to 7 every day getting it done in two weeks would be --

THE COURT: I would hope you all would enter into a lot of stipulations, and look at qualifications and figure out do you really have to go through the 20 papers that your expert wrote because guess what? The jury is not going to care. I am telling you. They are not. So y'all think about how you are going to play that because if you want to piss them off, well hey you know that's your call, but I am not going to put up with any redundant testimony. And I mean I am just telling you now.

MR. GRIFFITH: I agree. We put on 23 witnesses on last week in Hidalgo County in three days.

THE COURT: 23 witnesses?

MR. GRIFFITH:  In three days.

THE COURT:  Oh okay.  Who was the Judge?

MR. GRIFFITH:  Bobby Flores.  And we did the same thing, we started at 8 went to 6, 6:30.

THE COURT:  And you finished the case?  Or what?  In a week?

MR. GRIFFITH:  On good Friday week.

THE COURT:  Wow.

MR. GRIFFITH:  We got the jury verdict back.

THE COURT:  How long did it take?

MR. GRIFFITH:  Monday to Thursday.

MR. GRIFFITH:  It wasn't a construction case.

THE COURT:  Oh.  I thought it was a construction case, wow.

MR. GRIFFITH:  But 23 witnesses is a lot of witnesses.

THE COURT:  Yes 23 witnesses is a lot of witnesses.

MR. GRIFFITH:  It was construction related.

THE COURT:  I mean just, you know, get to the good stuff quick and I think the jury will appreciate that, from both sides.  Okay, let's get to Descon's motion in limine.  So, uh, number 1 let's talk about what's agreed and let's start with what's agreed.

MR. N. JOLLY:  That's agreed.

THE COURT: Number one is agreed. Number 2?

MR. N. JOLLY: Disagreed.

THE COURT: Okay what the hell does that mean?

(Laughter)

MR. SMITH: It's arguing, arguing the charge that Descon wants you to answer this question no or Limon wants you to answer this question this way or like that trying to cut and dice the, uh, the charge or the questions submitted, uh, as to particular, particular parties. It's a comment on, on their evaluation of it, Your Honor.

MR. N. JOLLY: Well we got the right to argue that answering the breach of contract question is did Descon breach its contract.

THE COURT: I am going to overrule number 2. Number 3?

MR. N. JOLLY: That's disagreed.

THE COURT: Okay. Explain number 3 to me please.

MR. SMITH: With regard to the idea of trying to define what bias is, like that, and trying to create a, uh, create a situation for the jury, uh, that doesn't need to be addressed with regard to that.

THE COURT: Okay, give me an example of what you are talking about because I am not getting it. And

I am not afraid to say that.  I am just not.

MR. SMITH:  I'll tell you what I'll just withdraw it.  Number 4.

THE COURT:  Okay number 4.

MR. N. JOLLY:  That's agreed.

THE COURT:  Okay, number 5?

MR. N. JOLLY:  Disagreed.

THE COURT:  I'm sorry?

MR. N. JOLLY:  Disagreed.

THE COURT:  Five is disagree.

MR. SMITH:  All 5 asks for is that an opportunity be made to examine any exhibits before they are presented or are brought into the courtroom to be shown to the jury.

THE COURT:  Why is that unreasonable?  You can bring them into the courtroom.

MR. N. JOLLY:  You have to bring it into the courtroom.

THE COURT:  Yeah.

MR. SMITH:  I mean bringing it in like uncovered or whatever and that's all.

MR. N. JOLLY:  I won't do that.  That's not the way we roll.

MR. SMITH:  That's all.

MR. N. JOLLY:  I won't do that, promise.

THE COURT: So I am going to sustain it insofar as don't anybody show any exhibits to the jury until the other party has agreed or the Court has ruled regarding that. Number 6.

MR. N. JOLLY: We agree with everything on page 3, 6 through ten.

THE COURT: Okay.

MR. N. JOLLY: 11, 12 and 13 agreed.

THE COURT: Okay. 14?

MR. N. JOLLY: Disagree.

THE COURT: Isn't this kind of the same thing?

MR. N. JOLLY: We are not gonna pull any fast ones.

MR. SMITH: Basically all we are asking is that we get --

THE COURT: I mean he's not going to have to show them to you outside and say hey can I have your permission, you know, to -- no. But yes he should not show them to the jury until you've agreed or I've ruled if there's an objection.

MR. SMITH: I agree, Your Honor, and I point out that these are all couched for all parties.

THE COURT: Right. Exactly. I agree. So it's all counsel not Defendant's counsel. It's opposing counsel I guess without first allowing opposing counsel

to review the same outside the presence of the jury,

offering them before the Court and obtaining a ruling if

such is needed.  So that will be sustained.

Number 15.

MR. N. JOLLY:  Agreed.  16 is agreed.  17 is agreed.

THE COURT:  What about 18?  Are you alleging they withheld any evidence?

MR. N. JOLLY:  Well, there's contracts that are missing, file -- project files that are missing, you know, it's going to probably likely come up but if you want to carry that and see.

THE COURT:  We'll carry that over and see what happens.  Number 19?

MR. N. JOLLY:  Agreed.  20 is agreed.  21 is agreed.

THE COURT:  22.

MR. N. JOLLY:  22, uh, I mean this is similar to Mr. Gealy's, uh, issue about other lawsuits because one of the masonry defects at this school is identical to one at another school in Edinburg involving the same mason.  It may come up, it may not but --

THE COURT:  Carry it over.

MR. N. JOLLY:  Okay.

THE COURT:  23.

MR. N. JOLLY: Agreed, 24 is agreed, 25 and 26.

THE COURT: 27.

MR. N. JOLLY: Obviously the school district is entrusted with children. I am not going to bring up financially challenged but, you know, they are entrusted with children. The financially challenged --

THE COURT: I would allow the first part but not that it should prevail because it's financially challenged or super poor or the most poor or whatever so that will be sustained as modified.

MR. N. JOLLY: We agree with that.

THE COURT: Number 28.

MR. N. JOLLY: I disagree with that.

THE COURT: So do I. That's overruled. 29.

MR. N. JOLLY: We disagree with that one too. Of course we are going to show exhibits first.

THE COURT: Yeah, I mean there's gotta be -- that should be sustained.

MR. N. JOLLY: Yes, ma'am.

THE COURT: I am sustaining number 29. Number 30?

MR. N. JOLLY: Agreed. 31 is agreed and again 32 is agreed with all the parties except the mason. The previous lawsuit.

MR. B. LOPEZ: For 32 representing mason, that's exactly the same as Plaintiffs 68 which you already ruled on and it's not in the same case. Whatever Limon may have done in some other school has nothing to do with what happened at La Grulla.

MR. N. JOLLY: It probably won't come up but it might if they open the door for example.

THE COURT: I'll carry it over just in case the door is opened.

MR. B. LOPEZ: Thank you, Your Honor.

THE COURT: I will make a ruling at that point.

MR. B. LOPEZ: Thank you, Your Honor.

THE COURT: Number 33.

MR. N. JOLLY: That's disagreed. The problem with the way it was written is that he might try to exclude consulting experts that the retained testifying experts are relying on like the estimator for example.

THE COURT: We'll carry that over. 34?

MR. N. JOLLY: This is the appraisal report for the replacement cost appraisal of the property.

THE COURT: We'll carry that you over. 35?

MR. N. JOLLY: We agree.

THE COURT: 36?

MR. N. JOLLY: We disagree with 36. And this

is an important part of the case like this.

THE COURT:  I am overruling number 36.  37?

MR. N. JOLLY:  Agreed.

MR. B. LOPEZ:  There is one issue on 37 for Limon we have an issue with Descon's in the sense that they agree on it.  There's several exhibits that have been submitted by Descon which include this and so we just want to point that out.  The expert report --

THE COURT:  Are you saying 36 or 37?

MR. B. LOPEZ:  I'm sorry 37.  Just one thing I want to point out on 37 is just about those expert reports.  I agree with the statement but the reports for some reason are in Descon's exhibit list.  I don't believe they should go back to the jury.

MR. SMITH:  I don't disagree with that, Your Honor, and I am not sure we went through -- and we amended our exhibit list yesterday to try and take out duplicatives and issues like that.  I thought that had been taken care of but perhaps not.

MR. B. LOPEZ:  And it goes for everybody.  But Descon has it in theirs.

THE COURT:  Right.

MR. N. JOLLY:  There are things in the expert report that they rely on:  Photos, standards --

THE COURT:  We'll carry it over to see what

the specifities are when it comes up.  Okay, 38.

MR. N. JOLLY:  Agreed, 39 agreed, 40 agreed, 41, 42, 43, agreed with everybody except Limon if they open the door on other lawsuits.

THE COURT:  Okay.

MR. N. JOLLY:  And then 44 agreed.  And 45 we disagree with that.  Experts are allowed to talk to each other.

THE COURT:  Any response?  (pause) Okay I am going to overrule 45.  46?

MR. N. JOLLY:  Uh, well I just don't want to get put in a box where I can't make comments about whether or not somebody was credible or truthful.

THE COURT:  I mean you can argue, you just can't say like I think he's a liar because I have experiences with him and he's the biggest liar in town.

MR. N. JOLLY:  Ha, ha, yeah I agree with that.

THE COURT:  Ha, ha, ha so you've got to watch that.

MR. SMITH:  And that's what we are trying to address.

THE COURT:  But I am going to allow, I mean, at argument you certainly you could testify, you know, did you see that witness?  He couldn't even look at you when he was testifying, and that's kind of an attack on

their credibility, which I think every -- everybody can argue about at a closing argument, I mean, so I am going to overrule that but just be careful. I mean, it's not going to be your personal opinion, it's going to be based on what you saw at trial. Right? I mean not your personal opinion, based on your personal dealings with that person.

MR. SMITH: That's -- 47 goes to the personal opinion versus what you just mentioned.

MR. N. JOLLY: We agree with 47.

THE COURT: Okay.

MR. N. JOLLY: 48, 49.

THE COURT: Okay.

MR. N. JOLLY: Disagree on 50.

THE COURT: I mean well 46 -- I'm sorry, I said I overruled that. I'm sustaining it as modified. You can talk about credibility at argument or when you are cross-examining I guess your questions will be, uh, certainly they'll be undertones about credibility, I'm sure, but you can't say regarding your personal opinion based on your personal dealings. So I guess that goes hand in hand with 47 to some extent. So just be careful there. Y'all know what the rules are. Okay 49 and 50.

MR. N. JOLLY: Agreed. 50 disagreed.

MR. SMITH: Your Honor, with regard to number

50 Mr. Salinas Jr., made --

THE COURT:  Well hold on.  What happened to 49?

MR. SMITH:  That was agreed.

THE COURT:  Okay.  Because there's no spaces there.  Okay number 50 what?

MR. SMITH:  I'm sorry I didn't see that. Number 50, Mr. Arcadio Salinas Jr., made a number of opinions regarding the design of the school, the placement of the school, the construction of the school, all matters which he was not, uh, he didn't have a background in, didn't have expertise in and has not been designated as an expert witness with regard to any of that.  He, uh, rather freely and openly just kind of blurts all these things out which was an abundance of caution.  We raised this in the motion in limine, uh, that he's a fact witness and can certainly testify with regard to --

THE COURT:  To what he saw.

MR. SMITH:  -- the situations, it's just he's just kind of blurts before anybody --

THE COURT:  Like what would he say?

MR. SMITH:  He says he knew from day one that this was a horrible school cause nobody would design a school on the side of the hill.  Uh, he said that the

design was totally inappropriate for South Texas.  He makes numerous -- two or three hours worth of statements like that.

THE COURT:  Mr. Jolly, did he do that?

MR. N. JOLLY:  Judge, that's not my recollection.  He, he's asked and what other problems are are you aware of and somebody asks what are the problems you are aware of and he'll let you know.

THE COURT:  Okay, well make sure he doesn't blurt out any expert, you know, testimony that's within the realm of an expert and not a lay person.  I am going to sustain that.  Of course he can talk about his personal observations.

MR. N. JOLLY:  Right.

THE COURT:  And issues and things of that nature, regarding the construction or the alleged defects, but he can't, you know, talk like he's an expert.

MR. N. JOLLY:  Yes, ma'am.

THE COURT:  Because he's not.  Okay what else?

MR. SMITH:  That's it for Descon's motion, Your Honor.

THE COURT:  Who else has a motion in limine?

MR. B. LOPEZ:  Limon has one, I think we circulated it.  I don't know if there are any

objections.

THE COURT:  I don't know if I have that one.

ASSISTANT COORDINATOR:  Which one.

THE COURT:  Limon's.

MS. COOPERRIDER:  It was e-Filed but I can give you another paper copy if you would like one.

THE COURT:  Okay.

MR. B. LOPEZ:  The other thing I might suggest, Your Honor, because a lot of these issues have already been covered in front of the Court, if we could take a couple minutes to confer with Plaintiff's counsel and Descon and see which one we have already discussed.

THE COURT:  Okay.

MR. GRIFFITH:  That also would work with ours because I think pretty much everything in ours has already been discussed.  Uh, and to the extent that what has been agreed to on those is agreed on ours and we are fine.

THE COURT:  Why don't you all look at them and I will take my messages on my phone.

(After a brief recess the hearing resumed.)

THE COURT:  Cause number DC-14-46, back on record, Rio Grande City I.S.D. versus Descon.  We're on third-party Defendant Limon Masonry's proposed motion.

Let's start with number 1.

MR. N. JOLLY:  One is disagreed.

MR. B. LOPEZ:  Your Honor, the only --

MR. N. JOLLY:  Well this is the one we already covered about the previous.

THE COURT:  Unless opens the door agreed.

MR. N. JOLLY:  Yeah agreed.  2, 3, 4 agreed. 5 just depends on if there's some files that are missing.  We can ask where are your files.  I didn't keep it and I don't know.

MR. B. LOPEZ:  I'll be candid, Your Honor, we produced everything we have.  It's just a contract is what we have.  However, I don't know whether or not we kept documentation that has anything to do with the work we did ten years ago.  Just on one and two.  I don't know that it's relevant whether or not --

THE COURT:  Carry it over and see where that goes.  Number 6?

MR. N. JOLLY:  6 is agreed.

THE COURT:  7?

MR. N. JOLLY:  Well, I mean if the man is no longer in business might be one thing.  Certainly I am not going to bring up whether he's bankrupt or having financial difficulties, but if he's out of business.

THE COURT:  You can say he's out of business

but not why.

MR. B. LOPEZ: Okay.

THE COURT: So that will be granted.

MR. B. LOPEZ: Thank you, Your Honor.

THE COURT: Okay.

MR. N. JOLLY: Agreed on number 8. I had no idea who these guys -- or have been in jail for something, I don't care. Agreed on 9, 10, 11, 12, 13. Disagree on 14.

MR. B. LOPEZ: Only issue on 14, Your Honor, is just to the extent any of the experts are going to testify just as we have already established in their written report that they produced, not somebody who is going to raise something new we have no knowledge of.

MR. N. JOLLY: Okay, there's things in the report, then their deposition is taken, and if somebody doesn't ask the appropriate question during the deposition you can't expect them to tell them every single opinion they might have.

THE COURT: I am going to deny that one. Number 15?

MR. N. JOLLY: Agreed.

MR. B. LOPEZ: 16 is withdrawn, Your Honor.

THE COURT: Okay. 17?

MR. N. JOLLY: Agreed. 18 agreed, 19 agreed,

20 and 21 and 22 are agreed.

MR. B. LOPEZ:  23 is withdrawn.

MR. N. JOLLY:  Okay.  24 is agreed.  25 is not.

MR. B. LOPEZ:  Again our issue on 25 is just related to the insurance question.

MR. N. JOLLY:  Well what's good for the goose.

THE COURT:  I am going to deny number 25.

MR. N. JOLLY:  26 is agreed, 27, 28, 29 are agreed, 30 is agreed, 31 is not.

MR. B. LOPEZ:  31 is withdrawn.

MR. N. JOLLY:  32, disagreed.

MR. B. LOPEZ:  This goes back to the documents.

THE COURT:  He said agreed.

MR. B. LOPEZ:  He said agreed?

MR. N. JOLLY:  No, no 32 is disagreed.

THE COURT:  Oh disagreed.  I thought you said agreed.

MR. B. LOPEZ:  If we can treat it the way we did the other one we can carry it over when we get there.

MR. N. JOLLY:  That's fine.

THE COURT:  That's fine.  33?

MR. B. LOPEZ:  Withdrawn.

THE COURT:  34?

MR. B. LOPEZ:  Everything else is agreed to.

MR. N. JOLLY:  No, no 34 is not agreed.  You can't exclude all witnesses.

MR. B. LOPEZ:  I think that's just the rule in and of itself, but once we invoke the rule that will take care of that.

MR. N. JOLLY:  Experts are allowed in the courtroom.

MR. B. LOPEZ:  Okay, we can take that up when the trial starts.

THE COURT:  Okay we'll carry it over.

MR. N. JOLLY:  35 is agreed.  36, 37, 38 and 39 are agreed.

THE COURT:  Okay.  We need to keep all the motions in limine together so I can have them at trial.  I need all of these in a notebook for trial so I can refer to them.

ASSISTANT COORDINATOR:  Okay.

MR. GRIFFITH:  Your Honor.

THE COURT:  Okay what was that?

MR. GRIFFITH:  Your Honor, as long as I can rely on the motions in limine that have been granted so far, then I don't need to get a ruling on my motion in limine because it's pretty much the same things.  I only

had one that I had an issue on which is number 63.  I am withdrawing everything -- well I am withdrawing subject to the fact that I'll be able to rely -- everything else has been reciprocal so far.

THE COURT:  Right.  Everything is reciprocal.

MR. GRIFFITH:  And it applies to all parties. On that -- given that fact then I can withdraw mine except for I need to know whether Mr. Jolly will agree to number 63.

MR. N. JOLLY:  Yes.

MR. GRIFFITH:  Okay.  63 is just discussing -- there are no punitive damages pled, just discussing the financial condition of ERO, their revenue stream, what they are doing, those kind of things.  What kind of money they are making.

THE COURT:  Okay.

MR. GRIFFITH:  That's all I have, Your Honor.

THE COURT:  Okay, Mr. Garza.

MR. GARZA:  Your Honor, may I give you a courtesy copy of the motion in limine?

THE COURT:  Okay.

MR. GARZA:  I had filed 47 items but again with all the prior rulings by the Court I think 44 have gone away as long as I understand they are all reciprocal.

THE COURT:  Right.

MR. GARZA:  The 3 I have and I discussed with Mr. Jolly I understood he was opposed to them.  Number 33 says testimony that this defendant -- my client again is the roofer, Your Honor, C & M contracting -- that, uh, any testimony that my client may have violated any federal or state statute or building codes without first proving that those codes apply.  Uh, there's been a lot of testimony by different experts about what codes may have applied and I think that it's incumbent upon the Plaintiff to first establish what code applies before they have experts opining on alleged violations.

THE COURT:  Okay we'll carry that over.

MR. GARZA:  Okay.  I am going to jump to another one and leave the last one at the end.  Number 43, Your Honor.  It's handwriting and other markings on exhibits.  This should be for everybody.  If anybody introduces an exhibit that has any handwritten notes on it, we need to establish before it's presented to the jury whose notes they were.  I mean, if it's an expert and he wrote on the notes that's one thing, but we don't want somebody who may have written things on a document that have not been presented until it's established who it is.  That's number 43.

MR. N. JOLLY:  There's been a bunch of

documents produced with handwriting on them and during deposition, uh --

THE COURT: We'll carry it over, we'll look at the handwritten parts.

MR. N. JOLLY: Yes, it just depends really. Some I might agree but some the witness may have been questioned about it.

THE COURT: Okay.

MR. GARZA: The other one I have, Your Honor, is number 36, references to hearsay sources which also sort of goes with number 45 which the Court had ruled on earlier on Descon Construction. In my particular case as the Court knows you took under advisement our motion to exclude Mr. O'Bannon's testimony. He relied on that one-page document from a person who to my knowledge has not been identified as a consulting expert and his testimony he never got any supporting documentation. So, I need to make sure that I, if the Court doesn't grant my motion as it pertains to my client, C & M, I need to be able to -- the Plaintiff has to be able to establish before he starts asking him about that document, you know, under the hearsay rules to make sure it's not hearsay before it can come in. That's the intent of 36, which I think goes hand in hand with the 45 from before.

THE COURT: I'll carry that over also.

MR. GARZA: That's all I have, Your Honor, thank you.

MR. GEALY: Your Honor, on behalf of Halff, we only have I think two issues, that's number 3 and 4. And otherwise as Mr. Griffith has said to the extent rulings have been made on prior motions that those apply equally.

THE COURT: Okay we'll go ahead and carry that over. And which other one?

MR. GEALY: Just 3 and 4.

THE COURT: Do you agree to number 4 Mr. Jolly?

MR. N. JOLLY: No, Your Honor. That, that's the one about opining on negligence. I think experts are entitled to --

MR. GEALY: Without laying a proper predicate.

MR. N. JOLLY: I agree to that.

THE COURT: That's all he's saying, without laying the proper predicate.

MR. N. JOLLY: Oh, okay. Yes we plan to do that.

THE COURT: Okay.

MR. GEALY: Thank you.

MR. GROSS: Your Honor, Louis Gross on behalf

of Twin City Glass.

THE COURT:  Okay.

MR. GROSS:  Your Honor, our motion in limine has been submitted to all parties, it was reviewed by Plaintiff and counsel for Descon, and no objections, Your Honor.  Easiest way would be just to submit it as agreed.

MR. N. JOLLY:  Well, yeah, I didn't see anything in there that wasn't duplicative.  That was the conversation we had.

MR. SMITH:  That was my quick review was that it's all been covered so we have no objection.

MR. N. JOLLY:  Wasn't there one at the very end, John, that, uh, was perhaps additional?

MR. GUERRA:  You said you didn't have a problem but you thought Descon might.

MR. N. JOLLY:  Oh.

MR. SMITH:  Well let me look at it.

MR. N. JOLLY:  Well there's one here about the welfare of the children, that's the only one I think that has already been covered though that the safety of the children is relevant.

MR. SMITH:  I don't have an objection.

THE COURT:  Okay.  So everything is agreed to.  Okay.

MR. DUNNAHOO:  Your Honor, Michael Donnahoo for Zarate Suspended Ceilings.  I filed a motion in limine and order granting same circulated among counsel.  I don't believe there's been any opposition filed to it.  Uh, I would however state that I probably need to withdraw number 27 on mine which, uh, dealt with --

THE COURT:  I don't have a copy of that one in front of me.  Do you have one?

MR. DUNNAHOO:  Yes, I have, Your Honor.  Number 27 dealt with defense cooperation and, uh, so I want to withdraw that subject to the Court's ruling from earlier today.

THE COURT:  Okay.  So that's withdrawn.

MR. DUNNAHOO:  Number 27.

THE COURT:  Everything else is agreed.

MR. DUNNAHOO:  It's pretty duplicative.  There's an issue that Descon's counsel and I have discussed.

MR. SMITH:  We have an understanding about, uh, about how we are going to be presenting subcontracts and all with regard to, uh, uh, presenting them, but not referring to them as a duty or like that until after they come into evidence.

THE COURT:  Okay.  I am not following you.

MR. SMITH:  I just wanted to make known that

the extent that our discussion is that in identifying who the parties are and all we will be referring to the subcontract that they had a subcontract to do work as set out in there, that that would be the extent of it, that that we would not go into, uh, delegating duties to them, that that wouldn't come up until subcontracts were admitted.

THE COURT: Okay.

MR. DUNNAHOO: That is my understanding of our discussion and agreement.

THE COURT: Okay. Anything else?

MR. N. JOLLY: The only other thing we had, Your Honor, was we were trying to subpoena Mr. Smith and haven't been able to find him, but I assume that I believe he's still the designated representative of Descon for trial. If we can have an agreement that if we need to call the gentleman --

MR. SMITH: Michael C. Smith is the designated representative and my understanding is he'll be here.

MR. N. JOLLY: Okay. And so now that we have some newly identified Smith family members, uh, the Plaintiff needs leave to add those people to the witness list and cooperation from Descon to make them available during our case in chief within 24 hour notice.

MR. SMITH: Your Honor, we cannot agree to

that with anybody that's been added. I know the Court's ruling and I am not ignoring that. I have not talked to these people beyond providing them with a copy of the pleading and telling them to forward it on to their insurance carriers and forwarded it on to their legal counsel. We will inform them of the Court's ruling. I probably already have, uh, through the office, of the Court's ruling, but I can't stand here today and say that I have their understanding and cooperation and will be able to bring them here.

MR. N. JOLLY: Well and the same would apply to Wayne Medlin.

MR. SMITH: I have not discussed it with Mr. Medlin. Mr. Medlin has issues, health issues, uh, mental issues. In fact I am not even sure that Mr. Medlin has the capacity to be sued, mentally, without the appointment or somebody to represent his interests. Those are all issues that, uh, he's going to have to deal with or his family deal with.

THE COURT: This is the first time that comes up?

MR. SMITH: He basically has dimentia.

THE COURT: Is this the first time that this comes up?

MR. SMITH: We have never been asked to --

with regard to Wayne Medlin to produce him for deposition or anything else. We did not, uh -- it's never been addressed because it's never been an issue, Your Honor.

MR. N. JOLLY: Well, he's the legal representative in the contract and we have consistently indicated that everybody signing agreements, everybody signing documents, everybody acting as representative, everybody identified in everything might be called as a witness and Mr. Medlin is one of the presidents of the predecessor to Texas Descon. Uh, you know, I mean without -- I, I -- I don't know how you know what the man's condition is but, uh, you know, you did -- we did manage to get a real quick affidavit from Mr. Smith.

MR. SMITH: Mr. Smith is available and Mr. Smith will be here. It's Michael C. Smith. Mr. Medlin I became aware of it and all when we tried to talk to him or someone in our office tried to discuss with him what you filed last week, and I was told that he repeated the same thing four or five times in the first couple minutes of discussion. Hi, how you doin', who are you?

MR. N. JOLLY: These other Smiths are relatives, they are sons, nephews, cousins, you know, they are going around changing the name of the party

defendant in this case.

MR. SMITH: Well I understand that's Plaintiff's counsel's position, I understand the Court's decision, but certainly I don't agree with what Plaintiff's counsel has represented. Uh, we have made it known to them, he's basically asking me if I can produce, if I can agree today that they'll be here and be ready for trial as a witness and we have given them the, uh, pleading, we have told them to put their insurance companies on notice, we told them to get their counsel involved and to talk to their counsel about it and figure out what needs to be done. We will have either told them already today or certainly will by tomorrow morning what the Court's ruling has been and we will have to discuss with them and their counsel what the involvement of their counsel, us, or anybody else is going to be. So, all I'm saying is no I cannot stand here right now before the Court and positively state that yes these people will be here and will be available for trial.

MR. N. JOLLY: How about this, Your Honor? How about if we are provided the -- a reliable address to contact these gentlemen and serve them with a subpoena?

MR. SMITH: As far as -- I have no problem

with that as far as I know, you know, where Texas Descon is, you know, where Michael C. Smith, you've sued them before.

MR. N. JOLLY: Every time my guy walks in there he's told he can't see them. So, you know, they are avoiding process. Frank has been over there three times.

THE COURT: You are to provide an address immediately.

MR. SMITH: I will, Your Honor. I don't know where this Frank has gone to. Michael D. Smith as I understand it resides in, uh -- outside of San Antonio.

THE COURT: Do you have the address?

MR. SMITH: Not on me but I will provide it to Mr. Jolly.

THE COURT: Okay you need to do it by 5:00 o'clock today. You have an hour. What else?

MR. N. JOLLY: That's it from the Plaintiff.

MR. B. LOPEZ: Your Honor, just one thing to take it up on another point. There are different exhibit lists that are circulated. What's not circulated are actual physical copies of the exhibits. We have some objections to Descon's and to the Plaintiff's exhibits. Uh, but might make more sense if we are going to start on that Monday at 1:30, maybe we

can all produce all physical exhibits some time that morning and we can hash it out there.

THE COURT:  Guys, didn't you all -- I told you all to exchange exhibits and lists before today.

MR. SMITH:  Your Honor --

THE COURT:  That way we would be ready today because in the morning I've gotta docket.  I have a criminal docket that I have to contend with that morning and that's why I said we are not going to be doing any pre-trial matters that day.  We are going to do everything on Friday even if we have to work until midnight, I don't care.  Okay?  I can be here until midnight today.

MR. SMITH:  Your Honor, we provided a trial exhibit list, we went through and in view of some objections and also looking at it to eliminate where things were listed twice and all, we did an amended exhibit list, we have provided a FTP link and uploaded all of our exhibits on that.  Uh, it was done, uh, yesterday morning.

THE COURT:  So yesterday y'all exchanged exhibits, everybody?

MR. B. LOPEZ:  Limon Masonry did produce the exhibits.

MR. N. JOLLY:  I think that I understood

exhibit list as opposed to exhibits but we are going to do the exact same thing that Descon has done.

THE COURT: Generally shouldn't you all already know what the exhibits are when the exhibit list -- the list names the exhibit and it's probably contract between whatever, whatever, and whoever.

MR. SMITH: Some of them.

THE COURT: Everybody should kind of already know what the exhibits are, I mean, unless there's some demonstrative or something that no one has shown each other, I mean, what are we talking about here?

MR. SMITH: There's some --

THE COURT: I'm talking to him.

MR. B. LOPEZ: From Limon Masonry standpoint, there are numerous demonstratives that are on the list that should not go back to the jury because they are demonstratives. They can be shown to the jury but not to go back to the jury.

THE COURT: Well they are not going to go to the back.

MR. B. LOPEZ: Second thing, the reports which we believe are hearsay, any of the experts or parties can testify about it, but those reports shouldn't go back.

THE COURT: Right.

MR. B. LOPEZ: Short of that we actually filed all our objections to all parties' exhibits and are prepared to argue them right now.

THE COURT: Okay. Are you all ready to go on those arguments?

MR. SMITH: We can.

MR. N. JOLLY: I guess what we are talking about is Mr. Lopez wants to have a hearing on the Plaintiff's Exhibit list?

MR. B. LOPEZ: No, my issue with Descon and with the Plaintiff really more to Descon, some I think are the same.

THE COURT: What exhibits are you objecting to? Come forward and let's just do it.

MR. B. LOPEZ: Okay.

THE COURT: Did you file an objection already?

MR. B. LOPEZ: We filed the objections, our objections to all parties' exhibits.

MR. SMITH: Your Honor, I hate to ask but you gave me an hour to get the -- I need to get somebody to -- can I go out in the hallway --

THE COURT: Yeah, take a couple minutes and just hold on Mr. Lopez. I will let the Plaintiff address the objections to their exhibits while you step out and make the call for all of those people's

addresses.

MR. SMITH:  Thank you, Your Honor.

THE COURT:  Why don't I see your motion objecting to their exhibits?

MR. B. LOPEZ:  I can see when we filed it.

THE COURT:  I see your trial exhibits, your exhibit list, your contentions, your proposed findings of fact.

MR. B. LOPEZ:  I think when he filed it yesterday.

THE COURT:  Oh, okay.  Do you have an extra copy?

MR. B. LOPEZ:  I have one.  Let me see if I have gotta second one, Your Honor.  (Pause)  May I approach?

THE COURT:  Yes.  Okay, so let's talk about the objections to the ones that you have against Rio Grande City I.S.D.

MR. B. LOPEZ:  Yes, Your Honor.  We tried to group them because some are covering the same issues.  1 through 24 are the same.  Plaintiff correctly provided some that were -- that had insurance in there and they -- then they have some that do not have insurance. We just want to make sure the ones that mention the insurance do not go back.

MR. N. JOLLY:  We are going to redact insurance.

MR. B. LOPEZ:  Okay.

THE COURT:  Okay.

MR. N. JOLLY:  I thought we had done them all, but if somebody sees the word insurance just let me know.

THE COURT:  Yeah, with reference to the objections, if you see the word insurance redact it okay?  Number 26.

MR. B. LOPEZ:  We are going off the fifth amended list.  It just says on there excerpts from contracts.  I don't have a problem with any excerpts at all, we just want to make sure that it's a contract that's already in evidence.

MR. N. JOLLY:  It will be one that's in evidence.

THE COURT:  Okay.

MR. B. LOPEZ:  27 and 28 if that's part of the experts -- I'm sorry, if that's part of the Plaintiff's production we have no objection to that.

MR. N. JOLLY:  It is.  It was the project file that the Plaintiff maintained during construction.

THE COURT:  Okay.

MR. B. LOPEZ:  29, Your Honor, I think relates

to Ruben Villarreal, some reports that he did.

MR. N. JOLLY: They are in the binders.

MR. B. LOPEZ: And the issue I think with those is he has not -- this is hearsay and he has not actually testified about those reports. It's a piece of paper saying what -- something that he says. He's never actually gone and testified about that. He has not been produced about that.

THE COURT: Who is Ruben Villarreal?

MR. N. JOLLY: He was hired to walk around and take pictures and report back.

THE COURT: The ex-mayor?

MR. N. JOLLY: I am not really sure, Your Honor, I know his nickname is Chino.

THE COURT: Oh, the construction guy.

MR. N. JOLLY: I guess.

THE COURT: Okay. And so?

MR. N. JOLLY: Business records have been produced, experts are going to rely on them.

MR. B. LOPEZ: We haven't seen them so if it's something that --

MR. N. JOLLY: Yes they have, it's in the binders that we produced, and so have the photos have been produced.

THE COURT: So you've given everybody a copy

of your --

MR. N. JOLLY:  Correct --

THE COURT:  -- exhibits.

MR. N. JOLLY:  And Mr. Griffith wanted -- during one deposition found out about the pictures, uh, because a lot of them were included in the binders that were produced, but a lot of them weren't and so an I.T. person went through his old computer and found them and printed all the pictures out and found them and we produced them.

THE COURT:  Okay.  Of course you can make your objections during trial.

MR. B. LOPEZ:  We just want to seem them.  Once we see them we may withdraw that.

THE COURT:  Right.  Of course for like for the record you are going to have to make your objections anyway even though we are going through the exhibits right now.

MR. B. LOPEZ:  Sure.  We had objected to 31 and 32, we are okay with those.  I am assuming it was part of what was produced.

MR. N. JOLLY:  It was produced, maintenance orders or requests.

THE COURT:  Okay.

MR. B. LOPEZ:  33 through about 72 the only

thing we are objecting to those are those are the expert reports that we have already discussed that should not go back.

THE COURT: They are not going to go back.

MR. N. JOLLY: Well these are pictures from the reports, they C.V., excerpts from codes that were referred to in the reports.

THE COURT: But he's talking about the report itself.

MR. B. LOPEZ: I am not objecting to the C.V., I am not objecting to references to code, or pictures, just the report itself.

THE COURT: Right.

MR. N. JOLLY: We are not going to offer a full report into evidence.

MR. B. LOPEZ: Okay. With those being withdrawn we are okay with the rest as to the experts, Your Honor.

THE COURT: Okay.

MR. N. JOLLY: There's nothing being withdrawn.

THE COURT: Right. It's just not --

MR. B. LOPEZ: It's not being offered --

THE COURT: Guys --

MR. N. JOLLY: There's no offer.

THE COURT: Guys, it's not -- ya, that's enough. You know what goes back and what doesn't, you know, let's move on.

MR. B. LOPEZ: Okay. 72 through I believe it's 79, as long as all of those -- we just didn't know what they were, if that's stuff that's already been produced we're fine with that.

MR. N. JOLLY: Okay.

MR. B. LOPEZ: 80 and 81 is talking about defects map and legend. There was a document that was produced I believe. If that's what that's referencing we are okay with that, otherwise I don't know what it refers to.

MR. N. JOLLY: There is one that will have every single defect from every piece of testimony on one final document.

MR. B. LOPEZ: That's the color --

MR. N. JOLLY: Is that the one you want?

MR. B. LOPEZ: I just want to make sure that's what it is.

MR. N. JOLLY: Yeah we produced that.

MR. B. LOPEZ: Okay. Then we are okay with that, we just didn't know what it was.

THE COURT: Okay.

MR. B. LOPEZ: 85 through 97 we have no

problem with.  The exemplars we believe which is 98 through 100 of the brick-tie, the brick, and the mock wall, those are demonstrative.  We have no problem with the jury seeing them, but they shouldn't go back.

MR. N. JOLLY:  That's right.

MR. B. LOPEZ:  100 through 103, 104, no problems.  105 again is a demonstrative and 106 is a demonstrative no problem with the jury seeing it but it shouldn't be an exhibit.

THE COURT:  Okay, you don't even have to say that any more.

MR. B. LOPEZ:  Thank you, Your Honor.

MR. N. JOLLY:  The GPR, are you objecting to that?

MR. B. LOPEZ:  Just the part, uh, --

MR. N. JOLLY:  Demonstrative aide.

MR. B. LOPEZ:  The actual report I have no problem.

MR. N. JOLLY:  The GPR costs 16, $20,000 and we are not giving that over to anybody.

MR. B. LOPEZ:  Uh --

MR. N. JOLLY:  It doesn't belong to me.  But it's a demonstrative aide.

MR. B. LOPEZ:  We have no problems then, Your Honor, with the understanding that we have already

covered some of these and we don't need to take up the Court's time until we get to, uh, 122. I just didn't know who -- when it says Defendant I am assuming that's Descon?

MR. N. JOLLY: Descon and potentially ERO.

MR. B. LOPEZ: We have no objection on that. 123 is demonstrative, we don't need to cover that.

(Pause)

THE COURT: Go over everything again and then unless there's anything glaring you can make your objections as they are offering the exhibits.

MR. B. LOPEZ: We don't have any objection.

THE COURT: I guess with regards to Descon I don't think there's -- is there anything that's just glaring here or that we have to take up now that we wouldn't take up while the exhibits are being offered?

MR. B. LOPEZ: You've already given us guidance.

THE COURT: Okay.

MR. B. LOPEZ: It's going to be the same for Descon, we have the same complaint about them.

MR. SMITH: Just so we are clear on it before I left yesterday to come down here I told Mr. Lopez we went through and tried to eliminate the duplications, and tried to address some of his objections, uh, so the

list that he's going off of with us has been changed.

There was filed -- I got the filing notice but I don't

have a copy with me -- of an amended trial list exhibit

list that didn't add any new exhibits.

MR. N. JOLLY:  Mine?

MR. SMITH:  No mine.  It didn't add any new

exhibits it just took out, uh, exhibits that were

duplicates and that, uh, he had objections to and like

that.  So I told him if he wants to go through and see

if we have satisfied him I'll address that with him and

I think we can take care of it based on what you've

already ordered.

MR. B. LOPEZ:  With the understanding as long

as everything that you've already discussed, they agree

with that, we are fine with that.

THE COURT:  Okay.  What else?

MR. N. JOLLY:  That's it.

THE COURT:  Is there any other issues that we

need to take up before Monday?  Monday of trial.

MR. GEALY:  Your Honor, there's some documents

out of Mr. Stacy's file, who is the Plaintiff's expert,

that have not been produced, that were not produced at

the time of the deposition.  I made Mr. Jolly aware of

that, he said he's going to go back and get those for me

but I have not gotten them yet.

MR. N. JOLLY: I forwarded that to Mr. Stacy and I haven't heard from him yet, so I will follow up and we'll let grant know by e-mail --

MR. GEALY: That's fine.

MR. N. JOLLY: -- while we are driving back.

MR. GEALY: That's fine, I have spoken to him about it.

MR. N. JOLLY: Thanks for the reminder.

THE COURT: Anything else.

MR. B. LOPEZ: Rule 166, which you asked us to comply with, it does mention deposition excerpts. I don't know who is going to testify live, but I don't know that we need to take them up if they are coming live. At least for Limon's purposes --

THE COURT: I want to know from the Plaintiff right now which of your experts are coming live.

MR. N. JOLLY: Right now four days in a row worth, uh, Bill Holder, Roland Partida, Randy Lackner and that's about all we have planned out so far.

THE COURT: That are coming live.

MR. N. JOLLY: Correct.

THE COURT: And for Descon who is coming live?

MR. SMITH: As far as experts would be, uh, the gentleman from Wes Chany, I have been working with them and Legal Arms, Your Honor, that's -- I need to

rethink on, uh, that based on the Court's earlier rulings on summary judgments, but I believe that's the only one as far as experts other than, uh, former people with, uh, non-retained that were with, uh, Descon --

THE COURT:  Like who?

MR. SMITH:  Joe Betancourt who was the, uh, employee of Descon back at the time, it was a job superintendent, Michael C. Smith who we have told the Court would be available and would be here as a representative of Descon, uh, they are the only ones right now that, uh, I would think.  We have an H.V.A.C gentleman designated, but I am not sure that we will be bringing him, uh, based on things that have gone on.

THE COURT:  And Limon?

MR. B. LOPEZ:  We are bringing the representative from Limon Masonry.

THE COURT:  Who?

MR. B. LOPEZ:  Rolando Limon is going to testify, and then one expert Mr. Castro who is our expert witness, and that's all.

THE COURT:  Anybody else?

MR. KASPERITIS:  Your Honor, our witness list had only two people on it which was the representative of, uh, D & J Site Construction, the corporate representative who may testify live and then, uh, our

expert witness Eric Moody, so that's -- it's Mark Goldhamer will be the corporate representative and Eric Moody is our expert.

MR. DUNNAHOO: For Zarate Suspended Ceilings, Fred Zarate will be here to testify as well as our expert witness Matt *Ostrika.

MR. GARZA: On behalf of C & M Contracting we'll have our expert Rob Hernandez. The company has been closed for several years, the owner of the company died. I could bring the widow, I am not sure I want to put her through that.

(Laughter).

THE COURT: Whatever works.

MR. GARZA: For sympathy I contemplated bringing her, but right now it would be just that person and of course myself to the extent that I have to testify on my attorneys fees and opposition to any claim for attorneys fees.

MR. GEALY: For Halff Engineers, Trey Murray and Bill Harris.

THE COURT: David?

MR. OLIVEIRA: I am with Descon.

THE COURT: That's right. Okay.

MR. GROSS: Louis Gross for Twin City Glass. Our corporate representative Daniel Vasquez and our

expert Darren *Lasker.

MR. O. LOPEZ: Oscar Lopez. For ERO it would be. Eric Green and Dan Medley.

MR. DUNNAHOO: You are not bringing Block?

MR. O. LOPEZ: Block I'm sure will be here but --

THE COURT: Sometimes less is more.

MR. SMITH: I just wanted to bring up, I know nobody really mentioned themselves, I know there's attorneys fees issues. I assume people that have designated attorneys fees issue experts they'll be here and testifying.

MR. N. JOLLY: I will be here every day.

THE COURT: What else do we have to -- well okay hold on then. How many are going to call witnesses by deposition? I mean, are we talking about 20?

MR. N. JOLLY: No.

THE COURT: 10, 15, how many?

MR. N. JOLLY: We are going to call probably four or five tops.

MR. SMITH: Assuming that the necessary Plaintiff's depositions or Plaintiff's witnesses are presented, we will have deposition excerpts. If Mr. Jolly has anybody that he can positively say he's not bringing, then yes we will address excerpts.

THE COURT: Let me make it easy for you. All the week, weekend, and during the week, you all will trade deposition excerpts, and you will have them ready to go because I am not going to have any B.S.ing during the trial, oh we need to take a break and bring our I.T. guy in or I don't know what happened, Judge. If that happens you are going to read it.

MR. N. JOLLY: Oooo!

THE COURT: I am not going to wait for any I.T. guys that are not available, that are not here, that the computer fell apart, I am not going to put up with that. We are going to try this case, we are going to get it done, you are going to have your excerpts, you better have your I.T. guys, your backups, you do whatever you have to do, but when it's time to call that witness, that witness, that deposition is going to be on a screen and played or you are going to read it because I am not going to wait.

MR. SMITH: To aide in that, Your Honor, would it be possible to ask the Court, uh, to require everybody to designate off of their expert list, the list that they have already filed, uh, designation of experts, anybody that they are not going to call by a certain date. Then we'll know.

MR. N. JOLLY: You know, they just they --

this goes on and on and on. Give them an inch and they want a mile, and they are going to have ours for weeks while we are in trial and we have theirs yes but, you know, now they are able to respond to it --

THE COURT: You all -- all am saying is whoever you designated that you said -- and you've already said on the record who you are calling live and who you are not. Whoever you are not calling live, trade your excerpts and do it now.

MR. SMITH: Okay.

THE COURT: Like that way you know what you have to respond to -- like they know -- you know what they are going to put on so you know what portions you need to play in response to that, and which of your experts you want to -- portions you want to play in response to what he just told you he was going to put on. So, --

MR. SMITH: Well --

THE COURT: Just do it. I don't care if you have to work all weekend, I did it. My poor kids, you know, were at home while I was at that time office, 5 in the morning till midnight or two or three in the morning and, you know, David Oliveira knows because we did all those crazy Phen Phen cases and all that other stuff and we were never home, we always were working. We all got

up super early, went to bed super late working, and that happens when you are in trial.

MR. SMITH: No problem, Your Honor, we'll have them done.

THE COURT: For both sides.

MR. N. JOLLY: Yes, ma'am.

THE COURT: What else?

MR. SMITH: Uh, (pause) Just --

THE COURT: Y'all better look at those jury charges again.

MR. SMITH: Oh they need to be --

THE COURT: I am not going to take 20 hours on the charge conference. No way in hell is that going to happen. I mean we are going to look at -- you all are going to know what went before the jury and what was enough regarding the causes of action and what should go in and what shouldn't and we are not going to take 20 hours on a charge conference.

MR. N. JOLLY: His is 230 pages now.

MR. SMITH: Well it will be drastically changed since all of the, uh, subcontractors have been chopped out. We have the breach of warranty, breach of contract issues, and the questions with regard to each of them I had to go through, so we will go through and take out now what needs to come out.

THE COURT: I mean if I were you I would start now because y'all don't have a lot of time.

MR. SMITH: No, we are, Your Honor.

THE COURT: You have what like a week?

MR. B. LOPEZ: Yes, ma'am.

MR. SMITH: A week.

THE COURT: Unless you go settle it.

MR. N. JOLLY: That's been tried.

THE COURT: Well keep trying.

MR. SMITH: So you want us here 9:00 o'clock on Monday.

THE COURT: Yeah. I want you here at 9 clock, even though we are not going to do jury selection until 1:30, but that way if, you know, many a case has settled at, you know, courtroom steps, you know, and that way if there's any other issues we'll take them up then, and you know, if there's any major issues guys and I mean this is the way we prepared back then and if there's any major issues that we have not talked about today that you know is going to be just a sticking point, do a letter brief and have it ready. I mean, we did that all the time, David and I when we worked on those cases and, you know, we knew it was an issue that was going to come up and we just did a little bit of extra work and that way I don't have to say let's take a recess and let me

go look and let me get on Lexis or Westlaw or whatever and let me look for it and let me get -- just get the cases, hard copy, and bring them and do like a one-page or a half-page, you know, letter brief and say look this issue is going to come up, we know it's going to come up, and you all know already what's going to come up because you have been fighting for who knows how long already, and so you all know what's going to come up at trial and there's going to be particular points of contention that both of you are going to be digging your heels in, and I am going to have to make a quick decision so, you know, help he me out here and help yourself out because the longer y'all keep that jury in that box I am telling you the more pissed off they are going to get, and like I am saying I don't know what side they are going to be mad at, but they are going to be mad at someone and it's not going to be me. So, uh, so just get it together and that way when we send them to the back, when we need to get them out of the courtroom so we can discuss legal issues, that way it will flow really fast and I will have case law in front of me and letter briefs in front of me to where I can read, them and just go back and maybe confirm, and make a decision, and we move on.

What else do you all think is going to come

up?  Is there anything off the top of your head?  We usually take a jury break in the morning like 20 minutes, and we do one in the afternoon also because, you know, they have got to stretch their legs or whatever, they get tired of sitting in there in the jury box all day, so we'll do that.

We'll do like -- generally I do an hour and a half lunch break but I think I am probably going just going to be doing an hour.  So, we can, you know, just get it going.  So, if you can have your staff, you know, bring sandwiches from Subway or something and maybe I'll do that for the jury also on some of the days and that way we can get them in there, and get them out, and we'll be done because I hate sending -- I mean, y'all don't want the jury out there anyway.

So, one of the this is that we have done in the past, even -- I have even paid for it before out of my own pocket because I hate for them to be out there because you are going to have witnesses all over the place, people all over the place, attorneys at restaurants and everything, you'll be sitting in a table, right next to someone who is on a jury, or their family member or whatever, something slips out, then it's in the box and I don't want any jury misconduct -- juror misconduct issues here.

So, I mean, if we can make life easier by, you know, we all just get Subway platters or, you know, whatever, we'll do that and I will send some back to the jury.  I won't say the Plaintiff bought them for you or the Defendants bought them for you, I'll just say the Court got them for you or maybe not, you know, the Court itselfbut you the county got them or the lawyers all got together and paid for your sandwiches on both sides.  Maybe that will help also, and I can have them eat in 40 minutes and we'll come back out and just keep going, you know, it's in your best interest also to just get this thing behind you, you know so, uh, that's kind of what I am thinking.  Of course we wouldn't be doing that on Monday because Monday you are not starting until 1:30 with the jury.  I think the jury is going to be seated at 12:30 right?

ASSISTANT COORDINATOR:  Yes, ma'am.

THE COURT:  We used to have them come in at 1:30 and it was a disaster.  Then we wouldn't start voir dire until 2:30.  So we are doing now is bringing them in and having them seated by 12:30, so you don't want to be here in here at 12 or 12:30 because the jury is going to be coming in and we are going to be sitting them down, but you can be out there or whatever and then you come in at 1:30 and we'll get you started.  They'll

already be seated, you'll be able to talk to your partners or whatever local counsel, whatever, and figure out if you want a jury shuffle or not, and if you do well then that's going to prolong it but that's your right.

MR. GRIFFITH: How many do you anticipate will be here with 550 requested?

THE COURT: I'm sorry?

MR. GRIFFITH: How many do you think will actually show up?

ASSISTANT COORDINATOR: We requested 500 at the last trial that we had, and we had about maybe 120 show up.

MR. GRIFFITH: Okay.

THE COURT: It's pretty bad. Sometimes, you know, we -- I mean I've had to have people arrested and brought in because I mean we lose them or like well instead of getting two alternates I will end up with one. On all my criminal cases they don't show up. And then half of them say I don't know how to speak English or whatever and well you are a U. S. citizen and took the test and you passed it, but they don't want to be here, I mean, it's ridiculous, it's outrageous, but nevertheless that's just something we have to deal with here but, uh --

MR. GRIFFITH:  Did we discuss how many strikes.

THE COURT:  No, we haven't done that.  Have you all talked about it at all?

MR. N. JOLLY:  I thought it was 6 per side.

MR. GRIFFITH:  He said 6 I said 12.  The problem is that we do have, even though we are all going to be together, we do have several different camps on our side.  We have three defendants and we have got at least 4 third-party defendants on our side.  So I would think -- I mean just six seems like not enough maybe 12, 10, 12 something like that and they can have the same number, that's fine.  So 12 each side that way at least everybody can have some input.

THE COURT:  I am worried if we do 12 are we going to have enough jurors.

MR. N. JOLLY:  That's too much.

MR. GRIFFITH:  That's 24 I can't imagine --

MR. N. JOLLY:  Well 8 or 9 that's how much we did the last trial in Zapata.

MR. GRIFFITH:  9 is fine.

MR. OLIVEIRA:  We'll take 9.

MR. SMITH:  Yeah.

THE COURT:  Let's do 9 guys and not because I don't want to give them to you.  I mean, if it was my

preference I would give both of you 12 or at least 10 but I am scared I will lose my jury and I want two alternates because guys I've had trials, believe it or not, where I have lost two out of the jury and both alternates had to go in.  I mean crazy.  I've never seen that before and now that I am on the bench I see everything and it's crazy.  I had a guy not come to Court, he was a juror and he didn't even come, he didn't show up, and I'm like go get him, and they brought him in and I said -- I started the trial without him, I moved up an alternate, and I brought him and said what's your problem, why didn't you come, and he said because I was sleepy.

(Laughter).

THE COURT:  I was like okay, go to the jail and sleep for 12 more hours.

(Laughter).

THE COURT:  It was just ridiculous and we have to be very careful about even doing that because the laws are very particular about when an alternate can go in the box.

MR. B. LOPEZ:  Right.

THE COURT:  It may have been error what I did but he's got to be completely like unable to perform his duties.  Not just oh I didn't want to go because I was

sleepy. And I went back and looked at it later and I am like God I hope nobody appeals this case. It was a criminal case I think it was. But you know we had to -- we needed to get started but the rules are very clear, I should have waited, and okay now he's here and let's call him sleepy or, you know, doupy or call him whatever you want, but I mean I was like --

MR. OLIVEIRA: Or dummy or something.

THE COURT: We couldn't find him and he was at home asleep and finally the sheriffs brought him in about noon and I said well I am not going to wait for him, I mean, I had already started at 9 and then I thought some emergency had happened or like someone in his family had a heart attack or he was in the hospital or something, oh he was sleepy and I was like God how does this, you know, only in Starr County -- well no Duval County crazy stuff happens over there too, the wild wild west I like to call it, but anyway nevertheless do you all have any other questions?

How much time do you really think you are going to need for voir dire? Was that going to be your question.

MR. B. LOPEZ: No, Your Honor, my question was just from the numbering standpoint. Where do you start with number one and how do they run it across for the

jurors?  In other words where they are going to be --

THE COURT:  We start number one and go this way and I'm glad you kind of brought that up because we are not going to do general and specific.  We are going to do general voir dire.

MR. B. LOPEZ:  Okay.

THE COURT:  I am -- they are all going to have numbers, and then like if you ask -- if you ask a question are any of you employees of the Rio Grande City School District or any of your family members, they raise their numbers, you write their numbers down and then you ask them.  We are not going to go the way Judge Gabert used to do it which I kind of liked it when I was a lawyer, but now as a judge I don't like it because then, you know, each side goes okay juror number 1, you know, you do all the general and then you go specific, we'll be here until midnight.  So, the way we are going to do it is they are going to show their numbers.

MR. GRIFFITH:  Combined.

THE COURT:  You write the numbers down and ask them you answered the question, you raised your number when I asked you, you know, if you were a member, you know, worked for the school district, or your family, what do you do, and would it affect you and whatever.  You've got to ask your questions right then and there

right after, you know, get the numbers down.

MR. GRIFFITH:  Obviously if something comes up for cause obviously it's for cause right there.

THE COURT:  You approach the bench.

MR. GRIFFITH:  Can we bring three or four in at the very end after they have been excused, we need to talk to these three or four on the for cause.

THE COURT:  You can leave it until the end of your voir dire and then bring them up.

MR. GRIFFITH:  Right.

THE COURT:  Before the other side starts.

MR. GRIFFITH:  Before?  Okay.

THE COURT:  Or we can do it either way whatever is more efficient.  I am not going to hold it against you if you don't do it right then and there.  If you want to wait until the end of the voir dire.

MR. GRIFFITH:  Specially something private.

MR. B. LOPEZ:  If it's a private matter yes.

THE COURT:  You need to be careful about the questions you ask them because sometimes they answer a question and sometimes they just infected the whole panel.  So you've got to be really careful with some of these defect questions that you are going to ask about because all I need is for somebody to say oh yeah I saw that, you know, the wall was shifting and then it's like

okay here we go, you know, I mean, you've got to be very careful about the invited responses that are going to come from your questions.

MR. GRIFFITH: We are used doing it that way, it's not a problem, do the general and specific at the same time, that's how we do it.

MR. B. LOPEZ: It's going to be 1 through 9 and then 10 starts behind one, right?

THE COURT: Right.

MR. B. LOPEZ: Those are going to be afterwards.

THE COURT: This is going to be the end, right. You start 1, 2, 3, and then let's say number 50 is back there, then you start 51 and go that way. How much time honestly, guys, I mean, do you think that you all need for jury selection?

MR. GRIFFITH: I need 20 minutes for my architect client.

MR. B. LOPEZ: I would like to do about 20 I think.

MR. GRIFFITH: And then maybe 20 minutes with the other defendants.

MR. GEALY: About 20.

MR. B. LOPEZ: Not much time.

MR. OLIVEIRA: I think we can do an hour total

per side.

THE COURT: About an hour per side?

MR. GRIFFITH: Give us a little bit of discretion.

THE COURT: A little bit of leeway but don't say an hour and then you are two hours.

MR. GRIFFITH: No.

MR. OLIVEIRA: I tried cases before Darrel Hester and it was 15 or 20 minutes tops and if you went over it you were dead.

THE COURT: Yeah, if you are the only one talking remember guys, you are not doing a good job. They are the ones that are supposed to be talking not you, but I mean, I do know you have to ask certain questions and, you know, tell them a tiny bit about, you know, what the case is about and in a few sentences, but you are not going to go into detail at voir dire.

What else guys? What else do you anticipate? I mean you've tried these construction defect cases before. Who else has tried these construction defect cases? Then you all need to tell me because this is my first one -- all the ones we've had in other counties have settled -- what other issues are we looking at?

MR. GRIFFITH: A lot of it is taken care of since they are potentially going to be doing a lot of

their witnesses by video, that will make things consist because what we really found on them some witnesses will go 3, three and a half hours which is just insane because your normal case is 20 to 45 minutes is about all the jury can handle, but these guys go for all afternoon.

MR. B. LOPEZ:  I have a question about the video, Your Honor.  If you just give some clarification. I've seen it done both ways.  When a witness is called by video the Plaintiff will play their side, the Defendant will play their side, but here we have sort of different parties.  Do you want us to coordinate to where we are going to play one video the whole time and that's it?

MR. N. JOLLY:  We are not agreeing to do that.

THE COURT:  No, no, no.  You play, you play your side and then since they are going to -- everybody is going to be exchanging excerpts.

MR. B. LOPEZ:  Correct.

THE COURT:  Then I don't want two of you to play the same thing.

MR. GRIFFITH:  Right.

MR. B. LOPEZ:  Okay.  So he goes -- Plaintiffs will go first and then everybody else and we'll coordinate it.

MR. GRIFFITH:  On the defense side.

THE COURT:  Right.

MR. B. LOPEZ:  Okay.

THE COURT:  That's not -- that's agreeable isn't it Mr. Jolly?  I mean.

MR. N. JOLLY:  Well I am not really sure I understand what he's talking about.

THE COURT:  What he's saying is that you are going to play your portion of your witness, and then let's say Descon plays theirs and then.

MR. GRIFFITH:  ERO.

THE COURT:  ERO plays there's but they are not going to be repeating what each other played because they are going to be designating their sections of the deposition.

MR. GRIFFITH:  We'll coordinate.

THE COURT:  That's going to be questioning from you that you are going to be playing.

MR. OLIVEIRA:  Correct.

THE COURT:  You are not going to be playing questions from him.

MR. GRIFFITH:  Potentially I could if they actually pertain but what we really needed to is they have their excerpts, they provide them to us, we on the defense side we'll put in together what we have, so what

we have, so there will be just one.

THE COURT: So then there was a joint defense, right? Ha, ha, ha.

MR. GRIFFITH: It will be now.

MR. OLIVEIRA: It will be.

MR. N. JOLLY: There was.

THE COURT: Well I equalized the strikes anyway so I am just -- I better not open another can of worms here. Okay.

MR. GRIFFITH: Well yeah I mean I don't know that there may be some evidence that's good for Descon and bad for them.

THE COURT: I just don't want all of you to be playing the same excerpts again and again and again.

MR. N. JOLLY: Or the same video they play.

THE COURT: In that regard, Mr. Jolly, it does make sense that they would get together on that.

MR. N. JOLLY: They have been doing it anyway might as well continue.

THE COURT: Exactly. Ha, ha, ha.

MR. SMITH: Not exactly, Your Honor.

THE COURT: Okay.

MR. SMITH: Ha, ha, ha.

THE COURT: Well, okay, whatever.

MR. OLIVEIRA: You are so cynical.

THE COURT: Okay. Whatever. A ruling has already been made with reference to that.

MR. SMITH: Correct.

MR. GRIFFITH: Exactly.

THE COURT: Let's not fight about that.

MR. SMITH: But instead of having Limon just have one sentence because we'll discuss it and that would be my druthers would be that it comes as a group purely for the fact that it would only make sense like that to the jury.

THE COURT: I've already said it makes sense.

MR. B. LOPEZ: Whatever is going to be fastest.

THE COURT: Exactly. And gentlemen, remember, remember, because all of you are highly intelligent beings in this room and you all read statistics and a person's -- the average person, their attention span is 15 minutes.

MR. N. JOLLY: 15 seconds?

THE COURT: 15 minutes.

MR. OLIVEIRA: That's Norman's.

THE COURT: Even the rosary it takes 12 to 15 minutes to pray a rosary.

MR. OLIVEIRA: They lose me at 30 seconds.

THE COURT: Well there you go. That's why I

said average person not every person. I mean, you know, you start throwing stuff at this jury and, you know what I am talking about. An hour long deposition, they are zoned out after the first I think 10 to 15 minutes.

So, I mean y'all know what -- just -- it's like my kid when I call him and I want to talk to him in college, he says mom just give me the main points.

(Laughter).

THE COURT: He says main points mom, main points. So I am like okay, you need money, I love you, when can I see you, so I am just like -- because I know for the rest he's not listening. So think about that. What else guys? Anything else?

MR. GARZA: For purposes of presentation I am assuming obviously the Plaintiff goes first, then you'll go in the order of the defendants Descon, ERO, and get to the -- eventually get to subcontractors.

MR. GRIFFITH: There's the Plaintiff, and then there's Descon, ERO, and Halff, which are the main defendants, and then there's the third-party defendants which are now.

MR. DUNNAHOO: Limon, C & M, Twin City Glass, D & J, and then Zarate.

THE COURT: Say that again.

MR. DUNNAHOO: Third-party defendants include

Limon, C & M --

MR. B. LOPEZ:  Why Limon goes first?

MR. DUNNAHOO:  -- Twin City Glass, D & J, and then Zarate.

THE COURT:  So Plaintiff will go first, then Descon, Limon, C & M.

MR. GRIFFITH:  No.  Plaintiff will go first then Descon then ERO.

THE COURT:  That's right.

MR. GRIFFITH:  And then Halff.  And those are defendants to the extent that has any importance, and then the third-party defendants are Limon and down that list.

THE COURT:  Okay.  And Limon doesn't want to go first.

(Laughter)

MR. B. LOPEZ:  We'll do whatever you ask, Your Honor.

THE COURT:  We'll take it up that way. Descon, ERO, Halff, and Limon, C & M, Twin City, D & J and Zarate.  Okay anything else?  (pause) If there's anything else, uh -- oh, well you know what?  I am going to be available next week, right?

I had a trial in Jim Hogg County starting on Monday.  But I've got -- my son is epileptic and he had

an attack, he's at U. T. Austin, and he had a little, uh, seizure and so we've got an appointment with our neurologist on Thursday, and so the trial in Jim Hogg County is going to take a week, so I am getting a visiting judge. So, I will be in Jim Hogg County on Monday to do my regular docket, but a visiting judge will be taking care of the trial, so then I'll be back here on Monday afternoon -- well really Tuesday because I don't know how long I am going to take at my docket up there. So, if you all need anything Tuesday or Wednesday you all can call my coordinator, and if there's some craziness going on and you need like a telephonic hearing because y'all are not being cooperative, uh, and I am not looking at you Mr. Jolly in a bad way.

MR. N. JOLLY: I was looking behind me.

(Laughter)

MR. OLIVEIRA: He was looking for Mike.

THE COURT: If there's any shenanigans going on where somebody doesn't want to give somebody something, or whatever, call Ana Maria Saenz and we'll set up a little conference call because I'll be here anyway and then Wednesday evening I'll probably head up to Austin.

MR. GRIFFITH: Will you be back Friday, do you

think?

THE COURT:  Why?

MR. OLIVEIRA:  Just in case.

THE COURT:  I don't know.  But I mean you can call Ana Maria and see if there's any issues.  I mean I at least would be reachable by phone because I think my nephew is also playing in some game or something in Austin on Friday.

MR. GRIFFITH:  Wednesday then if we did have something Wednesday would be the best time.

THE COURT:  Right.  Even Monday.  Monday Tuesday or Wednesday.

MR. GRIFFITH:  We are not going to fight enough by Monday to have a problem.

THE COURT:  Probably not but Tuesday or Wednesday y'all probably will be scratching each other's eyes out.

MR. GRIFFITH:  Right.

THE COURT:  Or punching each other or doing who knows what but, uh, who was your mediator?  I should have sent you all to Bob Thornton like I wanted to.

MR. GRIFFITH:  Steve Nelson.  We are really far apart though.

THE COURT:  Well get closer.  But anyway, you know, I can't force you to settle.  I can't.  I wish I

could but I can't. Uh, we'll just have to see how this plays out but, uh, I will be available and, uh, we'll see how much of it we can do the first week. How long did your construction case take in Zapata County?

MR. GRIFFITH: We settled it but after four or five days we had only gone through four witnesses. It took a long time. Yeah but because we were doing video I think some --

THE COURT: Was that with Tono Lopez, with Judge Lopez?

MR. GRIFFITH: Yes.

MR. GUERRA: Yes.

THE COURT: He was putting up with you all four witnesses in four days?

MR. GRIFFITH: Yes.

THE COURT: Well I am not Judge Lopez. He's a lot nicer than I am.

MR. N. JOLLY: We were there for two weeks, it wasn't four days.

MR. GRIFFITH: But actual -- it took a while --

THE COURT: Oh, it was the same parties?

MR. GRIFFITH: -- before we started putting on -- yeah, he was the Plaintiff's attorney. How many witnesses did you get to?

MR. N. JOLLY:  I know we were there two weeks.

MR. GRIFFITH:  But a lot of it was pre-trial stuff and things we were arguing about, and no, I think I only remember four or five witnesses.

MR. N. JOLLY:  And that particular attorney, uh, for the general contractor, was --

MR. GRIFFITH:  Is not here.

MR. N. JOLLY:  -- was not getting time limits. He was allowed to go on and on and on.

THE COURT:  That's not going to happen here.

MR. N. JOLLY:  Whether I paper clip something, the guy had a complaint about everything.

THE COURT:  That's not going to happen here.

MR. GRIFFITH:  If we are tighter it won't happen here, but the fact that there's 7 or 8 parties right here tells you that there's at least one expert that's 8 maybe two experts that's 16 --

THE COURT:  I am telling you about excerpts and I am telling you to do it this week end and next week, and if you don't do it you are subject to being stricken because I am telling you already, I am telling you to do it now.

MR. GRIFFITH:  I meant experts.

THE COURT:  No, no I heard what you said.

MR. GRIFFITH:  And we have individual

corporate reps that's another 8 so right there you are almost to 30 people.

THE COURT:  But when you have a corporate rep., that's going to testify, you don't need his whole history.

MR. GRIFFITH:  No.

THE COURT:  I mean just stick to the basics like what does the jury have to know in order to make an informed decision here?  I don't want to know how many dogs and cats and pets and friends he has, I don't want to know, and what civic organizations, you know.

MR. GRIFFITH:  Although just to be fair, Your Honor, the school district everybody knows.  Everybody knows the children of Starr County.  We are coming in -- we are from the Valley but we may be from Hidalgo or Cameron.

THE COURT:  I am not saying you can't talk --

MR. GRIFFITH:  We have to talk about ourselves a little bit.

THE COURT:  I am not saying you can't humanize them or whatever.

MR. OLIVEIRA:  Just do it quickly.

THE COURT:  I don't want to know about the cats and the dogs, I don't want to know, and my kid's this Harvard and/or if they are going to say it, say it

in one sentence. I have 20 grandchildren and I love them and I see them in the weekends and I'm a great grampa okay, fine move on. You tan talk about them to some extent but I don't want to know what are their names and how is little Cici doing and --

MR. OLIVEIRA: No.

THE COURT: Is she going to private school or public school or --

MR. OLIVEIRA: No it will be --

THE COURT: -- I am not going to let that happen and I will get really upset, you know, back here and I am really a nice person so but don't push me over the edge.

MR. OLIVEIRA: No it will just be the basic.

THE COURT: Just what they need to know. Just what they need to know, and they'll love you for it. Just tell them what they need to know.

MR. DUNNAHOO: Your Honor, one last thing, a little housekeeping matter. I know you had a very busy day --

THE COURT: I am fine.

MR. DUNNAHOO: There was Zarate's Motion for Summary Judgment, and before you take it back to, to read it, I wanted to make sure that you had available the reply that Zarate filed to Descon's response.

MR. SMITH:  I think there was the summary judgment, we did a response, they did a reply.

MR. DUNNAHOO:  I don't know if you had a reply.

THE COURT:  Did you file it?

MR. DUNNAHOO:  We did.

THE COURT:  What am I pending giving you a resolution on?

MR. DUNNAHOO:  Motion for Summary Judgment for Zarate.

MR. GARZA:  On behalf of C & M Contracting the Motion to Exclude Mr. O'Bannon testimony as to the roof.

THE COURT:  Those are the two things I have left?

MR. B. LOPEZ:  Which Limon joined in as well for the motion to exclude.

MR. SMITH:  And Descon did as well.

THE COURT:  Okay.  Limon and other defendants join.

THE COURT:  Okay, guys, have a fun weekend.

MR. B. LOPEZ:  Thank you, Your Honor.

MR. N. JOLLY:  Thank you, Judge.

THE COURT:  Thank you.

(END OF HEARING)

THE STATE OF TEXAS      )

COUNTY OF STARR      )

I, Ramiro Hernandez, Official Court Reporter in and for the 229TH District Court of Starr County, State of Texas, do hereby certify that the above and foregoing pages contain a full, true, and correct court reporter's record of all proceedings heard on the record at the hearing of Pretrial Motions regarding cause number DC-14-46 Rio Grande City Consolidated Independent School District v. Descon Construction et al, all of which occurred in open court and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects that no exhibits were offered or admitted.

I further certify that the total cost for the preparation of the expedited original and one copy of this Reporter's Record is $2,170.00 and shall be paid by Mr. David Oliveira or his firm.

WITNESS MY OFFICIAL SIGNATURE AND CERTIFICATION in accordance with Section 8.11 and 8.11(3) of the Uniform Format Manual for Texas Court Reporters as ordered by the Supreme Court of Texas.

/s/ RAMIRO HERNANDEZ      5/3/2015
_____
Ramiro Hernandez, CSR, RPR, CRR, RMR, Official Court Reporter, 229th Judicial District, Starr County, Texas, P. O. Box 185, Hebbronville, Tx. 78361-0185 Phone: 361-279-6233, 956-487-2636 Cert. No. 763 Expires 12/31/2016

# Tab 2

| | | |
|---|---|---|
| RIO GRANDE CITY CONSOLIDATED | § | IN THE DISTRICT COURT |
| INDEPENDENT SCHOOL DISTRICT, | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | 229TH JUDICIAL DISTRICT |
| | § | |
| DESCON CONSTRUCTION, L.P., | § | |
| DEFENDANT. | § | STARR COUNTY, TEXAS |

## DEFENDANT DESCON CONSTRUCTION, L.P.'S SUPPLEMENTAL OBJECTION AND MOTION TO STRIKE PLAINTIFF'S THIRTEENTH AMENDED ORIGINAL PETITION (all versions) AND MOTION TO ABATE AND RESPONSE TO PLAINTIFF'S RULE 28 MOTION

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant DESCON CONSTRUCTION, L.P. ("Descon"), files this Objection and Motion to Strike Plaintiff's Thirteenth Amended Original Petition (all versions) and in support would show this honorable Court as follows:

1.     To date, Plaintiff has filed four pleadings caption "Plaintiff's Thirteenth Amended Original Petition (Grulla Elementary School)".  In three of the editions of the pleading, filed and served April 24 and 27, and 29, 2015, Plaintiff purports to join 6 to 8 new parties as defendants "pursuant to Tex. R. Civ. P. 28."  The parties that Plaintiff seeks to join are:  Texas Descon, L.P., J. Wayne Medlin, Descon Management, LLC, Maco Management, LLC, Michael C. Smith, and Descon 4S, LLC.

2.     Defendant Descon objects to joinder of these parties.  The Court's June 27, 2014 deadline for joinder of additional parties passed nearly a year ago.  See Agreed Order on Defendant/Third-party Plaintiff Descon Construction, LP's Motion to Amend Docket Control Order (Exhibit A).

3.      Plaintiff's deadline to file and serve supplemental or amended pleadings was April 14, 2015. See First Amended Docket Control Order (Exhibit B). The second and third versions of Plaintiff's Thirteenth Amended Original Petition were filed ten or more days after the Court's deadline and less than 17 days before the case is set for trial. The latest version, the Plaintiff's Thirteenth Amended Original Petition (b) was filed eleven days before trial. Plaintiff did not request leave of court or show good cause for its late pleadings joining numerous new parties. The April 24, April 27, and April 29 editions of the Plaintiff's Thirteenth Amended Original Petition should be stricken.

4.      Rule 28 is not applicable to this case because Plaintiff has sued the correct party. Descon Construction, LP is an existing entity that is not doing business under an assumed name. Descon Construction, LP does not do business under the assumed name Texas Descon, LP and Texas Descon, LP is not a successor of Descon Construction, LP in regards to the construction contract between Descon Construction, LP and RGCCISD for construction of the La Grulla Elementary School project.

5.      Even worse, Plaintiff seeks to join all these parties without service of citation claiming that Rule 28 of the Texas Rules of Civil Procedure allows it to circumvent constitutional requirements for due process. Plaintiff has named the following parties which are part of the Limited Partnership which is Descon Construction LP:

- Descon Construction LP – a limited partnership which has been served and appeared[1];

- Descon Management LLC – a limited liability corporation and general partner to Descon LP which has neither been served nor appeared;

---

[1] Plaintiff cites its exhibit "A" as proof that Texas Descon LP is the assumed name for Descon LP. Descon LP objects to this document as it is not authenticated and is hearsay. Further, Descon LP directs the Court to the Affidavit of Michael C. Smith, attached hereto as Exhibit "C" which directly refutes plaintiff's allegations.

- Maco Management LLC – a dissolved limited liability corporation and general partner to Descon LP which has neither been served nor appeared.

6. With respect to these parties, this case should be abated/continued until all partners have been properly served. In *KAO Holdings, L.P. v. Young*, 261 S.W.3d 60, (Tex.2008), the plaintiff sued the limited partnership, and not the general partner, but nonetheless obtained a default judgment against both. Id. at 61. The Texas Supreme Court stated as follows:

> Viewing article 6132b–3.05(c) in isolation, its purpose appears to be to make clear that while partners are generally liable for the partnership's obligations, a judgment against the partnership is not automatically a judgment against the partner, and that judgment cannot be rendered against a partner who has not been served merely because judgment has been rendered against the partnership. The purpose of [article 6132b–3.05(c)[2] ] is to state that service is necessary, not that it is sufficient. **Partners against whom judgment is sought should be both named and served so that they are on notice of their potential liability and will have an opportunity to contest their personal liability for the asserted partnership obligation.**

*4 Id. at 64 (footnote omitted). In this case, Plaintiff is attempting to circumvent due process and the court should abate and or continue this case.

7.     Additionally, Plaintiff is suing two individuals who are not signatories to the contract nor general partners of Descon LP. These parties are improperly named well after the joinder deadline, as such the pleadings should be stricken. Further, Plaintiff is making new allegations in this lawsuit by naming these individuals J. Wayne Medlin and Michael C. Smith. Moreover, by naming these two individuals plaintiff is asserting new claims of alter ego in attempt to pierce the veil to show these two individuals are personally liable for breach of a contract in

---

[2]See Tex. Rev. Civ. Stat. Ann. art. 6132b-3.05(c). This rule is the same as it was under TUPA. See Fincher v. B & D Air Conditioning & Heating Co., 816 S.W.2d 509, 513 (Tex. App.--Houston (1st Dist.) 1991, writ denied). This subsection, along with subsection (b), is consistent with Texas Civil Practice and Remedies Code sections 17.022 (stating Citation served on one member of a partnership authorizes a judgment against the partnership and the partner actually served) and 31.003 stating (If a suit is against several partners who are jointly indebted under a contract and citation has been served on at least one but not all of the partners, the court may render judgment against the partnership and against the partners who were actually served, but may not award a personal judgment or execution against any partner who was not served).Tex. Bus. Org. Code Ann. § 152.306(a).

which they are not signatories. In the alternative, should the pleadings be allowed then this case should be abated/continued until these parties are properly served. Specifically, Plaintiff names:

- Michael C. Smith – an individual who has neither been served nor appeared. The claims Plaintiff brings against Mr. Smith are for breach of contract and breach of warranty for a contract to which Mr. Smith is not a signatory.

  o Plaintiff erroneously states that Michael C. Smith changed the name of Descon Construction LP to Texas Descon LP and cites to Exhibit K as evidence of the same. Michael C. Smith's name, however, is not to be found on that document.

- J. Wayne Medlin – an individual who has neither been served nor appeared. Like Mr. Smith, Mr. Medlin is being sued for breach of warranty and breach of contract on a contract which he did not sign in his individual capacity.

8. Additionally, much of the information in Plaintiff's untimely filed petitions is incorrect. See affidavit of Michael C. Smith attached as Exhibit C.

9. Plaintiff is also suing a limited partnership, Texas Descon LP, and its general partner, Descon 4S LLC, neither of which are signatories to the contract that forms the basis of this lawsuit. Specifically, Plaintiff names these two parties as f/k/a and d/b/a then says Texas Descon LP is the successor company to Descon LP. Descon LP has specifically denied all these assertions. Moreover, the attached affidavit of Michael C. Smith specifically refutes the allegations that plaintiff purports to be facts. Moreover, not only are these parties improperly named, the plaintiff is seeking to join them well after the joinder deadline, as such the pleadings should be stricken. In the alternative, should the pleadings be allowed then this case should be abated/continued until these parties are properly served. Specifically, Plaintiff names:

- Texas Descon LP – this company is a limited partnership which plaintiff claims is a successor entity to the contract between plaintiff and Descon LP. This party is a non-signatory to the contract and has not been served.[3]

  - Plaintiff alleges that Texas Descon LP is a party necessary to this action as it is a successor company to Descon LP. Texas Descon LP is absent from this lawsuit since they have not been served. Rule 28 of the TRCP does not abrogate the requirement of service of citation. Therefore, this suit cannot continue without the absent party. *See Allison v. Nati'l Union Fire Ins. Co.,* 703 S.W.2d 637,638 (Tex. 1986).

- Descon 4S LLC – this company is a limited liability company that is the general parter of Texas Descon LP. This company is a non-signatory to the contract that is the basis of this suit and has not been served.

  - Plaintiff alleges that Descon 4S LLC is a party necessary to this action as it is a general partner to a successor company to Descon LP. Descon 4S LLC is absent from this lawsuit since they have not been served. Rule 28 of the TRCP does not abrogate the requirement of service of citation. Therefore, this suit cannot continue without the absent party. *See Allison v. Nati'l Union Fire Ins. Co.,* 703 S.W.2d 637,638 (Tex. 1986).

9. Plaintiff claims that each of these entities is a necessary party, accordingly, this lawsuit must be abated/continued until each necessary party is served with citation. Plaintiff's claim that Rule 28 relieves it of the necessity of due process is false and not stated anywhere in the rule. Moreover, not only are these parties improperly named plaintiff is seeking to join them well after the joinder deadline, as such the pleadings should be stricken. In the alternative, should the pleadings be allowed then this case should be abated/continued until these parties are properly served.

10. An abatement and/or continuance is appropriate in this matter as Descon LP is prejudiced by Plaintiff's untimely filing which names six (6) new parties whose actions plaintiff

---

[3] Plaintiff alleges that Texas Descon LP is a successor to the contract for the Grulla Project. If so, then Texas Descon LP still must be served since it is a wholly separate entity from Descon LP with a different registered agent (Michael D. Smith) for service pursuant to exhibit K to plaintiff's Rule 28 Motion.

claims Descon LP is jointly and severally liable. Descon LP's attorney is not a representative of any of the 6 parties named but will be faced with the possibility of being held liable for the actions of all parties including those who have not been served or made an appearance in this case for which they will undoubtedly have claims and defenses.

For these reasons, Defendant Descon prays that the Court sustain its objection and strike Plaintiff's Thirteenth Amended Original Petitions filed (all versions), and for all other relief to which Defendant Descon is entitled.

Respectfully submitted,

COKINOS, BOSIEN & YOUNG
10999 IH-10 West, Suite 800
San Antonio, Texas 78230
210-293-8700
210-293-8733 (Fax Number)

By    */s/ Stephanie O'Rourke*               
Stephanie O'Rourke
State Bar No. 15310800
sorourke@cbylaw.com
Stanley W. Curry, Jr.
State Bar No. 05274000
scurry@cbylaw.com
Robert M. Smith
State Bar No. 18677400
rmsmith@cbylaw.com
Gabriel S. Head
State Bar No. 24055642
ghead@cbylaw.com

ATTORNEYS FOR DEFENDANT / THIRD-PARTY
PLAINTIFF DESCON CONSTRUCTION, L.P.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing *Defendant / Third-Party Plaintiff Descon Construction, L.P.'s Supplemental Objection and Motion to Strike Plaintiff's Thirteenth Amended Original Petition (all versions) and Motion to Abate and Response to Plaintiff's Rule 28 Motion* has been e-filed, e-served and served via email pursuant to the parties' agreement on this the 30th day of April 2015, to:

*Attorneys for Plaintiff, Rio Grande City ISD*
Norman Jolly
Michael B. Jolly
Law Office of Norman Jolly
405 Main, Suite 1000
Houston, Texas 77002
Email:   normanjollypc@sbcglobal.net
mikejolly@aol.com
lawjp@earthlink.net
ericjarvis@rocketmail.com
twentysixpoint2@me.com
medina_nancy@sbcglobal.net

*Attorneys for Plaintiff, Rio Grande City ISD*
Martie Garcia Vela
100 West 5th Street
Rio Grande City, Texas 78582
Email:   martie.garcia@gmail.com

*Attorneys for Defendant ERO International, L.L.P.*
John R. Griffith
Griffith Law Group
801 E. Fern Avenue, Suite 170
McAllen, Texas 78501
Email:   jrg@rgvfirm.com
gh@rgvfirm.com

*Attorneys for Defendants Halff Associates, Inc. and Menton J. Murray, III, P.E.*
Grant Gealy
Mills Shirley, L.L.P.
3 Riverway, Suite 100
Houston, Texas 77058
Email:   ggealy@millsshirley.com
psutton@millsshirley.com

*Attorneys for Third-Party Defendant, AAS Consulting, Inc. d/b/a Advance Air Systems*
Douglas M. Walla
Andrew M. Williams & Associates
5909 West Loop South, Suite 550
Bellaire, Texas 77401
Email:   doug@amwlawfirm.com
admin2@amwlawfirm.com
admin1@amwlawfirm.com

*Attorneys for Third-Party Defendant C.A. Ray & Son Painting Contractors, Inc.*
Marc E. Villarreal
R. Kyle Hinkle
Hinkle & Villarreal, P.C.
719 S. Shoreline Blvd., Suite 300
Corpus Christi, Texas 78401
Email:   mvillarreal@southtxdefense.com
rkhinkle@southtxdefense.com
afrees@southtxdefense.com

*Attorneys for Third-Party Defendant Faires Plumbing Co., Inc.*
David J. Dunn
Dunn, Weathered, Coffey, Rivera & Kasperitis, P.C.
611 S. Upper Broadway
Corpus Christi, Texas 78401
Email:   Dunndj@swbell.net
vanesa@dwcrk.net
kellycreel@swbell.net

*Attorneys for Third-Party Defendant Limon Masonry, Inc.:*
Brian C. Lopez
Brittany C. Cooperrider
Engvall & Lopez, L.L.P.
1811 Bering, Suite 210
Houston, Texas 77057
Email:   blopez@eltexaslaw.com
bcooperrider@eltexaslaw.com
mmufti@eltexaslaw.com

*Attorneys for Third-Party Defendant C & M Contracting, Inc.*
David C. Garza
Liliana Elizondo
Garza & Garza, L.L.P.
680 East St. Charles, Suite 300
P.O. Box 2025
Brownsville, Texas, 78250
Email:   dgarza@garzaandgarza.com
         lelizondo@garzaandgarza.com

*Attorneys for Third-Party Defendant Daniel Vasquez, Individually and d/b/a Twin City Glass*
John A. Guerra
Louis A. Gross
Brock Person Guerra Reyna, P.C.
17339 Redland Road
San Antonio, Texas 78247-2304
Email:   jguerra@bpgrlaw.com
         lgross@bpgrlaw.com
         cvaldez@bpgrlaw.com
         cmahoney@bpgrlaw.com
         laniol@bpgrlaw.com

*Attorneys for Third-Party Defendant Zarate Suspended Ceiling, Inc.*
Michael G. Dunnahoo
Rymer, Moore, Jackson & Echols, P.C.
2801 Post Oak Blvd., Suite 250
Houston, Texas 77056
Email:   mdunnahoo@rmjelaw.com
         lkelly@rmjelaw.com

*Attorneys for Third-Party Defendant Perez Consulting Engineers*
Gregory N. Ziegler
Dean Siotos
Macdonald Devin, P.C.
3800 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270-2130
Email:   GZiegler@MacdonaldDevin.com
         dsiotos@macdonalddevin.com
         mwhite@macdonalddevin.com
         LHolsomback@macdonalddevin.com
         DPainter@macdonalddevin.com

*Attorneys for Third-Party Defendant RGV-R&R Construction Services, L.L.C.:*
David W. Medack
James P. Davis
Heard & Medack, P.C.
9494 Southwest Freeway, Suite 700
Houston, Texas 77074
Email:   dmedack@heardmedackpc.com
         jdavis@heardmedackpc.com
         MLoonahm@heardmedackpc.com
         CHernandez@heardmedackpc.com

*Attorneys for Third-Party Defendant Zarate Suspended Ceiling, Inc.:*
John A. Guerra
Louis A. Gross
Brock Person Guerra Reyna, P.C.
17339 Redland Road
San Antonio, Texas 78247-2304
Email:   jguerra@bpgrlaw.com
         lgross@bpgrlaw.com
         cvaldez@bpgrlaw.com
         cmahoney@bpgrlaw.com
         laniol@bpgrlaw.com

*Attorneys for Third-Party Defendant D&J Site Construction, Inc.*
David J. Dunn
Dunn, Weathered, Coffey, Rivera & Kasperitis, P.C.
611 S. Upper Broadway
Corpus Christi, Texas 78401
Email:   Dunndj@swbell.net
         vanesa@dwcrk.net
         kellycreel@swbell.net

*Attorneys for Third-Party Defendant KBM Air Conditioning, Inc.*
Jason L. West
Brock Person Guerra Reyna, P.C.
17339 Redland Road
San Antonio, Texas 78247-2302
Email:   jwest@bpgrlaw.com

                                               */s/ Stephanie O'Rourke*
                              Stephanie O'Rourke
                              Robert M. Smith
                              Gabriel S. Head

CAUSE NO. DC-14-46

| RIO GRANDE CITY CONSOLIDATED INDEPENDENT SCHOOL DISTRICT | IN THE DISTRICT COURT OF |
|---|---|
| PLAINTIFF | |
| V. | STARR COUNTY, TEXAS |
| DESCON CONSTRUCTION, LP | |
| DEFENDANT | 229TH JUDICIAL DISTRICT |

### AGREED ORDER ON DEFENDANT/THIRD-PARTY PLAINTIFF DESCON CONSTRUCTION, LP'S MOTION TO AMEND DOCKET CONTROL ORDER

On this day came on to be heard defendant/third-party plaintiff Descon Construction, LP's Motion to Amend Docket Control Order, and, after considering the motion, the response, if any, and the evidence on file, the Court is of the opinion that the motion should be granted in part and denied in part.

It is therefore, ORDERED, ADJUDGED, and DECREED that the Court's docket control order, entered by the Court on May 19, 2014, is amended, as follows:

- The parties' joinder deadline, which is currently set for May 16, 2014, shall be reset to June 27, 2014. "Joinder" means named + served with citation + The D.C.O. as an exhibit thereto,

SIGNED this the 2nd day of June, 2014.

_____
PRESIDING JUDGE

Approved As Revised: N Jolly



Page 1 of 2

APPROVED AS TO FORM AND SUBSTANCE:

Norman Jolly
State Bar No. 10856920
normanjollypc@sbcglobal.net
Michael B. Jolly
State Bar No. 10856910
mikejolly@aol.com
405 Main, Suite 1000
Houston, Texas 77002
T 713.237.8383
F 713.237.8385

Martie Garcia Vela
100 West 5th Street
Rio Grande City, Texas 78582
T 956.488.8170
F 956.488.8129

ATTORNEYS FOR PLAINTIFF

Stephanie O'Rourke
State Bar No. 15310800
sorourke@cbylaw.com
Gabriel S. Head
State Bar No. 24055642
ghead@cbylaw.com
Bryan P. Marshall
State Bar No. 24034552
bmarshall@cbylaw.com
COKINOS, BOSIEN & YOUNG
10999 IH-10 West, Suite 800
San Antonio, Texas 78230
T 210.293.8700
F 210.293.8733

ATTORNEYS FOR DEFENDANT,
DESCON CONTRUCTION, LP

Filed: 2/3/2015 8:14:00 AM
Eloy R. Garcia, District Clerk
Starr County, Texas

Dulce Morin

CAUSE NUMBER DC-14-46

| | | |
|---|---|---|
| RIO GRANDE CITY CONSOLIDATED INDEPENDENT SCHOOL DISTRICT, PLAINTIFF, | § § § § | IN THE DISTRICT COURT |
| VS. | § § | 229TH JUDICIAL DISTRICT |
| DESCON CONSTRUCTION, L.P., DEFENDANTS. | § § § | STARR COUNTY, TEXAS |

## FIRST AMENDED DOCKET CONTROL ORDER

BE IT REMEMBERED that on the 12th day of January, 2015, the Court heard the Motions for New Docket Control Order filed by Defendants ERO International, L.L.P., Halff Associates, Inc. and Menton J. Murray, III, P.E., and the Court, having heard the arguments of counsel, granted said motions and entered the following order:

1. Jury trial of this cause is set for May 11, 2015, at 1:30 p.m.

2. Final Pre-trial Conference is set for May 11, 2015, at 10:00 a.m.

3. The deadline to complete discovery is April 20, 2015. All discovery must be completed by all parties by this date. Any requests for discovery should be served so that they are due by this date.

4. Mediation deadline is April 11, 2015 with a mediator agreed upon by all parties.

5. The deadline for designation of experts and provision of expert reports from all retained experts who will be allowed to testify at trial is:

   Defendants/Third-Party Defendants:     March 10, 2015

6. Deadline for Plaintiff to designate its attorney fees experts in compliance with Rule 194.2(f), TRCP (no written reports required) is February 27, 2015.



EXHIBIT
B

7.  Deadline for Defendants and Third-Party Defendants to designate their attorney fees experts in compliance with Rule 194.2(f), TRCP (no written reports required) is March 13, 2015.

8.  The deadline for supplemental and amended pleadings is:

    Plaintiffs:                              April 14, 2015
    Defendants/Third-Party Defendants:       April 28, 2015

9.  The following dates are scheduled as pretrial status conferences which must be attended in person by all parties:

    February 19, 2015 at 10:00 a.m.
    March 30, 2015 at 10:00 am.
    April 16, 2015 at 10:00 a.m.
    April 28, 2015 at 1:30 p.m.

10. Deadline to submit a pretrial notebook with Jury Charge to the Court is April 16, 2015.

SIGNED this <u>2nd</u> day of <u>February</u>, 2015.

_____
JUDGE PRESIDING

AGREED:

_____   1-16-15
Norman Jolly
State Bar No. 10856920
normanjollypc@sbcglobal.net
Michael B. Jolly
State Bar No. 10856910
mikejolly@aol.com
LAW OFFICE OF NORMAN JOLLY
405 Main, Suite 1000
Houston, Texas   77002
(713) 237-8383
(713) 237-8385 (Fax)

Martie Garcia Vela
100 West 5th Street
Rio Grande City, Texas 78582
martie.garcia@gmail.com
(956) 488-8170
(956) 488-8129 (Fax)
*Attorneys for Plaintiff, Rio Grande City CISD – La Grulla Elementary*

Stephanie O'Rourke
State Bar No. 15310800
sorourke@cbylaw.com
Gabriel S. Head
State Bar.No. 24055642
ghead@cbylaw.com
COKINOS, BOSIEN & YOUNG
10999 IH-10 West, Suite 800
San Antonio, Texas 78230
210-293-8700
210-293-8733 (Fax Number)
*Attorneys for Defendant/Third-Party Plaintiff Descon Construction, L.P.*

John R. Griffith
State Bar No. 08480750
jrg@rgvfirm.com
Griffith Law Group
801 E. Fern Avenue, Suite 170
McAllen, Texas 78501
956-971-9446
956-971-9451 (Fax Number)
*Attorneys for Defendant ERO International, LLP*

Grant Gealy
State Bar No. 07784700
ggealy@millshirley.com
Mills Shirley, L.L.P.
One City Centre
1021 Main St., Suite 1950
Houston, Texas 77002
713-225-0547
713-225-0844 (Fax Number)
*Attorneys for Defendants Halff Associates, Inc. and Menton J. Murray, III, P.E.*


Douglas M. Walla
State Bar No. 20759900
doug@amwlawfirm.com
Andrew M. Williams & Associates
5909 West Loop South, Suite 550
Bellaire, Texas 77401
713-840-7321
713-839-1302 (Fax Number)
*Attorneys for Third-Party Defendant AAS Consulting Inc. d/b/a Advanced Air Systems*


Marc E. Villarreal
State Bar No. 00791856
mvillarreal@southtxdefense.com
R. Kyle Hinkle
State Bar No. 24062782
rkhinkle@southtxdefense.com
Hinkle & Villarreal, P.C.
719 S. Shoreline Blvd., Suite 300
Corpus Christi, Texas 78401
361-883-0620
361-883-0612 (Fax Number)
*Attorneys for Third-Party Defendant C.A. Ray & Son Painting Contractors, Inc.*

Grant Gealy
State Bar No. 07784700
ggealy@millshirley.com
Mills Shirley, L.L.P.
One City Centre
1021 Main St., Suite 1950
Houston, Texas 77002
713-225-0547
713-225-0844 (Fax Number)
*Attorneys for Defendants Halff Associates, Inc. and Menton J. Murray, III, P.E.*

Douglas M. Walla
State Bar No. 20759900
doug@amwlawfirm.com
Andrew M. Williams & Associates
5909 West Loop South, Suite 550
Bellaire, Texas 77401
713-840-7321
713-839-1302 (Fax Number)
*Attorneys for Third-Party Defendant AAS Consulting Inc. d/b/a Advanced Air Systems*

Marc E. Villarreal
State Bar No. 00791856
mvillarreal@southtxdefense.com
R. Kyle Hinkle
State Bar No. 24062782
rkhinkle@southtxdefense.com
Hinkle & Villarreal, P.C.
719 S. Shoreline Blvd., Suite 300
Corpus Christi, Texas 78401
361-883-0620
361-883-0612 (Fax Number)
*Attorneys for Third-Party Defendant C.A. Ray & Son Painting Contractors, Inc.*

Grant Gealy
State Bar No. 07784700
ggealy@millshirley.com
Mills Shirley, L.L.P.
One City Centre
1021 Main St., Suite 1950
Houston, Texas 77002
713-225-0547
713-225-0844 (Fax Number)
*Attorneys for Defendants Halff Associates, Inc. and Menton J. Murray, III, P.E.*

Douglas M. Walla
State Bar No. 20759900
doug@amwlawfirm.com
Andrew M. Williams & Associates
5909 West Loop South, Suite 550
Bellaire, Texas 77401
713-840-7321
713-839-1302 (Fax Number)
*Attorneys for Third-Party Defendant AAS Consulting Inc. d/b/a Advanced Air Systems*

Marc E. Villarreal
State Bar No. 00791856
mvillarreal@southtxdefense.com
R. Kyle Hinkle
State Bar No. 24062782
rkhinkle@southtxdefense.com
Hinkle & Villarreal, P.C.
719 S. Shoreline Blvd., Suite 300
Corpus Christi, Texas 78401
361-883-0620
361-883-0612 (Fax Number)
*Attorneys for Third-Party Defendant C.A. Ray & Son Painting Contractors, Inc.*

David C. Garza
State Bar No. 07731400
dgarza@garzaandgarza.com
Liliana Elizondo
State Bar No. 24078470
lelizondo@garzaandgarza.com
Garza & Garza, L.L.P.
680 East St. Charles, Suite 300
P.O. Box 2025
Brownsville, Texas 78520
956-541-4914
956-542-7403 (Fax Number)
*Attorneys for Third-Party Defendant C & M Contracting, Inc.*

David J. Dunn    w/permission
State Bar No. 06243500
Dunndj@swbell.net
Dunn, Weathered, Coffey, Rivera & Kasperitis, P.C.
611 S. Upper Broadway
Corpus Christi, Texas 78401
361-883-1594
361-883-1599 (Fax Number)
*Attorneys for Third-Party Defendants D & J Site Construction, Inc. and Falres Plumbing Co., Inc.*

Brian C. Lopez    w/permission
State Bar No. 24029693
blopez@elhouston.com
Brittany Cravens
State Bar No. 24087355
bcravens@elhouston.com
Engvall & Lopez, LLP
1811 Bering Drive, Suite 210
Houston, Texas 77057
713-787-6700
713-787-0070 (Fax Number)
*Attorneys for Third-Party Defendant Limon Masonry*

*James P. Davis* /Hal

David W. Medack      *w/permission*
State Bar No. 13892950
dmedack@heardmedackpc.com
James P. Davis
State Bar No. 24028275
jdavis@heardmedackpc.com
Heard & Medack, P.C.
9494 Southwest Freeway, Suite 700
Houston, Texas 77074
713-772-6400
713-772-6495 (Fax Number)
*Attorneys for Third-Party Defendant RGV-R&R Construction Services*


John A. Guerra
State Bar No. 08576180
jguerra@bpgrlaw.com
Louis A. Gross
State Bar No. 24065334
lgross@bpgrlaw.com
Brock Person Guerra Reyna, P.C.
17339 Redland Road
San Antonio, Texas 78247-2304
210-979-0100
210-979-7810 (Fax Number)
*Attorneys for Third-Party Defendants Daniel Vasquez, Individually and d/b/a Twin City Glass and Zarate Suspended Ceiling, Inc.*

David W. Medack
State Bar No. 13892950
dmedack@heardmedackpc.com
James P. Davis
State Bar No. 24028275
jdavis@heardmedackpc.com
Heard & Medack, P.C.
9494 Southwest Freeway, Suite 700
Houston, Texas 77074
713-772-6400
713-772-6495 (Fax Number)
*Attorneys for Third-Party Defendant RGV-R&R Construction Services*

John A. Guerra
State Bar No. 08576180
jguerra@bpgrlaw.com
Louis A. Gross
State Bar No. 24065334
lgross@bpgrlaw.com
Brock Person Guerra Reyna, P.C.
17339 Redland Road
San Antonio, Texas 78247-2304
210-979-0100
210-979-7810 (Fax Number)
*Attorneys for Third-Party Defendants Daniel Vasquez, Individually and d/b/a Twin City Glass and Zarate Suspended Ceiling, Inc.*

| | | |
|---|---|---|
| RIO GRANDE CITY CONSOLIDATED INDEPENDENT SCHOOL DISTRICT, PLAINTIFF, | § § § § | IN THE DISTRICT COURT |
| VS. | § § | 229TH JUDICIAL DISTRICT |
| DESCON CONSTRUCTION, L.P., DEFENDANT. | § § § | STARR COUNTY, TEXAS |

## AFFIDAVIT OF MICHAEL C. SMITH

| | | |
|---|---|---|
| STATE OF TEXAS | § § | |
| COUNTY OF HIDALGO | § | |

On this date personally appeared Michael C. Smith who after being dully sworn stated the following:

"My name is Michael C. Smith; my nickname is Mickey Smith. I am over the age of eighteen years and am qualified to make this affidavit the matters stated herein are within my personal knowledge and are true and correct.

In 1975, I, along with Wayne Medlin, organized and incorporated Descon Contruction, Inc. as a Texas corporation. Descon Construction, Inc. was primarily a general contractor building construction projects in South Texas. Wayne Medlin and I were the only shareholders, officers and directors of Descon Construction, Inc. Descon Construction, Inc. operated continuously as a general contractor from its incorporation in 1975, until July 2000.

In July 2000, the shareholders of Descon Construction, Inc. elected to convert Descon Construction, Inc. from a Texas corporation into a Texas limited partnership called Descon Construction, L.P. The general partners of Descon Construction, LP at the time of the conversion were Descon Management, LLC and MACO Management, LLC. Currently the general partner of Descon Construction, LP is Descon Management, LLC.

On January 2, 2004, Descon Construction, LP contracted with Rio Grande City Consolidated Independent School District for construction of La Grulla Elementary School. A true and correct copy of the Standard Form of Agreement Between Owner and Contractor for construction of the La Grulla Elementary School Project, between Descon Construction, LP and RGCCISD, is attached hereto as Exhibit A (the "Contract"). The only parties to the Contract were Descon



EXHIBIT
C

Descon Construction, LP and RGCCISD. The La Grulla Elementary School Project was completed in or about March 2005.

Descon Construction, LP is an existing Texas limited partnership in good standing. It is the same entity that contracted with RGCCISD and with the subcontractors and material suppliers that furnished labor and materials for construction of the La Grulla Elementary project. Descon Construction, LP is also the entity that was responsible for receiving and handling any warranty claims that were made during the warranty period after the school was substantially completed in March 2005.

Descon Construction, LP has never done business under the name of Texas Descon, LP. Descon Construction, LP is and always has been a separate and distinct entity from Texas Descon, LP.

I understand from reviewing the Texas Secretary of State's records that Texas Descon, LP was first organized on January 24, 2006 when it filed its certificate of formation. A true and correct copy of the Certificate of Formation is attached hereto as Exhibit B and incorporated by reference. The La Grulla Elementary project was completed prior to January 24, 2006.

The statement in Plaintiff's Thirteenth Amended Original Petition that, "…The successor company Texas Descon L.P. was founded by its partner Michael C. Smith" is wrong. First, Texas Descon, L.P. is not a successor company to Descon Construction, L.P. The statement on Texas Descon, L.P.'s website that, "On January 25, 2006 Descon Construction was renamed to its successor company, Texas Descon, L.P. under a licensing agreement to carry on the tradition and reputation of Descon Construction, L.P." is not a correct statement. I did not write that statement or authorize its publication. Second, I was not the founder of Texas Descon, L.P. According to Exhibit B, Texas Descon, L.P. was formed on January 24, 2006 by its general partner Descon 4S, LLC.

Descon Construction, LP never assigned any rights or obligations related to the La Grulla Elementary contract with RGCCISD to Texas Descon, LP. Descon Construction, LP never assigned, sold, transferred its rights or obligations under the contract with RGCCISD for the construction of La Grulla Elementary, legal or otherwise, to any successor company, individual, person, or entity.

Attached to this affidavit as Exhibit C is a true and correct copy of Descon Construction L.P.'s Second Amended Answer. I have read Descon Construction LP's Second Amended Answer and every factual statement contained in that document is within my personal knowledge and is true and correct."

Further affiant sayeth naught.

_Michael C. Smith_
Michael C. Smith

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned authority, on this, the 28 day of April, 2015.

ANGELICA G. MIRANDA
NOTARY PUBLIC
COMMISSION EXPIRES:
10-30-2017

_Angelica Miranda_
Notary Public in and for
The State of Texas

AIA Document A101-1997

# Standard Form of Agreement Between Owner and Contractor
## where the basis of payment is a *STIPULATED SUM*

AGREEMENT made as of the 2nd day of January in the year of 2004
*(In words, indicate day, month and year)*

BETWEEN the Owner:
*(Name, address and other information)*
Rio Grande City Consolidated Independent School District
Fort Ringgold
Rio Grande City, Texas 78582

and the Contractor:
*(Name, address and other information)*
Descon Construction, LP
P.O. Box 3547
McAllen, Texas 78502

The Project is:
*(Name and location)*
New Elementary School
in La Grulla, Texas

The Architect is:
*(Name, address and other information)*
ERO International, LLP
300 S. 8th Street
McAllen, Texas 78501

The Owner and Contractor agree as follows.

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*AIA Document A201-1997, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.*

*This document has been approved and endorsed by The Associated General Contractors of America.*

## ARTICLE 1 THE CONTRACT DOCUMENTS

The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of this Agreement, other documents listed in this Agreement and Modifications issued after execution of this Agreement; these form the Contract, and are as fully a part of the Contract as if attached to this Agreement or repeated herein. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. An enumeration of the Contract Documents, other than Modifications, appears in Article 8.

## ARTICLE 2 THE WORK OF THIS CONTRACT

The Contractor shall fully execute the Work described in the Contract Documents, except to the extent specifically indicated in the Contract Documents to be the responsibility of others.



©1997 AIA®
AIA DOCUMENT A101-1997
OWNER-CONTRACTOR AGREEMENT

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates US copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below, expiration as noted below. User Document: 03001 La Grulla Elementary 97A101.aia -- 12/29/2003. AIA License Number 1012323, which expires on 10/7/2004.

EXHIBIT
A

DESCON 000264

## ARTICLE 3 DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

3.1     The date of commencement of the Work shall be the date of this Agreement unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the Owner.
*(Insert the date of commencement if it differs from the date of this Agreement or, if applicable, state that the date will be fixed in a notice to proceed.)*
<u>The Date of Commencement will be established by the "Notice to Proceed"</u>

If, prior to the commencement of the Work, the Owner requires time to file mortgages, mechanic's liens and other security interests, the Owner's time requirement shall be as follows:
<u>N/A</u>

3.2     The Contract Time shall be measured from the date of commencement.

3.3     The Contractor shall achieve Substantial Completion of the entire Work not later than <u>365 calandar</u> days from the date of commencement, or as follows:
*(Insert number of calendar days. Alternatively, a calendar date may be used when coordinated with the date of commencement. Unless stated elsewhere in the Contract Documents, insert any requirements for earlier Substantial Completion of certain portions of the Work.)*
<u>N/A</u>

, subject to adjustments of this Contract Time as provided in the Contract Documents.
*(Insert provisions, if any, for liquidated damages relating to failure to complete on time or for bonus payments for early completion of the Work.)*
<u>Liquidated damages in the amount of $500.00 per calender day shall accrue to the Owner after scheduled Substantial Completion date for late completion of the work.</u>

## ARTICLE 4 CONTRACT SUM

4.1     The Owner shall pay the Contractor the Contract Sum in current funds for the Contractor's performance of the Contract. The Contract Sum shall be <u>Seven Million Eight Hundred Eighty Five Thousand</u> Dollars ($ <u>7,885,000.00</u> ), subject to additions and deductions as provided in the Contract Documents.

4.2     The Contract Sum is based upon the following alternates, if any, which are described in the Contract Documents and are hereby accepted by the Owner:
*(State the numbers or other identification of accepted alternates. If decisions on other alternates are to be made by the Owner subsequent to the execution of this Agreement, attach a schedule of such other alternates showing the amount for each and the date when that amount expires)*
<u>N/A</u>

4.3     Unit prices, if any, are as follows:
<u>N/A</u>

## ARTICLE 5 PAYMENTS

5.1     **PROGRESS PAYMENTS**

5.1.1     Based upon Applications for Payment submitted to the Architect by the Contractor and Certificates for Payment issued by the Architect, the Owner shall make progress payments on account of the Contract Sum to the Contractor as provided below and elsewhere in the Contract Documents.

5.1.2     The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows:
<u>For billing purposes, the calender month shall end on the 25th day of the month.</u>

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

AIA Document A201-1997, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.

This document has been approved and endorsed by The Associated General Contractors of America.



©1997 AIA®
AIA DOCUMENT A101-1997
OWNER-CONTRACTOR AGREEMENT

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates US copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. User Document: 03001 La Grulla Elementary 97A101.aia -- 12/29/2003. AIA License Number 1012323, which expires on 10/7/2004.

DESCON 000265

2

5.1.3    Provided that an Application for Payment is received by the Architect not later than the 1st day of a month, the Owner shall make payment to the Contractor not later than the 25th day of the same month. If an Application for Payment is received by the Architect after the application date fixed above, payment shall be made by the Owner not later than 45 days after the Architect receives the Application for Payment.

5.1.4    Each Application for Payment shall be based on the most recent schedule of values submitted by the Contractor in accordance with the Contract Documents. The schedule of values shall allocate the entire Contract Sum among the various portions of the Work. The schedule of values shall be prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

5.1.5    Applications for Payment shall indicate the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment.

5.1.6    Subject to other provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:

.1    Take that portion of the Contract Sum properly allocable to completed Work as determined by multiplying the percentage completion of each portion of the Work by the share of the Contract Sum allocated to that portion of the Work in the schedule of values, less retainage of five percent ( 5 %). Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute shall be included as provided in Subparagraph 7.3.8 of AIA Document A201-1997.

.2    Add that portion of the Contract Sum properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the completed construction (or, if approved in advance by the Owner, suitably stored off the site at a location agreed upon in writing), less retainage of five percent ( 5%);

.3    Subtract the aggregate of previous payments made by the Owner; and

.4    Subtract amounts, if any, for which the Architect has withheld or nullified a Certificate for Payment as provided in Paragraph 9.5 of AIA Document A201-1997.

5.1.7    The progress payment amount determined in accordance with Subparagraph 5.1.6 shall be further modified under the following circumstances:

.1    Add, upon Substantial Completion of the Work, a sum sufficient to increase the total payments to the full amount of the Contract Sum, less such amounts as the Architect shall determine for incomplete Work, retainage applicable to such work and unsettled claims; and
*(Subparagraph 9.8.5 of AIA Document A201-1997 requires release of applicable retainage upon Substantial Completion of Work with consent of surety, if any.)*

.2    Add, if final completion of the Work is thereafter materially delayed through no fault of the Contractor, any additional amounts payable in accordance with Subparagraph 9.10.3 of AIA Document A201-1997.

5.1.8    Reduction or limitation of retainage, if any, shall be as follows:
*(If it is intended, prior to Substantial Completion of the entire Work, to reduce or limit the retainage resulting from the percentages inserted in Clauses 5.1.6.1 and 5.1.6.2 above, and this is not explained elsewhere in the Contract Documents, insert here provisions for such reduction or limitation.)*
N/A

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*AIA Document A201-1997, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.*

*This document has been approved and endorsed by The Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A101-1997
OWNER-CONTRACTOR AGREEMENT

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates US copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. User Document: 03001 La Grulla Elementary 97A101.aia -- 12/29/2003. AIA License Number 1012323, which expires on 10/7/2004.

DESCON 000266

**5.1.9**   Except with the Owner's prior approval, the Contractor shall not make advance payments to suppliers for materials or equipment which have not been delivered and stored at the site.

**5.2   FINAL PAYMENT**

**5.2.1**   Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Contractor when:

.1   the Contractor has fully performed the Contract except for the Contractor's responsibility to correct Work as provided in Subparagraph 12.2.2 of AIA Document A201-1997, and to satisfy other requirements, if any, which extend beyond final payment; and

.2   a final Certificate for Payment has been issued by the Architect.

**5.2.2**   The Owner's final payment to the Contractor shall be made no later than 30 days after the issuance of the Architect's final Certificate for Payment, or as follows:

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*AIA Document A201-1997, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.*

*This document has been approved and endorsed by The Associated General Contractors of America.*

## ARTICLE 6 TERMINATION OR SUSPENSION

**6.1**   The Contract may be terminated by the Owner or the Contractor as provided in Article 14 of AIA Document A201-1997.

**6.2**   The Work may be suspended by the Owner as provided in Article 14 of AIA Document A201-1997.

## ARTICLE 7 MISCELLANEOUS PROVISIONS

**7.1**   Where reference is made in this Agreement to a provision of AIA Document A201-1997 or another Contract Document, the reference refers to that provision as amended or supplemented by other provisions of the Contract Documents.

**7.2**   Payments due and unpaid under the Contract shall bear interest from the date payment is due at the rate stated below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.
*(Insert rate of interest agreed upon, if any.)*
<u>At the legal prevailing rate in Starr County, Texas</u>

*Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's and Contractor's principal places of business, the location of the Project and elsewhere may affect the validity of this provision. Legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)*

**7.3**   The Owner's representative is:
*(Name, address and other information)*
<u>Roel Gonzalez, Superintendent of Schools</u>
<u>Fort Ringgold</u>
<u>Rio Grande City, Texas</u>
<u>(956) 716-8702</u>



**7.4**   The Contractor's representative is:
*(Name, address and other information)*
<u>Wayne Medlin</u>
<u>P.O. Box 3547</u>
<u>McAllen, Texas</u>
<u>(956) 682-1226</u>

©1997 AIA®
AIA DOCUMENT A101-1997
OWNER-CONTRACTOR AGREEMENT

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates US copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. User Document: 03001 La Grulla Elementary 97A101.aia -- 12/29/2003. AIA License Number 1012323, which expires on 10/7/2004.

DESCON 000267

4

7.5    Neither the Owner's nor the Contractor's representative shall be changed without ten days written notice to the other party.

7.6    Other provisions:
Contractor agrees that it will hire/subcontract local Subcontractors in the construction of the Work provided that:  (a) the local Subcontractor submits the lowest bid or negotiated bid or meets the lowest bid or negotiated bid submitted by any other none local low bidder for such trade or construction phase, (b) such local Subcontractor provides any and all bonds and insurance required of Subcontractors and meets such qualifications for such trade and for the specifications of the Work.

Contractor agrees to hire as much; skilled, semi-skilled and other labor from the local work force as possible without compromising the structural soundness of the Work.

Contractor agrees that after payment by the District following approval of each pay application, Contractor will pay its Subcontractors as follows:
1.    Subcontractor not under a Joint Pay Check Agreement:  Subcontractors not under a Joint Pay Check Agreement shall be paid not later than fourteen (14) days from the date the Contractor receives payment from the District.
2.    Subcontractor under a Joint Pay Check Agreement:  Contractor agrees to pay those Subcontractors under a Joint Pay Agreement not later than fourteen (14) days from the date each such Subcontractor delivers to the Contractor such vendor releases as may be required pursuant to the Joint Pay Check Agreement between the Contractor and Subcontractor.

## ARTICLE 8 ENUMERATION OF CONTRACT DOCUMENTS
8.1    The Contract Documents, except for Modifications issued after execution of this Agreement, are enumerated as follows:

8.1.1    The Agreement is this executed 1997 edition of the Standard Form of Agreement Between Owner and Contractor, AIA Document A101-1997.

8.1.2    The General Conditions are the 1997 edition of the General Conditions of the Contract for Construction, AIA Document A201-1997.

8.1.3    The Supplementary and other Conditions of the Contract are those contained in the Project Manual dated October 25, 2003, and are as follows:

| Document | Title | Pages |
|---|---|---|
| AIA Document 201 | General Conditions | 44 |
|  | Supplementary Conditions | 1 |

8.1.4    The Specifications are those contained in the Project Manual dated as in Subparagraph 8.1.3, and are as follows:
*(Either list the Specifications here or refer to an exhibit attached to this Agreement.)*

| Section | Title | Pages |
|---|---|---|
| Refer to Exhibit A. Five (5) pages. Attached | | |

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

AIA Document A201-1997, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.

This document has been approved and endorsed by The Associated General Contractors of America.

©1997 AIA®
AIA DOCUMENT A101-1997
OWNER-CONTRACTOR AGREEMENT

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution.  WARNING: Unlicensed  photocopying violates US copyright laws and  will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. User Document: 03001 La Grulla Elementary 97A101.aia -- 12/29/2003. AIA License Number 1012323, which expires on 10/7/2004.

5

DESCON 000268

**8.1.5** The Drawings are as follows, and are dated unless a different date is shown below:
*(Either list the Drawings here or refer to an exhibit attached to this Agreement.)*

| Number | Title | Date |
|---|---|---|

<u>Refer to Exhibit B, Four (4) pages, Attached</u>

**8.1.6** The Addenda, if any, are as follows:

| Number | Date | Pages |
|---|---|---|
| Addendum No.1 | November 5, 2003 | 1 |
| Addendum No. 2 | November 26, 2003 | 90 |
| Addendum No. 3 | December 1, 2003 | 8 |
| Addendum No. 4 | December 2, 2003 | 26 |
| Addendum No. 5 | December 3, 2003 | 3 |

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

Portions of Addenda relating to bidding requirements are not part of the Contract Documents unless the bidding requirements are also enumerated in this Article 8.

AIA Document A201-1997, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.

**8.1.7** Other documents, if any, forming part of the Contract Documents are as follows:
*(List here any additional documents that are intended to form part of the Contract Documents. AIA Document A201-1997 provides that bidding requirements such as advertisement or invitation to bid, Instructions to Bidders, sample forms and the Contractor's bid are not part of the Contract Documents unless enumerated in this Agreement. They should be listed here only if intended to be part of the Contract Documents.)*
<u>AIA Document A312 - Performance Bond and Payment Bond</u>
<u>Certificate of Liability Insurance</u>

This document has been approved and endorsed by The Associated General Contractors of America.

This Agreement is entered into as of the day and year first written above and is executed in at least three original copies, of which one is to be delivered to the Contractor, one to the Architect for use in the administration of the Contract, and the remainder to the Owner.

**OWNER** *(Signature)*

**CONTRACTOR** *(Signature)*

<u>Mr. Roel Gonzalez, Superintendent</u>
*(Printed name and title)*

<u>Mr. Wayne Medlin, Partner</u> President
*(Printed name and title)*



©1997 AIA®
AIA DOCUMENT A101-1997
OWNER-CONTRACTOR AGREEMENT

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

© 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates US copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. expiration as noted below. User Document: 03001 La Grulla Elementary 97A101.aia -- 12/29/2003. AIA License Number 1012323, which expires on 10/7/2004.

DESCON 000269

## AIA Document A201 - 1997

# General Conditions of the Contract for Construction

## TABLE OF ARTICLES

1. GENERAL PROVISIONS

2. OWNER

3. CONTRACTOR

4. ADMINISTRATION OF THE CONTRACT

5. SUBCONTRACTORS

6. CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS

7. CHANGES IN THE WORK

8. TIME

9. PAYMENTS AND COMPLETION

10. PROTECTION OF PERSONS AND PROPERTY

11. INSURANCE AND BONDS

12. UNCOVERING AND CORRECTION OF WORK

13. MISCELLANEOUS PROVISIONS

14. TERMINATION OR SUSPENSION OF THE CONTRACT

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by The Associated General Contractors of America.*

INDEX

Acceptance of Nonconforming Work
9.6.6, 9.9.3, 12.3
Acceptance of Work
9.6.6, 9.8.2, 9.9.3, 9.10.1, 9.10.3, 12.3
Access to Work
3.16, 6.2.1, 12.1
Accident Prevention
4.2.3, 10
Acts and Omissions
3.2, 3.3.2, 3.12.8, 3.18, 4.2.3, 4.3.8, 4.4.1, 8.3.1, 9.5.1, 10.2.5, 13.4.2, 13.7, 14.1

Addenda
1.1.1, 3.11
Additional Costs, Claims for
4.3.4, 4.3.5, 4.3.6, 6.1.1, 10.3
Additional Inspections and Testing
9.8.3, 12.2.1, 13.5
Additional Time, Claims for
4.3.4, 4.3.7, 8.3.2
ADMINISTRATION OF THE CONTRACT
3.1.3, 4, 9.4, 9.5
Advertisement or Invitation to Bid
1.1.1



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

»Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, © 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 03001 la grulla ementary 97a201.aia -- 12/29/2003. AIA License Number 1012323, which expires on 10/7/2004.

1

DESCON 000270

DESCON 000271

Aesthetic Effect
4.2.13, 4.5.1
Allowances
3.8
All-risk Insurance
11.4.1.1
Applications for Payment
4.2.5, 7.3.8, 9.2, 9.3, 9.4, 9.5.1, 9.6.3, 9.7.1, 9.8.5,
9.10, 11.1.3, 14.2.4, 14.4.3
Approvals
2.4, 3.1.3, 3.5, 3.10.2, 3.12, 4.2.7, 9.3.2, 13.4.2,
13.5
Arbitration
4.3.3, 4.4, 4.5.1, 4.5.2, 4.6, 8.3.1, 9.7.1, 11.4.9,
11.4.10
Architect
4.1
Architect, Definition of
4.1.1
Architect, Extent of Authority
2.4, 3.12.7, 4.2, 4.3.6, 4.4, 5.2, 6.3, 7.1.2, 7.3.6,
7.4, 9.2, 9.3.1, 9.4, 9.5, 9.8.3, 9.10.1, 9.10.3, 12.1,
12.2.1, 13.5.1, 13.5.2, 14.2.2, 14.2.4
Architect, Limitations of Authority and
Responsibility
2.1.1, 3.3.3, 3.12.4, 3.12.8, 3.12.10, 4.1.2, 4.2.1,
4.2.2, 4.2.3, 4.2.6, 4.2.7, 4.2.10, 4.2.12, 4.2.13,
4.4, 5.2.1, 7.4, 9.4.2, 9.6.4, 9.6.6
Architect's Additional Services and Expenses
2.4, 11.4.1.1, 12.2.1, 13.5.2, 13.5.3, 14.2.4
Architect's Administration of the Contract
3.1.3, 4.2, 4.3.4, 4.4, 9.4, 9.5
Architect's Approvals
2.4, 3.1.3, 3.5.1, 3.10.2, 4.2.7
Architect's Authority to Reject Work
3.5.1, 4.2.6, 12.1.2, 12.2.1
Architect's Copyright
1.6
Architect's Decisions
4.2.6, 4.2.7, 4.2.11, 4.2.12, 4.2.13, 4.3.4, 4.4.1,
4.4.5, 4.4.6, 4.5, 6.3, 7.3.6, 7.3.8, 8.1.3, 8.3.1, 9.2,
9.4, 9.5.1, 9.8.4, 9.9.1, 13.5.2, 14.2.2, 14.2.4
Architect's Inspections
4.2.2, 4.2.9, 4.3.4, 9.4.2, 9.8.3, 9.9.2, 9.10.1, 13.5
Architect's Instructions
3.2.3, 3.3.1, 4.2.6, 4.2.7, 4.2.8, 7.4.1, 12.1, 13.5.2
Architect's Interpretations
4.2.11, 4.2.12, 4.3.6
Architect's Project Representative
4.2.10
Architect's Relationship with Contractor
1.1.2, 1.6, 3.1.3, 3.2.1, 3.2.2, 3.2.3, 3.3.1, 3.4.2,
3.5.1, 3.7.3, 3.10, 3.11, 3.12, 3.16, 3.18, 4.1.2, 4.1.3,
4.2, 4.3.4, 4.4.1, 4.4.7, 5.2, 6.2.2, 7, 8.3.1, 9.2,
9.3, 9.4, 9.5, 9.7, 9.8, 9.9, 10.2.6, 10.3, 11.3,
11.4.7, 12, 13.4.2, 13.5
Architect's Relationship with Subcontractors

1.1.2, 4.2.3, 4.2.4, 4.2.6, 9.6.3, 9.6.4, 11.4.7
Architect's Representations
9.4.2, 9.5.1, 9.10.1
Architect's Site Visits
4.2.2, 4.2.5, 4.2.9, 4.3.4, 9.4.2, 9.5.1, 9.9.2,
9.10.1, 13.5
Asbestos
10.3.1
Attorneys' Fees
3.18.1, 9.10.2, 10.3.3
Award of Separate Contracts
6.1.1, 6.1.2
Award of Subcontracts and Other Contracts for
Portions of the Work
5.2
Basic Definitions
1.1
Bidding Requirements
1.1.1, 1.1.7, 5.2.1, 11.5.1
Boiler and Machinery Insurance
11.4.2
Bonds, Lien
9.10.2
Bonds, Performance, and Payment
7.3.6.4, 9.6.7, 9.10.3, 11.4.9, 11.5
Building Permit
3.7.1
Capitalization
1.3
Certificate of Substantial Completion
9.8.3, 9.8.4, 9.8.5
Certificates for Payment
4.2.5, 4.2.9, 9.3.3, 9.4, 9.5, 9.6.1, 9.6.6, 9.7.1,
9.10.1, 9.10.3, 13.7, 14.1.1.3, 14.2.4
Certificates of Inspection, Testing or Approval
13.5.4
Certificates of Insurance
9.10.2, 11.1.3
Change Orders
1.1.1, 2.4.1, 3.4.2, 3.8.2.3, 3.11.1, 3.12.8, 4.2.8,
4.3.4, 4.3.9, 5.2.3, 7.1, 7.2, 7.3, 8.3.1, 9.3.1.1,
9.10.3, 11.4.1.2, 11.4.4, 11.4.9, 12.1.2
Change Orders, Definition of
7.2.1
CHANGES IN THE WORK
3.11, 4.2.8, 7, 8.3.1, 9.3.1.1, 11.4.9
Claim, Definition of
4.3.1
Claims and Disputes
3.2.3, 4.3, 4.4, 4.5, 4.6, 6.1.1, 6.3, 7.3.8, 9.3.3,
9.10.4, 10.3.3
Claims and Timely Assertion of Claims
4.6.5
Claims for Additional Cost
3.2.3, 4.3.4, 4.3.5, 4.3.6, 6.1.1, 7.3.8, 10.3.2
Claims for Additional Time

THIS DOCUMENT HAS IMPORTANT LEGAL
CONSEQUENCES. CONSULTATION WITH AN
ATTORNEY IS ENCOURAGED WITH
RESPECT TO ITS COMPLETION OR
MODIFICATION. AUTHENTICATION OF THIS
ELECTRONICALLY DRAFTED AIA
DOCUMENT MAY BE MADE BY USING AIA
DOCUMENT D401.

This document has been approved and
endorsed by The Associated General
Contractors of America.



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

»Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, © 1997 by The
American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial
quotation of its provisions without written permission of the AIA violates the copyright laws of the United
States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S.
copyright laws and will subject the violator to legal prosecution. This document was electronically produced
with permission of the AIA and can be reproduced in accordance with your license without violation until
the date of expiration as noted below. User Document: 03001 la grulla ementary 97a201.aia -- 12/29/2003.
AIA License Number 1012323, which expires on 10/7/2004.

2

DESCON 000272

3.2.3, 4.3.4, 4.3.7, 6.1.1, 8.3.2, 10.3.2

Claims for Concealed or Unknown Conditions
4.3.4

Claims for Damages
3.2.3, 3.18, 4.3.10, 6.1.1, 8.3.3, 9.5.1, 9.6.7, 10.3.3, 11.1.1, 11.4.5, 11.4.7, 14.1.3, 14.2.4

Claims Subject to Arbitration
4.4.1, 4.5.1, 4.6.1

Cleaning Up
3.15, 6.3

Commencement of Statutory Limitation Period
13.7

Commencement of the Work, Conditions Relating to
2.2.1, 3.2.1, 3.4.1, 3.7.1, 3.10.1, 3.12.6, 4.3.5, 5.2.1, 5.2.3, 6.2.2, 8.1.2, 8.2.2, 8.3.1, 11.1, 11.4.1, 11.4.6, 11.5.1

Commencement of the Work, Definition of
8.1.2

Communications Facilitating Contract Administration
3.9.1, 4.2.4

Completion, Conditions Relating to
1.6.1, 3.4.1, 3.11, 3.15, 4.2.2, 4.2.9, 8.2, 9.4.2, 9.8, 9.9.1, 9.10, 12.2, 13.7, 14.1.2

COMPLETION, PAYMENTS AND
9

Completion, Substantial
4.2.9, 8.1.1, 8.1.3, 8.2.3, 9.4.2, 9.8, 9.9.1, 9.10.3, 9.10.4.2, 12.2, 13.7

Compliance with Laws
1.6.1, 3.2.2, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 4.4.8, 4.6.4, 4.6.6, 9.6.4, 10.2.2, 11.1, 11.4, 13.1, 13.4, 13.5.1, 13.5.2, 13.6, 14.1.1, 14.2.1.3

Concealed or Unknown Conditions
4.3.4, 8.3.1, 10.3

Conditions of the Contract
1.1.1, 1.1.7, 6.1.1, 6.1.4

Consent, Written
1.6, 3.4.2, 3.12.8, 3.14.2, 4.1.2, 4.3.4, 4.6.4, 9.3.2, 9.8.5, 9.9.1, 9.10.2, 9.10.3, 11.4.1, 13.2, 13.4.2

CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS
1.1.4, 6

Construction Change Directive, Definition of
7.3.1

Construction Change Directives
1.1.1, 3.12.8, 4.2.8, 4.3.9, 7.1, 7.3, 9.3.1.1

Construction Schedules, Contractor's
1.4.1.2, 3.10, 3.12.1, 3.12.2, 4.3.7.2, 6.1.3

Contingent Assignment of Subcontracts
5.4, 14.2.2.2

Continuing Contract Performance
4.3.3

Contract, Definition of

1.1.2

CONTRACT, TERMINATION OR SUSPENSION OF THE
5.4.1.1, 11.4.9, 14

Contract Administration
3.1.3, 4, 9.4, 9.5

Contract Award and Execution, Conditions Relating to
3.7.1, 3.10, 5.2, 6.1, 11.1.3, 11.4.6, 11.5.1

Contract Documents, The
1.1, 1.2

Contract Documents, Copies Furnished and Use of
1.6, 2.2.5, 5.3

Contract Documents, Definition of
1.1.1

Contract Sum
3.8, 4.3.4, 4.3.5, 4.4.5, 5.2.3, 7.2, 7.3, 7.4, 9.1, 9.4.2, 9.5.1.4, 9.6.7, 9.7, 10.3.2, 11.4.1, 14.2.4, 14.3.2

Contract Sum, Definition of
9.1

Contract Time
4.3.4, 4.3.7, 4.4.5, 5.2.3, 7.2.1.3, 7.3, 7.4, 8.1.1, 8.2, 8.3.1, 9.5.1, 9.7, 10.3.2, 12.1.1, 14.3.2

Contract Time, Definition of
8.1.1

CONTRACTOR
3

Contractor, Definition of
3.1, 6.1.2

Contractor's Construction Schedules
1.4.1.2, 3.10, 3.12.1, 3.12.2, 4.3.7.2, 6.1.3

Contractor's Employees
3.3.2, 3.4.3, 3.8.1, 3.9, 3.18.2, 4.2.3, 4.2.6, 10.2, 10.3, 11.1.1, 11.4.7, 14.1, 14.2.1.1,

Contractor's Liability Insurance
11.1

Contractor's Relationship with Separate Contractors and Owner's Forces
3.12.5, 3.14.2, 4.2.4, 6, 11.4.7, 12.1.2, 12.2.4

Contractor's Relationship with Subcontractors
1.2.2, 3.3.2, 3.18.1, 3.18.2, 5, 9.6.2, 9.6.7, 9.10.2, 11.4.1.2, 11.4.7, 11.4.8

Contractor's Relationship with the Architect
1.1.2, 1.6, 3.1.3, 3.2.1, 3.2.2, 3.2.3, 3.3.1, 3.4.2, 3.5.1, 3.7.3, 3.10, 3.11, 3.12, 3.16, 3.18, 4.1.2, 4.1.3, 4.2, 4.3.4, 4.4.1, 4.4.7, 5.2, 6.2.2, 7, 8.3.1, 9.2, 9.3, 9.4, 9.5, 9.7, 9.8, 9.9, 10.2.6, 10.3, 11.3, 11.4.7, 12, 13.4.2, 13.5

Contractor's Representations
1.5.2, 3.5.1, 3.12.6, 6.2.2, 8.2.1, 9.3.3, 9.8.2

Contractor's Responsibility for Those Performing the Work
3.3.2, 3.18, 4.2.3, 4.3.8, 5.3.1, 6.1.3, 6.2, 6.3, 9.5.1, 10

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

This document has been approved and endorsed by The Associated General Contractors of America.



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

»Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, © 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 03001 la grulla ementary 97a201.aia -- 12/29/2003. AIA License Number 1012323, which expires on 10/7/2004.

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

3

DESCON 000273

Contractor's Review of Contract Documents
1.5.2, 3.2, 3.7.3
Contractor's Right to Stop the Work
9.7
Contractor's Right to Terminate the Contract
4.3.10, 14.1
Contractor's Submittals
3.10, 3.11, 3.12, 4.2.7, 5.2.1, 5.2.3, 7.3.6, 9.2, 9.3,
9.8.2, 9.8.3, 9.9.1, 9.10.2, 9.10.3, 11.1.3, 11.5.2
Contractor's Superintendent
3.9, 10.2.6
Contractor's Supervision and Construction
Procedures
1.2.2, 3.3, 3.4, 3.12.10, 4.2.2, 4.2.7, 4.3.3, 6.1.3,
6.2.4, 7.1.3, 7.3.4, 7.3.6, 8.2, 10, 12, 14
Contractual Liability Insurance
11.1.1.8, 11.2, 11.3
Coordination and Correlation
1.2, 1.5.2, 3.3.1, 3.10, 3.12.6, 6.1.3, 6.2.1
Copies Furnished of Drawings and
Specifications
1.6, 2.2.5, 3.11
Copyrights
1.6, 3.17
Correction of Work
2.3, 2.4, 3.7.4, 4.2.1, 9.4.2, 9.8.2, 9.8.3, 9.9.1,
12.1.2, 12.2, 13.7.1.3
Correlation and Intent of the Contract
Documents
1.2
Cost, Definition of
7.3.6
Costs
2.4, 3.2.3, 3.7.4, 3.8.2, 3.15.2, 4.3, 5.4.2, 6.1.1,
6.2.3, 7.3.3.3, 7.3.6, 7.3.7, 7.3.8, 9.10.2, 10.3.2,
10.5, 11.3, 11.4, 12.1, 12.2.1, 12.2.4, 13.5, 14
Cutting and Patching
6.2.5, 3.14
Damage to Construction of Owner or Separate
Contractors
3.14.2, 6.2.4, 9.2.1.5, 10.2.1.2, 10.2.5, 10.6, 11.1,
11.4, 12.2.4
Damage to the Work
3.14.2, 9.9.1, 10.2.1.2, 10.2.5, 10.6, 11.4, 12.2.4
Damages, Claims for
3.2.3, 3.18, 4.3.10, 6.1.1, 8.3.3, 9.5.1, 9.6.7, 10.3.3,
11.1.1, 11.4.5, 11.4.7, 14.1.3, 14.2.4
Damages for Delay
6.1.1, 8.3.3, 9.5.1.6, 9.7, 10.3.2
Date of Commencement of the Work,
Definition of
8.1.2
Date of Substantial Completion, Definition of
8.1.3
Day, Definition of
8.1.4
Decisions of the Architect

4.2.6, 4.2.7, 4.2.11, 4.2.12, 4.2.13, 4.3.4, 4.4.1,
4.4.5, 4.4.6, 4.5, 6.3, 7.3.6, 7.3.8, 8.1.3, 8.3.1, 9.2,
9.4, 9.5.1, 9.8.4, 9.9.1, 13.5.2, 14.2.2, 14.2.4
Decisions to Withhold Certification
9.4.1, 9.5, 9.7, 14.1.1.3
Defective or Nonconforming Work, Acceptance,
Rejection and Correction of
2.3, 2.4, 3.5.1, 4.2.6, 6.2.5, 9.5.1, 9.5.2, 9.6.6,
9.8.2, 9.9.3, 9.10.4, 12.2.1, 13.7.1.3
Defective Work, Definition of
3.5.1
Definitions
1.1, 2.1.1, 3.1, 3.5.1, 3.12.1, 3.12.2, 3.12.3, 4.1.1,
4.3.1, 5.1, 6.1.2, 7.2.1, 7.3.1, 7.3.6, 8.1, 9.1, 9.8.1
Delays and Extensions of Time
3.2.3, 4.3.1, 4.3.4, 4.3.7, 4.4.5, 5.2.3, 7.2.1, 7.3.1,
7.4.1, 7.5.1, 8.3, 9.5.1, 9.7.1, 10.3.2, 10.6.1, 14.3.2
Disputes
4.1.4, 4.3, 4.4, 4.5, 4.6, 6.3, 7.3.8
Documents and Samples at the Site
3.11
Drawings, Definition of
1.1.5
Drawings and Specifications, Use and
Ownership of
1.1.1, 1.3, 2.2.5, 3.11, 5.3
Effective Date of Insurance
8.2.2, 11.1.2
Emergencies
4.3.5, 10.6, 14.1.1.2
Employees, Contractor's
3.3.2, 3.4.3, 3.8.1, 3.9, 3.18.2, 4.2.3, 4.2.6, 10.2,
10.3, 11.1.1, 11.4.7, 14.1, 14.2.1.1
Equipment, Labor, Materials and
1.1.3, 1.1.6, 3.4, 3.5.1, 3.8.2, 3.8.3, 3.12, 3.13, 3.15.1,
4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.6, 9.3.2, 9.3.3,
9.5.1.3, 9.10.2, 10.2.1, 10.2.4, 14.2.1.2
Execution and Progress of the Work
1.1.3, 1.2.1, 1.2.2, 2.2.3, 2.2.5, 3.1, 3.3, 3.4, 3.5, 3.7,
3.10, 3.12, 3.14, 4.2.2, 4.2.3, 4.3.3, 6.2.2, 7.1.3,
7.3.4, 8.2, 9.5, 9.9.1, 10.2, 10.3, 12.2, 14.2, 14.3
Extensions of Time
3.2.3, 4.3.1, 4.3.4, 4.3.7, 4.4.5, 5.2.3, 7.2.1, 7.3,
7.4.1, 9.5.1, 9.7.1, 10.3.2, 10.6.1, 14.3.2
Failure of Payment
4.3.6, 9.5.1.3, 9.7, 9.10.2, 14.1.1.3, 14.2.1.2, 13.6
Faulty Work
(See Defective or Nonconforming Work)
Final Completion and Final Payment
4.2.1, 4.2.9, 4.3.2, 9.8.2, 9.10, 11.1.2, 11.1.3, 11.4.1,
11.4.5, 12.3.1, 13.7, 14.2.4, 14.4.3
Financial Arrangements, Owner's
2.2.1, 13.2.2, 14.1.1.5
Fire and Extended Coverage Insurance
11.4
GENERAL PROVISIONS

THIS DOCUMENT HAS IMPORTANT LEGAL
CONSEQUENCES. CONSULTATION WITH AN
ATTORNEY IS ENCOURAGED WITH
RESPECT TO ITS COMPLETION OR
MODIFICATION. AUTHENTICATION OF THIS
ELECTRONICALLY DRAFTED AIA
DOCUMENT MAY BE MADE BY USING AIA
DOCUMENT D401.

This document has been approved and
endorsed by The Associated General
Contractors of America.



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

»Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, © 1997 by The
American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial
quotation of its provisions without written permission of the AIA violates the copyright laws of the United
States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S.
copyright laws and will subject the violator to legal prosecution. This document was electronically produced
with permission of the AIA and can be reproduced in accordance with your license without violation until
the date of expiration as noted below. User Document: 03001 la grulla ementary 97a201.aia -- 12/29/2003.
AIA License Number 1012323, which expires on 10/7/2004.

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

4

DESCON 000274

1

Governing Law
13.1
Guarantees (See Warranty)
Hazardous Materials
10.2.4, 10.3, 10.5
Identification of Contract Documents
1.5.1
Identification of Subcontractors and Suppliers
5.2.1
Indemnification
3.17, 3.18, 9.10.2, 10.3.3, 10.5, 11.4.1.2, 11.4.7
Information and Services Required of the Owner
2.1.2, 2.2, 3.2.1, 3.12.4, 3.12.10, 4.2.7, 4.3.3, 6.1.3,
6.1.4, 6.2.5, 9.3.2, 9.6.1, 9.6.4, 9.9.2, 9.10.3,
10.3.3, 11.2, 11.4, 13.5.1, 13.5.2, 14.1.1.4, 14.1.4
Injury or Damage to Person or Property
4.3.8, 10.2, 10.6
Inspections
3.1.3, 3.3.3, 3.7.1, 4.2.2, 4.2.6, 4.2.9, 9.4.2, 9.8.2,
9.8.3, 9.9.2, 9.10.1, 12.2.1, 13.5
Instructions to Bidders
1.1.1
Instructions to the Contractor
3.2.3, 3.3.1, 3.8.1, 4.2.8, 5.2.1, 7, 12, 8.2.2, 13.5.2
Insurance
3.18.1, 6.1.1, 7.3.6, 8.2.1, 9.3.2, 9.8.4, 9.9.1,
9.10.2, 9.10.5, 11
Insurance, Boiler and Machinery
11.4.2
Insurance, Contractor's Liability
11.1
Insurance, Effective Date of
8.2.2, 11.1.2
Insurance, Loss of Use
11.4.3
Insurance, Owner's Liability
11.2
Insurance, Project Management Protective
Liability
11.3
Insurance, Property
10.2.5, 11.4
Insurance, Stored Materials
9.3.2, 11.4.1.4
INSURANCE AND BONDS
11
Insurance Companies, Consent to Partial
Occupancy
9.9.1, 11.4.1.5
Insurance Companies, Settlement with
11.4.10
Intent of the Contract Documents
1.2.1, 4.2.7, 4.2.12, 4.2.13, 7.4
Interest

13.6
Interpretation
1.2.3, 1.4, 4.1.1, 4.3.1, 5.1, 6.1.2, 8.1.4
Interpretations, Written
4.2.11, 4.2.12, 4.3.6
Joinder and Consolidation of Claims Required
4.6.4
Judgment on Final Award
4.6.6
Labor and Materials, Equipment
1.1.3, 1.1.6, 3.4, 3.5.1, 3.8.2, 3.8.3, 3.12, 3.13,
3.15.1, 42.6, 4.2.7, 5.2.1, 6.2.1, 7.3.6, 9.3.2, 9.3.3,
9.5.1.3, 9.10.2, 10.2.1, 10.2.4, 14.2.1.2
Labor Disputes
8.3.1
Laws and Regulations
1.6, 3.2.2, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 4.4.8, 4.6,
9.6.4, 9.9.1, 10.2.2, 11.1, 11.4, 13.1, 13.4, 13.5.1,
13.5.2, 13.6, 14
Liens
2.1.2, 4.4.8, 8.2.2, 9.3.3, 9.10
Limitation on Consolidation or Joinder
4.6.4
Limitations, Statutes of
4.6.3, 12.2.6, 13.7
Limitations of Liability
2.3, 3.2.1, 3.5.1, 3.7.3, 3.12.8, 3.12.10, 3.17, 3.18,
4.2.6, 4.2.7, 4.2.12, 6.2.2, 9.4.2, 9.6.4, 9.6.7,
9.10.4, 10.3.3, 10.2.5, 11.1.2, 11.2.1, 11.4.7, 12.2.5,
13.4.2
Limitations of Time
2.1.2, 2.2, 2.4, 3.2.1, 3.7.3, 3.10, 3.11, 3.12.5, 3.15.1,
4.2.7, 4.3, 4.4, 4.5, 4.6, 5.2, 5.3, 5.4, 6.2.4, 7.3,
7.4, 8.2, 9.2, 9.3.1, 9.3.3, 9.4.1, 9.5, 9.6, 9.7, 9.8,
9.9, 9.10, 11.1.3, 11.4.1.5, 11.4.6, 11.4.10, 12.2, 13.5,
13.7, 14
Loss of Use Insurance
11.4.3
Material Suppliers
1.6, 3.12.1, 4.2.4, 4.2.6, 5.2.1, 9.3, 9.4.2, 9.6,
9.10.5
Materials, Hazardous
10.2.4, 10.3, 10.5
Materials, Labor, Equipment and
1.1.3, 1.1.6, 1.6.1, 3.4, 3.5.1, 3.8.2, 3.8.23, 3.12, 3.13,
3.15.1, 4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.6, 9.3.2, 9.3.3,
9.5.1.3, 9.10.2, 10.2.1, 10.2.4, 14.2.1.2
Means, Methods, Techniques, Sequences and
Procedures of Construction
3.3.1, 3.12.10, 4.2.2, 4.2.7, 9.4.2
Mechanic's Lien
4.4.8
Mediation
4.4.1, 4.4.5, 4.4.6, 4.4.8, 4.5, 4.6.1, 4.6.2, 8.3.1,
10.5
Minor Changes in the Work

THIS DOCUMENT HAS IMPORTANT LEGAL
CONSEQUENCES. CONSULTATION WITH AN
ATTORNEY IS ENCOURAGED WITH
RESPECT TO ITS COMPLETION OR
MODIFICATION. AUTHENTICATION OF THIS
ELECTRONICALLY DRAFTED AIA
DOCUMENT MAY BE MADE BY USING AIA
DOCUMENT D401.

This document has been approved and
endorsed by The Associated General
Contractors of America.



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

»Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, © 1997 by The
American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial
quotation of its provisions without written permission of the AIA violates the copyright laws of the United
States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S.
copyright laws and will subject the violator to legal prosecution. This document was electronically produced
with permission of the AIA and can be reproduced in accordance with your license without violation until
the date of expiration as noted below. User Document: 03001 la grulla ementary 97a201.aia -- 12/29/2003.
AIA License Number 1012323, which expires on 10/7/2004.

DESCON 000275

1.1.1, 3.12.8, 4.2.8, 4.3.6, 7.1, 7.4

## MISCELLANEOUS PROVISIONS
13

Modifications, Definition of
1.1.1
Modifications to the Contract
1.1.1, 1.1.2, 3.7.3, 3.11, 4.1.2, 4.2.1, 5.2.3, 7, 8.3.1,
9.7, 10.3.2, 11.4.1
Mutual Responsibility
6.2
Nonconforming Work, Acceptance of
9.6.6, 9.9.3, 12.3
Nonconforming Work, Rejection and
Correction of
2.3, 2.4, 3.5.1, 4.2.6, 6.2.5, 9.5.1, 9.8.2, 9.9.3,
9.10.4, 12.2.1, 13.7.1.3
Notice
2.2.1, 2.3, 2.4, 3.2.3, 3.3.1, 3.7.2, 3.7.4, 3.12.9, 4.3,
4.4.8, 4.6.5, 5.2.1, 8.2.2, 9.7, 9.10, 10.2.2, 11.1.3,
11.4.6, 12.2.2, 12.2.4, 13.3, 13.5.1, 13.5.2, 14.1, 14.2
Notice, Written
2.3, 2.4, 3.3.1, 3.9, 3.12.9, 3.12.10, 4.3, 4.4.8,
4.6.5, 5.2.1, 8.2.2, 9.7, 9.10, 10.2.2, 10.3, 11.1.3,
11.4.6, 12.2.2, 12.2.4, 13.3, 14
Notice of Testing and Inspections
13.5.1, 13.5.2
Notice to Proceed
8.2.2
Notices, Permits, Fees and
2.2.2, 3.7, 3.13, 7.3.6.4, 10.2.2
Observations, Contractor's
1.5.2, 3.2, 3.7.3, 4.3.4
Occupancy
2.2.2, 9.6.6, 9.8, 11.4.1.5
Orders, Written
1.1.1, 2.3, 3.9, 4.3.6, 7, 8.2.2, 11.4.9, 12.1, 12.2,
13.5.2, 14.3.1

## OWNER
2

Owner, Definition of
2.1
Owner, Information and Services Required of
the
2.1.2, 2.2, 3.2.1, 3.12.4, 3.12.10, 4.2.7, 4.3.3, 6.1.3,
6.1.4, 6.2.5, 9.3.2, 9.6.1, 9.6.4, 9.9.2, 9.10.3,
10.3.3, 11.2, 11.4, 13.5.1, 13.5.2, 14.1.1.4, 14.1.4
Owner's Authority
1.6, 2.1.1, 2.3, 2.4, 3.4.2, 3.8.1, 3.12.10, 3.14.2,
4.1.2, 4.1.3, 4.2.4, 4.2.9, 4.3.6, 4.4.7, 5.2.1, 5.2.4,
5.4.1, 6.1, 6.3, 7.2.1, 7.3.1, 8.2.2, 8.3.1, 9.3.1, 9.3.2,
9.5.1, 9.9.1, 9.10.2, 10.3.2, 11.1.3, 11.3.1, 11.4.3,
11.4.10, 12.2.2, 12.3.1, 13.2.2, 14.3, 14.4
Owner's Financial Capability
2.2.1, 13.2.2, 14.1.1.5
Owner's Liability Insurance

11.2
Owner's Loss of Use Insurance
11.4.3
Owner's Relationship with Subcontractors
1.1.2, 5.2, 5.3, 5.4, 9.6.4, 9.10.2, 14.2.2
Owner's Right to Carry Out the Work
2.4, 12.2.4, 14.2.2.2
Owner's Right to Clean Up
6.3
Owner's Right to Perform Construction and to
Award Separate Contracts
6.1
Owner's Right to Stop the Work
2.3
Owner's Right to Suspend the Work
14.3
Owner's Right to Terminate the Contract
14.2
Ownership and Use of Drawings, Specifications
and Other Instruments of Service
1.1.1, 1.6, 2.2.5, 3.2.1, 3.11.1, 3.17.1, 4.2.12, 5.3
Partial Occupancy or Use
9.6.6, 9.9, 11.4.1.5
Patching, Cutting and
3.14, 6.2.5
Patents
3.17
Payment, Applications for
4.2.5, 7.3.8, 9.2, 9.3, 9.4, 9.5.1, 9.6.3, 9.7.1,
9.8.5, 9.10.1, 9.10.3, 9.10.5, 11.1.3, 14.2.4, 14.4.3
Payment, Certificates for
4.2.5, 4.2.9, 9.3.3, 9.4, 9.5, 9.6.1, 9.6.6, 9.7.1,
9.10.1, 9.10.3, 13.7, 14.1.1.3, 14.2.4
Payment, Failure of
4.3.6, 9.5.1.3, 9.7, 9.10.2, 14.1.1.3, 14.2.1.2, 13.6
Payment, Final
4.2.1, 4.2.9, 4.3.2, 9.8.2, 9.10, 11.1.2, 11.1.3, 11.4.1,
11.4.5, 12.3.1, 13.7, 14.2.4, 14.4.3
Payment Bond, Performance Bond and
7.3.6.4, 9.6.7, 9.10.3, 11.4.9, 11.5
Payments, Progress
4.3.3, 9.3, 9.6, 9.8.5, 9.10.3, 13.6, 14.2.3
## PAYMENTS AND COMPLETION
9

Payments to Subcontractors
5.4.2, 9.5.1.3, 9.6.2, 9.6.3, 9.6.4, 9.6.7, 11.4.8,
14.2.1.2
PCB
10.3.1
Performance Bond and Payment Bond
7.3.6.4, 9.6.7, 9.10.3, 11.4.9, 11.5
Permits, Fees and Notices
2.2.2, 3.7, 3.13, 7.3.6.4, 10.2.2
## PERSONS AND PROPERTY, PROTECTION

THIS DOCUMENT HAS IMPORTANT LEGAL
CONSEQUENCES. CONSULTATION WITH AN
ATTORNEY IS ENCOURAGED WITH
RESPECT TO ITS COMPLETION OR
MODIFICATION. AUTHENTICATION OF THIS
ELECTRONICALLY DRAFTED AIA
DOCUMENT MAY BE MADE BY USING AIA
DOCUMENT D401.

This document has been approved and
endorsed by The Associated General
Contractors of America.



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

»Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, © 1997 by The
American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial
quotation of its provisions without written permission of the AIA violates the copyright laws of the United
States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S.
copyright laws and will subject the violator to legal prosecution. This document was electronically produced
with permission of the AIA and can be reproduced in accordance with your license without violation until
the date of expiration as noted below. User Document: 03001 la grulla ementary 97a201.aia -- 12/29/2003.
AIA License Number 1012323, which expires on 10/7/2004.

DESCON 000276

OF

10

Polychlorinated Biphenyl
10.3.1
Product Data, Definition of
3.12.2
Product Data and Samples, Shop Drawings
3.11, 3.12, 4.2.7
Progress and Completion
4.2.2, 4.3.3, 8.2, 9.8, 9.9.1, 14.1.4
Progress Payments
4.3.3, 9.3, 9.6, 9.8.5, 9.10.3, 13.6, 14.2.3
Project, Definition of the
1.1.4
Project Management Protective Liability
Insurance
11.3
Project Manual, Definition of the
1.1.7
Project Manuals
2.2.5
Project Representatives
4.2.10
Property Insurance
10.2.5, 11.4
PROTECTION OF PERSONS AND
PROPERTY
10
Regulations and Laws
1.6, 3.2.2, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 4.4.8, 4.6,
9.6.4, 9.9.1, 10.2.2, 11.1, 11.4, 13.1, 13.4, 13.5.1,
13.5.2, 13.6, 14
Rejection of Work
3.5.1, 4.2.6, 12.2.1
Releases and Waivers of Liens
9.10.2
Representations
1.5.2, 3.5.1, 3.12.6, 6.2.2, 8.2.1, 9.3.3, 9.4.2, 9.5.1,
9.8.2, 9.10.1
Representatives
2.1.1, 3.1.1, 3.9, 4.1.1, 4.2.1, 4.2.10, 5.1.1, 5.1.2,
13.2.1
Resolution of Claims and Disputes
4.4, 4.5, 4.6
Responsibility for Those Performing the Work
3.3.2, 3.18, 4.2.3, 4.3.8, 5.3.1, 6.1.3, 6.2, 6.3,
9.5.1, 10
Retainage
9.3.1, 9.6.2, 9.8.5, 9.9.1, 9.10.2, 9.10.3
Review of Contract Documents and Field
Conditions by Contractor
1.5.2, 3.2, 3.7.3, 3.12.7, 6.1.3
Review of Contractor's Submittals by Owner
and Architect
3.10.1, 3.10.2, 3.11, 3.12, 4.2, 5.2, 6.1.3, 9.2, 9.8.2

Review of Shop Drawings, Product Data and
Samples by Contractor
3.12
Rights and Remedies
1.1.2, 2.3, 2.4, 3.5.1, 3.15.2, 4.2.6, 4.3.4, 4.5, 4.6,
5.3, 5.4, 6.1, 6.3, 7.3.1, 8.3, 9.5.1, 9.7, 10.2.5, 10.3,
12.2.2, 12.2.4, 13.4, 14
Royalties, Patents and Copyrights
3.17
Rules and Notices for Arbitration
4.6.2
Safety of Persons and Property
10.2, 10.6
Safety Precautions and Programs
3.3.1, 4.2.2, 4.2.7, 5.3.1, 10.1, 10.2, 10.6
Samples, Definition of
3.12.3
Samples, Shop Drawings, Product Data and
3.11, 3.12, 4.2.7
Samples at the Site, Documents and
3.11
Schedule of Values
9.2, 9.3.1
Schedules, Construction
1.4.1.2, 3.10, 3.12.1, 3.12.2, 4.3.7.2, 6.1.3
Separate Contracts and Contractors
1.1.4, 3.12.5, 3.14.2, 4.2.4, 4.2.7, 4.6.4, 6, 8.3.1,
11.4.7, 12.1.2, 12.2.5
Shop Drawings, Definition of
3.12.1
Shop Drawings, Product Data and Samples
3.11, 3.12, 4.2.7
Site, Use of
3.13, 6.1.1, 6.2.1
Site Inspections
1.2.2, 3.2.1, 3.3.3, 3.7.1, 4.2, 4.3.4, 9.4.2, 9.10.1,
13.5
Site Visits, Architect's
4.2.2, 4.2.9, 4.3.4, 9.4.2, 9.5.1, 9.9.2, 9.10.1, 13.5
Special Inspections and Testing
4.2.6, 12.2.1, 13.5
Specifications, Definition of the
1.1.6
Specifications, The
1.1.1, 1.1.6, 1.1.7, 1.2.2, 1.6, 3.11, 3.12.10, 3.17
Statute of Limitations
4.6.3, 12.2.6, 13.7
Stopping the Work
2.3, 4.3.6, 9.7, 10.3, 14.1
Stored Materials
6.2.1, 9.3.2, 10.2.1.2, 10.2.4, 11.4.1.4
Subcontractor, Definition of
5.1.1
SUBCONTRACTORS
5

THIS DOCUMENT HAS IMPORTANT LEGAL
CONSEQUENCES. CONSULTATION WITH AN
ATTORNEY IS ENCOURAGED WITH
RESPECT TO ITS COMPLETION OR
MODIFICATION. AUTHENTICATION OF THIS
ELECTRONICALLY DRAFTED AIA
DOCUMENT MAY BE MADE BY USING AIA
DOCUMENT D401.

This document has been approved and
endorsed by The Associated General
Contractors of America.



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

»Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, © 1997 by The
American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial
quotation of its provisions without written permission of the AIA violates the copyright laws of the United
States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates U.S.
copyright laws and will subject the violator to legal prosecution. This document was electronically produced
with permission of the AIA and can be reproduced in accordance with your license without violation until
the date of expiration as noted below. User Document: 03001 la grulla ementary 97a201.aia -- 12/29/2003.
AIA License Number 1012323, which expires on 10/7/2004.

7

DESCON 000277

Subcontractors, Work by
1.2.2, 3.3.2, 3.12.1, 4.2.3, 5.2.3, 5.3, 5.4, 9.3.1.2, 9.6.7
Subcontractual Relations
5.3, 5.4, 9.3.1.2, 9.6, 9.10 10.2.1, 11.4.7, 11.4.8, 14.1, 14.2.1, 14.3.2
Submittals
1.6, 3.10, 3.11, 3.12, 4.2.7, 5.2.1, 5.2.3, 7.3.6, 9.2, 9.3, 9.8, 9.9.1, 9.10.2, 9.10.3, 11.1.3
Subrogation, Waivers of
6.1.1, 11.4.5, 11.4.7
Substantial Completion
4.2.9, 8.1.1, 8.1.3, 8.2.3, 9.4.2, 9.8, 9.9.1, 9.10.3, 9.10.4.2, 12.2, 13.7
Substantial Completion, Definition of
9.8.1
Substitution of Subcontractors
5.2.3, 5.2.4
Substitution of Architect
4.1.3
Substitutions of Materials
3.4.2, 3.5.1, 7.3.7
Sub-subcontractor, Definition of
5.1.2
Subsurface Conditions
4.3.4
Successors and Assigns
13.2
Superintendent
3.9, 10.2.6
Supervision and Construction Procedures
1.2.2, 3.3, 3.4, 3.12.10, 4.2.2, 4.2.7, 4.3.3, 6.1.3, 6.2.4, 7.1.3, 7.3.6, 8.2, 8.3.1, 9.4.2, 10, 12, 14
Surety
4.4.7, 5.4.1.2, 9.8.5, 9.10.2, 9.10.3, 14.2.2
Surety, Consent of
9.10.2, 9.10.3
Surveys
2.2.3
Suspension by the Owner for Convenience
14.4
Suspension of the Work
5.4.2, 14.3
Suspension or Termination of the Contract
4.3.6, 5.4.1.1, 11.4.9, 14
Taxes
3.6, 3.8.2.1, 7.3.6.4
Termination by the Contractor
4.3.10, 14.1
Termination by the Owner for Cause
4.3.10, 5.4.1.1, 14.2
Termination of the Architect
4.1.3
Termination of the Contractor
14.2.2

TERMINATION OR SUSPENSION OF THE CONTRACT
14
Tests and Inspections
3.1.3, 3.3.3, 4.2.2, 4.2.6, 4.2.9, 9.4.2, 9.8.3, 9.9.2, 9.10.1, 10.3.2, 11.4.1.1, 12.2.1, 13.5
TIME
8
Time, Delays and Extensions of
3.2.3, 4.3.1, 4.3.4, 4.3.7, 4.4.5, 5.2.3, 7.2.1, 7.3.1, 7.4.1, 7.5.1, 8.3, 9.5.1, 9.7.1, 10.3.2, 10.6.1, 14.3.2
Time Limits
2.1.2, 2.2, 2.4, 3.2.1, 3.7.3, 3.10, 3.11, 3.12.5, 3.15.1, 4.2, 4.3, 4.4, 4.5, 4.6, 5.2, 5.3, 5.4, 6.2.4, 7.3, 7.4, 8.2, 9.2, 9.3.1, 9.3.3, 9.4.1, 9.5, 9.6, 9.7, 9.8, 9.9, 9.10, 11.1.3, 11.4.1.5, 11.4.6, 11.4.10, 12.2, 13.5, 13.7, 14
Time Limits on Claims
4.3.2, 4.3.4, 4.3.8, 4.4, 4.5, 4.6
Title to Work
9.3.2, 9.3.3
UNCOVERING AND CORRECTION OF WORK
12
Uncovering of Work
12.1
Unforeseen Conditions
4.3.4, 8.3.1, 10.3
Unit Prices
4.3.9, 7.3.3.2
Use of Documents
1.1.1, 1.6, 2.2.5, 3.12.6, 5.3
Use of Site
3.13, 6.1.1, 6.2.1
Values, Schedule of
9.2, 9.3.1
Waiver of Claims by the Architect
13.4.2
Waiver of Claims by the Contractor
4.3.10, 9.10.5, 11.4.7, 13.4.2
Waiver of Claims by the Owner
4.3.10, 9.9.3, 9.10.3, 9.10.4, 11.4.3, 11.4.5, 11.4.7, 12.2.2.3, 13.4.2, 14.2.4
Waiver of Consequential Damages
4.3.10, 14.2.4
Waiver of Liens
9.10.2, 9.10.4
Waivers of Subrogation
6.1.1, 11.4.5, 11.4.7
Warranty
3.5, 4.2.9, 4.3.5.3, 9.3.3, 9.8.4, 9.9.1, 9.10.4, 12.2.2, 13.7.1.3
Weather Delays
4.3.7.2

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

This document has been approved and endorsed by The Associated General Contractors of America.



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

»Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, © 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 03001 la grulla ementary 97a201.aia -- 12/29/2003. AIA License Number 1012323, which expires on 10/7/2004.

DESCON 000278

Work, Definition of
1.1.3
Written Consent
1.6, 3.4.2, 3.12.8, 3.14.2, 4.1.2, 4.3.4, 4.6.4, 9.3.2,
9.8.5, 9.9.1, 9.10.2, 9.10.3, 11.4.1, 13.2, 13.4.2
Written Interpretations
4.2.11, 4.2.12, 4.3.6
Written Notice
2.3, 2.4, 3.3.1, 3.9, 3.12.9, 3.12.10, 4.3, 4.4.8,

4.6.5, 5.2.1, 8.2.2, 9.7, 9.10, 10.2.2, 10.3, 11.1.3,
11.4.6, 12.2.2, 12.2.4, 13.3, 14
Written Orders
1.1.1, 2.3, 3.9, 4.3.6, 7, 8.2.2, 11.4.9, 12.1, 12.2,
13.5.2, 14.3.1

# ARTICLE 1 GENERAL PROVISIONS

## 1.1 BASIC DEFINITIONS

### 1.1.1 THE CONTRACT DOCUMENTS

The Contract Documents consist of the Agreement between Owner and Contractor (hereinafter the Agreement), Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of the Contract, other documents listed in the Agreement and Modifications issued after execution of the Contract. A Modification is (1) a written amendment to the Contract signed by both parties, (2) a Change Order, (3) a Construction Change Directive or (4) a written order for a minor change in the Work issued by the Architect. Unless specifically enumerated in the Agreement, the Contract Documents do not include other documents such as bidding requirements (advertisement or invitation to bid, Instructions to Bidders, sample forms, the Contractor's bid or portions of Addenda relating to bidding requirements).

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by The Associated General Contractors of America.*

### 1.1.2 THE CONTRACT

The Contract Documents form the Contract for Construction. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. The Contract may be amended or modified only by a Modification. The Contract Documents shall not be construed to create a contractual relationship of any kind (1) between the Architect and Contractor, (2) between the Owner and a Subcontractor or Sub-subcontractor, (3) between the Owner and Architect or (4) between any persons or entities other than the Owner and Contractor. The Architect shall, however, be entitled to performance and enforcement of obligations under the Contract intended to facilitate performance of the Architect's duties.

### 1.1.3 THE WORK

The term "Work" means the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations. The Work may constitute the whole or a part of the Project.

### 1.1.4 THE PROJECT

The Project is the total construction of which the Work performed under the Contract Documents may be the whole or a part and which may include construction by the Owner or by separate contractors.

### 1.1.5 THE DRAWINGS

The Drawings are the graphic and pictorial portions of the Contract Documents showing the design, location and dimensions of the Work, generally including plans, elevations, sections, details, schedules and diagrams.



### 1.1.6 THE SPECIFICATIONS

©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

»Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, © 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 03001 la grulla ementary 97a201.aia -- 12/29/2003. AIA License Number 1012323, which expires on 10/7/2004.

9

DESCON 000279

The Specifications are that portion of the Contract Documents consisting of the written requirements for materials, equipment, systems, standards and workmanship for the Work, and performance of related services.

### 1.1.7  THE PROJECT MANUAL
The Project Manual is a volume assembled for the Work which may include the bidding requirements, sample forms, Conditions of the Contract and Specifications.

### 1.2  CORRELATION AND INTENT OF THE CONTRACT DOCUMENTS
1.2.1  The intent of the Contract Documents is to include all items necessary for the proper execution and completion of the Work by the Contractor. The Contract Documents are complementary, and what is required by one shall be as binding as if required by all; performance by the Contractor shall be required only to the extent consistent with the Contract Documents and reasonably inferable from them as being necessary to produce the indicated results.

1.2.2  Organization of the Specifications into divisions, sections and articles, and arrangement of Drawings shall not control the Contractor in dividing the Work among Subcontractors or in establishing the extent of Work to be performed by any trade.

1.2.3  Unless otherwise stated in the Contract Documents, words which have well-known technical or construction industry meanings are used in the Contract Documents in accordance with such recognized meanings.

### 1.3  CAPITALIZATION
1.3.1  Terms capitalized in these General Conditions include those which are (1) specifically defined, (2) the titles of numbered articles and identified references to Paragraphs, Subparagraphs and Clauses in the document or (3) the titles of other documents published by the American Institute of Architects.

### 1.4  INTERPRETATION
1.4.1  In the interest of brevity the Contract Documents frequently omit modifying words such as "all" and "any" and articles such as "the" and "an," but the fact that a modifier or an article is absent from one statement and appears in another is not intended to affect the interpretation of either statement.

### 1.5  EXECUTION OF CONTRACT DOCUMENTS
1.5.1  The Contract Documents shall be signed by the Owner and Contractor. If either the Owner or Contractor or both do not sign all the Contract Documents, the Architect shall identify such unsigned Documents upon request.

1.5.2  Execution of the Contract by the Contractor is a representation that the Contractor has visited the site, become generally familiar with local conditions under which the Work is to be performed and correlated personal observations with requirements of the Contract Documents.

### 1.6  OWNERSHIP AND USE OF DRAWINGS, SPECIFICATIONS AND OTHER INSTRUMENTS OF SERVICE



1.6.1  The Drawings, Specifications and other documents, including those in electronic form, prepared by the Architect and the Architect's consultants are Instruments of Service through which the Work to be executed by the Contractor is described. The Contractor may retain one record set. Neither the Contractor nor any Subcontractor, Sub-subcontractor or material or equipment supplier shall own or claim a copyright in the Drawings, Specifications and other documents prepared by the Architect or the Architect's consultants, and unless otherwise indicated the Architect and the Architect's consultants shall be deemed the authors of

»Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, © 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 03001 la grulla ementary 97a201.aia -- 12/29/2003. AIA License Number 1012323, which expires on 10/7/2004.

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

This document has been approved and endorsed by the Associated General Contractors of America.

©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

10

DESCON 000280

them and will retain all common law, statutory and other reserved rights, in addition to the copyrights. All copies of Instruments of Service, except the Contractor's record set, shall be returned or suitably accounted for to the Architect, on request, upon completion of the Work. The Drawings, Specifications and other documents prepared by the Architect and the Architect's consultants, and copies thereof furnished to the Contractor, are for use solely with respect to this Project. They are not to be used by the Contractor or any Subcontractor, Sub-subcontractor or material or equipment supplier on other projects or for additions to this Project outside the scope of the Work without the specific written consent of the Owner, Architect and the Architect's consultants. The Contractor, Subcontractors, Sub-subcontractors and material or equipment suppliers are authorized to use and reproduce applicable portions of the Drawings, Specifications and other documents prepared by the Architect and the Architect's consultants appropriate to and for use in the execution of their Work under the Contract Documents. All copies made under this authorization shall bear the statutory copyright notice, if any, shown on the Drawings, Specifications and other documents prepared by the Architect and the Architect's consultants. Submittal or distribution to meet official regulatory requirements or for other purposes in connection with this Project is not to be construed as publication in derogation of the Architect's or Architect's consultants' copyrights or other reserved rights.

## ARTICLE 2 OWNER
### 2.1 GENERAL
2.1.1 The Owner is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The Owner shall designate in writing a representative who shall have express authority to bind the Owner with respect to all matters requiring the Owner's approval or authorization. Except as otherwise provided in Subparagraph 4.2.1, the Architect does not have such authority. The term "Owner" means the Owner or the Owner's authorized representative.

2.1.2 The Owner shall furnish to the Contractor within fifteen days after receipt of a written request, information necessary and relevant for the Contractor to evaluate, give notice of or enforce mechanic's lien rights. Such information shall include a correct statement of the record legal title to the property on which the Project is located, usually referred to as the site, and the Owner's interest therein.

### 2.2 INFORMATION AND SERVICES REQUIRED OF THE OWNER
2.2.1 The Owner shall, at the written request of the Contractor, prior to commencement of the Work and thereafter, furnish to the Contractor reasonable evidence that financial arrangements have been made to fulfill the Owner's obligations under the Contract. Furnishing of such evidence shall be a condition precedent to commencement or continuation of the Work. After such evidence has been furnished, the Owner shall not materially vary such financial arrangements without prior notice to the Contractor.

2.2.2 Except for permits and fees, including those required under Subparagraph 3.7.1, which are the responsibility of the Contractor under the Contract Documents, the Owner shall secure and pay for necessary approvals, easements, assessments and charges required for construction, use or occupancy of permanent structures or for permanent changes in existing facilities.

2.2.3 The Owner shall furnish surveys describing physical characteristics, legal limitations and utility locations for the site of the Project, and a legal description of the site. The Contractor shall be entitled to rely on the accuracy of information furnished by the Owner but shall exercise proper precautions relating to the safe performance of the Work.



2.2.4 Information or services required of the Owner by the Contract Documents shall be furnished by the Owner with reasonable promptness. Any other information or services relevant to the Contractor's performance of the Work under the Owner's control shall be

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

This document has been approved and endorsed by The Associated General Contractors of America.

©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

»Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, © 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 03001 la grulla ementary 97a201.aia -- 12/29/2003. AIA License Number 1012323, which expires on 10/7/2004.

11

DESCON 000281

furnished by the Owner after receipt from the Contractor of a written request for such information or services.

2.2.5 Unless otherwise provided in the Contract Documents, the Contractor will be furnished, free of charge, such copies of Drawings and Project Manuals as are reasonably necessary for execution of the Work.

## 2.3 OWNER'S RIGHT TO STOP THE WORK

2.3.1 If the Contractor fails to correct Work which is not in accordance with the requirements of the Contract Documents as required by Paragraph 12.2 or persistently fails to carry out Work in accordance with the Contract Documents, the Owner may issue a written order to the Contractor to stop the Work, or any portion thereof, until the cause for such order has been eliminated; however, the right of the Owner to stop the Work shall not give rise to a duty on the part of the Owner to exercise this right for the benefit of the Contractor or any other person or entity, except to the extent required by Subparagraph 6.1.3.

## 2.4 OWNER'S RIGHT TO CARRY OUT THE WORK

2.4.1 If the Contractor defaults or neglects to carry out the Work in accordance with the Contract Documents and fails within a seven-day period after receipt of written notice from the Owner to commence and continue correction of such default or neglect with diligence and promptness, the Owner may after such seven-day period give the Contractor a second written notice to correct such deficiencies within a three-day period. If the Contractor within such three-day period after receipt of such second notice fails to commence and continue to correct any deficiencies, the Owner may, without prejudice to other remedies the Owner may have, correct such deficiencies. In such case an appropriate Change Order shall be issued deducting from payments then or thereafter due the Contractor the reasonable cost of correcting such deficiencies, including Owner's expenses and compensation for the Architect's additional services made necessary by such default, neglect or failure. Such action by the Owner and amounts charged to the Contractor are both subject to prior approval of the Architect. If payments then or thereafter due the Contractor are not sufficient to cover such amounts, the Contractor shall pay the difference to the Owner.

# ARTICLE 3   CONTRACTOR

## 3.1 GENERAL

3.1.1 The Contractor is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The term "Contractor" means the Contractor or the Contractor's authorized representative.

3.1.2 The Contractor shall perform the Work in accordance with the Contract Documents.

3.1.3 The Contractor shall not be relieved of obligations to perform the Work in accordance with the Contract Documents either by activities or duties of the Architect in the Architect's administration of the Contract, or by tests, inspections or approvals required or performed by persons other than the Contractor.

## 3.2 REVIEW OF CONTRACT DOCUMENTS AND FIELD CONDITIONS BY CONTRACTOR

3.2.1 Since the Contract Documents are complementary, before starting each portion of the Work, the Contractor shall carefully study and compare the various Drawings and other Contract Documents relative to that portion of the Work, as well as the information furnished by the Owner pursuant to Subparagraph 2.2.3, shall take field measurements of any existing conditions related to that portion of the Work and shall observe any conditions at the site affecting it. These obligations are for the purpose of facilitating construction by the Contractor and are not for the purpose of discovering errors, omissions, or inconsistencies in the Contract Documents; however, any errors, inconsistencies or omissions discovered by the Contractor

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by The Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

»Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, © 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 03001 la grulla ementary 97a201.aia -- 12/29/2003. AIA License Number 1012323, which expires on 10/7/2004.

DESCON 000282

shall be reported promptly to the Architect as a request for information in such form as the Architect may require.

3.2.2    Any design errors or omissions noted by the Contractor during this review shall be reported promptly to the Architect, but it is recognized that the Contractor's review is made in the Contractor's capacity as a contractor and not as a licensed design professional unless otherwise specifically provided in the Contract Documents. The Contractor is not required to ascertain ·that the Contract Documents are in accordance with applicable laws, statutes, ordinances, building codes, and rules and regulations, but any nonconformity discovered by or made known to the Contractor shall be reported promptly to the Architect.

3.2.3    If the Contractor believes that additional cost or time is involved because of clarifications or instructions issued by the Architect in response to the Contractor's notices or requests for information pursuant to Subparagraphs 3.2.1 and 3.2.2, the Contractor shall make Claims as provided in Subparagraphs 4.3.6 and 4.3.7. If the Contractor fails to perform the obligations of Subparagraphs 3.2.1 and 3.2.2, the Contractor shall pay such costs and damages to the Owner as would have been avoided if the Contractor had performed such obligations. The Contractor shall not be liable to the Owner or Architect for damages resulting from errors, inconsistencies or omissions in the Contract Documents or for differences between field measurements or conditions and the Contract Documents unless the Contractor recognized such error, inconsistency, omission or difference and knowingly failed to report it to the Architect.

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

## 3.3    SUPERVISION AND CONSTRUCTION PROCEDURES

3.3.1    The Contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for and have control over construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract, unless the Contract Documents give other specific instructions concerning these matters. If the Contract Documents give specific instructions concerning construction means, methods, techniques, sequences or procedures, the Contractor shall evaluate the jobsite safety thereof and, except as stated below, shall be fully and solely responsible for the jobsite safety of such means, methods, techniques, sequences or procedures. If the Contractor determines that such means, methods, techniques, sequences or procedures may not be safe, the Contractor shall give timely written notice to the Owner and Architect and shall not proceed with that portion of the Work without further written instructions from the Architect. If the Contractor is then instructed to proceed with the required means, methods, techniques, sequences or procedures without acceptance of changes proposed by the Contractor, the Owner shall be solely responsible for any resulting loss or damage.

*This document has been approved and endorsed by The Associated General Contractors of America.*

3.3.2    The Contractor shall be responsible to the Owner for acts and omissions of the Contractor's employees, Subcontractors and their agents and employees, and other persons or entities performing portions of the Work for or on behalf of the Contractor or any of its Subcontractors.

3.3.3    The Contractor shall be responsible for inspection of portions of Work already performed to determine that such portions are in proper condition to receive subsequent Work.

## 3.4    LABOR AND MATERIALS

3.4.1    Unless otherwise provided in the Contract Documents, the Contractor shall provide and pay for labor, materials, equipment, tools, construction equipment and machinery, water, heat, utilities, transportation, and other facilities and services necessary for proper execution and completion of the Work, whether temporary or permanent and whether or not incorporated or to be incorporated in the Work.



3.4.2    The Contractor may make substitutions only with the consent of the Owner, after evaluation by the Architect and in accordance with a Change Order.

©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

»Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, © 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 03001 la grulla ementary 97a201.aia -- 12/29/2003. AIA License Number 1012323, which expires on 10/7/2004.

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

13

DESCON  000283

**3.4.3** The Contractor shall enforce strict discipline and good order among the Contractor's employees and other persons carrying out the Contract. The Contractor shall not permit employment of unfit persons or persons not skilled in tasks assigned to them.

**3.5 WARRANTY**

**3.5.1** The Contractor warrants to the Owner and Architect that materials and equipment furnished under the Contract will be of good quality and new unless otherwise required or permitted by the Contract Documents, that the Work will be free from defects not inherent in the quality required or permitted, and that the Work will conform to the requirements of the Contract Documents. Work not conforming to these requirements, including substitutions not properly approved and authorized, may be considered defective. The Contractor's warranty excludes remedy for damage or defect caused by abuse, modifications not executed by the Contractor, improper or insufficient maintenance, improper operation, or normal wear and tear and normal usage. If required by the Architect, the Contractor shall furnish satisfactory evidence as to the kind and quality of materials and equipment.

**3.6 TAXES**

**3.6.1** The Contractor shall pay sales, consumer, use and similar taxes for the Work provided by the Contractor which are legally enacted when bids are received or negotiations concluded, whether or not yet effective or merely scheduled to go into effect.

**3.7 PERMITS, FEES AND NOTICES**

**3.7.1** Unless otherwise provided in the Contract Documents, the Contractor shall secure and pay for the building permit and other permits and governmental fees, licenses and inspections necessary for proper execution and completion of the Work which are customarily secured after execution of the Contract and which are legally required when bids are received or negotiations concluded.

**3.7.2** The Contractor shall comply with and give notices required by laws, ordinances, rules, regulations and lawful orders of public authorities applicable to performance of the Work.

**3.7.3** It is not the Contractor's responsibility to ascertain that the Contract Documents are in accordance with applicable laws, statutes, ordinances, building codes, and rules and regulations. However, if the Contractor observes that portions of the Contract Documents are at variance therewith, the Contractor shall promptly notify the Architect and Owner in writing, and necessary changes shall be accomplished by appropriate Modification.

**3.7.4** If the Contractor performs Work knowing it to be contrary to laws, statutes, ordinances, building codes, and rules and regulations without such notice to the Architect and Owner, the Contractor shall assume appropriate responsibility for such Work and shall bear the costs attributable to correction.

**3.8 ALLOWANCES**

**3.8.1** The Contractor shall include in the Contract Sum all allowances stated in the Contract Documents. Items covered by allowances shall be supplied for such amounts and by such persons or entities as the Owner may direct, but the Contractor shall not be required to employ persons or entities to whom the Contractor has reasonable objection.

**3.8.2** Unless otherwise provided in the Contract Documents:

.1 allowances shall cover the cost to the Contractor of materials and equipment delivered at the site and all required taxes, less applicable trade discounts;

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

This document has been approved and endorsed by The Associated General Contractors of America.



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

»Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, © 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 03001 la grulla ementary 97a201.aia -- 12/29/2003. AIA License Number 1012323, which expires on 10/7/2004.

14

DESCON 000284

.2   Contractor's costs for unloading and handling at the site, labor, installation costs, overhead, profit and other expenses contemplated for stated allowance amounts shall be included in the Contract Sum but not in the allowances;

.3   whenever costs are more than or less than allowances, the Contract Sum shall be adjusted accordingly by Change Order. The amount of the Change Order shall reflect (1) the difference between actual costs and the allowances under Clause 3.8.2.1 and (2) changes in Contractor's costs under Clause 3.8.2.2.

**3.8.3**   Materials and equipment under an allowance shall be selected by the Owner in sufficient time to avoid delay in the Work.

## 3.9   SUPERINTENDENT

**3.9.1**   The Contractor shall employ a competent superintendent and necessary assistants who shall be in attendance at the Project site during performance of the Work. The superintendent shall represent the Contractor, and communications given to the superintendent shall be as binding as if given to the Contractor. Important communications shall be confirmed in writing. Other communications shall be similarly confirmed on written request in each case.

## 3.10   CONTRACTOR'S CONSTRUCTION SCHEDULES

**3.10.1**   The Contractor, promptly after being awarded the Contract, shall prepare and submit for the Owner's and Architect's information a Contractor's construction schedule for the Work. The schedule shall not exceed time limits current under the Contract Documents, shall be revised at appropriate intervals as required by the conditions of the Work and Project, shall be related to the entire Project to the extent required by the Contract Documents, and shall provide for expeditious and practicable execution of the Work.

**3.10.2**   The Contractor shall prepare and keep current, for the Architect's approval, a schedule of submittals which is coordinated with the Contractor's construction schedule and allows the Architect reasonable time to review submittals.

**3.10.3**   The Contractor shall perform the Work in general accordance with the most recent schedules submitted to the Owner and Architect.

## 3.11   DOCUMENTS AND SAMPLES AT THE SITE

**3.11.1**   The Contractor shall maintain at the site for the Owner one record copy of the Drawings, Specifications, Addenda, Change Orders and other Modifications, in good order and marked currently to record field changes and selections made during construction, and one record copy of approved Shop Drawings, Product Data, Samples and similar required submittals. These shall be available to the Architect and shall be delivered to the Architect for submittal to the Owner upon completion of the Work.

## 3.12   SHOP DRAWINGS, PRODUCT DATA AND SAMPLES

**3.12.1**   Shop Drawings are drawings, diagrams, schedules and other data specially prepared for the Work by the Contractor or a Subcontractor, Sub-subcontractor, manufacturer, supplier or distributor to illustrate some portion of the Work.

**3.12.2**   Product Data are illustrations, standard schedules, performance charts, instructions, brochures, diagrams and other information furnished by the Contractor to illustrate materials or equipment for some portion of the Work.

**3.12.3**   Samples are physical examples which illustrate materials, equipment or workmanship and establish standards by which the Work will be judged.

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by The Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

»Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, © 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: O3001 la grulla ementary 97a201.aia -- 12/29/2003. AIA License Number 1012323, which expires on 10/7/2004.

15

DESCON 000285

**3.12.4** Shop Drawings, Product Data, Samples and similar submittals are not Contract Documents. The purpose of their submittal is to demonstrate for those portions of the Work for which submittals are required by the Contract Documents the way by which the Contractor proposes to conform to the information given and the design concept expressed in the Contract Documents. Review by the Architect is subject to the limitations of Subparagraph 4.2.7. Informational submittals upon which the Architect is not expected to take responsive action may be so identified in the Contract Documents. Submittals which are not required by the Contract Documents may be returned by the Architect without action.

**3.12.5** The Contractor shall review for compliance with the Contract Documents, approve and submit to the Architect Shop Drawings, Product Data, Samples and similar submittals required by the Contract Documents with reasonable promptness and in such sequence as to cause no delay in the Work or in the activities of the Owner or of separate contractors. Submittals which are not marked as reviewed for compliance with the Contract Documents and approved by the Contractor may be returned by the Architect without action.

**3.12.6** By approving and submitting Shop Drawings, Product Data, Samples and similar submittals, the Contractor represents that the Contractor has determined and verified materials, field measurements and field construction criteria related thereto, or will do so, and has checked and coordinated the information contained within such submittals with the requirements of the Work and of the Contract Documents.

**3.12.7** The Contractor shall perform no portion of the Work for which the Contract Documents require submittal and review of Shop Drawings, Product Data, Samples or similar submittals until the respective submittal has been approved by the Architect.

**3.12.8** The Work shall be in accordance with approved submittals except that the Contractor shall not be relieved of responsibility for deviations from requirements of the Contract Documents by the Architect's approval of Shop Drawings, Product Data, Samples or similar submittals unless the Contractor has specifically informed the Architect in writing of such deviation at the time of submittal and (1) the Architect has given written approval to the specific deviation as a minor change in the Work, or (2) a Change Order or Construction Change Directive has been issued authorizing the deviation. The Contractor shall not be relieved of responsibility for errors or omissions in Shop Drawings, Product Data, Samples or similar submittals by the Architect's approval thereof.

**3.12.9** The Contractor shall direct specific attention, in writing or on resubmitted Shop Drawings, Product Data, Samples or similar submittals, to revisions other than those requested by the Architect on previous submittals. In the absence of such written notice the Architect's approval of a resubmission shall not apply to such revisions.

**3.12.10** The Contractor shall not be required to provide professional services which constitute the practice of architecture or engineering unless such services are specifically required by the Contract Documents for a portion of the Work or unless the Contractor needs to provide such services in order to carry out the Contractor's responsibilities for construction means, methods, techniques, sequences and procedures. The Contractor shall not be required to provide professional services in violation of applicable law. If professional design services or certifications by a design professional related to systems, materials or equipment are specifically required of the Contractor by the Contract Documents, the Owner and the Architect will specify all performance and design criteria that such services must satisfy. The Contractor shall cause such services or certifications to be provided by a properly licensed design professional, whose signature and seal shall appear on all drawings, calculations, specifications, certifications, Shop Drawings and other submittals prepared by such professional. Shop Drawings and other submittals related to the Work designed or certified by such professional, if prepared by others, shall bear such professional's written approval when submitted to the Architect. The Owner and the Architect shall be entitled to rely upon the adequacy, accuracy and completeness of the

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

This document has been approved and endorsed by The Associated General Contractors of America.



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

»Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, © 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 03001 la grulla ementary 97a201.aia -- 12/29/2003. AIA License Number 1012323, which expires on 10/7/2004.

16

DESCON 000286

services, certifications or approvals performed by such design professionals, provided the Owner and Architect have specified to the Contractor all performance and design criteria that such services must satisfy. Pursuant to this Subparagraph 3.12.10, the Architect will review, approve or take other appropriate action on submittals only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Contractor shall not be responsible for the adequacy of the performance or design criteria required by the Contract Documents.

## 3.13 USE OF SITE

**3.13.1** The Contractor shall confine operations at the site to areas permitted by law, ordinances, permits and the Contract Documents and shall not unreasonably encumber the site with materials or equipment.

## 3.14 CUTTING AND PATCHING

**3.14.1** The Contractor shall be responsible for cutting, fitting or patching required to complete the Work or to make its parts fit together properly.

**3.14.2** The Contractor shall not damage or endanger a portion of the Work or fully or partially completed construction of the Owner or separate contractors by cutting, patching or otherwise altering such construction, or by excavation. The Contractor shall not cut or otherwise alter such construction by the Owner or a separate contractor except with written consent of the Owner and of such separate contractor; such consent shall not be unreasonably withheld. The Contractor shall not unreasonably withhold from the Owner or a separate contractor the Contractor's consent to cutting or otherwise altering the Work.

## 3.15 CLEANING UP

**3.15.1** The Contractor shall keep the premises and surrounding area free from accumulation of waste materials or rubbish caused by operations under the Contract. At completion of the Work, the Contractor shall remove from and about the Project waste materials, rubbish, the Contractor's tools, construction equipment, machinery and surplus materials.

**3.15.2** If the Contractor fails to clean up as provided in the Contract Documents, the Owner may do so and the cost thereof shall be charged to the Contractor.

## 3.16 ACCESS TO WORK

**3.16.1** The Contractor shall provide the Owner and Architect access to the Work in preparation and progress wherever located.

## 3.17 ROYALTIES, PATENTS AND COPYRIGHTS

**3.17.1** The Contractor shall pay all royalties and license fees. The Contractor shall defend suits or claims for infringement of copyrights and patent rights and shall hold the Owner and Architect harmless from loss on account thereof, but shall not be responsible for such defense or loss when a particular design, process or product of a particular manufacturer or manufacturers is required by the Contract Documents or where the copyright violations are contained in Drawings, Specifications or other documents prepared by the Owner or Architect. However, if the Contractor has reason to believe that the required design, process or product is an infringement of a copyright or a patent, the Contractor shall be responsible for such loss unless such information is promptly furnished to the Architect.

## 3.18 INDEMNIFICATION

**3.18.1** To the fullest extent permitted by law and to the extent claims, damages, losses or expenses are not covered by Project Management Protective Liability insurance purchased by the Contractor in accordance with Paragraph 11.3, the Contractor shall indemnify and hold harmless the Owner, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by The Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

»Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, © 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 03001 la grulla ementary 97a201.aia -- 12/29/2003. AIA License Number 1012323, which expires on 10/7/2004.

17

DESCON 000287

attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Paragraph 3.18.

3.18.2    In claims against any person or entity indemnified under this Paragraph 3.18 by an employee of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under Subparagraph 3.18.1 shall not be limited by a limitation on amount or type of damages, compensation or benefits payable by or for the Contractor or a Subcontractor under workers' compensation acts, disability benefit acts or other employee benefit acts.

## ARTICLE 4    ADMINISTRATION OF THE CONTRACT
### 4.1    ARCHITECT
4.1.1    The Architect is the person lawfully licensed to practice architecture or an entity lawfully practicing architecture identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The term "Architect" means the Architect or the Architect's authorized representative.

4.1.2    Duties, responsibilities and limitations of authority of the Architect as set forth in the Contract Documents shall not be restricted, modified or extended without written consent of the Owner, Contractor and Architect. Consent shall not be unreasonably withheld.

4.1.3    If the employment of the Architect is terminated, the Owner shall employ a new Architect against whom the Contractor has no reasonable objection and whose status under the Contract Documents shall be that of the former Architect.

### 4.2    ARCHITECT'S ADMINISTRATION OF THE CONTRACT
4.2.1    The Architect will provide administration of the Contract as described in the Contract Documents, and will be an Owner's representative (1) during construction, (2) until final payment is due and (3) with the Owner's concurrence, from time to time during the one-year period for correction of Work described in Paragraph 12.2. The Architect will have authority to act on behalf of the Owner only to the extent provided in the Contract Documents, unless otherwise modified in writing in accordance with other provisions of the Contract.

4.2.2    The Architect, as a representative of the Owner, will visit the site at intervals appropriate to the stage of the Contractor's operations (1) to become generally familiar with and to keep the Owner informed about the progress and quality of the portion of the Work completed, (2) to endeavor to guard the Owner against defects and deficiencies in the Work, and (3) to determine in general if the Work is being performed in a manner indicating that the Work, when fully completed, will be in accordance with the Contract Documents. However, the Architect will not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. The Architect will neither have control over or charge of, nor be responsible for, the construction means, methods, techniques, sequences or procedures, or for the safety precautions and programs in connection with the Work, since these are solely the Contractor's rights and responsibilities under the Contract Documents, except as provided in Subparagraph 3.3.1.



4.2.3    The Architect will not be responsible for the Contractor's failure to perform the Work in accordance with the requirements of the Contract Documents. The Architect will not have control over or charge of and will not be responsible for acts or omissions of the Contractor,

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

This document has been approved and endorsed by The Associated General Contractors of America.

©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

»Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, © 1997 by the American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 0300) la grulla ementary 97a201.ala -- 12/29/2003. AIA License Number 1012323, which expires on 10/7/2004.

18

DESCON 000288

Subcontractors, or their agents or employees, or any other persons or entities performing portions of the Work.

**4.2.4 Communications Facilitating Contract Administration.** Except as otherwise provided in the Contract Documents or when direct communications have been specially authorized, the Owner and Contractor shall endeavor to communicate with each other through the Architect about matters arising out of or relating to the Contract. Communications by and with the Architect's consultants shall be through the Architect. Communications by and with Subcontractors and material suppliers shall be through the Contractor. Communications by and with separate contractors shall be through the Owner.

**4.2.5** Based on the Architect's evaluations of the Contractor's Applications for Payment, the Architect will review and certify the amounts due the Contractor and will issue Certificates for Payment in such amounts.

**4.2.6** The Architect will have authority to reject Work that does not conform to the Contract Documents. Whenever the Architect considers it necessary or advisable, the Architect will have authority to require inspection or testing of the Work in accordance with Subparagraphs 13.5.2 and 13.5.3, whether or not such Work is fabricated, installed or completed. However, neither this authority of the Architect nor a decision made in good faith either to exercise or not to exercise such authority shall give rise to a duty or responsibility of the Architect to the Contractor, Subcontractors, material and equipment suppliers, their agents or employees, or other persons or entities performing portions of the Work.

**4.2.7** The Architect will review and approve or take other appropriate action upon the Contractor's submittals such as Shop Drawings, Product Data and Samples, but only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Architect's action will be taken with such reasonable promptness as to cause no delay in the Work or in the activities of the Owner, Contractor or separate contractors, while allowing sufficient time in the Architect's professional judgment to permit adequate review. Review of such submittals is not conducted for the purpose of determining the accuracy and completeness of other details such as dimensions and quantities, or for substantiating instructions for installation or performance of equipment or systems, all of which remain the responsibility of the Contractor as required by the Contract Documents. The Architect's review of the Contractor's submittals shall not relieve the Contractor of the obligations under Paragraphs 3.3, 3.5 and 3.12. The Architect's review shall not constitute approval of safety precautions or, unless otherwise specifically stated by the Architect, of any construction means, methods, techniques, sequences or procedures. The Architect's approval of a specific item shall not indicate approval of an assembly of which the item is a component.

**4.2.8** The Architect will prepare Change Orders and Construction Change Directives, and may authorize minor changes in the Work as provided in Paragraph 7.4.

**4.2.9** The Architect will conduct inspections to determine the date or dates of Substantial Completion and the date of final completion, will receive and forward to the Owner, for the Owner's review and records, written warranties and related documents required by the Contract and assembled by the Contractor, and will issue a final Certificate for Payment upon compliance with the requirements of the Contract Documents.

**4.2.10** If the Owner and Architect agree, the Architect will provide one or more project representatives to assist in carrying out the Architect's responsibilities at the site. The duties, responsibilities and limitations of authority of such project representatives shall be as set forth in an exhibit to be incorporated in the Contract Documents.

**4.2.11** The Architect will interpret and decide matters concerning performance under and requirements of, the Contract Documents on written request of either the Owner or

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by The Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

»Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, © 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 03001 la grulla ementary 97a201.aia -- 12/29/2003. AIA License Number 1012323, which expires on 10/7/2004.

DESCON 000289

Contractor. The Architect's response to such requests will be made in writing within any time limits agreed upon or otherwise, with reasonable promptness. If no agreement is made concerning the time within which interpretations required of the Architect shall be furnished in compliance with this Paragraph 4.2, then delay shall not be recognized on account of failure by the Architect to furnish such interpretations until 15 days after written request is made for them.

**4.2.12** Interpretations and decisions of the Architect will be consistent with the intent of and reasonably inferable from the Contract Documents and will be in writing or in the form of drawings. When making such interpretations and initial decisions, the Architect will endeavor to secure faithful performance by both Owner and Contractor, will not show partiality to either and will not be liable for results of interpretations or decisions so rendered in good faith.

**4.2.13** The Architect's decisions on matters relating to aesthetic effect will be final if consistent with the intent expressed in the Contract Documents.

### 4.3    CLAIMS AND DISPUTES

**4.3.1    Definition.** A Claim is a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the terms of the Contract. The term "Claim" also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract. Claims must be initiated by written notice. The responsibility to substantiate Claims shall rest with the party making the Claim.

**4.3.2    Time Limits on Claims.** Claims by either party must be initiated within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later. Claims must be initiated by written notice to the Architect and the other party.

**4.3.3    Continuing Contract Performance.** Pending final resolution of a Claim except as otherwise agreed in writing or as provided in Subparagraph 9.7.1 and Article 14, the Contractor shall proceed diligently with performance of the Contract and the Owner shall continue to make payments in accordance with the Contract Documents.

**4.3.4    Claims for Concealed or Unknown Conditions.** If conditions are encountered at the site which are (1) subsurface or otherwise concealed physical conditions which differ materially from those indicated in the Contract Documents or (2) unknown physical conditions of an unusual nature, which differ materially from those ordinarily found to exist and generally recognized as inherent in construction activities of the character provided for in the Contract Documents, then notice by the observing party shall be given to the other party promptly before conditions are disturbed and in no event later than 21 days after first observance of the conditions. The Architect will promptly investigate such conditions and, if they differ materially and cause an increase or decrease in the Contractor's cost of, or time required for, performance of any part of the Work, will recommend an equitable adjustment in the Contract Sum or Contract Time, or both. If the Architect determines that the conditions at the site are not materially different from those indicated in the Contract Documents and that no change in the terms of the Contract is justified, the Architect shall so notify the Owner and Contractor in writing, stating the reasons. Claims by either party in opposition to such determination must be made within 21 days after the Architect has given notice of the decision. If the conditions encountered are materially different, the Contract Sum and Contract Time shall be equitably adjusted, but if the Owner and Contractor cannot agree on an adjustment in the Contract Sum or Contract Time, the adjustment shall be referred to the Architect for initial determination, subject to further proceedings pursuant to Paragraph 4.4.

**4.3.5    Claims for Additional Cost.** If the Contractor wishes to make Claim for an increase in the Contract Sum, written notice as provided herein shall be given before

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by The Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A201 – 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

»Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, © 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 03001 la grulla ementary 97a201.aia -- 12/29/2003. AIA License Number 1012323, which expires on 10/7/2004.

20

DESCON 000290

proceeding to execute the Work. Prior notice is not required for Claims relating to an emergency endangering life or property arising under Paragraph 10.6.

4.3.6    If the Contractor believes additional cost is involved for reasons including but not limited to (1) a written interpretation from the Architect, (2) an order by the Owner to stop the Work where the Contractor was not at fault, (3) a written order for a minor change in the Work issued by the Architect, (4) failure of payment by the Owner, (5) termination of the Contract by the Owner, (6) Owner's suspension or (7) other reasonable grounds, Claim shall be filed in accordance with this Paragraph 4.3.

### 4.3.7    Claims for Additional Time
4.3.7.1   If the Contractor wishes to make Claim for an increase in the Contract Time, written notice as provided herein shall be given. The Contractor's Claim shall include an estimate of cost and of probable effect of delay on progress of the Work. In the case of a continuing delay only one Claim is necessary.

4.3.7.2   If adverse weather conditions are the basis for a Claim for additional time, such Claim shall be documented by data substantiating that weather conditions were abnormal for the period of time, could not have been reasonably anticipated and had an adverse effect on the scheduled construction.

4.3.8    Injury or Damage to Person or Property. If either party to the Contract suffers injury or damage to person or property because of an act or omission of the other party, or of others for whose acts such party is legally responsible, written notice of such injury or damage, whether or not insured, shall be given to the other party within a reasonable time not exceeding 21 days after discovery. The notice shall provide sufficient detail to enable the other party to investigate the matter.

4.3.9    If unit prices are stated in the Contract Documents or subsequently agreed upon, and if quantities originally contemplated are materially changed in a proposed Change Order or Construction Change Directive so that application of such unit prices to quantities of Work proposed will cause substantial inequity to the Owner or Contractor, the applicable unit prices shall be equitably adjusted.

4.3.10   Claims for Consequential Damages. The Contractor and Owner waive Claims against each other for consequential damages arising out of or relating to this Contract. This mutual waiver includes:

    .1   damages incurred by the Owner for rental expenses, for losses of use, income, profit, financing, business and reputation, and for loss of management or employee productivity or of the services of such persons; and

    .2   damages incurred by the Contractor for principal office expenses including the compensation of personnel stationed there, for losses of financing, business and reputation, and for loss of profit except anticipated profit arising directly from the Work.

This mutual waiver is applicable, without limitation, to all consequential damages due to either party's termination in accordance with Article 14. Nothing contained in this Subparagraph 4.3.10 shall be deemed to preclude an award of liquidated direct damages, when applicable, in accordance with the requirements of the Contract Documents.

### 4.4    RESOLUTION OF CLAIMS AND DISPUTES
4.4.1    Decision of Architect. Claims, including those alleging an error or omission by the Architect but excluding those arising under Paragraphs 10.3 through 10.5, shall be referred initially to the Architect for decision. An initial decision by the Architect shall be required as a condition precedent to mediation, arbitration or litigation of all Claims between the Contractor

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by The Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

»Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, © 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 03001 la grulla ementary 97a201.aia – 12/29/2003. AIA License Number 1012323, which expires on 10/7/2004.

21

DESCON 000291

and Owner arising prior to the date final payment is due, unless 30 days have passed after the Claim has been referred to the Architect with no decision having been rendered by the Architect. The Architect will not decide disputes between the Contractor and persons or entities other than the Owner.

**4.4.2**  The Architect will review Claims and within ten days of the receipt of the Claim take one or more of the following actions: (1) request additional supporting data from the claimant or a response with supporting data from the other party, (2) reject the Claim in whole or in part, (3) approve the Claim, (4) suggest a compromise, or (5) advise the parties that the Architect is unable to resolve the Claim if the Architect lacks sufficient information to evaluate the merits of the Claim or if the Architect concludes that, in the Architect's sole discretion, it would be inappropriate for the Architect to resolve the Claim.

**4.4.3**  In evaluating Claims, the Architect may, but shall not be obligated to, consult with or seek information from either party or from persons with special knowledge or expertise who may assist the Architect in rendering a decision. The Architect may request the Owner to authorize retention of such persons at the Owner's expense.

**4.4.4**  If the Architect requests a party to provide a response to a Claim or to furnish additional supporting data, such party shall respond, within ten days after receipt of such request, and shall either provide a response on the requested supporting data, advise the Architect when the response or supporting data will be furnished or advise the Architect that no supporting data will be furnished. Upon receipt of the response or supporting data, if any, the Architect will either reject or approve the Claim in whole or in part.

**4.4.5**  The Architect will approve or reject Claims by written decision, which shall state the reasons therefor and which shall notify the parties of any change in the Contract Sum or Contract Time or both. The approval or rejection of a Claim by the Architect shall be final and binding on the parties but subject to mediation and arbitration.

**4.4.6**  When a written decision of the Architect states that (1) the decision is final but subject to mediation and arbitration and (2) a demand for arbitration of a Claim covered by such decision must be made within 30 days after the date on which the party making the demand receives the final written decision, then failure to demand arbitration within said 30 days' period shall result in the Architect's decision becoming final and binding upon the Owner and Contractor. If the Architect renders a decision after arbitration proceedings have been initiated, such decision may be entered as evidence, but shall not supersede arbitration proceedings unless the decision is acceptable to all parties concerned.

**4.4.7**  Upon receipt of a Claim against the Contractor or at any time thereafter, the Architect or the Owner may, but is not obligated to, notify the surety, if any, of the nature and amount of the Claim. If the Claim relates to a possibility of a Contractor's default, the Architect or the Owner may, but is not obligated to, notify the surety and request the surety's assistance in resolving the controversy.

**4.4.8**  If a Claim relates to or is the subject of a mechanic's lien, the party asserting such Claim may proceed in accordance with applicable law to comply with the lien notice or filing deadlines prior to resolution of the Claim by the Architect, by mediation or by arbitration.

**4.5  MEDIATION**
**4.5.1**  Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived as provided for in Subparagraphs 4.3.10, 9.10.4 and 9.10.5 shall, after initial decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to mediation as a condition precedent to ~~arbitration or~~ the institution of legal or equitable proceedings by either party.

»Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, © 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 03001 la grulla emenJary 97a201.aia -- 12/29/2003. AIA License Number 1012323, which expires on 10/7/2004.

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by The Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

DESCON 000292

**4.5.2**  The parties shall endeavor to resolve their Claims by mediation which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Mediation Rules ~~of the American Arbitration Association~~ as set forth in the Texas Rules of Civil Procedure currently in effect. Request for mediation shall be filed in writing with the other party to the Contract and with the American Arbitration Association. The request may be made concurrently with the filing of a demand for arbitration but, in such event, mediation shall proceed in advance of arbitration or legal or equitable proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order.

**4.5.3**  The parties shall share the mediator's fee and any filing fees equally. The mediation shall be held in the place where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.

**4.6   ~~ARBITRATION~~**

**4.6.1**  ~~Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived as provided for in Subparagraphs 4.3.10, 9.10.4 and 9.10.5, shall, after decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to arbitration. Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Paragraph 4.5.~~

**4.6.2**  ~~Claims not resolved by mediation shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. The demand for arbitration shall be filed in writing with the other party to the Contract and with the American Arbitration Association, and a copy shall be filed with the Architect.~~

**4.6.3**  ~~A demand for arbitration shall be made within the time limits specified in Subparagraphs 4.4.6 and 4.6.1 as applicable, and in other cases within a reasonable time after the Claim has arisen, and in no event shall it be made after the date when institution of legal or equitable proceedings based on such Claim would be barred by the applicable statute of limitations as determined pursuant to Paragraph 13.7.~~

**4.6.4**  ~~Limitation on Consolidation or Joinder. No arbitration arising out of or relating to the Contract shall include, by consolidation or joinder or in any other manner, the Architect, the Architect's employees or consultants, except by written consent containing specific reference to the Agreement and signed by the Architect, Owner, Contractor and any other person or entity sought to be joined. No arbitration shall include, by consolidation or joinder or in any other manner, parties other than the Owner, Contractor, a separate contractor as described in Article 6 and other persons substantially involved in a common question of fact or law whose presence is required if complete relief is to be accorded in arbitration. No person or entity other than the Owner, Contractor or a separate contractor as described in Article 6 shall be included as an original third party or additional third party to an arbitration whose interest or responsibility is insubstantial. Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of a Claim not described therein or with a person or entity not named or described therein. The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by parties to the Agreement shall be specifically enforceable under applicable law in any court having jurisdiction thereof.~~

**4.6.5**  ~~Claims and Timely Assertion of Claims. The party filing a notice of demand for arbitration must assert in the demand all Claims then known to that party on which arbitration is permitted to be demanded.~~

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

This document has been approved and endorsed by The Associated General Contractors of America.



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

»Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, © 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 03001 la grulla ementary 97a201.aia -- 12/29/2003. AIA License Number 1012323, which expires on 10/7/2004.

23

DESCON 000293

4.6.6 ~~Judgment on Final Award. The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.~~

## ARTICLE 5 SUBCONTRACTORS

### 5.1 DEFINITIONS

5.1.1 A Subcontractor is a person or entity who has a direct contract with the Contractor to perform a portion of the Work at the site. The term "Subcontractor" is referred to throughout the Contract Documents as if singular in number and means a Subcontractor or an authorized representative of the Subcontractor. The term "Subcontractor" does not include a separate contractor or subcontractors of a separate contractor.

5.1.2 A Sub-subcontractor is a person or entity who has a direct or indirect contract with a Subcontractor to perform a portion of the Work at the site. The term "Sub-subcontractor" is referred to throughout the Contract Documents as if singular in number and means a Sub-subcontractor or an authorized representative of the Sub-subcontractor.

### 5.2 AWARD OF SUBCONTRACTS AND OTHER CONTRACTS FOR PORTIONS OF THE WORK

5.2.1 Unless otherwise stated in the Contract Documents or the bidding requirements, the Contractor, as soon as practicable after award of the Contract, shall furnish in writing to the Owner through the Architect the names of persons or entities (including those who are to furnish materials or equipment fabricated to a special design) proposed for each principal portion of the Work. The Architect will promptly reply to the Contractor in writing stating whether or not the Owner or the Architect, after due investigation, has reasonable objection to any such proposed person or entity. Failure of the Owner or Architect to reply promptly shall constitute notice of no reasonable objection.

5.2.2 The Contractor shall not contract with a proposed person or entity to whom the Owner or Architect has made reasonable and timely objection. The Contractor shall not be required to contract with anyone to whom the Contractor has made reasonable objection.

5.2.3 If the Owner or Architect has reasonable objection to a person or entity proposed by the Contractor, the Contractor shall propose another to whom the Owner or Architect has no reasonable objection. If the proposed but rejected Subcontractor was reasonably capable of performing the Work, the Contract Sum and Contract Time shall be increased or decreased by the difference, if any, occasioned by such change, and an appropriate Change Order shall be issued before commencement of the substitute Subcontractor's Work. However, no increase in the Contract Sum or Contract Time shall be allowed for such change unless the Contractor has acted promptly and responsively in submitting names as required.

5.2.4 The Contractor shall not change a Subcontractor, person or entity previously selected if the Owner or Architect makes reasonable objection to such substitute.

### 5.3 SUBCONTRACTUAL RELATIONS

5.3.1 By appropriate agreement, written where legally required for validity, the Contractor shall require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to the Contractor by terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities, including the responsibility for safety of the Subcontractor's Work, which the Contractor, by these Documents, assumes toward the Owner and Architect. Each subcontract agreement shall preserve and protect the rights of the Owner and Architect under the Contract Documents with respect to the Work to be performed by the Subcontractor so that subcontracting thereof will not prejudice such rights, and shall allow to the Subcontractor, unless specifically provided otherwise in the subcontract agreement, the benefit of all rights, remedies and redress against

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

This document has been approved and endorsed by The Associated General Contractors of America.



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

»Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, © 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 03001 la grulla ementary 97a201.aia -- 12/29/2003, AIA License Number 1012323, which expires on 10/7/2004.

24

DESCON 000294

the Contractor that the Contractor, by the Contract Documents, has against the Owner. Where appropriate, the Contractor shall require each Subcontractor to enter into similar agreements with Sub-subcontractors. The Contractor shall make available to each proposed Subcontractor, prior to the execution of the subcontract agreement, copies of the Contract Documents to which the Subcontractor will be bound, and, upon written request of the Subcontractor, identify to the Subcontractor terms and conditions of the proposed subcontract agreement which may be at variance with the Contract Documents. Subcontractors will similarly make copies of applicable portions of such documents available to their respective proposed Sub-subcontractors.

### 5.4 CONTINGENT ASSIGNMENT OF SUBCONTRACTS

5.4.1    Each subcontract agreement for a portion of the Work is assigned by the Contractor to the Owner provided that:

.1    assignment is effective only after termination of the Contract by the Owner for cause pursuant to Paragraph 14.2 and only for those subcontract agreements which the Owner accepts by notifying the Subcontractor and Contractor in writing; and

.2    assignment is subject to the prior rights of the surety, if any, obligated under bond relating to the Contract.

5.4.2    Upon such assignment, if the Work has been suspended for more than 30 days, the Subcontractor's compensation shall be equitably adjusted for increases in cost resulting from the suspension.

## ARTICLE 6 CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS

### 6.1 OWNER'S RIGHT TO PERFORM CONSTRUCTION AND TO AWARD SEPARATE CONTRACTS

6.1.1    The Owner reserves the right to perform construction or operations related to the Project with the Owner's own forces, and to award separate contracts in connection with other portions of the Project or other construction or operations on the site under Conditions of the Contract identical or substantially similar to these including those portions related to insurance and waiver of subrogation. If the Contractor claims that delay or additional cost is involved because of such action by the Owner, the Contractor shall make such Claim as provided in Paragraph 4.3.

6.1.2    When separate contracts are awarded for different portions of the Project or other construction or operations on the site, the term "Contractor" in the Contract Documents in each case shall mean the Contractor who executes each separate Owner-Contractor Agreement.

6.1.3    The Owner shall provide for coordination of the activities of the Owner's own forces and of each separate contractor with the Work of the Contractor, who shall cooperate with them. The Contractor shall participate with other separate contractors and the Owner in reviewing their construction schedules when directed to do so. The Contractor shall make any revisions to the construction schedule deemed necessary after a joint review and mutual agreement. The construction schedules shall then constitute the schedules to be used by the Contractor, separate contractors and the Other until subsequently revised.

6.1.4    Unless otherwise provided in the Contract Documents, when the Owner performs construction or operations related to the Project with the Owner's own forces, the Owner shall be deemed to be subject to the same obligations and to have the same rights which apply to the Contractor under the Conditions of the Contract, including, without excluding others, those stated in Article 3, this Article 6 and Articles 10, 11 and 12.

### 6.2 MUTUAL RESPONSIBILITY

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by The Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

»Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, © 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 03001 la grulla emeniary 97a201.aia -- 12/29/2003. AIA License Number 1012323, which expires on 10/7/2004.

25

DESCON 000295

**6.2.1** The Contractor shall afford the Owner and separate contractors reasonable opportunity for introduction and storage of their materials and equipment and performance of their activities, and shall connect and coordinate the Contractor's construction and operations with theirs as required by the Contract Documents.

**6.2.2** If part of the Contractor's Work depends for proper execution or results upon construction or operations by the Owner or a separate contractor, the Contractor shall, prior to proceeding with that portion of the Work, promptly report to the Architect apparent discrepancies or defects in such other construction that would render it unsuitable for such proper execution and results. Failure of the Contractor so to report shall constitute an acknowledgment that the Owner's or separate contractor's completed or partially completed construction is fit and proper to receive the Contractor's Work, except as to defects not then reasonably discoverable.

**6.2.3** The Owner shall be reimbursed by the Contractor for costs incurred by the Owner which are payable to a separate contractor because of delays, improperly timed activities or defective construction of the Contractor. The Owner shall be responsible to the Contractor for costs incurred by the Contractor because of delays, improperly timed activities, damage to the Work or defective construction of a separate contractor.

**6.2.4** The Contractor shall promptly remedy damage wrongfully caused by the Contractor to completed or partially completed construction or to property of the Owner or separate contractors as provided in Subparagraph 10.2.5.

**6.2.5** The Owner and each separate contractor shall have the same responsibilities for cutting and patching as are described for the Contractor in Subparagraph 3.14.

**6.3  OWNER'S RIGHT TO CLEAN UP**

**6.3.1** If a dispute arises among the Contractor, separate contractors and the Owner as to the responsibility under their respective contracts for maintaining the premises and surrounding area free from waste materials and rubbish, the Owner may clean up and the Architect will allocate the cost among those responsible.

## ARTICLE 7 CHANGES IN THE WORK
### 7.1  GENERAL
**7.1.1** Changes in the Work may be accomplished after execution of the Contract, and without invalidating the Contract, by Change Order, Construction Change Directive or order for a minor change in the Work, subject to the limitations stated in this Article 7 and elsewhere in the Contract Documents.

**7.1.2** A Change Order shall be based upon agreement among the Owner, Contractor and Architect; a Construction Change Directive requires agreement by the Owner and Architect and may or may not be agreed to by the Contractor; an order for a minor change in the Work may be issued by the Architect alone.

**7.1.3** Changes in the Work shall be performed under applicable provisions of the Contract Documents, and the Contractor shall proceed promptly, unless otherwise provided in the Change Order, Construction Change Directive or order for a minor change in the Work.

### 7.2  CHANGE ORDERS
**7.2.1** A Change Order is a written instrument prepared by the Architect and signed by the Owner, Contractor and Architect, stating their agreement upon all of the following:

    .1  change in the Work;

    .2  the amount of the adjustment, if any, in the Contract Sum; and

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

This document has been approved and endorsed by The Associated General Contractors of America.



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

»Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, © 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 03001 la grulla ementary 97a201.aia -- 12/29/2003. AIA License Number 1012323, which expires on 10/7/2004.

DESCON 000296

.3   the extent of the adjustment, if any, in the Contract Time.

**7.2.2**   Methods used in determining adjustments to the Contract Sum may include those listed in Subparagraph 7.3.3.

## 7.3   CONSTRUCTION CHANGE DIRECTIVES

**7.3.1**   A Construction Change Directive is a written order prepared by the Architect and signed by the Owner and Architect, directing a change in the Work prior to agreement on adjustment, if any, in the Contract Sum or Contract Time, or both. The Owner may by Construction Change Directive, without invalidating the Contract, order changes in the Work within the general scope of the Contract consisting of additions, deletions or other revisions, the Contract Sum and Contract Time being adjusted accordingly.

**7.3.2**   A Construction Change Directive shall be used in the absence of total agreement on the terms of a Change Order.

**7.3.3**   If the Construction Change Directive provides for an adjustment to the Contract Sum, the adjustment shall be based on one of the following methods:

.1   mutual acceptance of a lump sum properly itemized and supported by sufficient substantiating data to permit evaluation;

.2   unit prices stated in the Contract Documents or subsequently agreed upon;

.3   cost to be determined in a manner agreed upon by the parties and a mutually acceptable fixed or percentage fee; or

.4   as provided in Subparagraph 7.3.6.

**7.3.4**   Upon receipt of a Construction Change Directive, the Contractor shall promptly proceed with the change in the Work involved and advise the Architect of the Contractor's agreement or disagreement with the method, if any, provided in the Construction Change Directive for determining the proposed adjustment in the Contract Sum or Contract Time.

**7.3.5**   A Construction Change Directive signed by the Contractor indicates the agreement of the Contractor therewith, including adjustment in Contract Sum and Contract Time or the method for determining them. Such agreement shall be effective immediately and shall be recorded as a Change Order.

**7.3.6**   If the Contractor does not respond promptly or disagrees with the method for adjustment in the Contract Sum, the method and the adjustment shall be determined by the Architect on the basis of reasonable expenditures and savings of those performing the Work attributable to the change, including, in case of an increase in the Contract Sum, a reasonable allowance for overhead and profit. In such case, and also under Clause 7.3.3.3, the Contractor shall keep and present, in such form as the Architect may prescribe, an itemized accounting together with appropriate supporting data. Unless otherwise provided in the Contract Documents, costs for the purposes of this Subparagraph 7.3.6 shall be limited to the following:

.1   costs of labor, including social security, old age and unemployment insurance, fringe benefits required by agreement or custom, and workers' compensation insurance;

.2   costs of materials, supplies and equipment, including cost of transportation, whether incorporated or consumed;·

.3   rental costs of machinery and equipment, exclusive of hand tools, whether rented from the Contractor or others;

.4   costs of premiums for all bonds and insurance, permit fees, and sales, use or similar taxes related to the Work; and

.5   additional costs of supervision and field office personnel directly attributable to the change.

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by The Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

»Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, © 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 03001 la grulla emenlary 97a201.aia -- 12/29/2003. AIA License Number 1012323, which expires on 10/7/2004.

27

DESCON 000297

7.3.7    The amount of credit to be allowed by the Contractor to the Owner for a deletion or change which results in a net decrease in the Contract Sum shall be actual net cost as confirmed by the Architect. When both additions and credits covering related Work or substitutions are involved in a change, the allowance for overhead and profit shall be figured on the basis of net increase, if any, with respect to that change.

7.3.8    Pending final determination of the total cost of a Construction Change Directive to the Owner, amounts not in dispute for such changes in the Work shall be included in Applications for Payment accompanied by a Change Order indicating the parties' agreement with part or all of such costs. For any portion of such cost that remains in dispute, the Architect will make an interim determination for purposes of monthly certification for payment for those costs. That determination of cost shall adjust the Contract Sum on the same basis as a Change Order, subject to the right of either party to disagree and assert a claim in accordance with Article 4.

7.3.9    When the Owner and Contractor agree with the determination made by the Architect concerning the adjustments in the Contract Sum and Contract Time, or otherwise reach agreement upon the adjustments, such agreement shall be effective immediately and shall be recorded by preparation and execution of an appropriate Change Order.

7.4    MINOR CHANGES IN THE WORK
7.4.1    The Architect will have authority to order minor changes in the Work not involving adjustment in the Contract Sum or extension of the Contract Time and not inconsistent with the intent of the Contract Documents. Such changes shall be effected by written order and shall be binding on the Owner and Contractor. The Contractor shall carry out such written orders promptly.

ARTICLE 8 TIME
8.1    DEFINITIONS
8.1.1    Unless otherwise provided, Contract Time is the period of time, including authorized adjustments, allotted in the Contract Documents for Substantial Completion of the Work.

8.1.2    The date of commencement of the Work is the date established in the Agreement.

8.1.3    The date of Substantial Completion is the date certified by the Architect in accordance with Paragraph 9.8.

8.1.4    The term "day" as used in the Contract Documents shall mean calendar day unless otherwise specifically defined.

8.2    PROGRESS AND COMPLETION
8.2.1    Time limits stated in the Contract Documents are of the essence of the Contract. By executing the Agreement the Contractor confirms that the Contract Time is a reasonable period for performing the Work.

8.2.2    The Contractor shall not knowingly, except by agreement or instruction of the Owner in writing, prematurely commence operations on the site or elsewhere prior to the effective date of insurance required by Article n to be furnished by the Contractor and Owner. The date of commencement of the Work shall not be changed by the effective date of such insurance. Unless the date of commencement is established by the Contract Documents or a notice to proceed given by the Owner, the Contractor shall notify the Owner in writing not less than five days or other agreed period before commencing the Work to permit the timely filing of mortgages, mechanic's liens and other security interests.



THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

This document has been approved and endorsed by The Associated General Contractors of America.

©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

»Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, © 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 03001 la grulia ementary 97a201.aia -- 12/29/2003. AIA License Number 1012323, which expires on 10/7/2004.

28

DESCON 000298

**8.2.3** The Contractor shall proceed expeditiously with adequate forces and shall achieve Substantial Completion within the Contract Time.

## 8.3 DELAYS AND EXTENSIONS OF TIME

**8.3.1** If the Contractor is delayed at any time in the commencement or progress of the Work by an act or neglect of the Owner or Architect, or of an employee of either, or of a separate contractor employed by the Owner, or by changes ordered in the Work, or by labor disputes, fire, unusual delay in deliveries, unavoidable casualties or other causes beyond the Contractor's control, or by delay authorized by the Owner pending mediation and arbitration, or by other causes which the Architect determines may justify delay, then the Contract Time shall be extended by Change Order for such reasonable time as the Architect may determine.

**8.3.2** Claims relating to time shall be made in accordance with applicable provisions of Paragraph 4.3.

**8.3.3** This Paragraph 8.3 does not preclude recovery of damages for delay by either party under other provisions of the Contract Documents.

## ARTICLE 9 PAYMENTS AND COMPLETION

### 9.1 CONTRACT SUM

**9.1.1** The Contract Sum is stated in the Agreement and, including authorized adjustments, is the total amount payable by the Owner to the Contractor for performance of the Work under the Contract Documents.

### 9.2 SCHEDULE OF VALUES

**9.2.1** Before the first Application for Payment, the Contractor shall submit to the Architect a schedule of values allocated to various portions of the Work, prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

### 9.3 APPLICATIONS FOR PAYMENT

**9.3.1** At least ten days before the date established for each progress payment, the Contractor shall submit to the Architect an itemized Application for Payment for operations completed in accordance with the schedule of values. Such application shall be notarized, if required, and supported by such data substantiating the Contractor's right to payment as the Owner or Architect may require, such as copies of requisitions from Subcontractors and material suppliers, and reflecting retainage if provided for in the Contract Documents.

**9.3.1.1** As provided in Subparagraph 7.3.8, such applications may include requests for payment on account of changes in the Work which have been properly authorized by Construction Change Directives, or by interim determinations of the Architect, but not yet included in Change Orders.

**9.3.1.2** Such applications may not include requests for payment for portions of the Work for which the Contractor does not intend to pay to a Subcontractor or material supplier, unless such Work has been performed by others whom the Contractor intends to pay.

**9.3.2** Unless otherwise provided in the Contract Documents, payments shall be made on account of materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work. If approved in advance by the Owner, payment may similarly be made for materials and equipment suitably stored off the site at a location agreed upon in writing. Payment for materials and equipment stored on or off the site shall be conditioned upon compliance by the Contractor with procedures satisfactory to the Owner to establish the Owner's title to such materials and equipment or otherwise protect the Owner's interest, and

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

This document has been approved and endorsed by The Associated General Contractors of America.



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

»Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, © 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 03001 la grulla ementary 97a201.aia -- 12/29/2003. AIA License Number 1012323, which expires on 10/7/2004.

29

DESCON 000299

shall include the costs of applicable insurance, storage and transportation to the site for such materials and equipment stored off the site.

9.3.3    The Contractor warrants that title to all Work covered by an Application for Payment will pass to the Owner no later than the time of payment. The Contractor further warrants that upon submittal of an Application for Payment all Work for which Certificates for Payment have been previously issued and payments received from the Owner shall, to the best of the Contractor's knowledge, information and belief, be free and clear of liens, claims, security interests or encumbrances in favor of the Contractor, Subcontractors, material suppliers, or other persons or entities making a claim by reason of having provided labor, materials and equipment relating to the Work.

## 9.4    CERTIFICATES FOR PAYMENT

9.4.1    The Architect will, within seven days after receipt of the Contractor's Application for Payment, either issue to the Owner a Certificate for Payment, with a copy to the Contractor, for such amount as the Architect determines is properly due, or notify the Contractor and Owner in writing of the Architect's reasons for withholding certification in whole or in part as provided in Subparagraph 9.5.1.

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

9.4.2    The issuance of a Certificate for Payment will constitute a representation by the Architect to the Owner, based on the Architect's evaluation of the Work and the data comprising the Application for Payment, that the Work has progressed to the point indicated and that, to the best of the Architect's knowledge, information and belief, the quality of the Work is in accordance with the Contract Documents. The foregoing representations are subject to an evaluation of the Work for conformance with the Contract Documents upon Substantial Completion, to results of subsequent tests and inspections, to correction of minor deviations from the Contract Documents prior to completion and to specific qualifications expressed by the Architect. The issuance of a Certificate for Payment will further constitute a representation that the Contractor is entitled to payment in the amount certified. However, the issuance of a Certificate for Payment will not be a representation that the Architect has (1) made exhaustive or continuous on-site inspections to check the quality or quantity of the Work, (2) reviewed construction means, methods, techniques, sequences or procedures, (3) reviewed copies of requisitions received from Subcontractors and material suppliers and other data requested by the Owner to substantiate the Contractor's right to payment, or (4) made examination to ascertain how or for what purpose the Contractor has used money previously paid on account of the Contract Sum.

*This document has been approved and endorsed by the Associated General Contractors of America.*

## 9.5    DECISIONS TO WITHHOLD CERTIFICATION

9.5.1    The Architect may withhold a Certificate for Payment in whole or in part, to the extent reasonably necessary to protect the Owner, if in the Architect's opinion the representations to the Owner required by Subparagraph 9.4.2 cannot be made. If the Architect is unable to certify payment in the amount of the Application, the Architect will notify the Contractor and Owner as provided in Subparagraph 9.4.1. If the Contractor and Architect cannot agree on a revised amount, the Architect will promptly issue a Certificate for Payment for the amount for which the Architect is able to make such representations to the Owner. The Architect may also withhold a Certificate for Payment or, because of subsequently discovered evidence, may nullify the whole or a part of a Certificate for Payment previously issued, to such extent as may be necessary in the Architect's opinion to protect the Owner from loss for which the Contractor is responsible, including loss resulting from acts and omissions described in Subparagraph 3.3.2, because of:

   .1    defective Work not remedied;

   .2    third party claims filed or reasonable evidence indicating probable filing of such claims unless security acceptable to the Owner is provided by the Contractor;

   .3    failure of the Contractor to make payments properly to Subcontractors or for labor, materials or equipment;



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

»Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, © 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 03001 la grulla ementary 97a201.aia -- 12/29/2003. AIA License Number 1012323, which expires on 10/7/2004.

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

DESCON 000300

.4 reasonable evidence that the Work cannot be completed for the unpaid balance of the Contract Sum;

.5 damage to the Owner or another contractor;

.6 reasonable evidence that the Work will not be completed within the Contract Time, and that the unpaid balance would not be adequate to cover actual or liquidated damages for the anticipated delay; or

.7 persistent failure to carry out the Work in accordance with the Contract Documents.

**9.5.2** When the above reasons for withholding certification are removed, certification will be made for amounts previously withheld.

## 9.6 PROGRESS PAYMENTS

**9.6.1** After the Architect has issued a Certificate for Payment, the Owner shall make payment in the manner and within the time provided in the Contract Documents, and shall so notify the Architect.

**9.6.2** The Contractor shall promptly pay each Subcontractor, upon receipt of payment from the Owner, out of the amount paid to the Contractor on account of such Subcontractor's portion of the Work, the amount to which said Subcontractor is entitled, reflecting percentages actually retained from payments to the Contractor on account of such Subcontractor's portion of the Work. The Contractor shall, by appropriate agreement with each Subcontractor, require each Subcontractor to make payments to Sub-subcontractors in a similar manner.

**9.6.3** The Architect will, on request, furnish to a Subcontractor, if practicable, information regarding percentages of completion or amounts applied for by the Contractor and action taken thereon by the Architect and Owner on account of portions of the Work done by such Subcontractor.

**9.6.4** Neither the Owner nor Architect shall have an obligation to pay or to see to the payment of money to a Subcontractor except as may otherwise be required by law.

**9.6.5** Payment to material suppliers shall be treated in a manner similar to that provided in Subparagraphs 9.6.2, 9.6.3 and 9.6.4.

**9.6.6** A Certificate for Payment, a progress payment, or partial or entire use or occupancy of the Project by the Owner shall not constitute acceptance of Work not in accordance with the Contract Documents.

**9.6.7** Unless the Contractor provides the Owner with a payment bond in the full penal sum of the Contract Sum, payments received by the Contractor for Work properly performed by Subcontractors and suppliers shall be held by the Contractor for those Subcontractors or suppliers who performed Work or furnished materials, or both, under contract with the Contractor for which payment was made by the Owner. Nothing contained herein shall require money to be placed in a separate account and not commingled with money of the Contractor, shall create any fiduciary liability or tort liability on the part of the Contractor for breach of trust or shall entitle any person or entity to an award of punitive damages against the Contractor for breach of the requirements of this provision.

## 9.7 FAILURE OF PAYMENT

**9.7.1** If the Architect does not issue a Certificate for Payment, through no fault of the Contractor, within seven days after receipt of the Contractor's Application for Payment, or if the Owner does not pay the Contractor within seven days after the date established in the Contract Documents the amount certified by the Architect or awarded by arbitration, then the Contractor may, upon seven additional days' written notice to the Owner and Architect, stop

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

This document has been approved and endorsed by The Associated General Contractors of America.



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

»Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, © 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 03001 la grulla ementary 97a201.aia -- 12/29/2003. AIA License Number 1012323, which expires on 10/7/2004.

31

DESCON 000301

the Work until payment of the amount owing has been received. The Contract Time shall be extended appropriately and the Contract Sum shall be increased by the amount of the Contractor's reasonable costs of shut-down, delay and start-up, plus interest as provided for in the Contract Documents.

## 9.8    SUBSTANTIAL COMPLETION

9.8.1    Substantial Completion is the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work for its intended use.

9.8.2    When the Contractor considers that the Work, or a portion thereof which the Owner agrees to accept separately, is substantially complete, the Contractor shall prepare and submit to the Architect a comprehensive list of items to be completed or corrected prior to final payment. Failure to include an item on such list does not alter the responsibility of the Contractor to complete all Work in accordance with the Contract Documents.

9.8.3    Upon receipt of the Contractor's list, the Architect will make an inspection to determine whether the Work or designated portion thereof is substantially complete. If the Architect's inspection discloses any item, whether or not included on the Contractor's list, which is not sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work or designated portion thereof for its intended use, the Contractor shall, before issuance of the Certificate of Substantial Completion, complete or correct such item upon notification by the Architect. In such case, the Contractor shall then submit a request for another inspection by the Architect to determine Substantial Completion.

9.8.4    When the Work or designated portion thereof is substantially complete, the Architect will prepare a Certificate of Substantial Completion which shall establish the date of Substantial Completion, shall establish responsibilities of the Owner and Contractor for security, maintenance, heat, utilities, damage to the Work and insurance, and shall fix the time within which the Contractor shall finish all items on the list accompanying the Certificate. Warranties required by the Contract Documents shall commence on the date of Substantial Completion of the Work or designated portion thereof unless otherwise provided in the Certificate of Substantial Completion.

9.8.5    The Certificate of Substantial Completion shall be submitted to the Owner and Contractor for their written acceptance of responsibilities assigned to them in such Certificate. Upon such acceptance and consent of surety, if any, the Owner shall make payment of retainage applying to such Work or designated portion thereof. Such payment shall be adjusted for Work that is incomplete or not in accordance with the requirements of the Contract Documents.

## 9.9    PARTIAL OCCUPANCY OR USE

9.9.1    The Owner may occupy or use any completed or partially completed portion of the Work at any stage when such portion is designated by separate agreement with the Contractor, provided such occupancy or use is consented to by the insurer as required under Clause 11.4.1.5 and authorized by public authorities having jurisdiction over the Work. Such partial occupancy or use may commence whether or not the portion is substantially complete, provided the Owner and Contractor have accepted in writing the responsibilities assigned to each of them for payments, retainage, if any, security, maintenance, heat, utilities, damage to the Work and insurance, and have agreed in writing concerning the period for correction of the Work and commencement of warranties required by the Contract Documents. When the Contractor considers a portion substantially complete, the Contractor shall prepare and submit a list to the Architect as provided under Subparagraph 9.8.2. Consent of the Contractor to partial occupancy or use shall not be unreasonably withheld. The stage of the progress of the Work shall be determined by written agreement between the Owner and Contractor or, if no agreement is reached, by decision of the Architect.

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

This document has been approved and endorsed by The Associated General Contractors of America.



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

»Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, © 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 0300l la grulia ementary 97a201.aia -- 12/29/2003. AIA License Number 1012323, which expires on 10/7/2004.

32

DESCON 000302

**9.9.2** Immediately prior to such partial occupancy or use, the Owner, Contractor and Architect shall jointly inspect the area to be occupied or portion of the Work to be used in order to determine and record the condition of the Work.

**9.9.3** Unless otherwise agreed upon, partial occupancy or use of a portion or portions of the Work shall not constitute acceptance of Work not complying with the requirements of the Contract Documents.

## 9.10   FINAL COMPLETION AND FINAL PAYMENT

**9.10.1** Upon receipt of written notice that the Work is ready for final inspection and acceptance and upon receipt of a final Application for Payment, the Architect will promptly make such inspection and, when the Architect finds the Work acceptable under the Contract Documents and the Contract fully performed, the Architect will promptly issue a final Certificate for Payment stating that to the best of the Architect's knowledge, information and belief, and on the basis of the Architect's on-site visits and inspections, the Work has been completed in accordance with terms and conditions of the Contract Documents and that the entire balance found to be due the Contractor and noted in the final Certificate is due and payable. The Architect's final Certificate for Payment will constitute a further representation that conditions listed in Subparagraph 9.10.2 as precedent to the Contractor's being entitled to final payment have been fulfilled.

**9.10.2** Neither final payment nor any remaining retained percentage shall become due until the Contractor submits to the Architect (1) an affidavit that payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which the Owner or the Owner's property might be responsible or encumbered (less amounts withheld by Owner) have been paid or otherwise satisfied, (2) a certificate evidencing that insurance required by the Contract Documents to remain in force after final payment is currently in effect and will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner, (3) a written statement that the Contractor knows of no substantial reason that the insurance will not be renewable to cover the period required by the Contract Documents, (4) consent of surety, if any, to final payment and (5), if required by the Owner, other data establishing payment or satisfaction of obligations, such as receipts, releases and waivers of liens, claims, security interests or encumbrances arising out of the Contract, to the extent and in such form as may be designated by the Owner. If a Subcontractor refuses to furnish a release or waiver required by the Owner, the Contractor may furnish a bond satisfactory to the Owner to indemnify the Owner against such lien. If such lien remains unsatisfied after payments are made, the Contractor shall refund to the Owner all money that the Owner may be compelled to pay in discharging such lien, including all costs and reasonable attorneys' fees.

**9.10.3** If, after Substantial Completion of the Work, final completion thereof is materially delayed through no fault of the Contractor or by issuance of Change Orders affecting final completion, and the Architect so confirms, the Owner shall, upon application by the Contractor and certification by the Architect, and without terminating the Contract, make payment of the balance due for that portion of the Work fully completed and accepted. If the remaining balance for Work not fully completed or corrected is less than retainage stipulated in the Contract Documents, and if bonds have been furnished, the written consent of surety to payment of the balance due for that portion of the Work fully completed and accepted shall be submitted by the Contractor to the Architect prior to certification of such payment. Such payment shall be made under terms and conditions governing final payment, except that it shall not constitute a waiver of claims.

**9.10.4** The making of final payment shall constitute a waiver of Claims by the Owner except those arising from:

    .1   liens, Claims, security interests or encumbrances arising out of the Contract and unsettled;

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by The Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A201 – 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

»Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, © 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 03001 la grulla ementary 97a201.aia -- 12/29/2003. AIA License Number 1012323, which expires on 10/7/2004.

33

DESCON 000303

    **.2**   failure of the Work to comply with the requirements of the Contract Documents; or

    **.3**   terms of special warranties required by the Contract Documents.

**9.10.5** Acceptance of final payment by the Contractor, a Subcontractor or material supplier shall constitute a waiver of claims by that payee except those previously made in writing and identified by that payee as unsettled at the time of final Application for Payment.

## ARTICLE 10 PROTECTION OF PERSONS AND PROPERTY

### 10.1 SAFETY PRECAUTIONS AND PROGRAMS

**10.1.1** The Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the performance of the Contract.

### 10.2 SAFETY OF PERSONS AND PROPERTY

**10.2.1** The Contractor shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury or loss to:

    **.1**   employees on the Work and other persons who may be affected thereby;

    **.2**   the Work and materials and equipment to be incorporated therein, whether in storage on or off the site, under care, custody or control of the Contractor or the Contractor's Subcontractors or Sub-subcontractors; and

    **.3**   other property at the site or adjacent thereto, such as trees, shrubs, lawns, walks, pavements, roadways, structures and utilities not designated for removal, relocation or replacement in the course of construction.

**10.2.2** The Contractor shall give notices and comply with applicable laws, ordinances, rules, regulations and lawful orders of public authorities bearing on safety of persons or property or their protection from damage, injury or loss.

**10.2.3** The Contractor shall erect and maintain, as required by existing conditions and performance of the Contract, reasonable safeguards for safety and protection, including posting danger signs and other warnings against hazards, promulgating safety regulations and notifying owners and users of adjacent sites and utilities.

**10.2.4** When use or storage of explosives or other hazardous materials or equipment or unusual methods are necessary for execution of the Work, the Contractor shall exercise utmost care and carry on such activities under supervision of properly qualified personnel.

**10.2.5** The Contractor shall promptly remedy damage and loss (other than damage or loss insured under property insurance required by the Contract Documents) to property referred to in Clauses 10.2.1.2 and 10.2.1.3 caused in whole or in part by the Contractor, a Subcontractor, a Sub-subcontractor, or anyone directly or indirectly employed by any of them, or by anyone for whose acts they may be liable and for which the Contractor is responsible under Clauses 10.2.1.2 and 10.2.1.3, except damage or loss attributable to acts or omissions of the Owner or Architect or anyone directly or indirectly employed by either of them, or by anyone for whose acts either of them may be liable, and not attributable to the fault or negligence of the Contractor. The foregoing obligations of the Contractor are in addition to the Contractor's obligations under Paragraph 3.18.

**10.2.6** The Contractor shall designate a responsible member of the Contractor's organization at the site whose duty shall be the prevention of accidents. This person shall be the Contractor's superintendent unless otherwise designated by the Contractor in writing to the Owner and Architect.

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

This document has been approved and endorsed by The Associated General Contractors of America.



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

»Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, © 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 03001 la grulla emenlary 97a201.aia -- 12/29/2003. AIA License Number 1012323, which expires on 10/7/2004.

34

DESCON 000304

**10.2.7** The Contractor shall not load or permit any part of the construction or site to be loaded so as to endanger its safety.

### 10.3 HAZARDOUS MATERIALS

**10.3.1** If reasonable precautions will be inadequate to prevent foreseeable bodily injury or death to persons resulting from a material or substance, including but not limited to asbestos or polychlorinated biphenyl (PCB), encountered on the site by the Contractor, the Contractor shall, upon recognizing the condition, immediately stop Work in the affected area and report the condition to the Owner and Architect in writing.

**10.3.2** The Owner shall obtain the services of a licensed laboratory to verify the presence or absence of the material or substance reported by the Contractor and, in the event such material or substance is found to be present, to verify that it has been rendered harmless. Unless otherwise required by the Contract Documents, the Owner shall furnish in writing to the Contractor and Architect the names and qualifications of persons or entities who are to perform tests verifying the presence or absence of such material or substance or who are to perform the task of removal or safe containment of such material or substance. The Contractor and the Architect will promptly reply to the Owner in writing stating whether or not either has reasonable objection to the persons or entities proposed by the Owner. If either the Contractor or Architect has an objection to a person or entity proposed by the Owner, the Owner shall propose another to whom the Contractor and the Architect have no reasonable objection. When the material or substance has been rendered harmless, Work in the affected area shall resume upon written agreement of the Owner and Contractor. The Contract Time shall be extended appropriately and the Contract Sum shall be increased in the amount of the Contractor's reasonable additional costs of shut-down, delay and start-up, which adjustments shall be accomplished as provided in Article 7.

**10.3.3** To the fullest extent permitted by law, the Owner shall indemnify and hold harmless the Contractor, Subcontractors, Architect, Architect's consultants and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work in the affected area if in fact the material or substance presents the risk of bodily injury or death as described in Subparagraph 10.3.1 and has not been rendered harmless, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) and provided that such damage, loss or expense is not due to the sole negligence of a party seeking indemnity.

**10.4** The Owner shall not be responsible under Paragraph 10.3 for materials and substances brought to the site by the Contractor unless such materials or substances were required by the Contract Documents.

**10.5** If, without negligence on the part of the Contractor, the Contractor is held liable for the cost of remediation of a hazardous material or substance solely by reason of performing Work as required by the Contract Documents, the Owner shall indemnify the Contractor for all cost and expense thereby incurred.

### 10.6 EMERGENCIES

**10.6.1** In an emergency affecting safety of persons or property, the Contractor shall act, at the Contractor's discretion, to prevent threatened damage, injury or loss. Additional compensation or extension of time claimed by the Contractor on account of an emergency shall be determined as provided in Paragraph 4.3 and Article 7.

## ARTICLE 11 INSURANCE AND BONDS
### 11.1 CONTRACTOR'S LIABILITY INSURANCE

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

This document has been approved and endorsed by The Associated General Contractors of America.



©1997 AIA®
AIA DOCUMENT A201 – 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

»Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, © 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 03001 la grulla ementary 97a201.aia -- 12/29/2003. AIA License Number 1012323, which expires on 10/7/2004.

DESCON 000305

**11.1.1** The Contractor shall purchase from and maintain in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located such insurance as will protect the Contractor from claims set forth below which may arise out of or result from the Contractor's operations under the Contract and for which the Contractor may be legally liable, whether such operations be by the Contractor or by a Subcontractor or by anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable:

.1 claims under workers' compensation, disability benefit and other similar employee benefit acts which are applicable to the Work to be performed;

.2 claims for damages because of bodily injury, occupational sickness or disease, or death of the Contractor's employees;

.3 claims for damages because of bodily injury, sickness or disease, or death of any person other than the Contractor's employees;

.4 claims for damages insured by usual personal injury liability coverage;

.5 claims for damages, other than to the Work itself, because of injury to or destruction of tangible property, including loss of use resulting therefrom;

.6 claims for damages because of bodily injury, death of a person or property damage arising out of ownership, maintenance or use of a motor vehicle;

.7 claims for bodily injury or property damage arising out of completed operations; and

.8 claims involving contractual liability insurance applicable to the Contractor's obligations under Paragraph 3.18.

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by The Associated General Contractors of America.*

**11.1.2** The insurance required by Subparagraph 11.1.1 shall be written for not less than limits of liability specified in the Contract Documents or required by law, whichever coverage is greater. Coverages, whether written on an occurrence or claims-made basis, shall be maintained without interruption from date of commencement of the Work until date of final payment and termination of any coverage required to be maintained after final payment.

**11.1.3** Certificates of insurance acceptable to the Owner shall be filed with the Owner prior to commencement of the Work. These certificates and the insurance policies required by this Paragraph 11.1 shall contain a provision that coverages afforded under the policies will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner. If any of the foregoing insurance coverages are required to remain in force after final payment and are reasonably available, an additional certificate evidencing continuation of such coverage shall be submitted with the final Application for Payment as required by Subparagraph 9.10.2. Information concerning reduction of coverage on account of revised limits or claims paid under the General Aggregate, or both, shall be furnished by the Contractor with reasonable promptness in accordance with the Contractor's information and belief.

## 11.2 OWNER'S LIABILITY INSURANCE

**11.2.1** The Owner shall be responsible for purchasing and maintaining the Owner's usual liability insurance.

## 11.3 PROJECT MANAGEMENT PROTECTIVE LIABILITY INSURANCE

**11.3.1** Optionally, the Owner may require the Contractor to purchase and maintain Project Management Protective Liability insurance from the Contractor's usual sources as primary coverage for the Owner's, Contractor's and Architect's vicarious liability for construction operations under the Contract. Unless otherwise required by the Contract Documents, the Owner shall reimburse the Contractor by increasing the Contract Sum to pay the cost of purchasing and maintaining such optional insurance coverage, and the Contractor shall not be responsible for purchasing any other liability insurance on behalf of the Owner. The minimum limits of liability purchased with such coverage shall be equal to the aggregate of the limits required for Contractor's Liability Insurance under Clauses 11.1.1.2 through 11.1.1.5.



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

»Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, © 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 03001 la grulla ementary 97a201.aia -- 12/29/2003. AIA License Number 1012323, which expires on 10/7/2004.

The American Institute of Architects
1735 New York Avenue, N.W,
Washington, D.C. 20006-5292

DESCON 000306

**11.3.2** To the extent damages are covered by Project Management Protective Liability insurance, the Owner, Contractor and Architect waive all rights against each other for damages, except such rights as they may have to the proceeds of such insurance. The policy shall provide for such waivers of subrogation by endorsement or otherwise.

**11.3.3** The Owner shall not require the Contractor to include the Owner, Architect or other persons or entities as additional insureds on the Contractor's Liability Insurance coverage under Paragraph 11.1.

## 11.4 PROPERTY INSURANCE

**11.4.1** Unless otherwise provided, the Owner shall purchase and maintain, in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located, property insurance written on a builder's risk "all-risk" or equivalent policy form in the amount of the initial Contract Sum, plus value of subsequent Contract modifications and cost of materials supplied or installed by others, comprising total value for the entire Project at the site on a replacement cost basis without optional deductibles. Such property insurance shall be maintained, unless otherwise provided in the Contract Documents or otherwise agreed in writing by all persons and entities who are beneficiaries of such insurance, until final payment has been made as provided in Paragraph 9.10 or until no person or entity other than the Owner has an insurable interest in the property required by this Paragraph 11.4 to be covered, whichever is later. This insurance shall include interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Project.

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

This document has been approved and endorsed by The Associated General Contractors of America.

**11.4.1.1** Property insurance shall be on an "all-risk" or equivalent policy form and shall include, without limitation, insurance against the perils of fire (with extended coverage) and physical loss or damage including, without duplication of coverage, theft, vandalism, malicious mischief, collapse, earthquake, flood, windstorm, falsework, testing and startup, temporary buildings and debris removal including demolition occasioned by enforcement of any applicable legal requirements, and shall cover reasonable compensation for Architect's and Contractor's services and expenses required as a result of such insured loss.

**11.4.1.2** If the Owner does not intend to purchase such property insurance required by the Contract and with all of the coverages in the amount described above, the Owner shall so inform the Contractor in writing prior to commencement of the Work. The Contractor may then effect insurance which will protect the interests of the Contractor, Subcontractors and Sub-subcontractors in the Work, and by appropriate Change Order the cost thereof shall be charged to the Owner. If the Contractor is damaged by the failure or neglect of the Owner to purchase or maintain insurance as described above, without so notifying the Contractor in writing, then the Owner shall bear all reasonable costs properly attributable thereto.

**11.4.1.3** If the property insurance requires deductibles, the Owner shall pay costs not covered because of such deductibles.

**11.4.1.4** This property insurance shall cover portions of the Work stored off the site, and also portions of the Work in transit.

**11.4.1.5** Partial occupancy or use in accordance with Paragraph 9.9 shall not commence until the insurance company or companies providing property insurance have consented to such partial occupancy or use by endorsement or otherwise. The Owner and the Contractor shall take reasonable steps to obtain consent of the insurance company or companies and shall, without mutual written consent, take no action with respect to partial occupancy or use that would cause cancellation, lapse or reduction of insurance.



**11.4.2** Boiler and Machinery Insurance. The Owner shall purchase and maintain boiler and machinery insurance required by the Contract Documents or by law, which shall specifically cover such insured objects during installation and until final acceptance by the

©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

»Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, © 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 03001 la grulla emenlary 97a201.aia -- 12/29/2003. AIA License Number 1012323, which expires on 10/7/2004.

37

DESCON 000307

Owner; this insurance shall include interests of the Owner, Contractor, Subcontractors and Sub-subcontractors in the Work, and the Owner and Contractor shall be named insureds.

**11.4.3  Loss of Use Insurance.** The Owner, at the Owner's option, may purchase and maintain such insurance as will insure the Owner against loss of use of the Owner's property due to fire or other hazards, however caused. The Owner waives all rights of action against the Contractor for loss of use of the Owner's property, including consequential losses due to fire or other hazards however caused.

**11.4.4** If the Contractor requests in writing that insurance for risks other than those described herein or other special causes of loss be included in the property insurance policy, the Owner shall, if possible, include such insurance, and the cost thereof shall be charged to the Contractor by appropriate Change Order.

**11.4.5** If during the Project construction period the Owner insures properties, real or personal or both, at or adjacent to the site by property insurance under policies separate from those insuring the Project, or if after final payment property insurance is to be provided on the completed Project through a policy or policies other than those insuring the Project during the construction period, the Owner shall waive all rights in accordance with the terms of Subparagraph 11.4.7 for damages caused by fire or other causes of loss covered by this separate property insurance. All separate policies shall provide this waiver of subrogation by endorsement or otherwise.

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

**11.4.6** Before an exposure to loss may occur, the Owner shall file with the Contractor a copy of each policy that includes insurance coverages required by this Paragraph 11.4. Each policy shall contain all generally applicable conditions, definitions, exclusions and endorsements related to this Project. Each policy shall contain a provision that the policy will not be canceled or allowed to expire, and that its limits will not be reduced, until at least 30 days' prior written notice has been given to the Contractor.

*This document has been approved and endorsed by The Associated General Contractors of America.*

**11.4.7  Waivers of Subrogation.** The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Architect, Architect's consultants, separate contractors described in Article 6, if any, and any of their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to this Paragraph 11.4 or other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary. The Owner or Contractor, as appropriate, shall require of the Architect, Architect's consultants, separate contractors described in Article 6, if any, and the subcontractors, sub-subcontractors, agents and employees of any of them, by appropriate agreements, written where legally required for validity, similar waivers each in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

**11.4.8** A loss insured under Owner's property insurance shall be adjusted by the Owner as fiduciary and made payable to the Owner as fiduciary for the insureds, as their interests may appear, subject to requirements of any applicable mortgagee clause and of Subparagraph 11.4.10. The Contractor shall pay Subcontractors their just shares of insurance proceeds received by the Contractor, and by appropriate agreements, written where legally required for validity, shall require Subcontractors to make payments to their Sub-subcontractors in similar manner.



**11.4.9** If required in writing by a party in interest, the Owner as fiduciary shall, upon occurrence of an insured loss, give bond for proper performance of the Owner's duties. The

©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

»Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, © 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 03001 la grulla ementary 97a201.aia -- 12/29/2003. AIA License Number 1012323, which expires on 10/7/2004.

DESCON 000308

cost of required bonds shall be charged against proceeds received as fiduciary. The Owner shall deposit in a separate account proceeds so received, which the Owner shall distribute in accordance with such agreement as the parties in interest may reach, or in accordance with an arbitration award in which case the procedure shall be as provided in Paragraph 4.6. If after such loss no other special agreement is made and unless the Owner terminates the Contract for convenience, replacement of damaged property shall be performed by the Contractor after notification of a Change in the Work in accordance with Article 7.

11.4.10   The Owner as fiduciary shall have power to adjust and settle a loss with insurers unless one of the parties in interest shall object in writing within five days after occurrence of loss to the Owner's exercise of this power; if such objection is made, the dispute shall be resolved as provided in Paragraphs 4.5 and 4.6. The Owner as fiduciary shall, in the case of arbitration, make settlement with insurers in accordance with directions of the arbitrators. If distribution of insurance proceeds by arbitration is required, the arbitrators will direct such distribution.

## 11.5   PERFORMANCE BOND AND PAYMENT BOND

11.5.1   The Owner shall have the right to require the Contractor to furnish bonds covering faithful performance of the Contract and payment of obligations arising thereunder as stipulated in bidding requirements or specifically required in the Contract Documents on the date of execution of the Contract.

11.5.2   Upon the request of any person or entity appearing to be a potential beneficiary of bonds covering payment of obligations arising under the Contract, the Contractor shall promptly furnish a copy of the bonds or shall permit a copy to be made.

## ARTICLE 12   UNCOVERING AND CORRECTION OF WORK

### 12.1   UNCOVERING OF WORK

12.1.1   If a portion of the Work is covered contrary to the Architect's request or to requirements specifically expressed in the Contract Documents, it must, if required in writing by the Architect, be uncovered for the Architect's examination and be replaced at the Contractor's expense without change in the Contract Time.

12.1.2   If a portion of the Work has been covered which the Architect has not specifically requested to examine prior to its being covered, the Architect may request to see such Work and it shall be uncovered by the Contractor. If such Work is in accordance with the Contract Documents, costs of uncovering and replacement shall, by appropriate Change Order, be at the Owner's expense. If such Work is not in accordance with the Contract Documents, correction shall be at the Contractor's expense unless the condition was caused by the Owner or a separate contractor in which event the Owner shall be responsible for payment of such costs.

### 12.2   CORRECTION OF WORK

### 12.2.1   BEFORE OR AFTER SUBSTANTIAL COMPLETION

12.2.1.1 The Contractor shall promptly correct Work rejected by the Architect or failing to conform to the requirements of the Contract Documents, whether discovered before or after Substantial Completion and whether or not fabricated, installed or completed. Costs of correcting such rejected Work, including additional testing and inspections and compensation for the Architect's services and expenses made necessary thereby, shall be at the Contractor's expense.

### 12.2.2   AFTER SUBSTANTIAL COMPLETION

12.2.2.1   In addition to the Contractor's obligations under Paragraph 3.5, if, within one year after the date of Substantial Completion of the Work or designated portion thereof or after the date for commencement of warranties established under Subparagraph 9.9.1, or by terms of an applicable special warranty required by the Contract Documents, any of the Work is found to be not in accordance with the requirements of the Contract Documents, the Contractor shall

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by The Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

»Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, © 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 03001 la grulla emenlary 97a201.aia -- 12/29/2003. AIA License Number 1012323, which expires on 10/7/2004.

39

DESCON 000309

correct it promptly after receipt of written notice from the Owner to do so unless the Owner has previously given the Contractor a written acceptance of such condition. The Owner shall give such notice promptly after discovery of the condition. During the one-year period for correction of Work, if the Owner fails to notify the Contractor and give the Contractor an opportunity to make the correction, the Owner waives the rights to require correction by the Contractor and to make a claim for breach of warranty. If the Contractor fails to correct nonconforming Work within a reasonable time during that period after receipt of notice from the Owner or Architect, the Owner may correct it in accordance with Paragraph 2.4.

12.2.2.2 The one-year period for correction of Work shall be extended with respect to portions of Work first performed after Substantial Completion by the period of time between Substantial Completion and the actual performance of the Work.

12.2.2.3 The one-year period for correction of Work shall not be extended by corrective Work performed by the Contractor pursuant to this Paragraph 12.2.

12.2.3 The Contractor shall remove from the site portions of the Work which are not in accordance with the requirements of the Contract Documents and are neither corrected by the Contractor nor accepted by the Owner.

12.2.4 The Contractor shall bear the cost of correcting destroyed or damaged construction, whether completed or partially completed, of the Owner or separate contractors caused by the Contractor's correction or removal of Work which is not in accordance with the requirements of the Contract Documents.

12.2.5 Nothing contained in this Paragraph 12.2 shall be construed to establish a period of limitation with respect to other obligations which the Contractor might have under the Contract Documents. Establishment of the one-year period for correction of Work as described in Subparagraph 12.2.2 relates only to the specific obligation of the Contractor to correct the Work, and has no relationship to the time within which the obligation to comply with the Contract Documents may be sought to be enforced, nor to the time within which proceedings may be commenced to establish the Contractor's liability with respect to the Contractor's obligations other than specifically to correct the Work.

## 12.3 ACCEPTANCE OF NONCONFORMING WORK

12.3.1 If the Owner prefers to accept Work which is not in accordance with the requirements of the Contract Documents, the Owner may do so instead of requiring its removal and correction, in which case the Contract Sum will be reduced as appropriate and equitable. Such adjustment shall be effected whether or not final payment has been made.

## ARTICLE 13 MISCELLANEOUS PROVISIONS

### 13.1 GOVERNING LAW

13.1.1 ~~The Contract shall be governed by the law of the place where the Project is located.~~ This Contract shall be governed by the laws of the State of Texas. Venue for any suit, claim, dispute or proceeding, including mediation, arising out of or in connection with this Agreement, shall be in Starr County, Texas.

### 13.2 SUCCESSORS AND ASSIGNS

13.2.1 The Owner and Contractor respectively bind themselves, their partners, successors, assigns and legal representatives to the other party hereto and to partners, successors, assigns and legal representatives of such other party in respect to covenants, agreements and obligations contained in the Contract Documents. Except as provided in Subparagraph 13.2.2, neither party to the Contract shall assign the Contract as a whole without written consent of the other. If either party attempts to make such an assignment without such consent, that party shall nevertheless remain legally responsible for all obligations under the Contract.

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

This document has been approved and endorsed by The Associated General Contractors of America.



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

»Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, © 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 03001 la grulla ementary 97a201.aia -- 12/29/2003. AIA License Number 1012323, which expires on 10/7/2004.

40

DESCON 000310

**13.2.2** The Owner may, without consent of the Contractor, assign the Contract to an institutional lender providing construction financing for the Project. In such event, the lender shall assume the Owner's rights and obligations under the Contract Documents. The Contractor shall execute all consents reasonably required to facilitate such assignment.

## 13.3 WRITTEN NOTICE
**13.3.1** Written notice shall be deemed to have been duly served if delivered in person to the individual or a member of the firm or entity or to an officer of the corporation for which it was intended, or if delivered at or sent by registered or certified mail to the last business address known to the party giving notice.

## 13.4 RIGHTS AND REMEDIES
**13.4.1** Duties and obligations imposed by the Contract Documents and rights and remedies available thereunder shall be in addition to and not a limitation of duties, obligations, rights and remedies otherwise imposed or available by law.

**13.4.2** No action or failure to act by the Owner, Architect or Contractor shall constitute a waiver of a right or duty afforded them under the Contract, nor shall such action or failure to act constitute approval of or acquiescence in a breach thereunder, except as may be specifically agreed in writing.

## 13.5 TESTS AND INSPECTIONS
**13.5.1** Tests, inspections and approvals of portions of the Work required by the Contract Documents or by laws, ordinances, rules, regulations or orders of public authorities having jurisdiction shall be made at an appropriate time. Unless otherwise provided, the Contractor shall make arrangements for such tests, inspections and approvals with an independent testing laboratory or entity acceptable to the Owner, or with the appropriate public authority, and shall bear all related costs of tests, inspections and approvals. The Contractor shall give the Architect timely notice of when and where tests and inspections are to be made so that the Architect may be present for such procedures. The Owner shall bear costs of tests, inspections or approvals which do not become requirements until after bids are received or negotiations concluded.

**13.5.2** If the Architect, Owner or public authorities having jurisdiction determine that portions of the Work require additional testing, inspection or approval not included under Subparagraph 13.5.1, the Architect will, upon written authorization from the Owner, instruct the Contractor to make arrangements for such additional testing, inspection or approval by an entity acceptable to the Owner, and the Contractor shall give timely notice to the Architect of when and where tests and inspections are to be made so that the Architect may be present for such procedures. Such costs, except as provided in Subparagraph 13.5.3, shall be at the Owner's expense.

**13.5.3** If such procedures for testing, inspection or approval under Subparagraphs 13.5.1 and 13.5.2 reveal failure of the portions of the Work to comply with requirements established by the Contract Documents, all costs made necessary by such failure including those of repeated procedures and compensation for the Architect's services and expenses shall be at the Contractor's expense.

**13.5.4** Required certificates of testing, inspection or approval shall, unless otherwise required by the Contract Documents, be secured by the Contractor and promptly delivered to the Architect.

**13.5.5** If the Architect is to observe tests, inspections or approvals required by the Contract Documents, the Architect will do so promptly and, where practicable, at the normal place of testing.

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by The Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

»Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, © 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 0300) la grulla ementary 97a201.aia -- 12/29/2003. AIA License Number 1012323, which expires on 10/7/2004.

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

DESCON 000311

13.5.6 Tests or inspections conducted pursuant to the Contract Documents shall be made promptly to avoid unreasonable delay in the Work.

### 13.6 INTEREST

13.6.1 Payments due and unpaid under the Contract Documents shall bear interest from the date payment is due at such rate as the parties may agree upon in writing or, in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.

### 13.7 COMMENCEMENT OF STATUTORY LIMITATION PERIOD

13.7.1 As between the Owner and Contractor:

.1 Before Substantial Completion. As to acts or failures to act occurring prior to the relevant date of Substantial Completion, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than such date of Substantial Completion;

.2 Between Substantial Completion and Final Certificate for Payment. As to acts or failures to act occurring subsequent to the relevant date of Substantial Completion and prior to issuance of the final Certificate for Payment, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than the date of issuance of the final Certificate for Payment; and

.3 After Final Certificate for Payment. As to acts or failures to act occurring after the relevant date of issuance of the final Certificate for Payment, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than the date of any act or failure to act by the Contractor pursuant to any Warranty provided under Paragraph 3.5, the date of any correction of the Work or failure to correct the Work by the Contractor under Paragraph 12.2, or the date of actual commission of any other act or failure to perform any duty or obligation by the Contractor or Owner, whichever occurs last.

## ARTICLE 14 TERMINATION OR SUSPENSION OF THE CONTRACT

### 14.1 TERMINATION BY THE CONTRACTOR

14.1.1 The Contractor may terminate the Contract if the Work is stopped for a period of 30 consecutive days through no act or fault of the Contractor or a Subcontractor, Sub-subcontractor or their agents or employees or any other persons or entities performing portions of the Work under direct or indirect contract with the Contractor, for any of the following reasons:

.1 issuance of an order of a court or other public authority having jurisdiction which requires all Work to be stopped;

.2 an act of government, such as a declaration of national emergency which requires all Work to be stopped;

.3 because the Architect has not issued a Certificate for Payment and has not notified the Contractor of the reason for withholding certification as provided in Subparagraph 9.4.1, or because the Owner has not made payment on a Certificate for Payment within the time stated in the Contract Documents; or

.4 the Owner has failed to furnish to the Contractor promptly, upon the Contractor's request, reasonable evidence as required by Subparagraph 2.2.1.

14.1.2 The Contractor may terminate the Contract if, through no act or fault of the Contractor or a Subcontractor, Sub-subcontractor or their agents or employees or any other persons or entities performing portions of the Work under direct or indirect contract with the Contractor, repeated suspensions, delays or interruptions of the entire Work by the Owner as



*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by The Associated General Contractors of America.*

©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

»Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, © 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 03001 la grulla ementary 97a201.aia -- 12/29/2003. AIA License Number 1012323, which expires on 10/7/2004.

DESCON 000312

described in Paragraph 14.3 constitute in the aggregate more than 100 percent of the total number of days scheduled for completion, or 120 days in any 365-day period, whichever is less.

14.1.3 If one of the reasons described in Subparagraph 14.1.1 or 14.1.2 exists, the Contractor may, upon seven days' written notice to the Owner and Architect, terminate the Contract and recover from the Owner payment for Work executed and for proven loss with respect to materials, equipment, tools, and construction equipment and machinery, including reasonable overhead, profit and damages.

14.1.4 If the Work is stopped for a period of 60 consecutive days through no act or fault of the Contractor or a Subcontractor or their agents or employees or any other persons performing portions of the Work under contract with the Contractor because the Owner has persistently failed to fulfill the Owner's obligations under the Contract Documents with respect to matters important to the progress of the Work, the Contractor may, upon seven additional days' written notice to the Owner and the Architect, terminate the Contract and recover from the Owner as provided in Subparagraph 14.1.3.

## 14.2 TERMINATION BY THE OWNER FOR CAUSE
14.2.1 The Owner may terminate the Contract if the Contractor:
  .1 persistently or repeatedly refuses or fails to supply enough properly skilled workers or proper materials;
  .2 fails to make payment to Subcontractors for materials or labor in accordance with the respective agreements between the Contractor and the Subcontractors;
  .3 persistently disregards laws, ordinances, or rules, regulations or orders of a public authority having jurisdiction; or
  .4 otherwise is guilty of substantial breach of a provision of the Contract Documents.

14.2.2 When any of the above reasons exist, the Owner, upon certification by the Architect that sufficient cause exists to justify such action, may without prejudice to any other rights or remedies of the Owner and after giving the Contractor and the Contractor's surety, if any, seven days' written notice, terminate employment of the Contractor and may, subject to any prior rights of the surety:
  .1 take possession of the site and of all materials, equipment, tools, and construction equipment and machinery thereon owned by the Contractor;
  .2 accept assignment of subcontracts pursuant to Paragraph 5.4; and
  .3 finish the Work by whatever reasonable method the Owner may deem expedient. Upon request of the Contractor, the Owner shall furnish to the Contractor a detailed accounting of the costs incurred by the Owner in finishing the Work.

14.2.3 When the Owner terminates the Contract for one of the reasons stated in Subparagraph 14.2.1, the Contractor shall not be entitled to receive further payment until the Work is finished.

14.2.4 If the unpaid balance of the Contract Sum exceeds costs of finishing the Work, including compensation for the Architect's services and expenses made necessary thereby, and other damages incurred by the Owner and not expressly waived, such excess shall be paid to the Contractor. If such costs and damages exceed the unpaid balance, the Contractor shall pay the difference to the Owner. The amount to be paid to the Contractor or Owner, as the case may be, shall be certified by the Architect, upon application, and this obligation for payment shall survive termination of the Contract.

## 14.3 SUSPENSION BY THE OWNER FOR CONVENIENCE
14.3.1 The Owner may, without cause, order the Contractor in writing to suspend, delay or interrupt the Work in whole or in part for such period of time as the Owner may determine.

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

This document has been approved and endorsed by The Associated General Contractors of America.



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

»Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, © 1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 03001 la grulla ementary 97a201.aia -- 12/29/2003. AIA License Number 1012323, which expires on 10/7/2004.

43

DESCON 000313

**14.3.2** The Contract Sum and Contract Time shall be adjusted for increases in the cost and time caused by suspension, delay or interruption as described in Subparagraph 14.3.1. Adjustment of the Contract Sum shall include profit. No adjustment shall be made to the extent:

    .1 that performance is, was or would have been so suspended, delayed or interrupted by another cause for which the Contractor is responsible; or

    .2 that an equitable adjustment is made or denied under another provision of the Contract.

## 14.4 TERMINATION BY THE OWNER FOR CONVENIENCE

**14.4.1** The Owner may, at any time, terminate the Contract for the Owner's convenience and without cause.

**14.4.2** Upon receipt of written notice from the Owner of such termination for the Owner's convenience, the Contractor shall:

    .1 cease operations as directed by the Owner in the notice;

    .2 take actions necessary, or that the Owner may direct, for the protection and preservation of the Work; and

    .3 except for Work directed to be performed prior to the effective date of termination stated in the notice, terminate all existing subcontracts and purchase orders and enter into no further subcontracts and purchase orders.

**14.4.3** In case of such termination for the Owner's convenience, the Contractor shall be entitled to receive payment for Work executed, and costs incurred by reason of such termination, along with reasonable overhead and profit on the Work not executed.

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.*

*This document has been approved and endorsed by The Associated General Contractors of America.*



©1997 AIA®
AIA DOCUMENT A201 - 1997
GENERAL CONDITIONS OF THE
CONTRACT FOR CONSTRUCTION

The American Institute of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

»Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, © 1997 by The American Institute of Architects, Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violate to legal prosecution. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced in accordance with your license without violation until the date of expiration as noted below. User Document: 03001 la grulla ementary 97a201.aia -- 12/29/2003. AIA License Number 1012323, which expires on 10/7/2004.

44

DESCON 000314

# Exhibit A

# Rio Grande City Consolidated Independent School District

## New Elementary School in La Grulla

January 2, 2004

## TABLE OF CONTENTS

**VOLUME I**
**ARCHITECTURAL, STRUCTURAL**

**ARCHITECTURAL, STRUCTURAL**

**INTRODUCTORY INFORMATION, BIDDING, AND CONTRACTING REQUIREMENTS**

| | |
|---|---|
| 00007 | SEALS PAGE |
| 00100 | BID SOLICITATION |
| 00120 | RANKING CRITERIA |
| 00200 | INSTRUCTIONS TO BIDDERS |
| 00410 | COMPETITVE SEAL PROPOSAL FORM |
| 00500 | AGREEMENT |
| 00700 | GENERAL CONDITIONS |
| 00800 | SUPPLEMENTARY CONDITIONS |
| 00820 | WAGE RATES |
| 00910 | ADDENDUM NUMBER 1 |

**DIVISION 1 - GENERAL REQUIREMENTS**

| | |
|---|---|
| 01100 | SUMMARY |
| 01200 | PRICE AND PAYMENT PROCEDURES |
| 01210 | ALLOWANCES |
| 01300 | ADMINISTRATIVE REQUIREMENTS |
| 01325 | CONSTRUCTION PROGRESS SCHEDULE |
| 01500 | TEMPORARY FACILITIES AND CONTROLS |
| 01510 | TEMPORARY UTILITIES |
| 01525 | FIELD OFFICES |
| 01575 | TEMPORARY EROSION AND SEDIMENTATION CONTROL |
| 01585 | PROJECT SIGNS |
| 01600 | PRODUCT REQUIREMENTS |
| 01732 | WASTE MANAGEMENT |
| 01780 | CLOSEOUT SUBMITTALS |

**DIVISION 2 - SITE CONSTRUCTION**

| | |
|---|---|
| 02200 | SITE PREPARATION |
| 02315 | EXCAVATION |
| 02316 | FILL AND BACKFILL |
| 02361 | SOIL TREATMENT FOR TERMITE CONTROL |
| 02620 | SUBDRAINAGE |

# Exhibit A

02834        MODULAR CONCRETE RETAINING WALLS

## DIVISION 3 - CONCRETE

03200        CONCRETE REINFORCEMENT
03300        CAST-IN-PLACE CONCRETE
03416        PRECAST CONCRETE HOLLOW CORE PLANKS

## DIVISION 4 - MASONRY

04065        MORTAR AND MASONRY GROUT
04720        ARCHITECTURAL CAST STONE
04810        UNIT MASONRY ASSEMBLIES

## DIVISION 5 - METALS

05120        STRUCTURAL STEEL
05210        STEEL JOISTS
05310        STEEL DECK
05510        METAL STAIRS
05511        METAL LADDERS
05520        HANDRAILS AND RAILING
05720        ORNAMENTAL RAILING SYSTEM
05810        EXPANSION JOINT COVER ASSEMBLIES

## DIVISION 6 - WOOD AND PLASTICS

06067        PLASTIC AND METAL SURFACING MATERIALS
06071        PRESSURE-TREATED WOOD PRODUCTS
06100        ROUGH CARPENTRY
06410        CUSTOM CABINETS

## DIVISION 7 - THERMAL AND MOISTURE PROTECTION

07132        SHEET WATERPROOFING SYSTEM FOUNDATION WALL
07140        FLUID-APPLIED WATERPROOFING
07190        WATER REPELLENTS
07212        BOARD AND BATT INSULATION
07240        EXTERIOR INSULATION AND FINISH SYSTEM
07530        COAL-TAR ELASTOMERIC ROOFING SYSTEM
07620        SHEET METAL FLASHING AND TRIM
07660        FLEXIBLE FLASHING
07724        ROOF HATCHES AND VENTS
07840        FIRESTOPPING
07900        JOINT SEALERS

## DIVISION 8 - DOORS AND WINDOWS

08110        STEEL DOORS AND FRAMES
08211        FLUSH WOOD DOORS
08330        COILING DOORS AND GRILLES
08410        METAL-FRAMED STOREFRONTS
08520        ALUMINUM WINDOWS
08620        UNIT SKYLIGHTS
08712        FINISH HARDWARE

# Exhibit A

08721       THRESHOLDS AND WEATHERSTRIPPING
08810       GLASS
08970       STRUCTURAL GLASS CURTAIN WALL

## DIVISION 9 - FINISHES

09110       NON-LOADBEARING WALL FRAMING
09206       METAL LATH
09210       GYPSUM PLASTER
09260       GYPSUM BOARD ASSEMBLIES
09300       TILE
09511       SUSPENDED ACOUSTICAL CEILINGS
09640       WOOD FLOORING
09650       RESILIENT FLOORING
09680       CARPET
09900       PAINTS AND COATINGS

## DIVISION 10 - SPECIALTIES

10100       VISUAL DISPLAY BOARDS
10171       SOLID PLASTIC TOILET COMPARTMENTS
10191       CUBICLE CURTAINS
10350       FLAGPOLES
10420       LETTERS & PLAQUES
10441       PLASTIC SIGNS
10500       LOCKERS
10523       FIRE EXTINGUISHERS, CABINETS AND ACCESSORIES
10530       PROTECTIVE COVERS
10700       EXTERIOR SUN CONTROL DEVICES
10800       TOILET, BATH, AND LAUNDRY ACCESSORIES

## DIVISION 11 - EQUIPMENT

11061       STAGE CURTAINS
11131       PROJECTION SCREENS
11400       FOOD SERVICE EQUIPMENT
11450       AUDIOVISUAL MOUNTING SYSTEMS

## DIVISION 12 - FURNISHINGS

12492       HORIZONTAL LOUVER BLINDS

## DIVISION 13 - SPECIAL CONSTRUCTION

## DIVISION 14 - CONVEYING SYSTEMS

14201       PASSENGER ELEVATORS

# Exhibit A

**VOLUME II**

**CIVIL, MECHANICAL, ELECTRICAL, PLUMBING**


**CIVIL**

**DIVISION 2 - SITE CONSTRUCTION**

| | |
|---|---|
| 02000 | SPECIAL PROJECT CONDITIONS |
| 02102 | CLEARING AND GRUBBING |
| 02221 | TRENCH EXCAVATION, BACKFILL AND COMPACTION |
| 02224 | PIPE BORING, DRILLING, AND JACKING |
| 02225 | UNCLASSIFIED STREET EXCAVATION |
| 02230 | EXCAVATION |
| 02240 | LIME STABILIZATION |
| 02435 | REINFORCED CONCRETE DRAINAGE PIPE |
| 02556 | WATER TRANSMISSION LINES AND/OR PRESSURE SEWER LINES |
| 02558 | WATER VALVES |
| 02570 | SANITARY SEWER |
| 02580 | STORM SEWER APPURTENANCES |
| 02601 | FLEXIBLE BASE |
| 02610 | PRIME COAT |
| 02612 | HOT MIX CONCRETE PAVEMENT |
| 02620 | TACK COAT |
| 02660 | CONCRETE CURB AND GUTTER AND VALLEY GUTTER |
| 02920 | TRENCH PROTECTION SYSTEM |

**DIVISION 3 - CONCRETE**

| | |
|---|---|
| 03300 | CAST-IN-PLACE CONCRETE |
| 03330 | REINFORCING STEEL |

**MECHANICAL ELECTRICAL PLUMBING**

**DIVISION 13 – SPECIAL CONSTRUCTION**

| | |
|---|---|
| 13851 | FIRE ALARM |

**DIVISION 15 - MECHANICAL**

| | |
|---|---|
| 15000 | MECHANICAL GENERAL REQUIREMENTS |
| 15050 | BASIC MECHANICAL MATERIALS AND METHODS |
| 15060 | HANGERS AND SUPPORTS |
| 15071 | MECHANICAL VIBRATION CONTROLS |
| 15075 | MECHANICAL IDENTIFICATION |
| 15081 | DUCT INSULATION |
| 15083 | PIPE INSULATION |
| 15110 | VALVES |
| 15121 | PIPE EXPANSION FITTINGS AND LOOPS |
| 15122 | METERS AND GAUGES |
| 15140 | DOMESTIC WATER PIPING |
| 15150 | SANITARY WASTE AND VENT PIPING |
| 15160 | STORM DRAINAGE PIPING |

# Exhibit A

| | |
|---|---|
| 15181 | HYDRONIC PIPING |
| 15185 | HYDRONIC PUMPS |
| 15189 | HVAC WATER TREATMENT |
| 15269 | VARIABLE FREQUENCY CONTROLLERS |
| 15410 | PLUMBING FIXTURES |
| 15412 | EMERGENCY PLUMBING FIXTURES |
| 15415 | DRINKING FOUNTAINS AND WATER COOLERS |
| 15430 | PLUMBING SPECIALTIES |
| 15441 | WATER DISTRIBUTION PUMPS |
| 15446 | SUMP PUMPS |
| 15485 | ELECTRIC, DOMESTIC WATER HEATERS |
| 15628 | RECIPROCATING WATER CHILLERS |
| 15725 | MODULAR AIR-HANDLING UNITS |
| 15763 | FAN-COIL UNITS |
| 15815 | METAL DUCTS |
| 15820 | DUCT ACCESSORIES |
| 15838 | POWER VENTILATORS |
| 15845 | AIR TERMINALS |
| 15855 | DIFFUSERS, REGISTERS, AND GRILLES |
| 15870 | COMMERCIAL KITCHEN HOODS |
| 15950 | FACILITY MANAGEMENT SYSTEM |
| 15990 | SYSTEM PREPARATION FOR TESTING, ADJUSTING AND BALANCING |
| 15991 | TESTING, ADJUSTING, AND BALANCING |

## DIVISION 16 - ELECTRICAL

| | |
|---|---|
| 16050 | BASIC ELECTRICAL MATERIALS AND METHODS |
| 16060 | GROUNDING AND BONDING |
| 16075 | ELECTRICAL IDENTIFICATION |
| 16120 | CONDUCTORS AND CABLES |
| 16130 | RACEWAYS AND BOXES |
| 16140 | WIRING DEVICES |
| 16145 | LIGHTING CONTROL DEVICES |
| 16410 | ENCLOSED SWITCHES AND CIRCUIT BREAKERS |
| 16441 | SWITCHBOARDS |
| 16442 | PANELBOARDS |
| 16461 | DRY-TYPE TRANSFORMER (600 V AND LESS) |
| 16491 | FUSES |
| 16511 | INTERIOR LIGHTING |
| 16521 | EXTERIOR LIGHTING |
| 16723 | SCHOOL INTERCOM AND PROGRAM EQUIPMENT |
| 16726 | CAFETERIA SOUND SYSTEM |

**END OF TABLE OF CONTENTS**

# Exhibit B

# Rio Grande City Consolidated Independent School District

## New Elementary School in La Grulla

January 2, 2004

## LIST OF DRAWINGS

| Sheet Number | Title | Date | Issue |
|---|---|---|---|
| **VOLUME 1** **STRUCTURAL, ARCHITECTURAL** | | | |
| **GENERAL INFORMATION** | | | |
| GI001 | COVER SHEET | 10.25.03 | |
| GI002 | CODE ANALYSIS AND LOCATION MAP | 10.25.03 | |
| **STRUCTURAL** | | | |
| SG001 | GENERAL NOTES | 10.25.03 | |
| SG002 | SPECIFICATIONS | 10.25.03 | |
| SG003 | SPECIFICATIONS | 10.25.03 | |
| SB100 | COMPOSITE LOWER LEVEL FOUNDATION PLAN | 10.25.03 | |
| SB101 | AREA A – LOWER LEVEL FOUNDATION PLAN | 10.25.03 | |
| SB102 | AREA B – LOWER LEVEL FOUNDATION PLAN | 10.25.03 | |
| SB103 | AREA C – LOWER LEVEL FOUNDATION PLAN | 10.25.03 | |
| SB104 | AREA D – LOWER LEVEL FOUNDATION PLAN | 10.25.03 | |
| SB105 | COMPOSITE UPPER LEVEL FOUNDATION PLAN | 10.25.03 | |
| SB106 | AREA A – UPPER LEVEL FOUNDATION PLAN | 10.25.03 | |
| SB107 | AREA B – UPPER LEVEL FOUNDATION PLAN | 10.25.03 | |
| SB501 | FOUNDATION DETAILS | 10.25.03 | |
| SF100 | COMPOSITE LOWER LEVEL FRAMING PLAN | 10.25.03 | |
| SF101 | AREA A – LOWER LEVEL FRAMING PLAN | 10.25.03 | |
| SF102 | AREA B – LOWER LEVEL FRAMING PLAN | 10.25.03 | |
| SF103 | AREA C – LOWER LEVEL FRAMING PLAN | 10.25.03 | |
| SF104 | AREA D – LOWER LEVEL FRAMING PLAN | 10.25.03 | |
| SF105 | COMPOSITE UPPER LEVEL FRAMING PLAN | 10.25.03 | |
| SF106 | AREA A – UPPER LEVEL FRAMING PLAN | 10.25.03 | |
| SF107 | AREA B – UPPER LEVEL FRAMING PLAN | 10.25.03 | |
| SF108 | AREA C – UPPER LEVEL FRAMING PLAN | 10.25.03 | |
| SF109 | AREA D – UPPER LEVEL FRAMING PLAN | 10.25.03 | |
| SF301 | STRUCTURAL WALL SECTIONS | 10.25.03 | |
| SF302 | STRUCTURAL WALL SECTIONS | 10.25.03 | |
| SF303 | STRUCTURAL STAIR SECTIONS AND DETAILS | 10.25.03 | |
| SF501 | FRAMING DETAILS | 10.25.03 | |
| SF502 | FRAMING DETAILS | 10.25.03 | |
| SF503 | TYPICAL MASONRY DETAILS | 10.25.03 | |
| **ARCHITECTURAL** | | | |
| AS101 | ARCHITECTURAL SITE PLAN | 10.25.03 | |
| AE101 | COMPOSITE LOWER LEVEL FLOOR PLAN | 10.25.03 | |
| AE102 | LOWER LEVEL FLOOR PLAN - AREA 'A' & 'B' | 10.25.03 | |
| AE103 | LOWER LEVEL FLOOR PLAN - AREA 'C' | 10.25.03 | |
| AE104 | LOWER LEVEL FLOOR PLAN - AREA 'D' | 10.25.03 | |
| AE105 | COMPOSITE UPPER LEVEL FLOOR PLAN | 10.25.03 | |

**FILED**
In the Office of the
Secretary of State of Texas

**JAN 2 4 2006**

**Corporations Section**

Certificate of Formation
for
Texas Descon, L.P.

The undersigned organizer files this Certificate of Formation and states:

1.      The filing entity being formed is a limited partnership. The name of the filing entity being formed is Texas Descon, L.P.

2.      The name and address of the general partner of the limited partnership and its address is 4S, L.L.C., 5801 N. 10th Street, Suite 500, McAllen, Texas 78504.

3.      The street address of the initial registered office of the filing entity and the name of the initial registered agent of the filing entity at the office is Michael D. Smith, 5801 N. 10th Street, Suite 500, McAllen, Texas 78504.

4.      The address of the principal office of the limited partnership where records are to be kept or made available under Section 153.551 of the Texas Business Organizations Code is 5801 N. 10th Street, Suite 500, McAllen, Texas 78504.

Signed subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument.

Dated: January 20, 2006.

4S, L.L.C.,
General Partner

By: _____
Michael D. Smith, President

**EXHIBIT**
**"B"**

| RIO GRANDE CITY CONSOLIDATED | § | IN THE DISTRICT COURT |
|---|---|---|
| INDEPENDENT SCHOOL DISTRICT, | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | 229TH JUDICIAL DISTRICT |
| | § | |
| DESCON CONSTRUCTION, L.P., | § | |
| DEFENDANTS. | § | STARR COUNTY, TEXAS |

## DEFENDANT DESCON CONSTRUCTION, L.P.'S SECOND AMENDED ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes DESCON CONSTRUCTION, L.P. ("DEFENDANT DESCON"), a Defendant herein, and files its Second Amended Answer and would show the Court as follows:

Defendant, Descon Construction, LP ("Defendant"), specially excepts to Plaintiff Rio Grande City Consolidated Independent School District's ("Plaintiff") Thirteenth Amended Original Petition—attached as Exhibit A—and asks the Court to order Plaintiff to replead and cure its pleading defects.

### Special Exceptions

1. Defendant specially excepts to Plaintiff's Thirteenth Amended Original Petition attached hereto because Plaintiff's pleading fails to plead the basis for which "all Descon entities and partners are vicariously, jointly and severally liable" and as such gives Descon no notice with respect to the allegations against it and why it may be vicariously, jointly or severally liable to the newly named parties.

2. Defendant specially excepts to Plaintiff's Thirteenth Amended Original Petition attached hereto because Plaintiff's pleading does not give fair notice of Plaintiff's claims against



Defendant by stating how J. Wayne Medlin aka/dba Descon Management, LLC, aka/dba Maco Management LLC, aka/dba Michael C. Smith aka/dba Descon 4S, LLC, aka/dba Descon LP, aka/dba Texas Descon LP each individually and dba and fka Descon Construction LP have privity of contract with plaintiff as such plaintiff is alleging that is pursuing a breach of contract claim against Descon Construction LP as well as multiple other parties who are non-signatories to the document that is the basis of the suit.

## I. GENERAL DENIAL

DEFENDANT DESCON generally denies the allegations contained within Plaintiff's Petition and demands strict proof thereof by a preponderance of the evidence, as required by Texas Rule of Civil Procedure 92.

## II. SPECIFIC/VERIFIED DENIAL

By way of further answer, should one be necessary, DEFENDANT DESCON specifically denies that all conditions precedent to Plaintiff's right to recovery have occurred and/or have been performed. Plaintiff failed to comply with the terms of the contract related to claim presentation and notice. Further, Plaintiff failed to follow the procedures for claims and damages.

By way of further answer, should one be necessary, DEFENDANT DESCON specifically denies that Descon is liable in the capacity in which it is being sued.

By way of further answer, should one be necessary, DEFENDANT DESCON specifically denies that Descon at anytime assigned, transferred, gifted, sold or otherwise conveyed the ownership or any interest in the contract between it and Plaintiff that is the subject matter of this lawsuit to any other individual, person or entity.

By way of further answer, should one be necessary, DEFENDANT DESCON specifically

denies that Texas Descon LP is a successor or assignee to the contract between Descon Construction LP and Rio Grande ISD that is the subject of this litigation.

By way of further answer, should one be necessary, DEFENDANT DESCON specifically denies Descon was an assumed name or trade name for Texas Descon L.P. f/k/a Descon Construction LP with respect to the construction contract entered into between the Descon and Plaintiff for the construction of the Project that is the subject matter of this litigation

By way of further answer, should one be necessary, DEFENDANT DESCON specifically Denies that anything other than Descon Construction LP is its proper for this lawsuit.

By way of further answer, should one be necessary, DEFENDANT DESCON specifically Denies that it made substitutions without the authority of the Owner's representative of any materials and failed to give a credit to Plaintiff for the cost difference. Further, Descon states that Plaintiff has waived this claim.

### III. AFFIRMATIVE DEFENSES

By way of further answer, DEFENDANT DESCON would show that it is not liable because Plaintiff's alleged damages, if any, were proximately caused by the acts and/or omissions of third parties over whom DEFENDANT DESCON had no control or right of control.

By way of further answer, DEFENDANT DESCON would show that Plaintiff failed to mitigate its damages.

By way of further answer, DEFENDANT DESCON would show that Plaintiff's claims are barred by the Economic Loss Rule.

By way of further answer, DEFENDANT DESCON would show that Plaintiff's claims are barred by limitations.

By way of further answer, DEFENDANT DESCON would show that Plaintiff claims are barred by the doctrine of laches.

By way of further answer, DEFENDANT DESCON would show that Plaintiff's damage claims are specifically barred by the parties' contract. Further, Descon would show that pursuant to the contract Plaintiff had a responsibility to provide Descon with plans and specifications that were free of defects and in compliance with all applicable codes and standards and that to the extent that Owner breached the contract by failing to provide Descon with plans and specifications in accordance with the parties' contract.

By way of further answer, DEFENDANT DESCON would show that Plaintiff's claims are waived pursuant to the parties' contract.

By way of further answer, DEFENDANT DESCON would show that Plaintiff is estopped from bringing its claims against DEFENDANT DESCON and has waived its rights, if any, to do so.

Pleading further, and in the alternative, DEFENDANT DESCON would show that the losses and damages of which Plaintiff complains were due to and caused by a failure on the part of Plaintiff to exercise that degree of care of an ordinary prudent owner and operator of its facility, under the same and similar circumstances, which failure proximately caused or contributed to cause any loss or damage sustained. Plaintiff was itself guilty of various acts, wrongs and omissions, each of which constitutes negligence and comparative responsibility, and each of which was the cause, in whole or in part, and alternatively, a proximate cause of the occurrence in question and the alleged damages.

Additionally, and in the alternative, DEFENDANT DESCON would show that the events in question were caused by a new, independent and intervening cause, not related to the conduct or products of DEFENDANT DESCON.

Pleading further, and in the alternative, to the extent Plaintiff is seeking to hold DEFENDANT DESCON liable for the negligence of a third party or parties, DEFENDANT DESCON would show that said third party or parties was/were an independent contractor. Furthermore, Descon would show that the damages it seeks are the responsibility of other parties pursuant to Article 9 and Article 11 of Descon's subcontracts with third-party defendants.

Pleading further, and in the alternative, DEFENDANT DESCON asserts that it is entitled to an offset under the single satisfaction rule.

Pleading further, and in the alternative, Plaintiff failed to satisfy all conditions precedent to DEFENDANT DESCON'S performance under the subject contract.

Pleading further, and in the alternative, Plaintiff's claims are barred, in whole or in part, by failure to comply with statutory prerequisites.

Pleading further, and in the alternative, DEFENDANT DESCON would show that it is entitled to a credit or offset equal to the amount of any and all sums which Plaintiff has received, or may hereafter receive, by way of settlement with any other person or party. DEFENDANT DESCON contends that it is entitled to a proportionate of negligence or other liability attributable to any settling tortfeasor.

Pleading further, and in the alternative, in the unlikely event that DEFENDANT DESCON is found liable to Plaintiff herein, then DEFENDANT DESCON would show that it is

entitled to recover all or a proportionate part of all sums adjudged against it from Co-Defendants in proportion to the percentage of fault if any attributable to the parties herein.

Pleading further, and in the alternative, DEFENDANT DESCON seeks contribution from any and all parties and/or responsible third parties, as it is entitled to under the common law and/or statutory law.

Pleading further, and in the alternative, DEFENDANT DESCON asserts the affirmative defense of betterment.

Pleading further, and in the alternative, DEFENDANT DESCON asserts that it had no reasonable opportunity to cure.

Pleading further, and in the alternative, DEFENDANT DESCON contends that it is entitled to a determination of the percentage of responsibility attributable to Plaintiff, Co-Defendants, and Third-Party Defendants. DEFENDANT DESCON specifically pleads and reserves the following rights as guaranteed by Chapter 33, Texas Civil Practice & Remedies Code:

a. The right to elect the application of credit toward any judgment which may be obtained in this case;

b. The right to determination by the trier of fact on the issues of the percentage of responsibility of each claimant, each defendant, each contributing person, each liable defendant and each settling person;

c. The right to a full reduction or limitation of any sums which may be recovered by the claimant; and

d. The right to contribution from any other person or entity found to be liable to the Plaintiff or Third-Party Plaintiff.

Pleading further, and in the alternative, DEFENDANT DESCON would show that the conduct of a person other than DEFENDANT DESCON and Plaintiff is the only (sole) proximate cause of the occurrence at issue.

Pleading further, and in the alternative, Plaintiff is not entitled to attorney's fees because it has no valid breach of contract claim against DEFENDANT DESCON. Further, Descon asserts that Plaintiff has not entitled to attorney fees against Descon under Chapter 38 of the Civil Practice and Remedies Code as Descon is a limited partnership and not the class of person's attorney fees are recoverable from as set forth in that statute.

Pleading further, DEFENDANT DESCON asserts that prejudgment interest, if any, as requested in Plaintiff's latest Petition is limited in accordance with Section 304.104, et *seq.* of the Texas Finance Code.

Pleading further, DEFENDANT DESCON asserts that if it is found liable for exemplary damages, which DEFENDANT DESCON specifically denies, those damages must be capped under the Texas Damages Act and the Due process Clauses of the United States.

Pleading further, and only to the extent such should become necessary, DEFENDANT DESCON hereby invokes the non-economic damages cap under Section 74.301 of the Texas Civil Practice and Remedies Code.

Pleading further, and only to the extent such should become necessary, DEFENDANT DESCON hereby invokes the damages cap under Section 74.303 of the Texas Civil Practice and Remedies Code.

Pleading further, and only to the extent such should become necessary, DEFENDANT DESCON hereby invokes the punitive damages cap under Section 41.008 of the Texas Civil Practice and Remedies Code.

Pleading further, and only to the extent such should become necessary, DEFENDANT DESCON asserts that no pre-judgment interest may be assessed or recovered on any amount of punitive damages under Section 41.007 of the Texas Civil Practice and Remedies Code.

Pleading further, and only to the extent such should become necessary, DEFENDANT DESCON asserts that Plaintiff has no evidence to supports its claims against DEFENDANT DESCON and has no right to recover from DEFENDANT DESCON.

Pleading further, and only to the extent such should become necessary, DEFENDANT DESCON asserts that neither Plaintiff nor any other party has any right to recover against DEFENDANT DESCON.

Pleading further, Descon asserts the affirmative defense of the Prevention Doctrine.

WHEREFORE, PREMISES CONSIDERED, DEFENDANT DESCON prays that, upon final trial, the Court enter a take-nothing judgment against Plaintiff and in favor of DEFENDANT DESCON and for such other and further relief to which DEFENDANT DESCON may be justly entitled.

Respectfully submitted,

COKINOS, BOSIEN & YOUNG
10999 IH-10 West, Suite 800
San Antonio, Texas 78230
210-293-8700
210-293-8733 (Fax Number)


By: ___/s/ Stephanie O'Rourke_____
Stephanie O'Rourke
State Bar No. 15310800
sorourke@cbylaw.com
Stanley W. Curry, Jr.
State Bar No. 05274000
scurry@cbylaw.com
Robert M. Smith
State Bar No.18677400
rmsmith@cbylaw.com
Gabriel S. Head
State Bar No. 24055642
ghead@cbylaw.com

ATTORNEYS FOR DEFENDANT
DESCON CONSTRUCTION, L.P.


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing *Defendant Descon Construction, L.P.'s Second Amended Answer* has been e-filed, e-served and sent via email pursuant to the parties' agreement on this the 28th day of April, 2015, to:

*Attorneys for Plaintiff, Rio Grande City ISD*
Norman Jolly
Michael B. Jolly
Law Office of Norman Jolly
405 Main, Suite 1000
Houston, Texas 77002
Email: normanjollypc@sbcglobal.net
mikejolly@aol.com
lawjp@earthlink.net
ericjarvis@rocketmail.com
twentysixpoint2@me.com
medina_nancy@sbcglobal.net

*Attorneys for Plaintiff, Rio Grande City ISD*
Martie Garcia Vela
100 West 5th Street
Rio Grande City, Texas 78582
Email: martie.garcia@gmail.com

*Attorneys for Defendant ERO International,*
*L.L.P.*
John R. Griffith
Griffith Law Group
801 E. Fern Avenue, Suite 170
McAllen, Texas 78501
Email:   jrg@rgvfirm.com
       gh@rgvfirm.com

*Attorneys for Third-Party Defendant, AAS*
*Consulting, Inc. d/b/a Advance Air Systems*
Douglas M. Walla
Andrew M. Williams & Associates
5909 West Loop South, Suite 550
Bellaire, Texas 77401
Email:   doug@amwlawfirm.com
       admin2@amwlawfirm.com
       admin1@amwlawfirm.com

*Attorneys for Third-Party Defendant Faires*
*Plumbing Co., Inc.*
David J. Dunn
Dunn, Weathered, Coffey, Rivera & Kasperitis,
P.C.
611 S. Upper Broadway
Corpus Christi, Texas 78401
Email:   Dunndj@swbell.net
       vanesa@dwcrk.net
       kellycreel@swbell.net

*Attorneys for Third-Party Defendant C & M*
*Contracting, Inc.*
David C. Garza
Liliana Elizondo
Garza & Garza, L.L.P.
680 East St. Charles, Suite 300
P.O. Box 2025
Brownsville, Texas, 78250
Email:   dgarza@garzaandgarza.com
       lelizondo@garzaandgarza.com

*Attorneys for Defendants Halff Associates, Inc. and*
*Menton J. Murray, III, P.E.*
Grant Gealy
Mills Shirley, L.L.P.
3 Riverway, Suite 100
Houston, Texas 77058
Email:   ggealy@millsshirley.com
       psutton@millsshirley.com

*Attorneys for Third-Party Defendant C.A. Ray & Son*
*Painting Contractors, Inc.*
Marc E. Villarreal
R. Kyle Hinkle
Hinkle & Villarreal, P.C.
719 S. Shoreline Blvd., Suite 300
Corpus Christi, Texas 78401
Email:   mvillarreal@southtxdefense.com
       rkhinkle@southtxdefense.com
       afrees@southtxdefense.com

*Attorneys for Third-Party Defendant Limon Masonry,*
*Inc.:*
Brian C. Lopez
Brittany C. Cooperrider
Engvall & Lopez, L.L.P.
1811 Bering, Suite 210
Houston, Texas 77057
Email:   blopez@eltexaslaw.com
       bcooperrider@eltexaslaw.com
       mmufti@eltexaslaw.com

*Attorneys for Third-Party Defendant RGV-R&R*
*Construction Services, L.L.C.:*
David W. Medack
James P. Davis
Heard & Medack, P.C.
9494 Southwest Freeway, Suite 700
Houston, Texas 77074
Email:   dmedack@heardmedackpc.com
       jdavis@heardmedackpc.com
       MLoonahm@heardmedackpc.com
       CHernandez@heardmedackpc.com

*Attorneys for Third-Party Defendant Daniel Vasquez, Individually and d/b/a Twin City Glass*
John A. Guerra
Louis A. Gross
Brock Person Guerra Reyna, P.C.
17339 Redland Road
San Antonio, Texas 78247-2304
Email:  jguerra@bpgrlaw.com
         lgross@bpgrlaw.com
         cvaldez@bpgrlaw.com
         cmahoney@bpgrlaw.com
         laniol@bpgrlaw.com

*Attorneys for Third-Party Defendant Zarate Suspended Ceiling, Inc.*
Michael G. Dunnahoo
Rymer, Moore, Jackson & Echols, P.C.
2801 Post Oak Blvd., Suite 250
Houston, Texas 77056
Email:  mdunnahoo@rmjelaw.com
         lkelly@rmjelaw.com

*Attorneys for Third-Party Defendant Perez Consulting Engineers*
Gregory N. Ziegler
Dean Siotos
Macdonald Devin, P.C.
3800 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270-2130
Email:  GZiegler@MacdonaldDevin.com
         dsiotos@macdonalddevin.com
         mwhite@macdonalddevin.com
         LHolsomback@macdonalddevin.com
         DPainter@macdonalddevin.com

*Attorneys for Third-Party Defendant Zarate Suspended Ceiling, Inc.:*
John A. Guerra
Louis A. Gross
Brock Person Guerra Reyna, P.C.
17339 Redland Road
San Antonio, Texas 78247-2304
Email:  jguerra@bpgrlaw.com
         lgross@bpgrlaw.com
         cvaldez@bpgrlaw.com
         cmahoney@bpgrlaw.com
         laniol@bpgrlaw.com

*Attorneys for Third-Party Defendant D&J Site Construction, Inc.*
David J. Dunn
Dunn, Weathered, Coffey, Rivera & Kasperitis, P.C.
611 S. Upper Broadway
Corpus Christi, Texas 78401
Email:  Dunndj@swbell.net
         vanesa@dwcrk.net
         kellycreel@swbell.net

*Attorneys for Third-Party Defendant KBM Air Conditioning, Inc.*
Jason L. West
Brock Person Guerra Reyna, P.C.
17339 Redland Road
San Antonio, Texas 78247-2302
Email:  jwest@bpgrlaw.com


                              */s/ Stephanie O'Rourke*
                              Stephanie O'Rourke
                              Robert M. Smith
                              Gabriel S. Head

CAUSE NO. DC-14-46

| RIO GRANDE CITY CONSOLIDATED | § | IN THE DISTRICT COURT OF |
| INDEPENDENT SCHOOL DISTRICT | § | |
| | § | |
| VS. | § | STARR COUNTY, TEXAS |
| | § | |
| DESCON CONSTRUCTION, L.P., et al | § | |
| | § | 229th JUDICIAL DISTRICT |

## PLAINTIFF'S THIRTEENTH AMENDED ORIGINAL PETITION
### (GRULLA ELEMENTARY SCHOOL)

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff, Rio Grande City Consolidated Independent School District (RGCCISD), complaining of Defendants named below, and would respectfully show this Honorable Court as follows:

### I. Parties

Plaintiff is situated in Starr County, Texas and a political subdivision of the State of Texas.

Defendants, Descon Construction, L.P., and ERO International, L.P. agreed in their contracts with plaintiff to "bind themselves, their partners, successors, assigns and legal representatives to the other party (RGCCISD) to this agreement and to the partners, successors, assigns, and legal representatives of such other party in respect to covenants agreements and obligations contained in the Contract Documents", namely the construction agreement they had with plaintiff. Therefore, plaintiff alleges J. Wayne Medlin aka/dba Descon Management, L.L.C., aka/dba Maco Management, L.L.C., aka/dba Michael C. Smith aka/dba Descon 4S, L.L.C., aka/dba Descon Construction, L.P., aka/dba Texas Descon, L.P., each individually and dba and fka Descon Construction, L.P.,and Daniel Block and Eli R. Ochoa each individually and each aka/dba ERO International, L.L.P., and aka/dba ERO Architects have privity with plaintiff

1


EXHIBIT
A

and each named entity and person are doing business under assumed names and as defendants pursuant to Texas Rules of Civil Procedure 28 and may sue the partnerships, assumed or common names of defendants for purposes of plaintiff enforcing its substantive rights. Plaintiff would also show that on January 25, 2006 Descon Construction, L.P. was renamed to its successor company Texas Descon, L.P. under a licensing agreement to allegedly carry on the tradition and reputation of Descon Construction, L.P., The successor company Texas Descon, L.P. was founded by its partner Michael C. Smith.

No service is necessary on the substituted persons and or entities as the original commencement of suit was effective notice to each party pursuant to TRCP 28.

Defendants, Halff Associates, Inc., Menton J. Murray, II PE., have appeared and answered.

## II. Discovery Control Plan

Plaintiff requests that discovery be conducted pursuant to TRCP 190.3(1), Level 3, monetary relief over one million dollars and judgment for all other relief to which Plaintiff is entitled.

## III. Venue

Venue is mandatory in Starr County, Texas pursuant to CPRC sect. 15.011 because this action is for recovery of damages to real property. Venue is also proper in Starr County under the general venue rule CPRC sect. 15.002 because all or a substantial part of events or omissions giving rise to the claims against the Defendants occurred in Starr County.

## IV. Breach of Contract and Implied and
## Express Warranty of Good and Workmanlike Manner

2

This suit arises from the construction of the Grulla Elementary school which will be referred to herein as ("the Project").

Defendants, Descon, ERO, Block, Ochoa, Halff & Murray were involved in the design and/or construction of the Project. Plaintiff would show that Defendants' breach of contract and failure to design and construct the project in a good and workmanlike manner and breach of express warranties was a proximate cause of damages and losses to Plaintiff. Plaintiff would show Defendants breached their contracts by one or more acts or omissions identified in the previously attached certificates of merit which are incorporated herein and one or more of the following ways:

1. Failure to follow the plans and specifications;

2. Failure to implement and install specified components and materials;

3. Failure to properly sequence work with the various trades;

4. Failure to construct the project pursuant to minimal industry standards;

5. Substituting without authority materials and equipment with cheaper and lower quality materials and failing to properly credit Plaintiff for the cost difference;

6. Failure to comply with applicable codes and standards;

7. Failure to construct the project in a good and workmanlike manner; and

8. Breach of express warranties.

## V. Negligence of Halff/Murray

Plaintiff sues Halff and Murray for their negligence which is a proximate cause of Plaintiff's damages and losses.

3

## VI. Interest

Plaintiff sues for and is entitled to pre-judgment and post-judgment interest at the maximum rates allowed by law.

## VII. Damages

Plaintiff will show it has sustained actual and physical damages to tangible property in the past, and after completion of the Project, and will sustain in the future, for which the Defendants are liable should not exceed fifteen million dollars and includes, but is not limited to the following:

1. The difference between the value of the Defendant's workmanship, service and materials and the value actually received;

2. The reasonable and necessary cost to remediate, repair, or replace Defendants' defective workmanship;

3. Reasonable and necessary expenses incurred in attempting to mitigate Plaintiff's losses;

4. Reasonable and necessary costs to provide alternative facilities during the time period the subject building is unusable or impaired;

5. Damages to the Project caused by water intrusion;

6. Reasonable and necessary attorney's fees pursuant to CPRC Chapter 38, based upon the attorney hours worked, hourly rate, the Arthur Andersen and Johnson factors, plaintiff will move the Honorable Court to determine an appropriate lodestar adjustment by multiplying plaintiff's attorney's fees upward, for which presentment is hereby made; and

7.   Damage to other portions and contents of Plaintiff's building separate from the remedial cost damages caused by Defendants.

## VIII. Joint and Several Liability

Plaintiff would show that all Descon entities and partners are vicariously, jointly and severally liable to plaintiff.

PLAINTIFF DEMANDS A JURY TRIAL.

Respectfully submitted:

/s/ Norman Jolly

By:_____

Norman Jolly
TBA# 10856920
Michael B. Jolly
TBA# 10856910
James J. Parker
TBA# 15488020
Hamilton G. Rucker
TBA# 24067850
405 Main, Suite 1000
Houston, Texas 77002
Tel: (713) 237-8383
Fax: (713) 237-8385

Martie Garcia Vela
100 West 5th Street
Rio Grande City, TX 78582
Tel: (956) 488-8170
Fax: (956) 488-8129

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing was forwarded to all counsel of record, pursuant to the Rules of Procedure, on this the 27th day of April, 2015.

/s/ Norman Jolly

_____

Norman Jolly

5

# Tab 3

CAUSE NO. DC-14-46

| RIO GRANDE CITY CONSOLIDATED | § | IN THE DISTRICT COURT OF |
|---|---|---|
| INDEPENDENT SCHOOL DISTRICT | § | |
| | § | |
| VS. | § | STARR COUNTY, TEXAS |
| | § | |
| DESCON CONSTRUCTION, L.P., et al | § | |
| | § | 229th JUDICIAL DISTRICT |

**PLAINTIFF'S TRCP 28 MOTION TO SUBSTITUTE NAMED DEFENDANTS OMITTED BY DEFENDANTS' DISCLOSURES AND TO COMPEL DEFENDANTS TO PROPERLY IDENTIFY ANY OTHER PARTNERS**

TO THE HONORABLE JUDGE OF SAID COURT:

## I.
## BACKGROUND

Descon and ERO neglected to properly identify potential parties in their responses to request for disclosure and or other discovery. Descon filed its Motion to exclude recovery of plaintiff's attorney fees knowing that its representatives, successors and partners were potential parties against whom plaintiff has a right to collect its attorney fees.

Plaintiff moves the Court to include the presently known representatives, parties, successors and assigns as defendants herein in the plaintiff's petition.

## II.

Plaintiff would show that available public records and website marketing by Descon has identified numerous successors, parties and assigns, as follows:

"J. Wayne Medlin aka/dba Descon Management, L.L.C., aka/dba Maco Management, L.L.C., aka/dba Michael C. Smith aka/dba Descon 4S, L.L.C., aka/dba Descon Construction, L.P., aka/dba Texas Descon, L.P., each individually, dba and fka Descon Construction, L.P., and Daniel Block and Eli R. Ochoa each individually and each aka/dba ERO International, L.L.P., and aka/dba ERO

Architects"

Contracts between Plaintiff and Descon and ERO contain the same provision which creates privity between plaintiff and these individuals, companies and partnerships. The Texas Supreme Court in <u>RMA Partners v. Sibley</u> 111 S.W. 3d 46, (Texas 2003) held, whether a party is operating under an assumed name is a fact question for the trial Court. TRCP 28 does not mandate the procedural method by which party defendants names may be included or substituted. The name may be substituted by motion requesting same or by pleadings with the correct names or on a Courts own motion. When substituted the correctly named parties are included effectively when suit was originally commenced. *Id.* There is no requirement to locate or produce a parties assumed name certificate. <u>Broemer v. Houston Lawyer Referral Service,</u> 407 S.W. 3d 477 (Tex. App.-Hou.[14th Dist.] 2013, no pet).

No service is necessary on the substituted persons and or entities as the original commencement of suit was effective notice to each party pursuant to TRCP 28.

Additionally, in support of Plaintiff's request to correctly substitute and identify the named defendants, please see Descon website information and numerous Texas Secretary of State records attached hereto as Exhibit "A".

### III.

Plaintiff further moves for an Order requiring Defendants Descon and ERO to immediately identify any other unidentified representatives, individuals, partners, partnerships, successors and or assigns not heretofore properly identified in response to discovery request.

WHEREFORE, Plaintiff's move this Honorable Court to grant this motion.

Respectfully submitted:

By:  */s/ Norman Jolly*
_____

Norman Jolly
TBA# 10856920
Michael B. Jolly
TBA# 10856910
James Parker
TBA# 15488020
Hamilton Rucker
TBA# 24067850
405 Main, Suite 1000
Houston, Texas 77002
Tel: (713) 237-8383
Fax: (713) 237-8385

Martie Garcia Vela
100 West 5th Street
Rio Grande City, Texas 78582
Tel: (956) 488-8170
Fax: (956) 488-8129

ATTORNEYS FOR PLAINTIFF


## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing was forwarded to all counsel of record, pursuant to the Rules of Procedure, on this the 27th day of April, 2015.


*/s/ Norman Jolly*
_____

Norman Jolly

CAUSE NO. DC-14-46

| | | |
|---|---|---|
| RIO GRANDE CITY CONSOLIDATED INDEPENDENT SCHOOL DISTRICT | § § § | IN THE DISTRICT COURT OF |
| VS. | § § | STARR COUNTY, TEXAS |
| DESCON CONSTRUCTION, L.P., ET AL. | § § § | 229th JUDICIAL DISTRICT |

**ORDER GRANTING PLAINTIFF'S TRCP 28 MOTION TO SUBSTITUTE NAMED DEFENDANTS OMITTED BY DEFENDANTS IN DISCLOSURES AND COMPEL DEFENDANTS TO PROPERLY IDENTIFY ANY OTHER PARTIES**

On This day came on to be heard Plaintiff's TRCP 28 Motion to Substitute Named Defendants Omitted by Defendants in Disclosures and Motion to Compel Defendants to properly Identify any Other Parties, and after considering the Motions and evidence on file, the Court is of the opinion that the motions should be granted.

It is therefore, ORDERED, ADJUDGED, and DECREED that Plaintiff's TRCP 28 Motion to Substitute Named Defendants Omitted by Defendants in Responses to Request for Disclosure is GRANTED.

FURTHER, it is ORDERED, ADJUDGED, and DECREED that Plaintiff's Motion to Compel Defendants to properly Identify any Other Parties is GRANTED.

SIGNED this the _____ day of _____, 2015.

_____
Judge Presiding

cc:
Norman Jolly, 405 Main Street, Suite 1000, Houston, TX 77002; fax: 713-237-8385
Eric Jarvis, 5804 N. 23rd Street, McAllen, TX 78504; fax: 956-687-4001
Martie Garcia Vela, 100 West 5th Street, Rio Grande City, TX 78582; fax: 956-488-8129
Stephanie O'Rourke, 10999 IH-10 West, Suite 800, San Antonio, TX 78230; fax: 210-293-8733
R. Kyle Hinkle, 719 S. Shoreline Blvd., Suite 300, Corpus Christi, TX 78401; fax: 361-883-0612
Douglas M. Walla, 5909 West Loop South, Suite 550, Bellaire, TX 77401; fax: 713-839-1302
Brian C. Lopez, 1811 Bering Drive, Suite 210, Houston, TX 77057; fax: 713-787-0070

David J. Dunn, 611 S. Upper Broadway, Corpus Christi, TX 78401; fax: 361-883-1599
David W. Medack, 9494 Southwest Frwy, Suite 700, Houston, TX 77074; fax: 713-772-6495
John A. Guerra, 17339 Redland Rd., San Antonio, TX 78247; fax: 210-979-7810
Michael G. Dunnahoo, 2801 Post Oak Blvd., Suite 250, Houston, TX 77056; fax: 713-626-1558
John R. Griffith, 801 E. Fern Avenue, Suite 170, McAllen, TX 78501; fax: 956-971-9451
Grant Gealy, 3 Riverway, Suite 100, Houston, TX 77056; fax: 713-225-0844
David C. Garza, 680 East St. Charles, Suite 300, Brownsville, TX 78522; fax: 956-542-7403

CAUSE NO. DC-14-46

| RIO GRANDE CITY CONSOLIDATED | § | IN THE DISTRICT COURT OF |
| INDEPENDENT SCHOOL DISTRICT | § | |
| | § | |
| VS. | § | STARR COUNTY, TEXAS |
| | § | |
| | § | |
| DESCON CONSTRUCTION, L.P., ET AL. | § | |
| | § | 229th JUDICIAL DISTRICT |

## FIAT

Regarding Plaintiff's Rule 28 Motion to Substitute Named Defendants Omitted by Defendants in Disclosures and Motion to Compel Defendants to Properly Identify any Other Parties pending in the above cause, the Court hereby schedules a hearing for _____, 2015 at _____ a.m.

Signed this _____ day of _____, 2015.

_____
Judge Presiding

cc:
Norman Jolly, 405 Main Street, Suite 1000, Houston, TX 77002; fax: 713-237-8385
Eric Jarvis, 5804 N. 23rd Street, McAllen, TX 78504; fax: 956-687-4001
Martie Garcia Vela, 100 West 5th Street, Rio Grande City, TX 78582; fax: 956-488-8129
Stephanie O'Rourke, 10999 IH-10 West, Suite 800, San Antonio, TX 78230; fax: 210-293-8733
R. Kyle Hinkle, 719 S. Shoreline Blvd., Suite 300, Corpus Christi, TX 78401; fax: 361-883-0612
Douglas M. Walla, 5909 West Loop South, Suite 550, Bellaire, TX 77401; fax: 713-839-1302
Brian C. Lopez, 1811 Bering Drive, Suite 210, Houston, TX 77057; fax: 713-787-0070
David J. Dunn, 611 S. Upper Broadway, Corpus Christi, TX 78401; fax: 361-883-1599
David W. Medack, 9494 Southwest Frwy, Suite 700, Houston, TX 77074; fax: 713-772-6495
John A. Guerra, 17339 Redland Rd., San Antonio, TX 78247; fax: 210-979-7810
Michael G. Dunnahoo, 2801 Post Oak Blvd., Suite 250, Houston, TX 77056; fax: 713-626-1558
John R. Griffith, 801 E. Fern Avenue, Suite 170, McAllen, TX 78501; fax: 956-971-9451
Grant Gealy, 3 Riverway, Suite 100, Houston, TX 77056; fax: 713-225-0844
David C. Garza, 680 East St. Charles, Suite 300, Brownsville, TX 78522; fax: 956-542-7403



Contact Texas Descon at 956.682.1225    Prolog Sign-In

## ABOUT US

## History

Descon Construction incorporated in July of 1975 then restructured its corporate status to a limited partnership on July 31, 2000. On January 25, 2006 Descon Construction was renamed to its successor company, Texas Descon, L.P. under a licensing agreement to carry on the tradition and reputation of Descon Construction, L.P. The successor company, Texas Descon, L.P., was founded by Michael D. Smith.

Texas Descon, L.P. is a South Texas company with offices in McAllen and San Antonio. Texas Descon, L.P. provides competitive, high quality construction services to clients throughout South Texas and nationwide.

As a construction management and general contracting firm, Texas Descon, L.P. is proud of its accomplishments in the planning, design and construction phases of our commercial, educational, institutional, retail and industrial projects.

## Michael D. Smith, President

Michael D. Smith has over twenty seven years of experience in the construction field. Michael has experience in the entire construction phase including supervising all of the subcontractors and their activities, daily coordination of project implementation, monitoring progress according to plans and specifications, and overseeing the closeout of a project.

Michael has the experience and capability to start a job from bid process and take it through to final completion. Michael has worked on all types of construction projects ranging from commercial and industrial to healthcare, educational, off-shore drilling platforms and detention facilities.

Michael is involved in overseeing the construction phase of multiple projects while still assisting in the estimating, bid process, submittals, change proposals, RFIs and ensuring our project manager's and superintendent's needs are met in the field.

Contact us today to see how Texas Descon, L.P. can assist you on your next project.

© 2015 MPC Studios Inc. Website Design and Website Development



EXHIBIT

A

# ?ERFORMANCE BOND

**(McGregor Act - Public Works)**

Bond No. __46BCSAQ4875__

*KNOW ALL BY THESE PRESENTS,* That, we, __Descon Construction, L.P.__

P.O. Box 3547, McAllen, Texas 78502

(hereinafter called the Principal), as Principal, and  Hartford Fire Insurance Company

_____ , a corporation organized and existing under the laws of the State of   Connecticut _____ , with its principal office in  Hartford _____ , Connecticut _____ , and authorized and admitted to do business in the State of Texas and licensed by the State of Texas to execute bonds (hereinafter called the Surety), as Surety, are held and firmly bound unto _____

Rio Grande City Consolidated Independent School District

(hereinafter called the Obligee) in the amount of  Seven Million Eight Hundred Eighty Five Thousand and 00/100----($7,885,000.00)

Dollars, for the payment whereof, the said Principal and Surety bind themselves, and their heirs, administrators, executors, successor and assigns, jointly and severally, firmly by these presents.

**WHEREAS,** the Principal has entered into a certain written contract with the Obligee, dated the ____Second____ day of ____January____ , _2004_ to wit:

Construction of New Elementary School - La Grulla, Texas

which contract is hereby referred to and made a part hereof as fully and to the same extent as if copied at length herein.

**NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH,** that if the said Principal shall faithfully perform the work in accordance with the plans, specifications and contract documents, then this obligation shall be void; otherwise to remain in full force and effect.

**PROVIDED, HOWEVER,** that this bond is executed pursuant to the provisions of Chapter 2253 of the Texas Government Code, and all liabilities on this bond shall be determined in accordance with the provisions of said Article to the same extent as if it were copied at length herein.

**IN WITNESS WHEREOF,** the said Principal and Surety have signed and sealed this instrument this ____Second____ day of ____January____ , _2004_ .

Witness:

_____
(If Individual or Firm)

Attest:

_____
(If Corporation)

_____
Tammy A. Wibracht, Witness

Descon Construction, L.P. _____ (Seal)
                                     Principal

By: _____ (Seal)
V.P., Descon Management, L.L.C., G.P.

_____ (Seal)

Hartford Fire Insurance Company _____ (Seal)
                                     Surety

By: _____ (Seal)
Paul Friddle                   Attorney-in-Fact

S-2169/GEEF 10/99

**PAYMENT BOND**
(McGregor Act - Public Works)
Texas

Bond  46BCSAQ4875

KNOW ALL BY THESE PRESENTS, That, we,  Descon Construction, L.P.

Post Office Box 3547, McAllen, Texas 78502
(hereinafter called the Principal), as Principal, and  Hartford Fire Insurance Company , a corporation organized and existing under the laws of the State of  Connecticut , with its principal office in the City of Hartford , Connecticut , and authorized and admitted to do business in the State of Texas and licensed by the State of Texas to execute bonds (hereinafter called the Surety), as Surety, are held and firmly bound unto  Rio Grande City Consolidated Independent School District

(hereinafter called the Obligee) in the amount of  Seven Million Eight Hundred Eighty Five Thousand and 00/100--($7,885,000.00)

Dollars, for the payment whereof, the said Principal and Surety bind themselves, and their heirs, administrators, executors, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, the Principal has entered into a certain written contract with the Obligee, dated the  Second  day of  January  2004 , to wit:
Construction of New Elementary School - La Grulla, Texas

which contract is hereby referred to and made a part hereof as fully and to the same extent as if copied at length herein.

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, that if the said Principal shall pay all claimants supplying labor and material to him/her or a sub-contractor in the prosecution of the work provided for in said contract, then this obligation shall be void; otherwise to remain in full force and effect.

PROVIDED, HOWEVER, that this bond is executed pursuant to the provisions of Chapter 2253 of the Texas Government Code, and all liabilities on this bond shall be determined in accordance with the provisions of said Article to the same extent as if it were copied at length herein.

IN WITNESS WHEREOF, the said Principal and Surety have signed and sealed this instrument this  Second  day of  January  2004 .

Descon Construction, L.P.

_____ V.P. (Seal)
V.P., Descon Management, L.L.C., G.P.                    Principal

Hartford Fire Insurance Company _____ (Seal)

By_____ (Seal)
Paul Friddle                                      Attorney-in-Fact

S-2170/GEEF 10/99



# STATE OF TEXAS
## OFFICE OF THE SECRETARY OF STATE
## CORPORATIONS SECTION

### Maintenance Correction Memorandum to Entity Record

| | |
|---|---|
| Entity Name: | Descon Construction, L.P. |
| Entity File Numbers: | 13763510 |
| Entity Status: | In existence     Name Status:    In Use |
| Action Requested: | Correction to the filing history to include Certificate of Reinstatement originally received December 30, 2009 |
| Date Requested: | July 15, 2013 |
| Action Requested By: | Lori Castro, Data Management |

**Basis:** This memorandum is prepared for the purpose of evidencing a correction to the filing history of the above-referenced entity. The Comptroller of Public Accounts called to inquire into the status of the entity. When reviewing the filing history for this entity, it was determined that the periodic report listed in the history tree with a file date of October 31, 2012 was incorrectly accepted without a Certificate of Reinstatement. The Certificate of Reinstate had been recevied along with the Periodic Report but was rejected stating that we did not need a reinstatement when filing a periodic report. Since Descon was cancelled due to a voluntary cancellation and not an involuntary cancellation the reinstatement is a requirement. The system will be updated to include the reinstatement with a file date of October 31, 2012, the date it was originally received by the Secretary of State.

**Actions to be taken:**
1. Add Certificate of Reinstatement with file date 10/31/2012.
2. Index a copy of this memo to the file with a file date of 7/15/2013.

| | | |
|---|---|---|
| Entity Status: | ☒ No change | ☐ Yes, change to: |
| Name Status: | ☒ No change | ☐ Yes, change to: |

**Form 605**
(revised 1/06)

Return in Duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
FAX: 512/463-5709

**Filing Fee: $40**



**Articles of Dissolution
Pursuant to Article 6.07
Texas Limited Liability
Company Act**

This space reserved for office use.

FILED
In the Office of the
Secretary of State of Texas

DEC 3 0 2009

Corporations Section

1. The name of the limited liability company is as set forth below:

Descon Management, LLC

The filing number issued by the secretary of state is:   07072487

2. The name and address of each of its managers, if any, is:

| NAME | ADDRESS (include city and state/country) |
|------|------------------------------------------|
| J. Wayne Medlin | 5801 North 10th St, Suite 600, McAllen, TX 78504 |
|  |  |
|  |  |

**You must check either option A, B, or C in Items 3 and 4.**

3. A ☐ All debts, obligations, and liabilities of the limited liability company have been paid, discharged, or adequate provision has been made therefor.

   B ☐ The limited liability company's property and assets were not sufficient to satisfy and discharge all its debts, liabilities, and obligations. All property and assets have been applied so far as they would go to the payment thereof in a just and equitable manner and no property or assets remained available for distribution among its members.
   **OR**
   C ☒ The limited liability company has not acquired any debts, obligations, or liabilities.

4. A ☐ All remaining property and assets of the limited liability company have been distributed among its members in accordance with their respective rights and interests.

   B ☐ No property remained for distribution to members after applying it as far as it would go to the just and equitable payment of the debts, liabilities, and obligations of the limited liability company.
   **OR**
   C ☒ The limited liability company has not acquired any property or assets and therefore distributions to members were not required.

3

**You must check either option A or B of item 5 and provide a date of adoption.**

5. A ☐ The company has no members, has not received any capital, and has not otherwise commenced business. In accordance with Section G, Article 2.23, a majority of the initial managers named in the articles of organization adopted a resolution to dissolve on: _____

OR

B ☒ The limited liability company elected to dissolve by action of its members. A resolution to dissolve was adopted by its members in accordance with Section D , Article 2.23 of the Act, or as otherwise provided in the articles of organization or the regulations on:   11/30/2009

## Effectiveness of Filing

☐ The document is to be effective when the document is filed by the secretary of state.

OR

☒ This document will become effective at a later date, which is not more than ninety (90) days from the date of its filing by the secretary of state. The delayed effective date is:   12/31/2009

## Execution

The undersigned authorized managers or members of the limited liability company sign this document subject to the penalties imposed by law for the submission of a false or fraudulent document.

__12/29/2009__
Date

J. Wayne Medlin, President
Signature of Authorized Manager/Member

4

5. The name of the entity's registered agent and the address of the entity's registered office are as follows: (Select and complete either A or B and complete C)

☐ A. The registered agent is an organization (cannot be the entity seeking reinstatement) by the name of:

OR

☑ B. The registered agent is an individual resident of the state whose name is set forth below:

| J. Wayne | | Medlin | |
|---|---|---|---|
| *First Name* | *M.I.* | *Last Name* | *Suffix* |

C. The business address of the registered agent and the registered office address is:

| 5801 N. 10th Street, *Ste. 600* | McAllen | TX | 78504 |
|---|---|---|---|
| *Street Address* | *City* | *State* | *Zip Code* |

The street address of the registered office as stated in this instrument is the same as the registered agent's business address.


## Additional Documentation or Filings

☑ Comptroller of Public Accounts Tax Clearance Letter (Required, unless entity is a nonprofit corporation.)
☐ Amendment to Certificate of Formation or Registration (Required if entity name is no longer available.)
☐ Other _____

*(A certificate of reinstatement may be conditioned on the submission of additional filings. See Instructions.)*

## Execution

The undersigned affirms that the person designated as registered agent has consented to the appointment. The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized under the provisions of law governing the entity to execute the filing instrument.

Date: _____9/5/12_____

By: Descon Management, L.L.C., General Partner _____

_____
Signature of authorized person (see Instructions)

J. Wayne Medlin, President
_____
Printed or typed name of authorized person

**Form 811**
(Revised 05/11)

Submit in duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
512 463-5555
FAX: 512 463-5709
Filing Fee: See instructions



**Certificate of Reinstatement**

This space reserved for office use.

**FILED**
In the Office of the
Secretary of State of Texas

OCT 31 2012

**Corporations Section**

1. The name of the entity is:

Descon Construction, L.P.

The entity is a foreign entity that was required to obtain its registration under a name that differs from the legal name stated above. The name under which the entity is registered is:

The file number issued to the filing entity by the secretary of state is: __00137635-10__

2. The jurisdiction of organization of the entity is: __Texas__
   <span style="font-size:smaller">(state or country)</span>

The entity was organized or obtained its certificate of registration on: __07/28/2000__
   <span style="font-size:smaller">mm/dd/yyyy</span>

3. The effective date of the entity's termination or revocation is: __12/31/2009__
   <span style="font-size:smaller">mm/dd/yyyy</span>

4. The condition giving rise to the termination of the entity's existence or the revocation of its registration is described below. The entity requests reinstatement under the following code provision:
   (Select the appropriate box below. Do not check more than one box.)

**4A. Reinstatement of a Texas Entity Following a Voluntary Termination (3 year limit)**
☑ The domestic filing entity requests reinstatement under section 11.202 of the BOC following the filing of a certificate of termination. The undersigned certifies that the conditions for reinstatement of the entity's certificate of formation are met and that the reinstatement of the filing entity has been approved in the manner provided by the Texas Business Organizations Code.

**4B. Reinstatement of a Texas Entity Following an Involuntary Termination**
☐ The domestic filing entity requests reinstatement of its certificate of formation after the involuntary termination of its existence by the secretary of state pursuant to subchapter F of chapter 11 of the Code. The entity has corrected the circumstances giving rise to its involuntary termination and has taken any other action required for its reinstatement, including the payment of any fees, interest, or penalties. The undersigned certifies that the reinstatement of the filing entity has been approved in the manner required by the Texas Business Organizations Code.

**4C. Reinstatement Following Revocation of Registration of a Foreign Entity (3 year limit)**
☐ The foreign filing entity requests the reinstatement of its certificate of registration after its revocation by the secretary of state pursuant to subchapter C of chapter 9 of the BOC. The entity has corrected the circumstances giving rise to its revocation and has taken any other action required for its reinstatement, including the payment of any fees, interest, or penalties.

# Texas Franchise Tax Public Information Report

05-102
(Rev.9-11/30)
■ Tcode 13196 Franchise

To be filed by Corporations, Limited Liability Companies (LLC) and Financial Institutions
**This report MUST be signed and filed to satisfy franchise tax requirements**

| ■ Taxpayer number | ■ Report year | *You have certain rights* under Chapter 552 and 559, Government Code, |
|---|---|---|
| 3 2 0 0 2 6 5 1 5 6 3 | 2 0 1 4 | *to review, request, and correct information we have on file about you.* Contact us at (800) 252-1381 or (512) 463-4600. |

| Taxpayer name | **DESCON MANAGEMENT, LLC** | |
|---|---|---|
| Mailing address | **PO BOX 3547** | Secretary of State (SOS) file number or Comptroller file number |
| City **MCALLEN** | State **TX** | ZIP Code **78502** Plus 4 |
| | | **0707248722** |

● Blacken circle if there are currently no changes from previous year; if no information is displayed, complete the applicable information in Sections A, B and C.

| Principal office |
|---|
| Principal place of business |

*Please sign below!*

Officer, director and manager information is reported as of the date a Public Information Report is completed. The information is updated annually as part of the franchise tax report. There is no requirement or procedure for supplementing the information as officers, directors, or managers change throughout the year.

3200265156314

**SECTION A** Name, title and mailing address of each officer, director or manager.

| Name | Title | Director | Term expiration | m m d d y y |
|---|---|---|---|---|
| **MICHAEL C SMITH** | **VICE PRESI** | ○ YES | | |
| Mailing address **PO BOX 3547** | City **MCALLEN** | State **TX** | ZIP Code **78502** | |
| **J WAYNE MEDLIN** | **PRESIDENT** | ○ YES | Term expiration | |
| Mailing address **PO BOX 3547** | City **MCALLEN** | State **TX** | ZIP Code **78502** | |
| **MICHAEL C SMITH** | **SECRETARY** | ○ YES | Term expiration | |
| Mailing address **PO BOX 3547** | City **MCALLEN** | State **TX** | ZIP Code **78502** | |

**SECTION B** Enter the information required for each corporation or LLC, if any, in which this entity owns an interest of 10 percent or more.

| Name of owned (subsidiary) corporation or limited liability company | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|
| Name of owned (subsidiary) corporation or limited liability company | State of formation | Texas SOS file number, if any | Percentage of ownership |

**SECTION C** Enter the information required for each corporation or LLC, if any, that owns an interest of 10 percent or more in this entity or limited liability company.

| Name of owned (parent) corporation or limited liability company | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|

| Registered agent and registered office currently on file. *(see instructions if you need to make changes)* | ○ | Blacken circle if you need forms to change the registered agent or registered office information. |
|---|---|---|
| Agent: **J WAYNE MEDLIN** | | |
| Office: **5801 N 10TH ST., SUITE 600** | City **MCALLEN** | State **TX** ZIP Code **78504** |

The above information is required by Section 171.203 of the Tax Code for each corporation or limited liability company that files a Texas Franchise Tax Report. Use additional sheets for Sections A, B, and C, if necessary. The information will be available for public inspection.

I declare that the information in this document and any attachments is true and correct to the best of my knowledge and belief, as of the date below, and that a copy of this report has been mailed to each person named in this report who is an officer, director or manager and who is not currently employed by this, or a related, corporation or limited liability company.

| sign here ▶ **Anetia M Smith** | Title **Electronic** | Date **05-13-2014** | Area code and phone number **( 956 ) 380 - 4030** |
|---|---|---|---|

## Texas Comptroller Official Use Only

| VE/DE | ○ | PIR IND | ○ |
|---|---|---|---|

# Texas Franchise Tax Public Information Report

05-102
(Rev.9-11/30)
■ Tcode 13196 Franchise

To be filed by Corporations, Limited Liability Companies (LLC) and Financial Institutions
**This report MUST be signed and filed to satisfy franchise tax requirements**

| ■ Taxpayer number | ■ Report year | *You have certain rights under Chapter 552 and 559, Government Code, to review, request, and correct information we have on file about you. Contact us at (800) 252-1381 or (512) 463-4600.* |
|---|---|---|
| 3 2 0 0 2 6 5 1 5 6 3 | 2 0 1 4 | |

| Taxpayer name | DESCON MANAGEMENT, LLC | | | |
|---|---|---|---|---|
| Mailing address | PO BOX 3547 | | | Secretary of State (SOS) file number or Comptroller file number |
| City MCALLEN | State TX | ZIP Code 78502 | Plus 4 | 0707248722 |

● Blacken circle if there are currently no changes from previous year; if no information is displayed, complete the applicable information in Sections A, B and C.

| Principal office |
|---|
| Principal place of business |

*Please sign below!*

Officer, director and manager information is reported as of the date a Public Information Report is completed. The information is updated annually as part of the franchise tax report. There is no requirement or procedure for supplementing the information as officers, directors, or managers change throughout the year.

3200265156314

**SECTION A** Name, title and mailing address of each officer, director or manager.

| Name | Title | Director | | Term expiration | m m d d y y |
|---|---|---|---|---|---|
| J WAYNE MEDLIN | TREASURER | ○ YES | | | |
| Mailing address PO BOX 3547 | City MCALLEN | State TX | | ZIP Code 78502 | |
| Name | Title | Director ○ YES | | Term expiration | m m d d y y |
| Mailing address | City | State | | ZIP Code | |
| Name | Title | Director ○ YES | | Term expiration | m m d d y y |
| Mailing address | City | State | | ZIP Code | |

**SECTION B** Enter the information required for each corporation or LLC, if any, in which this entity owns an interest of 10 percent or more.

| Name of owned (subsidiary) corporation or limited liability company | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|
| Name of owned (subsidiary) corporation or limited liability company | State of formation | Texas SOS file number, if any | Percentage of ownership |

**SECTION C** Enter the information required for each corporation or LLC, if any, that owns an interest of 10 percent or more in this entity or limited liability company.

| Name of owned (parent) corporation or limited liability company | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|

| Registered agent and registered office currently on file. *(see instructions if you need to make changes)* | ○ Blacken circle if you need forms to change the registered agent or registered office information. |
|---|---|
| Agent: J WAYNE MEDLIN | |

| Office: 5801 N 10TH ST., SUITE 600 | City MCALLEN | State TX | ZIP Code 78504 |
|---|---|---|---|

The above information is required by Section 171.203 of the Tax Code for each corporation or limited liability company that files a Texas Franchise Tax Report. Use additional sheets for Sections A, B, and C, if necessary. The information will be available for public inspection.

I declare that the information in this document and any attachments is true and correct to the best of my knowledge and belief, as of the date below, and that a copy of this report has been mailed to each person named in this report who is an officer, director or manager and who is not currently employed by this, or a related, corporation or limited liability company.

| sign here ▸ Anetia M Smith | Title Electronic | Date 05-13-2014 | Area code and phone number ( 956 ) 380 - 4030 |
|---|---|---|---|

**Texas Comptroller Official Use Only**

| VE/DE ○ | PIR IND ○ |
|---|---|

| Form 811<br>(Revised 05/11)<br><br>Submit in duplicate to:<br>Secretary of State<br>P.O. Box 13697<br>Austin, TX 78711-3697<br>512 463-5555<br>FAX: 512 463-5709<br>**Filing Fee:** See instructions | <br><br>**Certificate of<br>Reinstatement** | This space reserved for office use.<br><br>F I L E D<br>In the Office of the<br>Secretary of State of Texas<br><br>SEP 07 2012<br><br>Corporations Section |
| --- | --- | --- |

1. The name of the entity is:

Descon Management, L.L.C.

The entity is a foreign entity that was required to obtain its registration under a name that differs from the legal name stated above. The name under which the entity is registered is:

The file number issued to the filing entity by the secretary of state is: 707248722

2. The jurisdiction of organization of the entity is:   Texas

(state or country)

The entity was organized or obtained its certificate of registration on: 07/26/2000

mm/dd/yyyy

3. The effective date of the entity's termination or revocation is: 12/31/2009

mm/dd/yyyy

4. The condition giving rise to the termination of the entity's existence or the revocation of its registration is described below. The entity requests reinstatement under the following code provision:

(Select the appropriate box below. <u>Do not check more than one box.</u>)

**4A.  Reinstatement of a Texas Entity Following a Voluntary Termination (3 year limit)**

☑  The domestic filing entity requests reinstatement under section 11.202 of the BOC following the filing of a certificate of termination. The undersigned certifies that the conditions for reinstatement of the entity's certificate of formation are met and that the reinstatement of the filing entity has been approved in the manner provided by the Texas Business Organizations Code.

**4B. Reinstatement of a Texas Entity Following an Involuntary Termination**

☐  The domestic filing entity requests reinstatement of its certificate of formation after the involuntary termination of its existence by the secretary of state pursuant to subchapter F of chapter 11 of the Code. The entity has corrected the circumstances giving rise to its involuntary termination and has taken any other action required for its reinstatement, including the payment of any fees, interest, or penalties. The undersigned certifies that the reinstatement of the filing entity has been approved in the manner required by the Texas Business Organizations Code.

**4C. Reinstatement Following Revocation of Registration of a Foreign Entity (3 year limit)**

☐  The foreign filing entity requests the reinstatement of its certificate of registration after its revocation by the secretary of state pursuant to subchapter C of chapter 9 of the BOC. The entity has corrected the circumstances giving rise to its revocation and has taken any other action required for its reinstatement, including the payment of any fees, interest, or penalties.

5. The name of the entity's registered agent and the address of the entity's registered office are as follows: (Select and complete either A or B and complete C)

☐ A. The registered agent is an organization (cannot be the entity seeking reinstatement) by the name of:

_____

OR

☑ B. The registered agent is an individual resident of the state whose name is set forth below:

| J. Wayne | | Medlin | |
|---|---|---|---|
| *First Name* | *M.I.* | *Last Name* | *Suffix* |

C. The business address of the registered agent and the registered office address is:

| 5801 N. 10th Street, Ste. 600 | McAllen | | TX | 78504 |
|---|---|---|---|---|
| *Street Address* | *City* | | *State* | *Zip Code* |

The street address of the registered office as stated in this instrument is the same as the registered agent's business address.

## Additional Documentation or Filings

☑ Comptroller of Public Accounts Tax Clearance Letter (Required, unless entity is a nonprofit corporation.)
☐ Amendment to Certificate of Formation or Registration (Required if entity name is no longer available.)
☐ Other _____

*(A certificate of reinstatement may be conditioned on the submission of additional filings. See instructions.)*

## Execution

The undersigned affirms that the person designated as registered agent has consented to the appointment. The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized under the provisions of law governing the entity to execute the filing instrument.

Date: 9/5/12

By: _____

_____
Signature of authorized person (see instructions)

J. Wayne Medlin, President
Printed or typed name of authorized person



August 27, 2012

DESCON MANAGEMENT, LLC
5801 N 10TH ST STE 600
MCALLEN TX 78504-2609

### TAX CLEARANCE LETTER FOR REINSTATEMENT*

To:     Texas Secretary of State
        Corporation Section

Re:     DESCON MANAGEMENT, LLC
        Taxpayer number:    32002651563
        File number:        0707248722

The referenced entity has met all franchise tax requirements and is eligible for reinstatement through 12/31/2012.

Jose Garza
2H11
Enforcement Division
956-687-9227

---

*The reinstatement must be filed with the Texas Secretary of State on or before the expiration date of this letter. After this date, additional franchise tax filing requirements must be met, and a new request for tax clearance must be submitted.*

*You can file for reinstatement online at www.sos.state.tx.us/corp/sosda/index.shtml. Forms and instructions for reinstatement are available at http://www.sos.state.tx.us/corp/forms_option.shtml or by calling 512-463-5582. This tax clearance letter must be attached to the reinstatement forms.*

Form 05-377 (Rev. 6-10/4)

**Form 811**

(Revised 05/11)

Submit in duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
512 463-5555
FAX: 512 463-5709
**Filing Fee: See instructions**



**Certificate of
Reinstatement**

This space reserved for office use.

F I L E D
In the Office of the
Secretary of State of Texas

SEP 0 7 2012

Corporations Section

1. The name of the entity is:

Descon Management, L.L.C.

The entity is a foreign entity that was required to obtain its registration under a name that differs from the legal name stated above. The name under which the entity is registered is:

The file number issued to the filing entity by the secretary of state is: 707248722

2. The jurisdiction of organization of the entity is: Texas
   *(state or country)*

The entity was organized or obtained its certificate of registration on: 07/26/2000
   *mm/dd/yyyy*

3. The effective date of the entity's termination or revocation is: 12/31/2009
   *mm/dd/yyyy*

4. The condition giving rise to the termination of the entity's existence or the revocation of its registration is described below. The entity requests reinstatement under the following code provision:
   (Select the appropriate box below. **Do not check more than one box.**)

**4A. Reinstatement of a Texas Entity Following a Voluntary Termination (3 year limit)**
☑ The domestic filing entity requests reinstatement under section 11.202 of the BOC following the filing of a certificate of termination. The undersigned certifies that the conditions for reinstatement of the entity's certificate of formation are met and that the reinstatement of the filing entity has been approved in the manner provided by the Texas Business Organizations Code.

**4B. Reinstatement of a Texas Entity Following an Involuntary Termination**
☐ The domestic filing entity requests reinstatement of its certificate of formation after the involuntary termination of its existence by the secretary of state pursuant to subchapter F of chapter 11 of the Code. The entity has corrected the circumstances giving rise to its involuntary termination and has taken any other action required for its reinstatement, including the payment of any fees, interest, or penalties. The undersigned certifies that the reinstatement of the filing entity has been approved in the manner required by the Texas Business Organizations Code.

**4C. Reinstatement Following Revocation of Registration of a Foreign Entity (3 year limit)**
☐ The foreign filing entity requests the reinstatement of its certificate of registration after its revocation by the secretary of state pursuant to subchapter C of chapter 9 of the BOC. The entity has corrected the circumstances giving rise to its revocation and has taken any other action required for its reinstatement, including the payment of any fees, interest, or penalties.

5. The name of the entity's registered agent and the address of the entity's registered office are as follows: (Select and complete either A or B and complete C)

☐ A. The registered agent is an organization (cannot be the entity seeking reinstatement) by the name of:

_____

OR

☑ B. The registered agent is an individual resident of the state whose name is set forth below:

| J. Wayne | | Medlin | |
|---|---|---|---|
| *First Name* | *M.I.* | *Last Name* | *Suffix* |

C. The business address of the registered agent and the registered office address is:

| 5801 N. 10th Street, *Ste. 600* | McAllen | TX | 78504 |
|---|---|---|---|
| *Street Address* | *City* | *State* | *Zip Code* |

The street address of the registered office as stated in this instrument is the same as the registered agent's business address.

## Additional Documentation or Filings

☑ Comptroller of Public Accounts Tax Clearance Letter (Required, unless entity is a nonprofit corporation.)
☐ Amendment to Certificate of Formation or Registration (Required if entity name is no longer available.)
☐ Other _____

*(A certificate of reinstatement may be conditioned on the submission of additional filings. See instructions.)*

## Execution

The undersigned affirms that the person designated as registered agent has consented to the appointment. The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized under the provisions of law governing the entity to execute the filing instrument.

Date: _____9/5/12_____

By: _____

_____
Signature of authorized person (see instructions)

J. Wayne Medlin, President
_____
Printed or typed name of authorized person

Form 811                                     5

# TEXAS COMPTROLLER *of* PUBLIC ACCOUNTS

WWW.WINDOW.STATE.TX.US



August 27, 2012

DESCON MANAGEMENT, LLC
5801 N 10TH ST STE 600
MCALLEN TX 78504-2609

TAX CLEARANCE LETTER FOR REINSTATEMENT*

To:   Texas Secretary of State
      Corporation Section

Re:   DESCON MANAGEMENT, LLC
      Taxpayer number:   32002651563
      File number:       0707248722

The referenced entity has met all franchise tax requirements and is eligible for reinstatement through 12/31/2012.

Jose Garza
2H11
Enforcement Division
956-687-9227

---

*The reinstatement must be filed with the Texas Secretary of State on or before the expiration date of this letter. After this date, additional franchise tax filing requirements must be met, and a new request for tax clearance must be submitted.*

*You can file for reinstatement online at www.sos.state.tx.us/corp/sosda/index.shtml. Forms and instructions for reinstatement are available at http://www.sos.state.tx.us/corp/forms_option.shtml or by calling 512-463-5582. This tax clearance letter must be attached to the reinstatement forms.*

Form 05-377 (Rev. 6-10/4)



August 27, 2012

DESCON CONSTRUCTION, L.P.
PO BOX 3547
MCALLEN TX 78502-3547

TAX CLEARANCE LETTER FOR REINSTATEMENT*

To:   Texas Secretary of State
      Corporation Section

Re:   DESCON CONSTRUCTION, L.P.
      Taxpayer number:   17418456756
      File number:       0013763510

The referenced entity has met all franchise tax requirements and is eligible for reinstatement through 12/31/2012.

Jose Garza
2H11
Enforcement Division
956-687-9227

*The reinstatement must be filed with the Texas Secretary of State on or before the expiration date of this letter. After this date, additional franchise tax filing requirements must be met, and a new request for tax clearance must be submitted.

You can file for reinstatement online at www.sos.state.tx.us/corp/sosda/index.shtml. Forms and instructions for reinstatement are available at http://www.sos.state.tx.us/corp/forms_option.shtml or by calling 512-463-5582. This tax clearance letter must be attached to the reinstatement forms.

Form 05-377 (Rev. 6-10/4)

| Form 804<br>(Revised 07/11) | <br>**Periodic Report**<br>**of a**<br>**Limited Partnership** | This space reserved for filing office use. |
|---|---|---|
| Submit in duplicate to:<br>Secretary of State<br>Reports Unit<br>P.O. Box 12028<br>Austin, TX 78711-2028<br>Phone: (512) 475-2705<br>FAX: (512) 463-1423<br>Dial: 7-1-1 for Relay Services<br>Filing Fee: See Instructions | | **F I L E D**<br>In the Office of the<br>Secretary of State of Texas<br>OCT 3 1 2012<br>**Corporations Section** |

**File Number:** 00137635-10

1. The name of the limited partnership is: Descon Construction, L.P.

2. It is organized under the laws of: (set forth state or foreign country) Texas

3. The name of the registered agent is:

☐ A. The registered agent is an organization (cannot be entity named above) by the name of:

OR

☑ B. The registered agent is an individual resident of the state whose name is:

| J. Wayne | | Medlin | |
|---|---|---|---|
| *First Name* | *MI* | *Last Name* | *Suffix* |

4. The registered office address, which is identical to the business address of the registered agent in Texas, is:
   *(use street or building address; see Instructions)*

| 5801 N. 10th Street, Suite 600 | McAllen | TX | 78504 |
|---|---|---|---|
| *Street Address* | *City* | *State* | *Zip Code* |

5. The address of the principal office in the United States where the records are to be kept or made available is:

| 5801 North 10th Street, Suite 600 | McAllen | TX | 78504 | USA |
|---|---|---|---|---|
| *Street or Mailing Address* | *City* | *State* | *Zip Code* | *Country* |

6. The names and addresses of all general partners of the limited partnership are:
   *(Address changes are allowed; additions or deletions of general partners, or a name change of an existing general partner require an amendment; see Instruction 6.)*

**NAME AND ADDRESS OF GENERAL PARTNER** (Enter the name of either an individual or an organization, but not both.)

IF INDIVIDUAL

| *First Name* | *MI* | *Last Name* | | *Suffix* |
|---|---|---|---|---|

OR

IF ORGANIZATION

Descon Management, L.L.C.

*Organization Name*

| 5801 North 10th Street, Suite 600 | McAllen | TX | 78504 | USA |
|---|---|---|---|---|
| *Street or Mailing Address* | *City* | *State* | *Zip Code* | *Country* |

RECEIVED<br>SECRETARY OF STATE<br>OCT 3 1 2012<br>CLK 51<br>AUSTIN, TEXAS

**NAME AND ADDRESS OF GENERAL PARTNER** (Enter the name of either an individual or an organization, but not both.)

IF INDIVIDUAL

| First Name | MI | Last Name | | Suffix |
|---|---|---|---|---|

OR

IF ORGANIZATION

Maco Management, L.L.C.

Organization Name

| 5801 North 10th Street, Suite 600 | McAllen | TX | 78504 | USA |
|---|---|---|---|---|
| Street or Mailing Address | City | State | Zip Code | Country |

---

**NAME AND ADDRESS OF GENERAL PARTNER** (Enter the name of either an individual or an organization, but not both.)

IF INDIVIDUAL

| First Name | MI | Last Name | | Suffix |
|---|---|---|---|---|

OR

IF ORGANIZATION

Organization Name

| Street or Mailing Address | City | State | Zip Code | Country |
|---|---|---|---|---|

**Execution:**

The undersigned affirms that the person designated as registered agent has consented to the appointment. The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized under the provisions of law governing the entity to execute the filing instrument.

Date: ___10/29/12___

_Jerry Wayne Medlin_
Signed on behalf of the limited partnership

J. Wayne Medlin, President, Descon Management, L.L.C., General P

By (general partner)



August 27, 2012


DESCON CONSTRUCTION, L.P.
PO BOX 3547
MCALLEN TX 78502-3547

TAX CLEARANCE LETTER FOR REINSTATEMENT*


To:   Texas Secretary of State
      Corporation Section

Re:   DESCON CONSTRUCTION, L.P.
      Taxpayer number:   17418456756
      File number:       0013763510

The referenced entity has met all franchise tax requirements and is eligible for reinstatement through 12/31/2012.


Jose Garza
2H11
Enforcement Division
956-687-9227


---

*The reinstatement must be filed with the Texas Secretary of State on or before the expiration date of this letter. After this date, additional franchise tax filing requirements must be met, and a new request for tax clearance must be submitted.*

*You can file for reinstatement online at www.sos.state.tx.us/corp/sosda/index.shtml. Forms and Instructions for reinstatement are available at http://www.sos.state.tx.us/corp/forms_option.shtml or by calling 512-463-5582. This tax clearance letter must be attached to the reinstatement forms.*


Form 05-377 (Rev. 6-10/4)

<table>
<tr><td>

**Form 607**
**(Revised 09/09)**

Return in duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
512 463-5555
FAX: 512/463-5709

**Filing Fee: See instructions**

</td><td>



**Certificate of Cancellation of a**
**Domestic or Foreign**
**Limited Partnership**

</td><td>

This space reserved for office use.

**FILED**
In the Office of the
Secretary of State of Texas

DEC 3 0 2009

**Corporations Section**

</td></tr>
</table>

1. The name of the partnership is:

Descon Construction, L.P.

2. The partnership was formed under the laws of:     Texas
                                              *State or territory*

3. The date of filing of its certificate of limited partnership or its registration is:   07/28/2000
                                                                           *mm/dd/yyyy*

The file number issued to the partnership by the secretary of state is:   00137635-10

4. The reason or reasons for filing the certificate of cancellation are set forth below: (See instructions.)

The partners are retiring and closing the business, and therefore, the partnership is no longer necessary.

☒    Attached hereto is a certificate from the comptroller of public accounts that all taxes under title 2, Tax Code, have been paid.

**Effectiveness of Filing** (Select either A, B, or C.)

A. ☐ This document becomes effective when filed by the secretary of state.

B. ☒ This document becomes effective at a later date, which is not more than ninety (90) days from the date of signing. The delayed effective date is:   12/31/2009

C. ☐ This document takes effect upon the occurrence of a future event or fact, other than the passage of time. The 90th day after the date of signing is: _____

The following event or fact will cause the document to take effect in the manner described below:

**Execution**

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized under the provisions of law governing the entity to execute the filing instrument.

Date:   12/29/2009

J. Wayne Medlin, President of Descon Management LLC, General Partner

_____
Signature of authorized person(s) See instructions.
Michael C. Smith, President of MACO Management LLC, General Partner

Form 607                                       3



December 10, 2009

DESCON CONSTRUCTION, L.P.
PO BOX 3547
MCALLEN TX 78502-3547

## CERTIFICATE OF ACCOUNT STATUS

THE STATE OF TEXAS
COUNTY OF TRAVIS

I, Susan Combs, Comptroller of Public Accounts of the State of Texas, DO HEREBY CERTIFY that according to the current records of this office

**DESCON CONSTRUCTION, L.P.**

has filed all required reports for taxes administered by the Comptroller under Title 2, Tax Code, and taxes reported due on those reports have been paid. This certificate must be filed with the Texas Secretary of State to legally end the entity's existence in Texas. This certificate is valid through December 31, 2009.

GIVEN UNDER MY HAND AND
SEAL OF OFFICE in the City of
Austin, this 10th day of
December, 2009 A.D.

Susan Combs
Texas Comptroller

Taxpayer number: 17418456756
File number: 0013763510

NOTE: Failure by Texas entities to legally end existence with the Texas Secretary of State on or before the expiration of this certificate, will result in additional franchise tax responsibilities. Texas entities not registered with the Texas Secretary of State and all out of state entities are responsible for franchise tax through the last date of business in this state.

Form 05-305 (Rev. 12-07/7)

FILED
in the Office of the
Secretary of State of Texas

JUL 28 2000

Corporations Section

## ARTICLES OF CONVERSION

Pursuant to the provisions of Article 5.17 of the Texas Business Corporation Act and section 2.15 of the Texas Revised Limited Partnership Act, the undersigned converting entity certifies the following articles of conversion adopted for the purpose of effecting a conversion in accordance with the provisions of the Texas Business Corporation Act and the Texas Revised Limited Partnership Act.

1.      A plan of conversion was approved and adopted in accordance with the provisions of Article 5.03 of the Texas Business Corporation Act providing for the conversion of Descon Construction, Inc., a corporation incorporated under the Texas Business Corporation Act, to Descon Construction, L.P., a Texas limited partnership.

2.      An executed plan of conversion is on file at the principal place of business of the converting entity at 5801 North 10th Street, Suite 600, McAllen, Texas 78504, and, from and after the conversion, an executed plan of conversion will be on file at the principal place of business of the converted entity at 5801 North 10th Street, Suite 600, McAllen, Texas 78504.

3.      A copy of the plan of conversion will be furnished by the converting entity (prior to the conversion) or by the converted entity (after the conversion) on written request and without cost to any shareholder or member of the converting entity or the converted entity.

4.      The approval of the plan of conversion was duly authorized by all action required by the laws under which Descon Construction, Inc. is incorporated and by its constituent documents. The number of outstanding shares of each class or series of stock of Descon Construction, Inc. entitled to vote, with other shares or as a class, on the plan of conversion are as follows:

| Number of Outstanding Shares | Class or Series | Number of Shares Entitled to Vote as a Class or Series |
|---|---|---|
| 3,000 | common | one class only; all common |

5.      The number of shares, not entitled to vote only as a class, voted for and against the plan of conversion, respectively, and, if the shares of any class or series are entitled to vote as a class, the number of shares of each such class or series voted for and against the plan of conversion, as follows:

| Total Voted For | Total Voted Against | Class or Series | Number of Shares Entitled to Vote as a Class or Series |
|---|---|---|---|
| 3,000 | 0 | common | [no such shares] |

6.      Two copies of the certificate of limited partnership of Descon Construction, L.P. which is to be created pursuant to the plan of conversion are being filed with the secretary of state with the articles of conversion.

7.      The conversion will become effective on July 31, 2000 at 11:59 p.m. in accordance with the provisions of article 10.03 of the Texas Business Corporation Act and section 2.12 of the Texas Revised Limited Partnership Act.

8.      Descon Construction, L.P., the converted entity, will be responsible for and obligated to pay any and all fees and franchise taxes of Descon Construction, Inc., the converting entity.

Dated: July 2b  2000.

Converting Entity:

Descon Construction, Inc.

By:     J. Wayne Medlin,
        President

Articles of Conversion - Page 2

## CERTIFICATE OF LIMITED PARTNERSHIP

This Certificate of Limited Partnership dated this _26th_ day of ___July___, 2000 to be effective at 11:59 p.m. on July 31, 2000, has been duly executed and is filed pursuant to (i) Sections 2.01 and 2.15 of the Texas Revised Limited Partnership Act (the "Act") to form a limited partnership under the Act and (ii) Section 5.17 of the Texas Business Corporation Act to convert a Texas corporation to a Texas limited partnership.

1.   The name of the limited partnership is _Descon Construction, L.P._

2.   The address of the registered office required to be maintained by section 1.06 of the Act is 5801 North 10th Street, Suite 600, McAllen, Texas 78504.

3.   The name and address of the registered agent for service of process required to be maintained by section 1.06 of the Act are:

J. Wayne Medlin
5801 North 10th Street, Suite 600, McAllen, Texas 78504.

4.   The address of the principal office in the United States where records are to be kept or made available under section 1.07 of the Act is 5801 North 10th Street, Suite 600, McAllen, Texas 78504.

5.   The name(s), the mailing address(es), and the street address(es) of the business(es)/residence(s) of the general partner(s) are:

Descon Management, LLC
5801 North 10th Street, Suite 600,
McAllen, Texas 78504;

and

MACO Management, LLC
5801 North 10th Street, Suite 600,
McAllen, Texas 78504.

6.   This limited partnership is being formed pursuant to a plan of conversion under Section 2.15 of the Act. The converting entity is Descon Construction, Inc., a corporation formed on July 23, 1975 under the Texas Business Corporation Act. The address of the converting entity is 5801 North 10th Street, Suite 600, McAllen, Texas 78504.

EXECUTED as of the date first written above.

GENERAL PARTNERS:

DESCON Management, LLC
General Partner

By: _____
J. Wayne Medlin,
President

And,

MACO Management, LLC
General Partner

By: _____
Michael C. Smith,
President

Certificate of Limited Partnership - Page 2

# TEXAS SECRETARY of STATE
# CARLOS H. CASCOS

UCC | Business Organizations | Trademarks | Notary | Account | Help/Fees | Briefcase | Logout

## BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY

| | | | |
|---|---|---|---|
| **Filing Number:** | 13763510 | **Entity Type:** | Domestic Limited Partnership (LP) |
| **Original Date of Filing:** | July 23, 1975 | **Entity Status:** | In existence |
| **Formation Date:** | N/A | | |
| **Tax ID:** | 17418456756 | **FEIN:** | |
| **Duration:** | Perpetual | | |

**Name:** DESCON CONSTRUCTION, L.P.

**Address:** 5801 NORTH 10TH STREET, SUITE 600
Mcallen, TX 78504 USA

| REGISTERED AGENT | FILING HISTORY | NAMES | MANAGEMENT | ASSUMED NAMES | ASSOCIATED ENTITIES |
|---|---|---|---|---|---|

| View Image | Document Number | Filing Type | Filing Date | Effective Date | Eff. Cond | Page Count |
|---|---|---|---|---|---|---|
| 📷 | 3498955 | Articles Of Conversion | July 28, 2000 | July 28, 2000 | No | 4 |
| 📷 | 80090670001 | Report Notice | January 21, 2005 | January 21, 2005 | No | 1 |
| 📷 | 83678020002 | Periodic Report | February 25, 2005 | February 25, 2005 | No | 1 |
| 📷 | 83645560001 | Notice of Forfeited Rights for Non-Filing of Periodic Report | February 28, 2005 | February 28, 2005 | No | 1 |
| 📷 | 279763090001 | Report Notice | October 20, 2009 | October 20, 2009 | No | 1 |
| 📷 | 285731100001 | Notice of Forfeited Rights for Non-Filing of Periodic Report | November 30, 2009 | November 30, 2009 | No | 1 |
| 📷 | 289374230003 | Cancellation of Certificate of Limited Partnership | December 30, 2009 | December 31, 2009 | No | 2 |
| 📷 | 450836550002 | Periodic Report | October 31, 2012 | October 31, 2012 | No | 3 |
| 📷 | 491232540002 | Reinstatement After Termination | October 31, 2012 | October 31, 2012 | No | 3 |
| 📷 | 491235580001 | Miscellaneous | July 15, 2013 | July 15, 2013 | No | 1 |

[ Order ]    [ Return to Search ]

Instructions:
- To place an order for additional information about a filing press the 'Order' button.

**Form 605**
(revised 1/06)

Return in Duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
FAX: 512/463-5709

**Filing Fee: $40**



**Articles of Dissolution
Pursuant to Article 6.07
Texas Limited Liability
Company Act**

This space reserved for office use.

**FILED
In the Office of the
Secretary of State of Texas
DEC 3 1 2009
Corporations Section**

1. The name of the limited liability company is as set forth below:

MACO Management, LLC

The filing number issued by the secretary of state is:     Texas

2. The name and address of each of its managers, if any, is:

| NAME | ADDRESS (include city and state/country) |
|---|---|
| Michael C. Smith | 5801 North 10ᵗʰ St, Suite 600, McAllen, TX 78504 |
| | |
| | |

**You must check either option A, B, or C in Items 3 and 4.**

3. A ☐ All debts, obligations, and liabilities of the limited liability company have been paid, discharged, or adequate provision has been made therefor.

  B ☐ The limited liability company's property and assets were not sufficient to satisfy and discharge all its debts, liabilities, and obligations. All property and assets have been applied so far as they would go to the payment thereof in a just and equitable manner and no property or assets remained available for distribution among its members.
  **OR**
  C ☒ The limited liability company has not acquired any debts, obligations, or liabilities.

4. A ☐ All remaining property and assets of the limited liability company have been distributed among its members in accordance with their respective rights and interests.

  B ☐ No property remained for distribution to members after applying it as far as it would go to the just and equitable payment of the debts, liabilities, and obligations of the limited liability company.
  **OR**
  C ☒ The limited liability company has not acquired any property or assets and therefore distributions to members were not required.

3

**You must check either option A or B of item 5 and provide a date of adoption.**

5. A ☐ The company has no members, has not received any capital, and has not otherwise commenced business. In accordance with Section G, Article 2.23, a majority of the initial managers named in the articles of organization adopted a resolution to dissolve on: _____

**OR**

B ☒ The limited liability company elected to dissolve by action of its members. A resolution to dissolve was adopted by its members in accordance with Section D , Article 2.23 of the Act, or as otherwise provided in the articles of organization or the regulations on:   11/30/2009

---

### Effectiveness of Filing

☐ The document is to be effective when the document is filed by the secretary of state.

**OR**

☒ This document will become effective at a later date, which is not more than ninety (90) days from the date of its filing by the secretary of state.  The delayed effective date is:   12/31/2009

---

### Execution

The undersigned authorized managers or members of the limited liability company sign this document subject to the penalties imposed by law for the submission of a false or fraudulent document.

12/29/2009
Date

Michael C. Smith, President
Signature of Authorized Manager/Member

4

# TEXAS SECRETARY of STATE
# CARLOS H. CASCOS

UCC | Business Organizations | Trademarks | Notary | Account | Help/Fees | Briefcase | Logout

### BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY

| | | | |
|---|---|---|---|
| **Filing Number:** | 13763510 | **Entity Type:** | Domestic Limited Partnership (LP) |
| **Original Date of Filing:** | July 23, 1975 | **Entity Status:** | In existence |
| **Formation Date:** | N/A | | |
| **Tax ID:** | 17418456756 | **FEIN:** | |
| **Duration:** | Perpetual | | |

**Name:** DESCON CONSTRUCTION, L.P.
**Address:** 5801 NORTH 10TH STREET, SUITE 600
Mcallen, TX 78504 USA

| REGISTERED AGENT | FILING HISTORY | NAMES | MANAGEMENT | ASSUMED NAMES | ASSOCIATED ENTITIES |
|---|---|---|---|---|---|

| Last Update | Name | Title | Address |
|---|---|---|---|
| | DESCON MANAGEMENT, LLC | General Partner | 5801 NORTH 10TH STREET, SUITE 600 Mcallen, TX 78504 USA |
| | MACO MANAGEMENT, LLC | General Partner | 5801 NORTH 10TH STREET, SUITE 600 Mcallen, TX 78504 USA |

Order     Return to Search

---

Instructions:
● To place an order for additional information about a filing press the 'Order' button.



Office of the Secretary of State
Corporations Section
P.O. Box 13697
Austin, Texas 78711-3697

FILED
In the Office of the
Secretary of State of Texas

NOV 2 9 2001

Corporations Section

# APPLICATION FOR
# REGISTERED LIMITED LIABILITY PARTNERSHIP

The named partnership hereby applies to become a registered limited liability partnership pursuant to section 3.08(b) of the Texas Revised Partnership Act.

1. The name of the partnership is ERO International L.L.P.
   (The name must include the words "registered limited liability partnership" or the abbreviation "L.L.P." as the last words or letters of its name.)

2. The federal tax identification number of the partnership is 76-0693918

3. The street address of its principal office in Texas is 200 South 10th, Suite 901, McAllen, Texas 78501

   and the address of its home state office if located outside of Texas is

4. The number of partners in the partnership at the date of application is (2)

5. The partnership engages in the business specified below.

   Architecture and Engineering

6. This application has been executed by a majority in interest of the partners or by one or more partners authorized by a majority in interest of the partners.

ERO International L.L.P.
Name of the partnership

By _____
ELI RENE OCHOA

in Texas is: _____

☐ The entity is not incorporated, organized or associated under the laws of Texas. The address of the principal place of business in this state is: _____

The office address of the entity is: _____

**Period of Duration**

☑ The period during which the assumed name will be used is 10 years from the date of filing with the secretary of state.
**OR**
☐ The period during which the assumed name will be used is _____ years from the date of filing with the secretary of state (not to exceed 10 years).
**OR**
☐ The assumed name will be used until _____ (not to exceed 10 years).
                                      *mm/dd/yyyy*

**County or Counties in which Assumed Name Used**

The county or counties where business or professional services are being or are to be conducted or rendered under the assumed name are:

☑ All counties

☐ All counties with the exception of the following counties: _____

☐ Only the following counties: _____

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument. If the undersigned is acting in the capacity of an attorney in fact for the entity, the undersigned certifies that the entity has duly authorized the undersigned in writing to execute this document.

Date: __11/24/08__

_____

Signature and title of authorized person(s) (see instructions)

Form 503                              5

**Form 503**
**(Revised 01/06)**

Return in duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
512 463-5555
FAX: 512 463-5709
**Filing Fee: $25**



**Assumed Name Certificate**

**FILED**
In the Office of the
Secretary of State of Texas

DEC 05 2008

Corporations Section

This space reserved for office use.

## Assumed Name

The assumed name under which the business or professional service is, or is to be, conducted or rendered is:  ERO Architects

## Entity Information

The name of the entity filing the assumed name is:

ERO International, LLP

State the name of the entity as currently shown in the records of the secretary of state or on its certificate of formation, if not filed with the secretary of state.

The filing entity is a: (Select the appropriate entity type below.)

☐ For-profit Corporation
☐ Nonprofit Corporation
☐ Cooperative Association
☐ Limited Liability Company
☒ Other    Limited Liability Partnership

☐ Professional Corporation
☐ Professional Limited Liability Company
☐ Professional Association
☐ Limited Partnership

Specify type of entity if there is no check box applicable.

The file number, if any, issued to the filing entity by the secretary of state is:  800031456

The state, country, or other jurisdiction of formation is:  Texas

The registered or similar office of the entity in the jurisdiction of formation is:

300 S. 8th St.
McAllen, TX 78501

☒ The entity is required to maintain a registered office and agent in Texas. The address of its registered office in Texas and the name of the registered agent at such address is:

2322 Warjebo Trail, Mission, TX 78572    Eli R. Ochoa

The address of the principal office of the entity (if not the same as the registered office) is:

300 S. 8th St., McAllen, TX 78501

☐ The entity is not required to maintain a registered office and agent in Texas. Its office address in

**RECEIVED**

DEC 05 2008

Form 503

4

# TEXAS SECRETARY of STATE
# CARLOS H. CASCOS

## BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY

| | | | |
|---|---|---|---|
| **Filing Number:** | 800603080 | **Entity Type:** | Domestic Limited Partnership (LP) |
| **Original Date of Filing:** | January 24, 2006 | **Entity Status:** | In existence |
| **Formation Date:** | N/A | | |
| **Tax ID:** | 32035246894 | **FEIN:** | |
| **Duration:** | Perpetual | | |

**Name:** Texas Descon, L.P.

**Address:** 5801 N. 10th St., Ste. 500
Mcallen, TX 78504 USA

| REGISTERED AGENT | FILING HISTORY | NAMES | MANAGEMENT | ASSUMED NAMES | ASSOCIATED ENTITIES |
|---|---|---|---|---|---|

| Last Update | Name | Title | Address |
|---|---|---|---|
| January 25, 2006 | Descon 4S, L.L.C. | General Partner | 5801 N. 10th St., Ste. 500 McAllen, TX 78504 USA |

Order    Return to Search

Instructions:
- To place an order for additional information about a filing press the 'Order' button.

# TEXAS SECRETARY of STATE
# CARLOS H. CASCOS

UCC | Business Organizations | Trademarks | Notary | Account | Help/Fees | Briefcase | Logout

### BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY

| | | | |
|---|---|---|---|
| **Filing Number:** | 800603080 | **Entity Type:** | Domestic Limited Partnership (LP) |
| **Original Date of Filing:** | January 24, 2006 | **Entity Status:** | In existence |
| **Formation Date:** | N/A | | |
| **Tax ID:** | 32035246894 | **FEIN:** | |
| **Duration:** | Perpetual | | |

**Name:** Texas Descon, L.P.
**Address:** 5801 N. 10th St., Ste. 500
Mcallen, TX 78504 USA

| REGISTERED AGENT | FILING HISTORY | NAMES | MANAGEMENT | ASSUMED NAMES | ASSOCIATED ENTITIES |
|---|---|---|---|---|---|

| Name | Address | | Inactive Date |
|---|---|---|---|
| Michael D. Smith | 5801 N. 10th St., Ste. 500 Mcallen, TX 78504 USA | | |

[ Order ]　[ Return to Search ]

---

Instructions:
- To place an order for additional information about a filing press the 'Order' button.

**FILED**
In the Office of the
Secretary of State of Texas

JAN 2 4 2006

**Corporations Section**

Certificate of Formation
for
Texas Descon, L.P.

The undersigned organizer files this Certificate of Formation and states:

1.     The filing entity being formed is a limited partnership. The name of the filing entity being formed is Texas Descon, L.P.

2.     The name and address of the general partner of the limited partnership and its address is 4S, L.L.C., 5801 N. 10th Street, Suite 500, McAllen, Texas 78504.        Descon

3.     The street address of the initial registered office of the filing entity and the name of the initial registered agent of the filing entity at the office is Michael D. Smith, 5801 N. 10th Street, Suite 500, McAllen, Texas 78504.

4.     The address of the principal office of the limited partnership where records are to be kept or made available under Section 153.551 of the Texas Business Organizations Code is 5801 N. 10th Street, Suite 500, McAllen, Texas 78504.

Signed subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument.

Dated: January 20, 2006.

Descon     4S, L.L.C.,
           General Partner

           By: _____
           Michael D. Smith, President

# TEXAS SECRETARY of STATE
# CARLOS H. CASCOS

UCC | Business Organizations | Trademarks | Notary | Account | Help/Fees | Briefcase | Logout

## BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY

| | | | |
|---|---|---|---|
| **Filing Number:** | 13763510 | **Entity Type:** | Domestic Limited Partnership (LP) |
| **Original Date of Filing:** | July 23, 1975 | **Entity Status:** | In existence |
| **Formation Date:** | N/A | | |
| **Tax ID:** | 17418456756 | **FEIN:** | |
| **Duration:** | Perpetual | | |

**Name:** DESCON CONSTRUCTION, L.P.

**Address:** 5801 NORTH 10TH STREET, SUITE 600
Mcallen, TX 78504 USA

| REGISTERED AGENT | FILING HISTORY | NAMES | MANAGEMENT | ASSUMED NAMES | ASSOCIATED ENTITIES |
|---|---|---|---|---|---|
| **Name** | **Address** | | | **Inactive Date** | |
| J. Wayne Medlin | 5801 NORTH 10TH STREET, SUITE 600 Mcallen, TX 78504 USA | | | | |

[ Order ]   [ Return to Search ]

Instructions:
⊛ To place an order for additional information about a filing press the 'Order' button.



December 10, 2009

DESCON MANAGEMENT, LLC
5801 N 10TH ST STE 600
MCALLEN TX 78504-2609

## CERTIFICATE OF ACCOUNT STATUS

THE STATE OF TEXAS
COUNTY OF TRAVIS

I, Susan Combs, Comptroller of Public Accounts of the State of Texas, DO
HEREBY CERTIFY that according to the current records of this office

**DESCON MANAGEMENT, LLC**

has filed all required reports for taxes administered by the Comptroller under
Title 2, Tax Code, and taxes reported due on those reports have been paid.
This certificate must be filed with the Texas Secretary of State to legally
end the entity's existence in Texas. This certificate is valid through
December 31, 2009 .

GIVEN UNDER MY HAND AND
SEAL OF OFFICE in the City of
Austin, this 10th day of
December, 2009 A.D.

Susan Combs
Texas Comptroller

Taxpayer number: 32002651563
File number: 0707248722

NOTE: Failure by Texas entities to legally end existence with the Texas Secretary of State on or before the expiration of this
certificate, will result in additional franchise tax responsibilities. Texas entities not registered with the Texas Secretary of State and
all out of state entities are responsible for franchise tax through the last date of business in this state.

Form 05-305 (Rev. 12-07/7)



December 30, 2009

MACO MANAGEMENT, LLC
5801 N 10TH ST STE 600
MCALLEN, TX 78504-2609

## CERTIFICATE OF ACCOUNT STATUS

THE STATE OF TEXAS
COUNTY OF TRAVIS

I, Susan Combs, Comptroller of Public Accounts of the State of Texas, DO HEREBY
CERTIFY that according to the records of this office

MACO MANAGEMENT, LLC

has filed all required reports for taxes administered by the Comptroller
under Title 2, Tax Code, and taxes reported due on those reports have been
paid. This certificate must be filed with the Texas Secretary of State to
legally end the entity's existence in Texas. This certificate is valid
through December 31, 2009.

GIVEN UNDER MY HAND AND
SEAL OF OFFICE in the City of
Austin, this 30th day of
December, 2009 A.D.

Susan Combs
Texas Comptroller

Taxpayer number: 32002636598
File number: 0707238522

NOTE: Failure by registered Texas entities to legally end existence with the Texas Secretary of State on or before the expiration of this
certificate will result in additional franchise tax responsibilities. Texas entities not registered with the Texas Secretary of State and
all out-of-state entities are responsible for franchise tax through the last date of business in this state.

Form 05-305 (Rev.12-07/16)

# Tab 4

CAUSE NO. DC-14-46

| RIO GRANDE CITY CONSOLIDATED | § | IN THE DISTRICT COURT OF |
| INDEPENDENT SCHOOL DISTRICT | § | |
| | § | |
| VS. | § | STARR COUNTY, TEXAS |
| | § | |
| DESCON CONSTRUCTION, L.P., et al | § | |
| | § | 229th JUDICIAL DISTRICT |

**PLAINTIFF'S FIRST AMENDED TRCP 28 MOTION TO SUBSTITUTE NAMED DEFENDANTS OMITTED BY DEFENDANTS' DISCLOSURES AND TO COMPEL DEFENDANTS TO PROPERLY IDENTIFY ANY OTHER PARTNERS**

TO THE HONORABLE JUDGE OF SAID COURT:

I.

Descon and ERO neglected to properly identify potential parties in their responses to request for disclosure and or other discovery. Descon filed its Motion to exclude recovery of plaintiff's attorney fees knowing that its representatives, successors and partners were potential parties against whom plaintiff has a right to collect its attorney fees.

Plaintiff moves the Court to substitute as Defendants the presently known partners, representatives, successors' and assigns as their assumed or common name Descon Construction and ERO Architects.

II.

There are two independent basis for the court to authorize substituting the correct names as Defendant's herein. First, Descon has been renamed, Descon has a successor and partners of the various Descon entities may be liable to Plaintiff for its attorney's fees. Second, the Descon and ERO contracts with Plaintiff created privity between Plaintiff and the partners, successors, assigns and representatives of Descon and ERO.

1

III.

"On Juanuary 25, 2006 **Descon Construction** was renamed Texas Descon, L.P. under a licensing agreement allegedly to carry on the tradition and reputation of Descon Construction, L.P.. The successor company, Texas Descon, L.P. was founded by Michael D. Smith". See Exhibit "A". In the Descon website materials, **"Descon Construction"** is the assumed or common name for both Texas Descon and Descon Construction, L.P..

The general partner of Descon in the Grulla performance and payment bonds was Descon Management, L.L.C., G.P. operated by its vice president Michael C. Smith. See Exhibit B.

J ("Jerry") Wayne Medlin dissolved Descon Management, L.L.C. December 2009 as its president. See Exhibit C.

Medlin Reinstated Descon Management, L.L.C. September 2012 as its president. See Exhibit D.

Medlin as president then reinstated Descon Construction, L.P. thru its general partner Descon Management, L.L.C. October 2012. See Exhibit E.

On October 2012, Descon Construction, L.P. filed a periodic report with the State indicating Descon Management, L.L.C. remained the general partner of Descon Construction, L.P.. See Exhibit F.

Smith & Medlin previously cancelled the existence of Descon Construction, L.P. December 2009 and indicated another partner Michael C. Smith of Maco Management, L.L.C. and Medlin of Descon Management, L.L.C., as General Partners. See Exhibit G.

Originally Descon Construction was an "Inc." but Smith & Medlin converted it to an "L.P." on July 2000. See Exhibit H.

2

The summary of Descon Construction various filings is reflected or Exhibit I. Smith & Medlin have been using the assumed or common name "Descon Construction" from 1975 thru 2014. For the majority of that time every single version of Descon Construction has had common owners, common use of the name Descon and the same offices at 5801 N. 10th, Suite 600, McAllen, Texas. See Exhibit J.

When Smith changed the name of Descon Construction, L.P. to Texas Descon, L.P. he did so thru its president and general partner Descon 4 S, L.L.C. which of course is at the same business location as all the other Descon names. Glaringly a typo in the Certificate of Formation has 4 hand written notes, "Descon" twice initialed by JM twice. ("Jerry Medlin") Smith & Medlin intend obviously that "Descon" is the common name used for their construction business. See Exhibit K.

The available public records and website marketing by Descon has identified numerous partners, successors, assigns and assumed or common names as follows:

*"J. Wayne Medlin aka/dba Descon Management, L.L.C., aka/dba Maco Management, L.L.C., aka/dba Michael C. Smith aka/dba Descon 4S, L.L.C., aka/dba Descon Construction, L.P., aka/dba Texas Descon, L.P., each individually, dba and fka Descon Construction, L.P. or commonly known as "Descon"."*

For these reasons each of the above named entities and persons are operating "Descon" as their assumed or common name and as such each of the above should be included as Defendants.

IV.

The second reason the Descon Defendant's and ERO partners should be included as correctly named Defendant's is because the contract for construction requires their inclusion.

3

The construction contracts that Plaintiff has with Descon and ERO contain the following provision:

> "The Owner and Contractor respectively bind themselves, their partners, successors, assigns and legal representatives to the other party hereto and to partners, successors, assigns and legal representatives of such other party in respect to covenants, agreements and obligations contained in the Contract Documents."

Contracts between Plaintiff, Descon and ERO contain the same provision which creates privity between plaintiff and the above named individuals, companies and partnerships.

The Texas Supreme Court in RMA Partners v. Sibley 111 S.W. 3d 46, (Texas 2003) held, whether a party is operating under an assumed name is a fact question for the trial Court. TRCP 28 does not mandate the procedural method by which party defendants names may be included or substituted. The name may be substituted by motion requesting same or by pleadings with the correct names or on a Courts own motion. When substituted the correctly named parties are included effectively when suit was originally commenced. *Id.* There is no requirement to locate or produce a parties assumed name certificate. Broemer v. Houston Lawyer Referral Service, 407 S.W. 3d 477 (Tex. App.-Hou.[14th Dist.] 2013, no pet).

No service is necessary on the substituted persons and or entities as the original commencement of suit was effective notice to each party pursuant to TRCP 28. The failure of Descon and ERO to properly disclose partners and successors as potential parties should not operate to prejudice Plaintiff from its substantive right to recover its attorney's fees.

4

## V.

Plaintiff further moves for an Order requiring Defendants Descon and ERO to immediately identify any other unidentified representatives, partners, successors and or assigns not heretofore properly identified in response to disclosures.

WHEREFORE, Plaintiff's move this Honorable Court to grant this motion.

Respectfully submitted:

*/s/ Norman Jolly*

By: _____

Norman Jolly
TBA# 10856920
Michael B. Jolly
TBA# 10856910
James Parker
TBA# 15488020
Hamilton Rucker
TBA# 24067850
405 Main, Suite 1000
Houston, Texas 77002
Tel:  (713) 237-8383
Fax:  (713) 237-8385

Martie Garcia Vela
100 West 5th Street
Rio Grande City, Texas  78582
Tel: (956) 488-8170
Fax: (956) 488-8129

Eric Jarvis
5804 N. 23rd Street
McAllen, Texas  78504
Tel: (956) 451-5247
Fax: (956) 687-4001

ATTORNEYS FOR PLAINTIFF

5

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing was forwarded to all counsel of record, pursuant to the Rules of Procedure, on this the 28 day of April, 2015.

*/s/ Norman Jolly*

_____

Norman Jolly

CAUSE NO. DC-14-46

| RIO GRANDE CITY CONSOLIDATED | § | IN THE DISTRICT COURT OF |
| INDEPENDENT SCHOOL DISTRICT | § | |
| | § | |
| VS. | § | STARR COUNTY, TEXAS |
| | § | |
| DESCON CONSTRUCTION, L.P., ET AL. | § | |
| | § | 229th JUDICIAL DISTRICT |

**PLAINTIFF'S FIRST AMENDED TRCP 28 MOTION TO SUBSTITUTE NAMED DEFENDANTS OMITTED BY DEFENDANTS' DISCLOSURES AND TO COMPEL DEFENDANTS TO PROPERLY IDENTIFY ANY OTHER PARTNERS**

On This day came on to be heard Plaintiff's First Amended TRCP 28 Motion to Substitute Named Defendants Omitted by Defendants' Disclosures and to Compel Defendants to Properly Identify Any Other Partners, and after considering the Motions and evidence on file, the Court is of the opinion that the motions should be granted.

It is therefore, ORDERED, ADJUDGED, and DECREED that Plaintiff's First Amended TRCP 28 Motion to Substitute Named Defendants Omitted by Defendants' Disclosures and to Compel Defendants to Properly Identify Any Other Partners is GRANTED.

FURTHER, it is ORDERED, ADJUDGED, and DECREED that Plaintiff's First Amended TRCP 28 Motion to Substitute Named Defendants Omitted by Defendants' Disclosures and to Compel Defendants to Properly Identify Any Other Partners is GRANTED.

SIGNED this the _____ day of _____, 2015.

_____
Judge Presiding

cc:
Norman Jolly, 405 Main Street, Suite 1000, Houston, TX 77002; fax: 713-237-8385
Eric Jarvis, 5804 N. 23rd Street, McAllen, TX 78504; fax: 956-687-4001
Martie Garcia Vela, 100 West 5th Street, Rio Grande City, TX 78582; fax: 956-488-8129
Stephanie O'Rourke, 10999 IH-10 West, Suite 800, San Antonio, TX 78230; fax: 210-293-8733
R. Kyle Hinkle, 719 S. Shoreline Blvd., Suite 300, Corpus Christi, TX 78401; fax: 361-883-0612
Douglas M. Walla, 5909 West Loop South, Suite 550, Bellaire, TX 77401; fax: 713-839-1302
Brian C. Lopez, 1811 Bering Drive, Suite 210, Houston, TX 77057; fax: 713-787-0070
David J. Dunn, 611 S. Upper Broadway, Corpus Christi, TX 78401; fax: 361-883-1599
David W. Medack, 9494 Southwest Frwy, Suite 700, Houston, TX 77074; fax: 713-772-6495
John A. Guerra, 17339 Redland Rd., San Antonio, TX 78247; fax: 210-979-7810
Michael G. Dunnahoo, 2801 Post Oak Blvd., Suite 250, Houston, TX 77056; fax: 713-626-1558
John R. Griffith, 801 E. Fern Avenue, Suite 170, McAllen, TX 78501; fax: 956-971-9451
Grant Gealy, 3 Riverway, Suite 100, Houston, TX 77056; fax: 713-225-0844
David C. Garza, 680 East St. Charles, Suite 300, Brownsville, TX 78522; fax: 956-542-7403
Greg Ziegler, 3800 Renaissance Tower, 1201 Elm St., Dallas, TX 75270; fax: 214-747-0942

CAUSE NO. DC-14-46

| | | |
|---|---|---|
| RIO GRANDE CITY CONSOLIDATED | § | IN THE DISTRICT COURT OF |
| INDEPENDENT SCHOOL DISTRICT | § | |
| | § | |
| VS. | § | STARR COUNTY, TEXAS |
| | § | |
| | § | |
| DESCON CONSTRUCTION, L.P., ET AL. | § | |
| | § | 229th JUDICIAL DISTRICT |

## FIAT

Regarding Plaintiff's First Amended TRCP 28 Motion to Substitute Named Defendants Omitted by Defendants' Disclosures and to Compel Defendants to Properly Identify Any Other Partners pending in the above cause, the Court hereby schedules a hearing for

_____, 2015 at _____ a.m.

Signed this _____ day of _____, 2015.

_____
Judge Presiding

cc:
Norman Jolly, 405 Main Street, Suite 1000, Houston, TX 77002; fax: 713-237-8385
Eric Jarvis, 5804 N. 23rd Street, McAllen, TX 78504; fax: 956-687-4001
Martie Garcia Vela, 100 West 5th Street, Rio Grande City, TX 78582; fax: 956-488-8129
Stephanie O'Rourke, 10999 IH-10 West, Suite 800, San Antonio, TX 78230; fax: 210-293-8733
R. Kyle Hinkle, 719 S. Shoreline Blvd., Suite 300, Corpus Christi, TX 78401; fax: 361-883-0612
Douglas M. Walla, 5909 West Loop South, Suite 550, Bellaire, TX 77401; fax: 713-839-1302
Brian C. Lopez, 1811 Bering Drive, Suite 210, Houston, TX 77057; fax: 713-787-0070
David J. Dunn, 611 S. Upper Broadway, Corpus Christi, TX 78401; fax: 361-883-1599
David W. Medack, 9494 Southwest Frwy, Suite 700, Houston, TX 77074; fax: 713-772-6495
John A. Guerra, 17339 Redland Rd., San Antonio, TX 78247; fax: 210-979-7810
Michael G. Dunnahoo, 2801 Post Oak Blvd., Suite 250, Houston, TX 77056; fax: 713-626-1558
John R. Griffith, 801 E. Fern Avenue, Suite 170, McAllen, TX 78501; fax: 956-971-9451
Grant Gealy, 3 Riverway, Suite 100, Houston, TX 77056; fax: 713-225-0844
David C. Garza, 680 East St. Charles, Suite 300, Brownsville, TX 78522; fax: 956-542-7403
Greg Ziegler, 3800 Renaissance Tower, 1201 Elm St., Dallas, TX 75270; fax: 214-747-0942



## History

Descon Construction incorporated in July of 1975 then restructured its corporate status to a limited partnership on July 31, 2000. On January 25, 2006 Descon Construction was renamed to its successor company, Texas Descon, L.P. under a licensing agreement to carry on the tradition and reputation of Descon Construction, L.P. The successor company, Texas Descon, L.P., was founded by Michael D. Smith.

Texas Descon, L.P. is a South Texas company with offices in McAllen and San Antonio. Texas Descon, L.P. provides competitive, high quality construction services to clients throughout South Texas and nationwide.

As a construction management and general contracting firm, Texas Descon, L.P. is proud of its accomplishments in the planning, design and construction phases of our commercial, educational, institutional, retail and industrial projects.

## Michael D. Smith, President

Michael D. Smith has over twenty seven years of experience in the construction field. Michael has experience in the entire construction phase including supervising all of the subcontractors and their activities, daily coordination of project implementation, monitoring progress according to plans and specifications, and overseeing the closeout of a project.

Michael has the experience and capability to start a job from bid process and take it through to final completion. Michael has worked on all types of construction projects ranging from commercial and industrial to healthcare, educational, off-shore drilling platforms and detention facilities.

Michael is involved in overseeing the construction phase of multiple projects while still assisting in the estimating, bid process, submittals, change proposals, RFIs and ensuring our project manager's and superintendent's needs are met in the field.

Contact us today to see how Texas Descon, L.P. can assist you on your next project.

© 2015 MPC Studios Inc. Website Design and Website Development



EXHIBIT

A

**ERFORMANCE BOND**

(McGregor Act - Public

Works)

Bond No. 46BCSAQ4875

KNOW ALL BY THESE PRESENTS, That, we, Descon Construction, L.P.

P.O. Box 3547, McAllen, Texas 78502

(hereinafter called the Principal), as Principal, and Hartford Fire Insurance Company

_____, a corporation organized and existing under the laws of

the State of Connecticut _____, with its principal office in Hartford _____,

Connecticut _____, and authorized and admitted to do business in the State of Texas and licensed by the

State of Texas to execute bonds (hereinafter called the Surety), as Surety, are held and firmly bound unto _____

Rio Grande City Consolidated Independent School District

(hereinafter called the Obligee) in the amount of Seven Million Eight Hundred Eighty Five Thousand and 00/100----($7,885,000.00)

Dollars, for the payment whereof, the said Principal and Surety bind themselves, and their heirs, administrators, executors, successor and assigns, jointly and severally, firmly by these presents.

WHEREAS, the Principal has entered into a certain written contract with the Obligee, dated the _____ Second

day of _____ January _____ , 2004 to wit:

Construction of New Elementary School - La Grulla, Texas

which contract is hereby referred to and made a part hereof as fully and to the same extent as if copied at length herein.

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, that if the said Principal shall faithfully perform the work in accordance with the plans, specifications and contract documents, then this obligation shall be void; otherwise to remain in full force and effect.

PROVIDED, HOWEVER, that this bond is executed pursuant to the provisions of Chapter 2253 of the Texas Government Code, and all liabilities on this bond shall be determined in accordance with the provisions of said Article to the same extent as if it were copied at length herein.

IN WITNESS WHEREOF, the said Principal and Surety have signed and sealed this instrument this _____ Second

day of _____ January _____ , 2004 .

Witness:

_____
(If Individual or Firm)

Attest:

_____

(If Corporation)

_____
Tammy A. Wibracht, Witness

Descon Construction, L.P. _____ (Seal)
                                                                Principal

By: _____ ___ (Seal)

V.P., Descon Management, L.L.C., G.P.

_____ (Seal)

Hartford Fire Insurance Company _____ (Seal)
                                                                Surety

By: _____ (Seal)
    Paul Friddle                          Attorney-in-Fact

S-2169/GEEF 10/99

**EXHIBIT**

**B**

**PAYMENT BOND**
(McGregor Act - Public Works)
Texas

Bond  46BCSAQ4875

KNOW ALL BY THESE PRESENTS, That, we,  Descon Construction, L.P.

Post Office Box 3547, McAllen, Texas 78502
(hereinafter called the Principal), as Principal, and  Hartford Fire Insurance Company , a corporation
organized and existing under the laws of the State of  Connecticut , with its principal office in the City of
Hartford , Connecticut , and authorized and admitted to do business in the State of Texas
and licensed by the State of Texas to execute bonds (hereinafter called the Surety), as Surety, are held and firmly bound
unto  Rio Grande City Consolidated Independent School District

(hereinafter called the Obligee) in the amount of  Seven Million Eight Hundred Eighty Five Thousand and 00/100--($7,885,000.00)

Dollars, for the payment whereof, the said Principal and Surety bind themselves, and their heirs, administrators, executors, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, the Principal has entered into a certain written contract with the Obligee, dated the   Second
day of   January   2004 , to wit:
Construction of New Elementary School - La Grulla, Texas

which contract is hereby referred to and made a part hereof as fully and to the same extent as if copied at length herein.

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, that if the said Principal shall pay all claimants supplying labor and material to him/her or a sub-contractor in the prosecution of the work provided for in said contract, then this obligation shall be void; otherwise to remain in full force and effect.

PROVIDED, HOWEVER, that this bond is executed pursuant to the provisions of Chapter 2253 of the Texas Government Code, and all liabilities on this bond shall be determined in accordance with the provisions of said Article to the same extent as if it were copied at length herein.

IN WITNESS WHEREOF, the said Principal and Surety have signed and sealed this instrument this   Second
day of   January   2004 .

Descon Construction, L.P.

_____ V.P. (Seal)
V.P., Descon Management, L.L.C., G.P.                          Principal

Hartford Fire Insurance Company _____ (Seal)

By _____ (Seal)
Paul Friddle                                        Attorney-in-Fact

S-2170/GEEF 10/99

**Form 605**
**(revised 1/06)**

Return in Duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
FAX: 512/463-5709

**Filing Fee: $40**



**Articles of Dissolution**
**Pursuant to Article 6.07**
**Texas Limited Liability**
**Company Act**

This space reserved for office use.

**FILED**
In the Office of the
Secretary of State of Texas

DEC 3 0 2009

**Corporations Section**

1. The name of the limited liability company is as set forth below:

Descon Management, LLC

The filing number issued by the secretary of state is:     07072487

2. The name and address of each of its managers, if any, is:

| NAME | ADDRESS (include city and state/country) |
|---|---|
| J. Wayne Medlin | 5801 North 10th St, Suite 600, McAllen, TX 78504 |
|  |  |
|  |  |

**You must check either option A, B, or C in Items 3 and 4.**

3.  A ☐  All debts, obligations, and liabilities of the limited liability company have been paid, discharged, or adequate provision has been made therefor.

   B ☐  The limited liability company's property and assets were not sufficient to satisfy and discharge all its debts, liabilities, and obligations.  All property and assets have been applied so far as they would go to the payment thereof in a just and equitable manner and no property or assets remained available for distribution among its members.
   **OR**
   C ☒  The limited liability company has not acquired any debts, obligations, or liabilities.

4.  A ☐  All remaining property and assets of the limited liability company have been distributed among its members in accordance with their respective rights and interests.

   B ☐  No property remained for distribution to members after applying it as far as it would go to the just and equitable payment of the debts, liabilities, and obligations of the limited liability company.
   **OR**
   C ☒  The limited liability company has not acquired any property or assets and therefore distributions to members were not required.



**EXHIBIT**

C

3

**You must check either option A or B of item 5 and provide a date of adoption.**

5. A ☐ The company has no members, has not received any capital, and has not otherwise commenced business. In accordance with Section G, Article 2.23, a majority of the initial managers named in the articles of organization adopted a resolution to dissolve on: _____

OR

B ☒ The limited liability company elected to dissolve by action of its members. A resolution to dissolve was adopted by its members in accordance with Section D , Article 2.23 of the Act, or as otherwise provided in the articles of organization or the regulations on: 11/30/2009

### Effectiveness of Filing

☐ The document is to be effective when the document is filed by the secretary of state.

OR

☒ This document will become effective at a later date, which is not more than ninety (90) days from the date of its filing by the secretary of state. The delayed effective date is: 12/31/2009

### Execution

The undersigned authorized managers or members of the limited liability company sign this document subject to the penalties imposed by law for the submission of a false or fraudulent document.

12/29/2009
Date

J. Wayne Medlin, President
Signature of Authorized Manager/Member

4

<table>
<tr><td>

**Form 811**
**(Revised 05/11)**

Submit in duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
512 463-5555
FAX: 512 463-5709
**Filing Fee: See instructions**

</td><td>



**Certificate of
Reinstatement**

</td><td>

This space reserved for office use.

F I L E D
In the Office of the
Secretary of State of Texas

SEP 0 7 2012

Corporations Section

</td></tr>
</table>

1. The name of the entity is:

Descon Management, L.L.C.

The entity is a foreign entity that was required to obtain its registration under a name that differs from the legal name stated above. The name under which the entity is registered is:

The file number issued to the filing entity by the secretary of state is: 707248722

2. The jurisdiction of organization of the entity is: Texas

   *(state or country)*

The entity was organized or obtained its certificate of registration on: 07/26/2000

   *mm/dd/yyyy*

3. The effective date of the entity's termination or revocation is: 12/31/2009

   *mm/dd/yyyy*

4. The condition giving rise to the termination of the entity's existence or the revocation of its registration is described below. The entity requests reinstatement under the following code provision:

   (Select the appropriate box below. Do not check more than one box.)

**4A. Reinstatement of a Texas Entity Following a Voluntary Termination (3 year limit)**

☑ The domestic filing entity requests reinstatement under section 11.202 of the BOC following the filing of a certificate of termination. The undersigned certifies that the conditions for reinstatement of the entity's certificate of formation are met and that the reinstatement of the filing entity has been approved in the manner provided by the Texas Business Organizations Code.

**4B. Reinstatement of a Texas Entity Following an Involuntary Termination**

☐ The domestic filing entity requests reinstatement of its certificate of formation after the involuntary termination of its existence by the secretary of state pursuant to subchapter F of chapter 11 of the Code. The entity has corrected the circumstances giving rise to its involuntary termination and has taken any other action required for its reinstatement, including the payment of any fees, interest, or penalties. The undersigned certifies that the reinstatement of the filing entity has been approved in the manner required by the Texas Business Organizations Code.

**4C. Reinstatement Following Revocation of Registration of a Foreign Entity (3 year limit)**

☐ The foreign filing entity requests the reinstatement of its certificate of registration after its revocation by the secretary of state pursuant to subchapter C of chapter 9 of the BOC. The entity has corrected the circumstances giving rise to its revocation and has taken any other action required for its reinstatement, including the payment of any fees, interest, or penalties.

Form 811 4

EXHIBIT
tabbies

D

5. The name of the entity's registered agent and the address of the entity's registered office are as follows: (Select and complete either A or B and complete C)

☐ A. The registered agent is an organization (cannot be the entity seeking reinstatement) by the name of:

_____

OR

☑ B. The registered agent is an individual resident of the state whose name is set forth below:

J. Wayne _____ Medlin _____
*First Name*                          *M.I.*      *Last Name*                     *Suffix*

C. The business address of the registered agent and the registered office address is:

5801 N. 10th Street , *Ste . 600*          McAllen                    TX      78504
*Street Address*                           *City*                     *State*   *Zip Code*

The street address of the registered office as stated in this instrument is the same as the registered agent's business address.

## Additional Documentation or Filings

☑ Comptroller of Public Accounts Tax Clearance Letter (Required, unless entity is a nonprofit corporation.)
☐ Amendment to Certificate of Formation or Registration (Required if entity name is no longer available.)
☐ Other _____

*(A certificate of reinstatement may be conditioned on the submission of additional filings. See instructions.)*

## Execution

The undersigned affirms that the person designated as registered agent has consented to the appointment. The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized under the provisions of law governing the entity to execute the filing instrument.

Date: _____9/5/12_____

By: _____

_____
Signature of authorized person (see instructions)

J. Wayne Medlin, President
_____
Printed or typed name of authorized person



August 27, 2012

DESCON MANAGEMENT, LLC
5801 N 10TH ST STE 600
MCALLEN TX 78504-2609

## TAX CLEARANCE LETTER FOR REINSTATEMENT*

To:    Texas Secretary of State
       Corporation Section

Re:    DESCON MANAGEMENT, LLC
       Taxpayer number:   32002651563
       File number:       0707248722

The referenced entity has met all franchise tax requirements and is eligible for reinstatement through 12/31/2012.

Jose Garza
2H11
Enforcement Division
956-687-9227

---

*The reinstatement must be filed with the Texas Secretary of State on or before the expiration date of this letter. After this date, additional franchise tax filing requirements must be met, and a new request for tax clearance must be submitted.*

*You can file for reinstatement online at www.sos.state.tx.us/corp/sosda/index.shtml. Forms and instructions for reinstatement are available at http://www.sos.state.tx.us/corp/forms_option.shtml or by calling 512-463-5582. This tax clearance letter must be attached to the reinstatement forms.*

Form 05-377 (Rev. 6-10/4)

| Form 811<br>(Revised 05/11)<br><br>Submit in duplicate to:<br>Secretary of State<br>P.O. Box 13697<br>Austin, TX 78711-3697<br>512 463-5555<br>FAX: 512 463-5709<br>Filing Fee: See instructions | Certificate of<br>Reinstatement | This space reserved for office use.<br>**FILED**<br>In the Office of the<br>Secretary of State of Texas<br>OCT 3 1 2012<br>**Corporations Section** |
|---|---|---|

1. The name of the entity is:

Descon Construction, L.P.

The entity is a foreign entity that was required to obtain its registration under a name that differs from the legal name stated above. The name under which the entity is registered is:

The file number issued to the filing entity by the secretary of state is: 00137635-10

2. The jurisdiction of organization of the entity is:    Texas

   *(state or country)*

The entity was organized or obtained its certificate of registration on: 07/28/2000

   *mm/dd/yyyy*

3. The effective date of the entity's termination or revocation is: 12/31/2009

   *mm/dd/yyyy*

4. The condition giving rise to the termination of the entity's existence or the revocation of its registration is described below. The entity requests reinstatement under the following code provision:
   (Select the appropriate box below. Do not check more than one box.)

<u>4A. Reinstatement of a Texas Entity Following a Voluntary Termination (3 year limit)</u>

☑ The domestic filing entity requests reinstatement under section 11.202 of the BOC following the filing of a certificate of termination. The undersigned certifies that the conditions for reinstatement of the entity's certificate of formation are met and that the reinstatement of the filing entity has been approved in the manner provided by the Texas Business Organizations Code.

<u>4B. Reinstatement of a Texas Entity Following an Involuntary Termination</u>

☐ The domestic filing entity requests reinstatement of its certificate of formation after the involuntary termination of its existence by the secretary of state pursuant to subchapter F of chapter 11 of the Code. The entity has corrected the circumstances giving rise to its involuntary termination and has taken any other action required for its reinstatement, including the payment of any fees, interest, or penalties. The undersigned certifies that the reinstatement of the filing entity has been approved in the manner required by the Texas Business Organizations Code.

<u>4C. Reinstatement Following Revocation of Registration of a Foreign Entity (3 year limit)</u>

☐ The foreign filing entity requests the reinstatement of its certificate of registration after its revocation by the secretary of state pursuant to subchapter C of chapter 9 of the BOC. The entity has corrected the circumstances giving rise to its revocation and has taken any other action required for its reinstatement, including the payment of any fees, interest, or penalties.

Form 811                                                          4



5. The name of the entity's registered agent and the address of the entity's registered office are as follows: (Select and complete either A or B and complete C)

☐ A. The registered agent is an organization (cannot be the entity seeking reinstatement) by the name of:

_____

OR
☑ B. The registered agent is an individual resident of the state whose name is set forth below:

| J. Wayne | | Medlin | |
|---|---|---|---|
| *First Name* | *M.I.* | *Last Name* | *Suffix* |

C. The business address of the registered agent and the registered office address is:

| 5801 N. 10th Street, *Ste. 600* | McAllen | TX | 78504 |
|---|---|---|---|
| *Street Address* | *City* | *State* | *Zip Code* |

The street address of the registered office as stated in this instrument is the same as the registered agent's business address.

## Additional Documentation or Filings

☑ Comptroller of Public Accounts Tax Clearance Letter (Required, unless entity is a nonprofit corporation.)
☐ Amendment to Certificate of Formation or Registration (Required if entity name is no longer available.)
☐ Other _____

*(A certificate of reinstatement may be conditioned on the submission of additional filings. See Instructions.)*

## Execution

The undersigned affirms that the person designated as registered agent has consented to the appointment. The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized under the provisions of law governing the entity to execute the filing instrument.

Date: _____9/5/12_____

By: Descon Management, L.L.C., General Partner _____

_____
Signature of authorized person (see instructions)

J. Wayne Medlin, President
Printed or typed name of authorized person

Form 811                                    5



August 27, 2012

DESCON CONSTRUCTION, L.P.
PO BOX 3547
MCALLEN TX 78502-3547

### TAX CLEARANCE LETTER FOR REINSTATEMENT*

To:   Texas Secretary of State
      Corporation Section

Re:   DESCON CONSTRUCTION, L.P.
      Taxpayer number:   17418456756
      File number:       0013763510

The referenced entity has met all franchise tax requirements and is eligible for reinstatement through 12/31/2012.


Jose Garza
2H11
Enforcement Division
956-687-9227

---

*The reinstatement must be filed with the Texas Secretary of State on or before the expiration date of this letter. After this date, additional franchise tax filing requirements must be met, and a new request for tax clearance must be submitted.

You can file for reinstatement online at www.sos.state.tx.us/corp/sosda/index.shtml. Forms and instructions for reinstatement are available at http://www.sos.state.tx.us/corp/forms_option.shtml or by calling 512-463-5582. This tax clearance letter must be attached to the reinstatement forms.

| Form 804 |  | This space reserved for filing office use. |
|---|---|---|
| **(Revised 07/11)** | | |
| Submit in duplicate to:<br>Secretary of State<br>Reports Unit<br>P.O. Box 12028<br>Austin, TX 78711-2028<br>Phone: (512) 475-2705<br>FAX: (512) 463-1423<br>Dial: 7-1-1 for Relay Services<br>Filing Fee: See Instructions | **Periodic Report<br>of a<br>Limited Partnership** | F I L E D<br>In the Office of the<br>Secretary of State of Texas<br>**OCT 31 2012**<br>**Corporations Section** |

**File Number:** 00137635-10

1. The name of the limited partnership is: Descon Construction, L.P.

2. It is organized under the laws of: (set forth state or foreign country) Texas

3. The name of the registered agent is:

☐ A. The registered agent is an organization (cannot be entity named above) by the name of:

OR

☑ B. The registered agent is an individual resident of the state whose name is:

| J. Wayne | | Medlin | |
|---|---|---|---|
| *First Name* | *MI* | *Last Name* | *Suffix* |

4. The registered office address, which is identical to the business address of the registered agent in Texas, is:
   (use street or building address; see Instructions)

| 5801 N. 10th Street, Suite 600 | McAllen | TX | 78504 |
|---|---|---|---|
| *Street Address* | *City* | *State* | *Zip Code* |

5. The address of the principal office in the United States where the records are to be kept or made available is:

| 5801 North 10th Street, Suite 600 | McAllen | TX | 78504 | USA |
|---|---|---|---|---|
| *Street or Mailing Address* | *City* | *State* | *Zip Code* | *Country* |

6. The names and addresses of all general partners of the limited partnership are:
   (Address changes are allowed; additions or deletions of general partners, or a name change of an existing general partner require an amendment; see Instruction 6.)

| NAME AND ADDRESS OF GENERAL PARTNER (Enter the name of either an individual or an organization, but not both.) | | | |
|---|---|---|---|
| **IF INDIVIDUAL** | | | |
| *First Name* | *MI* | *Last Name* | *Suffix* |
| **OR**<br>**IF ORGANIZATION** | | | |
| Descon Management, L.L.C. | | | |
| *Organization Name* | | | |
| 5801 North 10th Street, Suite 600 | McAllen | TX 78504 | USA |
| *Street or Mailing Address* | *City* | *Zip Code* | *Country* |

RECEIVED<br>SECRETARY OF STATE<br>OCT 31 2012<br>CLK 51<br>AUSTIN, TEXAS


EXHIBIT
F

Form 804 — Page 4 of 5

**NAME AND ADDRESS OF GENERAL PARTNER** (Enter the name of either an individual or an organization, but not both.)

IF INDIVIDUAL

| First Name | MI | Last Name | | Suffix |
|---|---|---|---|---|

OR

IF ORGANIZATION

Maco Management, L.L.C.

Organization Name

| 5801 North 10th Street, Suite 600 | McAllen | TX | 78504 | USA |
|---|---|---|---|---|
| Street or Mailing Address | City | State | Zip Code | Country |

---

**NAME AND ADDRESS OF GENERAL PARTNER** (Enter the name of either an individual or an organization, but not both.)

IF INDIVIDUAL

| First Name | MI | Last Name | | Suffix |
|---|---|---|---|---|

OR

IF ORGANIZATION

Organization Name

| | | | | |
|---|---|---|---|---|
| Street or Mailing Address | City | State | Zip Code | Country |

**Execution:**

The undersigned affirms that the person designated as registered agent has consented to the appointment. The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized under the provisions of law governing the entity to execute the filing instrument.

Date: 10/29/12

Signed on behalf of the limited partnership

J. Wayne Medlin, President, Descon Management, L.L.C., General Partner

By (general partner)

Form 804 — Page 5 of 5

**Form 607**
(Revised 09/09)

Return in duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
512 463-5555
FAX: 512/463-5709

**Filing Fee: See instructions**



**Certificate of Cancellation of a
Domestic or Foreign
Limited Partnership**

This space reserved for office use.

FILED
In the Office of the
Secretary of State of Texas

DEC 3 0 2009

Corporations Section

1. The name of the partnership is:

Descon Construction, L.P.

2. The partnership was formed under the laws of:     Texas
                                                     *State or territory*

3. The date of filing of its certificate of limited partnership or its registration is:     07/28/2000
                                                                                            *mm/dd/yyyy*

The file number issued to the partnership by the secretary of state is:     00137635-10

4. The reason or reasons for filing the certificate of cancellation are set forth below: (See instructions.)

The partners are retiring and closing the business, and therefore, the partnership is no longer necessary.

☒     Attached hereto is a certificate from the comptroller of public accounts that all taxes under title 2, Tax Code, have been paid.

### Effectiveness of Filing (Select either A, B, or C.)

A. ☐ This document becomes effective when filed by the secretary of state.

B. ☒ This document becomes effective at a later date, which is not more than ninety (90) days from the date of signing. The delayed effective date is:     12/31/2009

C. ☐ This document takes effect upon the occurrence of a future event or fact, other than the passage of time. The 90th day after the date of signing is:     _____
The following event or fact will cause the document to take effect in the manner described below:

### Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized under the provisions of law governing the entity to execute the filing instrument.

Date:     12/29/2009

J. Wayne Medlin, President of Descon Management LLC, General Partner

Signature of authorized person(s) See instructions.
Michael C. Smith, President of MACO Management LLC, General Partner

Form 607                                    3

EXHIBIT
G
tabbies



December 10, 2009

DESCON CONSTRUCTION, L.P.
PO BOX 3547
MCALLEN TX 78502-3547

## CERTIFICATE OF ACCOUNT STATUS

THE STATE OF TEXAS
COUNTY OF TRAVIS

I, Susan Combs, Comptroller of Public Accounts of the State of Texas, DO HEREBY CERTIFY that according to the current records of this office

**DESCON CONSTRUCTION, L.P.**

has filed all required reports for taxes administered by the Comptroller under Title 2, Tax Code, and taxes reported due on those reports have been paid. This certificate must be filed with the Texas Secretary of State to legally end the entity's existence in Texas. This certificate is valid through December 31, 2009.

GIVEN UNDER MY HAND AND
SEAL OF OFFICE in the City of
Austin, this 10th day of
December, 2009 A.D.

Susan Combs
Texas Comptroller

Taxpayer number: 17418456756
File number: 0013763510

NOTE: Failure by Texas entities to legally end existence with the Texas Secretary of State on or before the expiration of this certificate, will result in additional franchise tax responsibilities. Texas entities not registered with the Texas Secretary of State and all out of state entities are responsible for franchise tax through the last date of business in this state.

Form 05-305 (Rev. 12-07/7)

FILED
in the Office of the
Secretary of State of Texas

JUL 28 2000

Corporations Section

## ARTICLES OF CONVERSION

Pursuant to the provisions of Article 5.17 of the Texas Business Corporation Act and section 2.15 of the Texas Revised Limited Partnership Act, the undersigned converting entity certifies the following articles of conversion adopted for the purpose of effecting a conversion in accordance with the provisions of the Texas Business Corporation Act and the Texas Revised Limited Partnership Act.

1.      A plan of conversion was approved and adopted in accordance with the provisions of Article 5.03 of the Texas Business Corporation Act providing for the conversion of Descon Construction, Inc., a corporation incorporated under the Texas Business Corporation Act, to Descon Construction, L.P., a Texas limited partnership.

2.      An executed plan of conversion is on file at the principal place of business of the converting entity at 5801 North 10th Street, Suite 600, McAllen, Texas 78504, and, from and after the conversion, an executed plan of conversion will be on file at the principal place of business of the converted entity at 5801 North 10th Street, Suite 600, McAllen, Texas 78504.

3.      A copy of the plan of conversion will be furnished by the converting entity (prior to the conversion) or by the converted entity (after the conversion) on written request and without cost to any shareholder or member of the converting entity or the converted entity.

4.      The approval of the plan of conversion was duly authorized by all action required by the laws under which Descon Construction, Inc. is incorporated and by its constituent documents. The number of outstanding shares of each class or series of stock of Descon Construction, Inc. entitled to vote, with other shares or as a class, on the plan of conversion are as follows:

| Number of Outstanding Shares | Class or Series | Number of Shares Entitled to Vote as a Class or Series |
|---|---|---|
| 3,000 | common | one class only; all common |

5.      The number of shares, not entitled to vote only as a class, voted for and against the plan of conversion, respectively, and, if the shares of any class or series are entitled to vote as a class, the number of shares of each such class or series voted for and against the plan of conversion, as follows:

| Total Voted For | Total Voted Against | Class or Series | Number of Shares Entitled to Vote as a Class or Series |
|---|---|---|---|
| 3,000 | 0 | common | [no such shares] |



EXHIBIT

H

6.      Two copies of the certificate of limited partnership of Descon Construction, L.P. which is to be created pursuant to the plan of conversion are being filed with the secretary of state with the articles of conversion.

7.      The conversion will become effective on July 31, 2000 at 11:59 p.m. in accordance with the provisions of article 10.03 of the Texas Business Corporation Act and section 2.12 of the Texas Revised Limited Partnership Act.

8.      Descon Construction, L.P., the converted entity, will be responsible for and obligated to pay any and all fees and franchise taxes of Descon Construction, Inc., the converting entity.

Dated: July 2. 2000.

Converting Entity:

Descon Construction, Inc.

By:     J. Wayne Medlin,
        President

Articles of Conversion - Page 2

# CERTIFICATE OF LIMITED PARTNERSHIP

This Certificate of Limited Partnership dated this 26th day of ___July___, 2000 to be effective at 11:59 p.m. on July 31, 2000, has been duly executed and is filed pursuant to (i) Sections 2.01 and 2.15 of the Texas Revised Limited Partnership Act (the "Act") to form a limited partnership under the Act and (ii) Section 5.17 of the Texas Business Corporation Act to convert a Texas corporation to a Texas limited partnership.

1.   The name of the limited partnership is *Descon Construction, L.P.*

2.   The address of the registered office required to be maintained by section 1.06 of the Act is 5801 North 10th Street, Suite 600, McAllen, Texas 78504.

3.   The name and address of the registered agent for service of process required to be maintained by section 1.06 of the Act are:

J. Wayne Medlin

5801 North 10th Street, Suite 600, McAllen, Texas 78504.

4.   The address of the principal office in the United States where records are to be kept or made available under section 1.07 of the Act is 5801 North 10th Street, Suite 600, McAllen, Texas 78504.

5.   The name(s), the mailing address(es), and the street address(es) of the business(es)/residence(s) of the general partner(s) are:

Descon Management, LLC
5801 North 10th Street, Suite 600,
McAllen, Texas 78504;

and

MACO Management, LLC
5801 North 10th Street, Suite 600,
McAllen, Texas 78504.

6.   This limited partnership is being formed pursuant to a plan of conversion under Section 2.15 of the Act. The converting entity is Descon Construction, Inc., a corporation formed on July 23, 1975 under the Texas Business Corporation Act. The address of the converting entity is 5801 North 10th Street, Suite 600, McAllen, Texas 78504.

EXECUTED as of the date first written above.

GENERAL PARTNERS:

DESCON Management, LLC
General Partner

By: _____
J. Wayne Medlin,
President

And,

MACO Management, LLC
General Partner

By: _____
Michael C. Smith,
President

Certificate of Limited Partnership - Page 2

# TEXAS SECRETARY of STATE
# CARLOS H. CASCOS

UCC | Business Organizations | Trademarks | Notary | Account | Help/Fees | Briefcase | Logout

## BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY

| | | | |
|---|---|---|---|
| **Filing Number:** | 13763510 | **Entity Type:** | Domestic Limited Partnership (LP) |
| **Original Date of Filing:** | July 23, 1975 | **Entity Status:** | In existence |
| **Formation Date:** | N/A | | |
| **Tax ID:** | 17418456756 | **FEIN:** | |
| **Duration:** | Perpetual | | |

**Name:** DESCON CONSTRUCTION, L.P.
**Address:** 5801 NORTH 10TH STREET, SUITE 600
Mcallen, TX 78504 USA

| REGISTERED AGENT | FILING HISTORY | NAMES | MANAGEMENT | ASSUMED NAMES | ASSOCIATED ENTITIES |
|---|---|---|---|---|---|

| View Image | Document Number | Filing Type | Filing Date | Effective Date | Eff. Cond | Page Count |
|---|---|---|---|---|---|---|
| 🗸 | 3498955 | Articles Of Conversion | July 28, 2000 | July 28, 2000 | No | 4 |
| 🗸 | 80090670001 | Report Notice | January 21, 2005 | January 21, 2005 | No | 1 |
| 🗸 | 83678020002 | Periodic Report | February 25, 2005 | February 25, 2005 | No | 1 |
| 🗸 | 83645560001 | Notice of Forfeited Rights for Non-Filing of Periodic Report | February 28, 2005 | February 28, 2005 | No | 1 |
| 🗸 | 279763090001 | Report Notice | October 20, 2009 | October 20, 2009 | No | 1 |
| 🗸 | 285731100001 | Notice of Forfeited Rights for Non-Filing of Periodic Report | November 30, 2009 | November 30, 2009 | No | 1 |
| 🗸 | 289374230003 | Cancellation of Certificate of Limited Partnership | December 30, 2009 | December 31, 2009 | No | 2 |
| 🗸 | 450836550002 | Periodic Report | October 31, 2012 | October 31, 2012 | No | 3 |
| 🗸 | 491232540002 | Reinstatement After Termination | October 31, 2012 | October 31, 2012 | No | 3 |
| 🗸 | 491235580001 | Miscellaneous | July 15, 2013 | July 15, 2013 | No | 1 |

[ Order ]  [ Return to Search ]

---

Instructions:
● To place an order for additional information about a filing press the 'Order' button.



EXHIBIT
I

Filing Number: 707248722

# Texas Franchise Tax Public Information Report

05-102
(Rev.9-11/30)
FORM

■ Tcode 13196 Franchise

*To be filed by Corporations, Limited Liability Companies (LLC) and Financial Institutions*
**This report MUST be signed and filed to satisfy franchise tax requirements**

■ Taxpayer number: 3 2 0 0 2 6 5 1 5 6 3

■ Report year: 2 0 1 4

*You have certain rights under Chapter 552 and 559, Government Code, to review, request, and correct information we have on file about you. Contact us at (800) 252-1381 or (512) 463-4600.*

Taxpayer name: **DESCON MANAGEMENT, LLC**

Mailing address: **PO BOX 3547**

City: **MCALLEN**  State: **TX**  ZIP Code: **78502**  Plus 4:

Secretary of State (SOS) file number or Comptroller file number: **0707248722**

● Blacken circle if there are currently no changes from previous year; if no information is displayed, complete the applicable information in Sections A, B and C.

Principal office

Principal place of business

*Please sign below!*

Officer, director and manager information is reported as of the date a Public Information Report is completed. The information is updated annually as part of the franchise tax report. There is no requirement or procedure for supplementing the information as officers, directors, or managers change throughout the year.

3200265156314

**SECTION A** Name, title and mailing address of each officer, director or manager.

| Name | Title | Director | Term expiration |
|---|---|---|---|
| MICHAEL C SMITH | VICE PRESI | ○ YES | |
| Mailing address: PO BOX 3547 | City: MCALLEN | State: TX | ZIP Code: 78502 |
| J WAYNE MEDLIN | PRESIDENT | ○ YES | |
| Mailing address: PO BOX 3547 | City: MCALLEN | State: TX | ZIP Code: 78502 |
| MICHAEL C SMITH | SECRETARY | ○ YES | |
| Mailing address: PO BOX 3547 | City: MCALLEN | State: TX | ZIP Code: 78502 |

**SECTION B** Enter the information required for each corporation or LLC, if any, in which this entity owns an interest of 10 percent or more.

| Name of owned (subsidiary) corporation or limited liability company | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|
| | | | |
| | | | |

**SECTION C** Enter the information required for each corporation or LLC, if any, that owns an interest of 10 percent or more in this entity or limited liability company.

| Name of owned (parent) corporation or limited liability company | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|
| | | | |

Registered agent and registered office currently on file. *(see instructions if you need to make changes)*  ○ Blacken circle if you need forms to change the registered agent or registered office information.

Agent: **J WAYNE MEDLIN**

Office: **5801 N 10TH ST., SUITE 600**  City: **MCALLEN**  State: **TX**  ZIP Code: **78504**

The above information is required by Section 171.203 of the Tax Code for each corporation or limited liability company that files a Texas Franchise Tax Report. Use additional sheets for Sections A, B, and C, if necessary. The information will be available for public inspection.

I declare that the information in this document and any attachments is true and correct to the best of my knowledge and belief, as of the date below, and that a copy of this report has been mailed to each person named in this report who is an officer, director or manager and who is not currently employed by this, or a related, corporation or limited liability company.

sign here ► **Anetia M Smith**  Title: **Electronic**  Date: **05-13-2014**  Area code and phone number: **( 956 ) 380 - 4030**

**Texas Comptroller Official Use Only**

VE/DE ○  PIR IND ○

**EXHIBIT J**

# Texas Franchise Tax Public Information Report

05-102
(Rev.9-11/30)
To be filed by Corporations, Limited Liability Companies (LLC) and Financial Institutions
**This report MUST be signed and filed to satisfy franchise tax requirements**

■ Tcode 13196 Franchise

■ Taxpayer number

| 3 | 2 | 0 | 0 | 2 | 6 | 5 | 1 | 5 | 6 | 3 |
|---|---|---|---|---|---|---|---|---|---|---|

■ Report year

| 2 | 0 | 1 | 4 |
|---|---|---|---|

*You have certain rights under Chapter 552 and 559, Government Code, to review, request, and correct information we have on file about you. Contact us at (800) 252-1381 or (512) 463-4600.*

Taxpayer name **DESCON MANAGEMENT, LLC**

Mailing address **PO BOX 3547**

| City **MCALLEN** | State **TX** | ZIP Code **78502** | Plus 4 |
|---|---|---|---|

Secretary of State (SOS) file number or Comptroller file number
**0707248722**

● Blacken circle if there are currently no changes from previous year; if no information is displayed, complete the applicable information in Sections A, B and C.

Principal office

Principal place of business

*Please sign below!*

Officer, director and manager information is reported as of the date a Public Information Report is completed. The information is updated annually as part of the franchise tax report. There is no requirement or procedure for supplementing the information as officers, directors, or managers change throughout the year.

3200265156314

**SECTION A** Name, title and mailing address of each officer, director or manager.

| Name **J WAYNE MEDLIN** | Title **TREASURER** | Director ○ YES | Term expiration | m m d d y y |
|---|---|---|---|---|
| Mailing address **PO BOX 3547** | City **MCALLEN** | State **TX** | ZIP Code **78502** | |
| Name | Title | Director ○ YES | Term expiration | m m d d y y |
| Mailing address | City | State | ZIP Code | |
| Name | Title | Director ○ YES | Term expiration | m m d d y y |
| Mailing address | City | State | ZIP Code | |

**SECTION B** Enter the information required for each corporation or LLC, if any, in which this entity owns an interest of 10 percent or more.

| Name of owned (subsidiary) corporation or limited liability company | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|
| Name of owned (subsidiary) corporation or limited liability company | State of formation | Texas SOS file number, if any | Percentage of ownership |

**SECTION C** Enter the information required for each corporation or LLC, if any, that owns an interest of 10 percent or more in this entity or limited liability company.

| Name of owned (parent) corporation or limited liability company | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|

Registered agent and registered office currently on file. *(see instructions if you need to make changes)*
○ Blacken circle if you need forms to change the registered agent or registered office information.

Agent: **J WAYNE MEDLIN**

| Office: **5801 N 10TH ST., SUITE 600** | City **MCALLEN** | State **TX** | ZIP Code **78504** |
|---|---|---|---|

The above information is required by Section 171.203 of the Tax Code for each corporation or limited liability company that files a Texas Franchise Tax Report. Use additional sheets for Sections A, B, and C, if necessary. The information will be available for public inspection.

I declare that the information in this document and any attachments is true and correct to the best of my knowledge and belief, as of the date below, and that a copy of this report has been mailed to each person named in this report who is an officer, director or manager and who is not currently employed by this, or a related, corporation or limited liability company.

| sign here ► **Anetia M Smith** | Title **Electronic** | Date **05-13-2014** | Area code and phone number ( **956** ) **380 - 4030** |
|---|---|---|---|

**Texas Comptroller Official Use Only**

| VE/DE | ○ | PIR IND | ○ |
|---|---|---|---|



# STATE OF TEXAS
## OFFICE OF THE SECRETARY OF STATE
## CORPORATIONS SECTION

### Maintenance Correction Memorandum to Entity Record

| | |
|---|---|
| Entity Name: | Descon Construction, L.P. |
| Entity File Numbers: | 13763510 |
| Entity Status: | In existence     Name Status:    In Use |
| Action Requested: | Correction to the filing history to include Certificate of Reinstatement originally received December 30, 2009 |
| Date Requested: | July 15, 2013 |
| Action Requested By: | Lori Castro, Data Management |

**Basis:** This memorandum is prepared for the purpose of evidencing a correction to the filing history of the above-referenced entity. The Comptroller of Public Accounts called to inquire into the status of the entity. When reviewing the filing history for this entity, it was determined that the periodic report listed in the history tree with a file date of October 31, 2012 was incorrectly accepted without a Certificate of Reinstatement. The Certificate of Reinstate had been recevied along with the Periodic Report but was rejected stating that we did not need a reinstatement when filing a periodic report. Since Descon was cancelled due to a voluntary cancellation and not an involuntary cancellation the reinstatement is a requirement. The system will be updated to include the reinstatement with a file date of October 31, 2012, the date it was originally received by the Secretary of State.

**Actions to be taken:**
1. Add Certificate of Reinstatement with file date 10/31/2012.
2. Index a copy of this memo to the file with a file date of 7/15/2013.

| | | |
|---|---|---|
| Entity Status: | ☒ No change | ☐ Yes, change to: |
| Name Status: | ☒ No change | ☐ Yes, change to: |

# TEXAS SECRETARY of STATE
# CARLOS H. CASCOS

UCC | Business Organizations | Trademarks | Notary | Account | Help/Fees | Briefcase | Logout

### BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY

| | | | |
|---|---|---|---|
| **Filing Number:** | 13763510 | **Entity Type:** | Domestic Limited Partnership (LP) |
| **Original Date of Filing:** | July 23, 1975 | **Entity Status:** | In existence |
| **Formation Date:** | N/A | | |
| **Tax ID:** | 17418456756 | **FEIN:** | |
| **Duration:** | Perpetual | | |

**Name:** DESCON CONSTRUCTION, L.P.

**Address:** 5801 NORTH 10TH STREET, SUITE 600
Mcallen, TX 78504 USA

| REGISTERED AGENT | FILING HISTORY | NAMES | MANAGEMENT | ASSUMED NAMES | ASSOCIATED ENTITIES |
|---|---|---|---|---|---|

| Last Update | Name | Title | Address | |
|---|---|---|---|---|
| | DESCON MANAGEMENT, LLC | General Partner | 5801 NORTH 10TH STREET, SUITE 600 Mcallen, TX 78504 USA | |
| | MACO MANAGEMENT, LLC | General Partner | 5801 NORTH 10TH STREET, SUITE 600 Mcallen, TX 78504 USA | |

Order    Return to Search

---

Instructions:
⚫ To place an order for additional information about a filing press the 'Order' button.

**FILED**
In the Office of the
Secretary of State of Texas

**JAN 2 4 2006**

**Corporations Section**

Certificate of Formation
for
Texas Descon, L.P.

The undersigned organizer files this Certificate of Formation and states:

1. The filing entity being formed is a limited partnership. The name of the filing entity being formed is Texas Descon, L.P.

2. The name and address of the general partner of the limited partnership and its address is 4S, L.L.C., 5801 N. 10th Street, Suite 500, McAllen, Texas 78504. Descon

3. The street address of the initial registered office of the filing entity and the name of the initial registered agent of the filing entity at the office is Michael D. Smith, 5801 N. 10th Street, Suite 500, McAllen, Texas 78504.

4. The address of the principal office of the limited partnership where records are to be kept or made available under Section 153.551 of the Texas Business Organizations Code is 5801 N. 10th Street, Suite 500, McAllen, Texas 78504.

Signed subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument.

Dated: January 20, 2006.

4S, L.L.C.,
General Partner

By: _____
Michael D. Smith, President

**EXHIBIT**
K

# TEXAS SECRETARY of STATE
# CARLOS H. CASCOS

### BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY

| | | | |
|---|---|---|---|
| **Filing Number:** | 800603080 | **Entity Type:** | Domestic Limited Partnership (LP) |
| **Original Date of Filing:** | January 24, 2006 | **Entity Status:** | In existence |
| **Formation Date:** | N/A | | |
| **Tax ID:** | 32035246894 | **FEIN:** | |
| **Duration:** | Perpetual | | |

| | |
|---|---|
| **Name:** | Texas Descon, L.P. |
| **Address:** | 5801 N. 10th St., Ste. 500 |
| | Mcallen, TX 78504 USA |

| REGISTERED AGENT | FILING HISTORY | NAMES | MANAGEMENT | ASSUMED NAMES | ASSOCIATED ENTITIES |
|---|---|---|---|---|---|

| Last Update | Name | Title | Address |
|---|---|---|---|
| January 25, 2006 | Descon 4S, L.L.C. | General Partner | 5801 N. 10th St., Ste. 500 McAllen, TX 78504 USA |

[ Order ]     [ Return to Search ]

---

Instructions:
- To place an order for additional information about a filing press the 'Order' button.

# TEXAS SECRETARY of STATE
# CARLOS H. CASCOS

### BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY

| | | | |
|---|---|---|---|
| **Filing Number:** | 800603080 | **Entity Type:** | Domestic Limited Partnership (LP) |
| **Original Date of Filing:** | January 24, 2006 | **Entity Status:** | In existence |
| **Formation Date:** | N/A | | |
| **Tax ID:** | 32035246894 | **FEIN:** | |
| **Duration:** | Perpetual | | |

**Name:** Texas Descon, L.P.

**Address:** 5801 N. 10th St., Ste. 500
Mcallen, TX 78504 USA

| REGISTERED AGENT | FILING HISTORY | NAMES | MANAGEMENT | ASSUMED NAMES | ASSOCIATED ENTITIES |
|---|---|---|---|---|---|

| Name | Address | Inactive Date |
|---|---|---|
| Michael D. Smith | 5801 N. 10th St., Ste. 500 Mcallen, TX 78504 USA | |

[ Order ]  [ Return to Search ]

---

Instructions:
- To place an order for additional information about a filing press the 'Order' button.

Tab 5

CAUSE NO. DC-14-46

| | | |
|---|---|---|
| RIO GRANDE CITY CONSOLIDATED | § | IN THE DISTRICT COURT OF |
| INDEPENDENT SCHOOL DISTRICT | § | |
| | § | |
| VS. | § | STARR COUNTY, TEXAS |
| | § | |
| DESCON CONSTRUCTION, L.P., | § | |
| ERO INTERNATIONAL, LLP, | § | |
| DANIEL L. BLOCK, ELI R. OCHOA | § | |
| HALFF ASSOCIATES, INC. and | § | |
| MENTON J. MURRAY, III, P.E., et al | § | 229th JUDICIAL DISTRICT |

## PLAINTIFF'S THIRTEENTH AMENDED ORIGINAL PETITION
### (GRULLA ELEMENTARY SCHOOL)

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff, Rio Grande City Consolidated Independent School District (RGCCISD), complaining of Defendants and all third party Defendants, and would respectfully show this Honorable Court as follows:

### I. Parties

Plaintiff is situated in Starr County, Texas and a political subdivision of the State of Texas.

Defendants, and Third Party Defendants; Descon Construction, L.P., ERO International, LLP., Daniel L. Block, Eli R. Ochoa, Halff Associates, Inc., Menton J. Murray, III, P.E., C&M Contracting, Inc., AAS Consulting, Inc., dba Advance Air Systems, C.A.Ray & Son Painting Contractors, Inc., Limon Masonry, Inc., Faires Plumbing Co., Inc., D&J Site Construction, Inc., RGV-R&R Construction Services, LLC., Daniel Vasquez, Individually and dba Twin City Glass, and Zarate Suspended Ceiling, Inc., have appeared in this matter.

### II. Discovery Control Plan

Plaintiff requests that discovery be conducted pursuant to TRCP 190.3(1), Level 3, monetary relief over one million dollars and judgment for all other relief to which Plaintiff is entitled.

1

### III. Venue

Venue is mandatory in Starr County, Texas pursuant to CPRC §15.011 because this action is for recovery of damages to real property. Venue is also proper in Starr County under the general venue rule CPRC §15.002 because all or a substantial part of events or omissions giving rise to the claims against the Defendants occurred in Starr County.

### IV. Breach of Contract and Implied and Express Warrant of Good and Workmanlike Manner

This suit arises from the construction of the Grulla Elementary school which will be referred to herein as ("the Project").

Defendants, Descon, ERO, Block, Ochoa, Halff & Murray were involved in the design and/or construction of the Project. Plaintiff would show that Defendants' breach of contract and failure to design and construct the project in a good and workmanlike manner was a proximate cause of damages and losses to Plaintiff. Plaintiff would show Defendants breached their contracts by one or more acts or omissions identified in the previously attached certificates of merit which are incorporated herein and one or more of the following ways:

1. Failure to follow the plans and specifications;

2. Failure to implement and install specified components and materials;

3. Failure to properly sequence work with the various trades;

4. Failure to construct the project pursuant to minimal industry standards;

5. Substituting without authority materials and equipment with cheaper and lower quality materials and failing to properly credit Plaintiff for the cost difference;

6. Failure to comply with applicable codes and standards; and

7. Failure to construct the project in a good and workmanlike manner.

### VII. CROSS CLAIMS AND NEGLIGENCE

Plaintiff cross claims all third party defendants for negligence due to their failure to follow the plans and specifications, failure to construct the project pursuant to minimal industry standards, and

2

failure to construct the project in a good and workmanlike manner, any one of which was a proximate and foreseeable cause of damages to components of the building and structure.

Defendant Descon also breached its express warranty within the first year of occupancy by failing to properly correct known defects which were also a proximate cause of plaintiff's damages.

### VIII. Interest

Plaintiff sues for and is entitled to pre-judgment and post-judgment interest at the maximum rates allowed by law.

### IX. Damages

Plaintiff will show it has sustained actual and physical damages to tangible property in the past, and after completion of the Project, and will sustain in the future, for which the Defendants are liable should not exceed fifteen million dollars and includes, but is not limited to the following:

1. The difference between the value of the Defendant's workmanship, service and materials and the value actually received;

2. The reasonable and necessary cost to repair/replace Defendant's defective workmanship;

3. Reasonable and necessary expenses incurred in attempting to mitigate Plaintiff's losses;

4. Reasonable and necessary costs to provide alternative facilities during the time period the subject building is unusable or impaired;

5. Damages to the Project caused by water intrusion;

6. Reasonable and necessary attorney's fees pursuant to CPRC § 38.001, based upon the attorney hours worked, hourly rate, the Arthur Andersen and Johnson factors, plaintiff will move the Honorable Court to determine an appropriate lodestar adjustment by multiplying plaintiff's attorney's fees upward, for which presentment is hereby made; and

7. Damage to other portions and contents of Plaintiff's building separate from the remedial cost damages caused by Defendants; and

PLAINTIFF DEMANDS A JURY TRIAL.

3

Respectfully submitted:

By: _____

Norman Jolly
TBA# 10856920
Michael B. Jolly
TBA# 10856910
James J. Parker
TBA# 15488020
Hamilton G. Rucker
TBA# 24067850
405 Main, Suite 1000
Houston, Texas 77002
Tel: (713) 237-8383
Fax: (713) 237-8385
Martie Garcia Vela
100 West 5th Street
Rio Grande City, TX 78582
Tel: (956) 488-8170
Fax: (956) 488-8129

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing was forwarded to all counsel of record, pursuant to the Rules of Procedure, on this the 20th day of March, 2015.

_____

Norman Jolly

4

# Tab 6

CAUSE NO. DC-14-46

| | | |
|---|---|---|
| RIO GRANDE CITY CONSOLIDATED | § | IN THE DISTRICT COURT OF |
| INDEPENDENT SCHOOL DISTRICT | § | |
| | § | |
| VS. | § | STARR COUNTY, TEXAS |
| | § | |
| TEXAS DESCON, L.P. fka | § | |
| DESCON CONSTRUCTION, L.P., | § | |
| ERO INTERNATIONAL, LLP, | § | |
| DANIEL L. BLOCK, ELI R. OCHOA | § | |
| HALFF ASSOCIATES, INC. and | § | |
| MENTON J. MURRAY, III, P.E., et al | § | 229th JUDICIAL DISTRICT |

**PLAINTIFF'S THIRTEENTH AMENDED ORIGINAL PETITION**
**(GRULLA ELEMENTARY SCHOOL)**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff, Rio Grande City Consolidated Independent School District (RGCCISD), complaining of Defendants and all third party Defendants, and would respectfully show this Honorable Court as follows:

**I. Parties**

Plaintiff is situated in Starr County, Texas and a political subdivision of the State of Texas.

Defendants, and Third Party Defendants; Texas Descon, L.P., fka Descon Construction, L.P., ERO International, LLP., Daniel L. Block, Eli R. Ochoa, Halff Associates, Inc., Menton J. Murray, III, P.E., C&M Contracting, Inc., AAS Consulting, Inc., dba Advance Air Systems, C.A.Ray & Son Painting Contractors, Inc., Limon Masonry, Inc., Faires Plumbing Co., Inc., D&J Site Construction, Inc., RGV-R&R Construction Services, LLC., Daniel Vasquez, Individually and dba Twin City Glass, and Zarate Suspended Ceiling, Inc., have appeared in this matter.

1

Descon Construction, L.P., contracted with plaintiff and constructed Grulla Elementary, thereafter it was renamed to its successor company "Texas Descon, L.P." under a licensing agreement to carry on the business and reputation of Descon Construction, L.P., therefore plaintiff sues Texas Descon, L.P. fka Descon Construction, L.P., for purposes of enforcing its substantive rights, pursuant to Texas Rule of Civil Procedure 28.

## II. Discovery Control Plan

Plaintiff requests that discovery be conducted pursuant to TRCP 190.3(1), Level 3, monetary relief over one million dollars and judgment for all other relief to which Plaintiff is entitled.

## III. Venue

Venue is mandatory in Starr County, Texas pursuant to CPRC sect. 15.011 because this action is for recovery of damages to real property. Venue is also proper in Starr County under the general venue rule CPRC sect. 15.002 because all or a substantial part of events or omissions giving rise to the claims against the Defendants occurred in Starr County.

## IV. Breach of Contract and Implied and
## Express Warrant of Good and Workmanlike Manner

This suit arises from the construction of the Grulla Elementary school which will be referred to herein as ("the Project").

Defendants, Descon, ERO, Block, Ochoa, Halff & Murray were involved in the design and/or construction of the Project. Plaintiff would show that Defendants' breach of contract and failure to design and construct the project in a good and workmanlike manner was a proximate cause of damages and losses to Plaintiff. Plaintiff would show Defendants breached their

2

contracts by one or more acts or omissions identified in the previously attached certificates of merit which are incorporated herein and one or more of the following ways:

1.        Failure to follow the plans and specifications;

2.        Failure to implement and install specified components and materials;

3.        Failure to properly sequence work with the various trades;

4.        Failure to construct the project pursuant to minimal industry standards;

5.        Substituting without authority materials and equipment with cheaper and lower quality materials and failing to properly credit Plaintiff for the cost difference;

6.        Failure to comply with applicable codes and standards; and

7.        Failure to construct the project in a good and workmanlike manner.

## VII. CROSS CLAIMS AND NEGLIGENCE

Plaintiff cross claims all third party defendants for negligence due to their failure to follow the plans and specifications, failure to construct the project pursuant to minimal industry standards, and failure to construct the project in a good and workmanlike manner, any one of which was a proximate and foreseeable cause of damages to components of the building and structure.

Defendant Descon also breached its express warranty within the first year of occupancy by failing to properly correct known defects which were also a proximate cause of plaintiff's damages.

## VIII. Interest

Plaintiff sues for and is entitled to pre-judgment and post-judgment interest at the maximum rates allowed by law.

## IX. Damages

Plaintiff will show it has sustained actual and physical damages to tangible property in the past, and after completion of the Project, and will sustain in the future, for which the Defendants are liable should not exceed fifteen million dollars and includes, but is not limited to the following:

1. The difference between the value of the Defendant's workmanship, service and materials and the value actually received;

2. The reasonable and necessary cost to repair/replace Defendants' defective workmanship;

3. Reasonable and necessary expenses incurred in attempting to mitigate Plaintiff's losses;

4. Reasonable and necessary costs to provide alternative facilities during the time period the subject building is unusable or impaired;

5. Damages to the Project caused by water intrusion;

6. Reasonable and necessary attorney's fees pursuant to CPRC Chapter 38, based upon the attorney hours worked, hourly rate, the Arthur Andersen and Johnson factors, plaintiff will move the Honorable Court to determine an appropriate lodestar adjustment by multiplying plaintiff's attorney's fees upward, for which presentment is hereby made; and

7. Damage to other portions and contents of Plaintiff's building separate from the remedial cost damages caused by Defendants; and

PLAINTIFF DEMANDS A JURY TRIAL.

Respectfully submitted:

*/s/ Norman Jolly*

By:_____

Norman Jolly
TBA# 10856920
Michael B. Jolly
TBA# 10856910
James J. Parker
TBA# 15488020
Hamilton G. Rucker
TBA# 24067850
405 Main, Suite 1000
Houston, Texas 77002
Tel: (713) 237-8383
Fax: (713) 237-8385

Martie Garcia Vela
100 West 5th Street
Rio Grande City, TX 78582
Tel: (956) 488-8170
Fax: (956) 488-8129

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing was forwarded to all counsel of record, pursuant to the Rules of Procedure, on this the 24th day of April, 2015.

*/s/ Norman Jolly*

_____
Norman Jolly

5

# Tab 7

CAUSE NO. DC-14-46

| RIO GRANDE CITY CONSOLIDATED | § | IN THE DISTRICT COURT OF |
| INDEPENDENT SCHOOL DISTRICT | § | |
| | § | |
| VS. | § | STARR COUNTY, TEXAS |
| | § | |
| DESCON CONSTRUCTION, L.P., et al | § | |
| | § | 229th JUDICIAL DISTRICT |

## PLAINTIFF'S THIRTEENTH AMENDED ORIGINAL PETITION
### (GRULLA ELEMENTARY SCHOOL)

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff, Rio Grande City Consolidated Independent School District (RGCCISD), complaining of Defendants named below, and would respectfully show this Honorable Court as follows:

### I. Parties

Plaintiff is situated in Starr County, Texas and a political subdivision of the State of Texas.

Defendants, Descon Construction, L.P., and ERO International, L.P. agreed in their contracts with plaintiff to "bind themselves, their partners, successors, assigns and legal representatives to the other party (RGCCISD) to this agreement and to the partners, successors, assigns, and legal representatives of such other party in respect to covenants agreements and obligations contained in the Contract Documents", namely the construction agreement they had with plaintiff. Therefore, plaintiff alleges J. Wayne Medlin aka/dba Descon Management, L.L.C., aka/dba Maco Management, L.L.C., aka/dba Michael C. Smith aka/dba Descon 4S, L.L.C., aka/dba Descon Construction, L.P., aka/dba Texas Descon, L.P., each individually and dba and fka Descon Construction, L.P.,and Daniel Block and Eli R. Ochoa each individually and each aka/dba ERO International, L.L.P., and aka/dba ERO Architects have privity with plaintiff

1

and each named entity and person are doing business under assumed names and as defendants pursuant to Texas Rules of Civil Procedure 28 and may sue the partnerships, assumed or common names of defendants for purposes of plaintiff enforcing its substantive rights. Plaintiff would also show that on January 25, 2006 Descon Construction, L.P. was renamed to its successor company Texas Descon, L.P. under a licensing agreement to allegedly carry on the tradition and reputation of Descon Construction, L.P., The successor company Texas Descon, L.P. was founded by its partner Michael C. Smith.

No service is necessary on the substituted persons and or entities as the original commencement of suit was effective notice to each party pursuant to TRCP 28.

Defendants, Halff Associates, Inc., Menton J. Murray, II PE., have appeared and answered.

## II. Discovery Control Plan

Plaintiff requests that discovery be conducted pursuant to TRCP 190.3(1), Level 3, monetary relief over one million dollars and judgment for all other relief to which Plaintiff is entitled.

## III. Venue

Venue is mandatory in Starr County, Texas pursuant to CPRC sect. 15.011 because this action is for recovery of damages to real property. Venue is also proper in Starr County under the general venue rule CPRC sect. 15.002 because all or a substantial part of events or omissions giving rise to the claims against the Defendants occurred in Starr County.

## IV. Breach of Contract and Implied and
## Express Warranty of Good and Workmanlike Manner

2

This suit arises from the construction of the Grulla Elementary school which will be referred to herein as ("the Project").

Defendants, Descon, ERO, Block, Ochoa, Halff & Murray were involved in the design and/or construction of the Project. Plaintiff would show that Defendants' breach of contract and failure to design and construct the project in a good and workmanlike manner and breach of express warranties was a proximate cause of damages and losses to Plaintiff. Plaintiff would show Defendants breached their contracts by one or more acts or omissions identified in the previously attached certificates of merit which are incorporated herein and one or more of the following ways:

1. Failure to follow the plans and specifications;

2. Failure to implement and install specified components and materials;

3. Failure to properly sequence work with the various trades;

4. Failure to construct the project pursuant to minimal industry standards;

5. Substituting without authority materials and equipment with cheaper and lower quality materials and failing to properly credit Plaintiff for the cost difference;

6. Failure to comply with applicable codes and standards;

7. Failure to construct the project in a good and workmanlike manner; and

8. Breach of express warranties.

## V. Negligence of Halff/Murray

Plaintiff sues Halff and Murray for their negligence which is a proximate cause of Plaintiff's damages and losses.

3

## VI. Interest

Plaintiff sues for and is entitled to pre-judgment and post-judgment interest at the maximum rates allowed by law.

## VII. Damages

Plaintiff will show it has sustained actual and physical damages to tangible property in the past, and after completion of the Project, and will sustain in the future, for which the Defendants are liable should not exceed fifteen million dollars and includes, but is not limited to the following:

1.  The difference between the value of the Defendant's workmanship, service and materials and the value actually received;

2.  The reasonable and necessary cost to remediate, repair, or replace Defendants' defective workmanship;

3.  Reasonable and necessary expenses incurred in attempting to mitigate Plaintiff's losses;

4.  Reasonable and necessary costs to provide alternative facilities during the time period the subject building is unusable or impaired;

5.  Damages to the Project caused by water intrusion;

6.  Reasonable and necessary attorney's fees pursuant to CPRC Chapter 38, based upon the attorney hours worked, hourly rate, the Arthur Andersen and Johnson factors, plaintiff will move the Honorable Court to determine an appropriate lodestar adjustment by multiplying plaintiff's attorney's fees upward, for which presentment is hereby made; and

7.     Damage to other portions and contents of Plaintiff's building separate from the remedial cost damages caused by Defendants.

## VIII. Joint and Several Liability

Plaintiff would show that all Descon entities and partners are vicariously, jointly and severally liable to plaintiff.

PLAINTIFF DEMANDS A JURY TRIAL.

Respectfully submitted:

*/s/ Norman Jolly*

By:_____

Norman Jolly
TBA# 10856920
Michael B. Jolly
TBA# 10856910
James J. Parker
TBA# 15488020
Hamilton G. Rucker
TBA# 24067850
405 Main, Suite 1000
Houston, Texas 77002
Tel: (713) 237-8383
Fax: (713) 237-8385

Martie Garcia Vela
100 West 5th Street
Rio Grande City, TX 78582
Tel: (956) 488-8170
Fax: (956) 488-8129

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing was forwarded to all counsel of record, pursuant to the Rules of Procedure, on this the 27th day of April, 2015.

*/s/ Norman Jolly*
_____
Norman Jolly

5

# Tab 8

Filed: 4/28/2015 4:48:46 PM
Eloy R. Garcia, District Clerk
Starr County, Texas

Dulce Morin

CAUSE NUMBER DC-14-46

| | | |
|---|---|---|
| RIO GRANDE CITY CONSOLIDATED | § | IN THE DISTRICT COURT |
| INDEPENDENT SCHOOL DISTRICT, | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | 229TH JUDICIAL DISTRICT |
| | § | |
| DESCON CONSTRUCTION, L.P., | § | |
| DEFENDANT. | § | STARR COUNTY, TEXAS |

## DEFENDANT DESCON CONSTRUCTION, L.P.'S OBJECTION AND MOTION TO STRIKE
## PLAINTIFF'S THIRTEENTH AMENDED ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant DESCON CONSTRUCTION, L.P. ("Descon"), files this Objection and Motion to Strike Plaintiff's Thirtheenth Amended Original Petition (2d and 3d Versions) and in support would show this honorable Court as follows:

1.      To date, Plaintiff has filed three pleadings caption "Plaintiff's Thirteenth Amended Original Petition (Grulla Elementary School)". In the second two editions of the pleading, filed and served April 24 and 27, 2015, Plaintiff purports to join 6 to 8 new parties as defendants "pursuant to Tex. R. Civ. P. 28." The parties that Plaintiff seeks to join are: Texas Descon, L.P., J. Wayne Medlin, Descon Management, LLC, Maco Management, LLC, Michael C. Smith, Descon 4S, LLC.

2.      Defendant Descon objects to joinder of these parties. The Court's June 27, 2014 deadline for joinder of additional parties passed nearly a year ago. See Agreed Order on Defendant/Third-party Plaintiff Descon Construction, LP's Motion to Amend Docket Control Order (Exhibit A).

3. Plaintiff's deadline to file and serve supplemental or amended pleadings was April 14, 2015. See First Amended Docket Control Order (Exhibit B). The second and third versions of Plaintiff's Thirteenth Amended Original Petition were filed ten or more days after the Court's deadline and less than 17 days before the case is set for trial. Plaintiff did not request leave of court or show good cause for its late pleadings joining numerous new parties. The April 24 and April 27 editions of the Plaintiff's Thirteenth Amended Original Petition should be stricken.

4. Rule 28 is not applicable to this case because Plaintiff has sued the correct party. Descon Construction, LP is an existing entity that is not doing business under an assumed name. Descon Construction, LP does not do business under the assumed name Texas Descon, LP and Texas Descon, LP is not a successor of Descon Construction, LP in regards to the construction contract between Descon Construction, LP and RGCCISD for construction of the La Grulla Elementary School project.

For these reasons, Defendant Descon prays that the Court sustain its objection and strike Plaintiff's Thirteenth Amended Original Petitions filed on April 24 and 27, 2015, and for all other relief to which Defendant Descon is entitled.

Respectfully submitted,

COKINOS, BOSIEN & YOUNG
10999 IH-10 West, Suite 800
San Antonio, Texas 78230
210-293-8700
210-293-8733 (Fax Number)


By    */s/ Stephanie O'Rourke*
Stephanie O'Rourke
State Bar No.  15310800
sorourke@cbylaw.com
Stanley W. Curry, Jr.
State Bar No. 05274000
scurry@cbylaw.com
Robert M. Smith
State Bar No.18677400
rmsmith@cbylaw.com
Gabriel S. Head
State Bar No. 24055642
ghead@cbylaw.com

ATTORNEYS FOR DEFENDANT / THIRD-PARTY
PLAINTIFF DESCON CONSTRUCTION, L.P.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing *Defendant / Third-Party Plaintiff Descon Construction, L.P.'s Objection and Motion to Strike Plaintiff's Thirteenth Amended Original Petition* has been e-filed, e-served and served via email pursuant to the parties' agreement on this the 28th day of April 2015, to:

*Attorneys for Plaintiff, Rio Grande City ISD*
Norman Jolly
Michael B. Jolly
Law Office of Norman Jolly
405 Main, Suite 1000
Houston, Texas 77002
Email:  normanjollypc@sbcglobal.net
mikejolly@aol.com
lawjp@earthlink.net
ericjarvis@rocketmail.com
twentysixpoint2@me.com
medina_nancy@sbcglobal.net

*Attorneys for Plaintiff, Rio Grande City ISD*
Martie Garcia Vela
100 West 5th Street
Rio Grande City, Texas 78582
Email:  martie.garcia@gmail.com

*Attorneys for Defendant ERO International, L.L.P.*
John R. Griffith
Griffith Law Group
801 E. Fern Avenue, Suite 170
McAllen, Texas 78501
Email:  jrg@rgvfirm.com
gh@rgvfirm.com

*Attorneys for Defendants Halff Associates, Inc. and Menton J. Murray, III, P.E.*
Grant Gealy
Mills Shirley, L.L.P.
3 Riverway, Suite 100
Houston, Texas 77058
Email:  ggealy@millsshirley.com
psutton@millsshirley.com

*Attorneys for Third-Party Defendant, AAS Consulting, Inc. d/b/a Advance Air Systems*
Douglas M. Walla
Andrew M. Williams & Associates
5909 West Loop South, Suite 550
Bellaire, Texas 77401
Email:  doug@amwlawfirm.com
admin2@amwlawfirm.com
admin1@amwlawfirm.com

*Attorneys for Third-Party Defendant C.A. Ray & Son Painting Contractors, Inc.*
Marc E. Villarreal
R. Kyle Hinkle
Hinkle & Villarreal, P.C.
719 S. Shoreline Blvd., Suite 300
Corpus Christi, Texas 78401
Email:  mvillarreal@southtxdefense.com
rkhinkle@southtxdefense.com
afrees@southtxdefense.com

*Attorneys for Third-Party Defendant Faires Plumbing Co., Inc.*
David J. Dunn
Dunn, Weathered, Coffey, Rivera & Kasperitis, P.C.
611 S. Upper Broadway
Corpus Christi, Texas 78401
Email:  Dunndj@swbell.net
vanesa@dwcrk.net
kellycreel@swbell.net

*Attorneys for Third-Party Defendant Limon Masonry, Inc.:*
Brian C. Lopez
Brittany C. Cooperrider
Engvall & Lopez, L.L.P.
1811 Bering, Suite 210
Houston, Texas 77057
Email:  blopez@eltexaslaw.com
bcooperrider@eltexaslaw.com
mmufti@eltexaslaw.com

*Attorneys for Third-Party Defendant C & M*
*Contracting, Inc.*
David C. Garza
Liliana Elizondo
Garza & Garza, L.L.P.
680 East St. Charles, Suite 300
P.O. Box 2025
Brownsville, Texas, 78250
Email:  dgarza@garzaandgarza.com
        lelizondo@garzaandgarza.com

*Attorneys for Third-Party Defendant Daniel*
*Vasquez, Individually and d/b/a Twin City Glass*
John A. Guerra
Louis A. Gross
Brock Person Guerra Reyna, P.C.
17339 Redland Road
San Antonio, Texas 78247-2304
Email:  jguerra@bpgrlaw.com
        lgross@bpgrlaw.com
        cvaldez@bpgrlaw.com
        cmahoney@bpgrlaw.com
        laniol@bpgrlaw.com

*Attorneys for Third-Party Defendant Zarate*
*Suspended Ceiling, Inc.*
Michael G. Dunnahoo
Rymer, Moore, Jackson & Echols, P.C.
2801 Post Oak Blvd., Suite 250
Houston, Texas 77056
Email:  mdunnahoo@rmjelaw.com
        lkelly@rmjelaw.com

*Attorneys for Third-Party Defendant Perez*
*Consulting Engineers*
Gregory N. Ziegler
Dean Siotos
Macdonald Devin, P.C.
3800 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270-2130
Email:  GZiegler@MacdonaldDevin.com
        dsiotos@macdonalddevin.com
        mwhite@macdonalddevin.com
        LHolsomback@macdonalddevin.com
        DPainter@macdonalddevin.com

*Attorneys for Third-Party Defendant RGV-R&R*
*Construction Services, L.L.C.:*
David W. Medack
James P. Davis
Heard & Medack, P.C.
9494 Southwest Freeway, Suite 700
Houston, Texas 77074
Email:  dmedack@heardmedackpc.com
        jdavis@heardmedackpc.com
        MLoonahm@heardmedackpc.com
        CHernandez@heardmedackpc.com

*Attorneys for Third-Party Defendant Zarate*
*Suspended Ceiling, Inc.:*
John A. Guerra
Louis A. Gross
Brock Person Guerra Reyna, P.C.
17339 Redland Road
San Antonio, Texas 78247-2304
Email:  jguerra@bpgrlaw.com
        lgross@bpgrlaw.com
        cvaldez@bpgrlaw.com
        cmahoney@bpgrlaw.com
        laniol@bpgrlaw.com

*Attorneys for Third-Party Defendant D&J Site*
*Construction, Inc.*
David J. Dunn
Dunn, Weathered, Coffey, Rivera & Kasperitis, P.C.
611 S. Upper Broadway
Corpus Christi, Texas 78401
Email:  Dunndj@swbell.net
        vanesa@dwcrk.net
        kellycreel@swbell.net

*Attorneys for Third-Party Defendant KBM Air*
*Conditioning, Inc.*
Jason L. West
Brock Person Guerra Reyna, P.C.
17339 Redland Road
San Antonio, Texas 78247-2302
Email:  jwest@bpgrlaw.com

                           */s/ Stephanie O'Rourke*
                          Stephanie O'Rourke
                          Robert M. Smith
                          Gabriel S. Head

Filed: 4/28/2015 4:48:46 PM
Eloy R. Garcia, District Clerk
Starr County, Texas

Dulce Morin

CAUSE NO. DC-14-46

| | |
|---|---|
| RIO GRANDE CITY CONSOLIDATED INDEPENDENT SCHOOL DISTRICT | IN THE DISTRICT COURT OF |
| PLAINTIFF | |
| V. | STARR COUNTY, TEXAS |
| DESCON CONSTRUCTION, LP | |
| DEFENDANT | 229TH JUDICIAL DISTRICT |

## AGREED ORDER ON
## DEFENDANT/THIRD-PARTY PLAINTIFF DESCON CONSTRUCTION, LP'S
## MOTION TO AMEND DOCKET CONTROL ORDER

On this day came on to be heard defendant/third-party plaintiff Descon Construction, LP's Motion to Amend Docket Control Order, and, after considering the motion, the response, if any, and the evidence on file, the Court is of the opinion that the motion should be granted in part and denied in part.

It is therefore, ORDERED, ADJUDGED, and DECREED that the Court's docket control order, entered by the Court on May 19, 2014, is amended, as follows:

- The parties' joinder deadline, which is currently set for May 16, 2014, shall be ✗ reset to June 27, 2014. "Joinder" means named + served with citation + the D.C.O. as an exhibit thereto,

SIGNED this the 2nd day of June , 2014.

_____
PRESIDING JUDGE *by Ana Saz*

*Approved As Revised:* ✗ N Jolly

EXHIBIT
A

Page 1 of 2

APPROVED AS TO FORM AND SUBSTANCE:

_p.p._

Norman Jolly                                    w/ permission
State Bar No. 10856920
normanjollypc@sbcglobal.net
Michael B. Jolly
State Bar No. 10856910
mikejolly@aol.com
405 Main, Suite 1000
Houston, Texas 77002
T 713.237.8383
F 713.237.8385

Martie Garcia Vela
100 West 5th Street
Rio Grande City, Texas 78582
T 956.488.8170
F 956.488.8129

ATTORNEYS FOR PLAINTIFF




Stephanie O'Rourke
State Bar No. 15310800
sorourke@cbylaw.com
Gabriel S. Head
State Bar No. 24055642
ghead@cbylaw.com
Bryan P. Marshall
State Bar No. 24034552
bmarshall@cbylaw.com
COKINOS, BOSIEN & YOUNG
10999 IH-10 West, Suite 800
San Antonio, Texas 78230
T 210.293.8700
F 210.293.8733

ATTORNEYS FOR DEFENDANT,
DESCON CONTRUCTION, LP

Filed: 4/28/2015 4:48:46 PM
Eloy R. Garcia, District Clerk
Filed: 03/20/2015 at 14:00 AM
Eloy R. Garcia, District Clerk
Starr County, Texas
Dulce Morin

Dulce Morin

CAUSE NUMBER DC-14-46

| | | |
|---|---|---|
| RIO GRANDE CITY CONSOLIDATED INDEPENDENT SCHOOL DISTRICT, PLAINTIFF, | § § § § | IN THE DISTRICT COURT |
| VS. | § § | 229TH JUDICIAL DISTRICT |
| DESCON CONSTRUCTION, L.P., DEFENDANTS. | § § § | STARR COUNTY, TEXAS |

## FIRST AMENDED DOCKET CONTROL ORDER

BE IT REMEMBERED that on the 12th day of January, 2015, the Court heard the Motions for New Docket Control Order filed by Defendants ERO International, L.L.P., Halff Associates, Inc. and Menton J. Murray, III, P.E., and the Court, having heard the arguments of counsel, granted said motions and entered the following order:

1.  Jury trial of this cause is set for May 11, 2015, at 1:30 p.m.

2.  Final Pre-trial Conference is set for May 11, 2015, at 10:00 a.m.

3.  The deadline to complete discovery is April 20, 2015. All discovery must be completed by all parties by this date. Any requests for discovery should be served so that they are due by this date.

4.  Mediation deadline is April 11, 2015 with a mediator agreed upon by all parties.

5.  The deadline for designation of experts and provision of expert reports from all retained experts who will be allowed to testify at trial is:

    Defendants/Third-Party Defendants:      March 10, 2015

6.  Deadline for Plaintiff to designate its attorney fees experts in compliance with Rule 194.2(f), TRCP (no written reports required) is February 27, 2015.


EXHIBIT
B

7. Deadline for Defendants and Third-Party Defendants to designate their attorney fees experts in compliance with Rule 194.2(f), TRCP (no written reports required) is March 13, 2015.

8. The deadline for supplemental and amended pleadings is:

   Plaintiffs:                              April 14, 2015
   Defendants/Third-Party Defendants:       April 28, 2015

9. The following dates are scheduled as pretrial status conferences which must be attended in person by all parties:

   February 19, 2015 at 10:00 a.m.
   March 30, 2015 at 10:00 am.
   April 16, 2015 at 10:00 a.m.
   April 28, 2015 at 1:30 p.m.

10. Deadline to submit a pretrial notebook with Jury Charge to the Court is April 16, 2015.

SIGNED this ___2nd___ day of ___February___, 2015.

_____
JUDGE PRESIDING

AGREED:

1-16-15

_____
Norman Jolly
State Bar No. 10856920
normanjollypc@sbcglobal.net
Michael B. Jolly
State Bar No. 10856910
mikejolly@aol.com
LAW OFFICE OF NORMAN JOLLY
405 Main, Suite 1000
Houston, Texas  77002
(713) 237-8383
(713) 237-8385 (Fax)

Martie Garcia Vela
100 West 5th Street
Rio Grande City, Texas 78582
martie.garcia@gmail.com
(956) 488-8170
(956) 488-8129 (Fax)
*Attorneys for Plaintiff, Rio Grande City CISD – La Grulla Elementary*

Stephanie O'Rourke
State Bar No. 15310800
sorourke@cbylaw.com
Gabriel S. Head
State Bar. No. 24055642
ghead@cbylaw.com
COKINOS, BOSIEN & YOUNG
10999 IH-10 West, Suite 800
San Antonio, Texas 78230
210-293-8700
210-293-8733 (Fax Number)
*Attorneys for Defendant/Third-Party Plaintiff Descon Construction, L.P.*

John K. Griffith
State Bar No. 08480750
jrg@rgvfirm.com
Griffith Law Group
801 E. Fern Avenue, Suite 170
McAllen, Texas 78501.
956-971-9446
956-971-9451 (Fax Number)
*Attorneys for Defendant ERO International, LLP*

Grant Gealy
State Bar No. 07784700
ggealy@millshirley.com
Mills Shirley, L.L.P.
One City Centre
1021 Main St., Suite 1950
Houston, Texas 77002
713-225-0547
713-225-0844 (Fax Number)
*Attorneys for Defendants Halff Associates, Inc. and Menton J. Murray, III, P.E.*


Douglas M. Walla
State Bar No. 20759900
doug@amwlawfirm.com
Andrew M. Williams & Associates
5909 West Loop South, Suite 550
Bellaire, Texas 77401
713-840-7321
713-839-1302 (Fax Number)
*Attorneys for Third-Party Defendant AAS Consulting Inc. d/b/a Advanced Air Systems*


Marc E. Villarreal
State Bar No. 00791856
mvillarreal@southtxdefense.com
R. Kyle Hinkle
State Bar No. 24062782
rkhinkle@southtxdefense.com
Hinkle & Villarreal, P.C.
719 S. Shoreline Blvd., Suite 300
Corpus Christi, Texas 78401
361-883-0620
361-883-0612 (Fax Number)
*Attorneys for Third-Party Defendant C.A. Ray & Son Painting Contractors, Inc.*

Grant Gealy
State Bar No. 07784700
ggealy@millshirley.com
Mills Shirley, L.L.P.
One City Centre
1021 Main St., Suite 1950
Houston, Texas 77002
713-225-0547
713-225-0844 (Fax Number)
*Attorneys for Defendants Halff Associates, Inc. and Menton J. Murray, III, P.E.*

Douglas M. Walla
State Bar No. 20759900
doug@amwlawfirm.com
Andrew M. Williams & Associates
5909 West Loop South, Suite 550
Bellaire, Texas 77401
713-840-7321
713-839-1302 (Fax Number)
*Attorneys for Third-Party Defendant AAS Consulting Inc. d/b/a Advanced Air Systems*

Marc E. Villarreal
State Bar No. 00791856
mvillarreal@southtxdefense.com
R. Kyle Hinkle
State Bar No. 24062782
rkhinkle@southtxdefense.com
Hinkle & Villarreal, P.C.
719 S. Shoreline Blvd., Suite 300
Corpus Christi, Texas 78401
361-883-0620
361-883-0612 (Fax Number)
*Attorneys for Third-Party Defendant C.A. Ray & Son Painting Contractors, Inc.*

Grant Gealy
State Bar No. 07784700
ggealy@millshirley.com
Mills Shirley, L.L.P.
One City Centre
1021 Main St., Suite 1950
Houston, Texas 77002
713-225-0547
713-225-0844 (Fax Number)
*Attorneys for Defendants Hulff Associates, Inc. and Menton J. Murray, III, P.E.*


Douglas M. Walla
State Bar No. 20759900
doug@amwlawfirm.com
Andrew M. Williams & Associates
5909 West Loop South, Suite 550
Bellaire, Texas 77401
713-840-7321
713-839-1302 (Fax Number)
*Attorneys for Third-Party Defendant AAS Consulting Inc. d/b/a Advanced Air Systems*


Marc E. Villarreal
State Bar No. 00791856
mvillarreal@southtxdefense.com
R. Kyle Hinkle
State Bar No. 24062782
rkhinkle@southtxdefense.com
Hinkle & Villarreal, P.C.
719 S. Shoreline Blvd., Suite 300
Corpus Christi, Texas 78401
361-883-0620
361-883-0612 (Fax Number)
*Attorneys for Third-Party Defendant C.A. Ray & Son Painting Contractors, Inc.*

_____
David C. Garza
State Bar No. 07731400
dgarza@garzaandgarza.com
Liliana Elizondo
State Bar No. 24078470
lelizondo@garzaandgarza.com
Garza & Garza, L.L.P.
680 East St. Charles, Suite 300
P.O. Box 2025
Brownsville, Texas 78520
956-541-4914
956-542-7403 (Fax Number)
*Attorneys for Third-Party Defendant C & M Contracting, Inc.*

_____  w/permission
David J. Dunn
State Bar No. 06243500
Dunndj@swbell.net
Dunn, Weathered, Coffey, Rivera & Kasporitis, P.C.
611 S. Upper Broadway
Corpus Christi, Texas 78401
361-883-1594
361-883-1599 (Fax Number)
*Attorneys for Third-Party Defendants D & J Site Construction, Inc. and Faires Plumbing Co., Inc.*

_____  w/permission
Brian C. Lopez
State Bar No. 24029693
blopez@elhouston.com
Brittany Cravens
State Bar No. 24087355
bcravens@elhouston.com
Engvall & Lopez, LLP
1811 Bering Drive, Suite 210
Houston, Texas 77057
713-787-6700
713-787-0070 (Fax Number)
*Attorneys for Third-Party Defendant Limon Masonry*

*James P. Davis* /Hal

David W. Medack     w/permission
State Bar No. 13892950
dmedack@heardmedackpc.com
James P. Davis
State Bar No. 24028275
jdavis@heardmedackpc.com
Heard & Medack, P.C.
9494 Southwest Freeway, Suite 700
Houston, Texas 77074
713-772-6400
713-772-6495 (Fax Number)
*Attorneys for Third-Party Defendant RGV-R&R Construction Services*


John A. Guerra
State Bar No. 08576180
jguerra@bpgrlaw.com
Louis A. Gross
State Bar No. 24065334
lgross@bpgrlaw.com
Brock Person Guerra Reyna, P.C.
17339 Redland Road
San Antonio, Texas 78247-2304
210-979-0100
210-979-7810 (Fax Number)
*Attorneys for Third-Party Defendants Daniel Vasquez, Individually and d/b/a Twin City Glass and Zarate Suspended Ceiling, Inc.*

David W. Medack
State Bar No. 13892950
dmedack@heardmedackpc.com
James P. Davis
State Bar No. 24028275
jdavis@heardmedackpc.com
Heard & Medack, P.C.
9494 Southwest Freeway, Suite 700
Houston, Texas 77074
713-772-6400
713-772-6495 (Fax Number)
*Attorneys for Third-Party Defendant RGV-R&R Construction Services*

John A. Guerra
State Bar No. 08576180
jguerra@bpgrlaw.com
Louis A. Gross
State Bar No. 24065334
lgross@bpgrlaw.com
Brock Person Guerra Reyna, P.C.
17339 Redland Road
San Antonio, Texas 78247-2304
210-979-0100
210-979-7810 (Fax Number)
*Attorneys for Third-Party Defendants Daniel Vasquez, Individually and d/b/a Twin City Glass and Zarate Suspended Ceiling, Inc.*

# Tab 9

CAUSE NO.  DC-14-46

| | | |
|---|---|---|
| RIO GRANDE CITY CONSOLIDATED | § | IN THE DISTRICT COURT OF |
| INDEPENDENT SCHOOL DISTRICT | § | |
| | § | |
| VS. | § | STARR COUNTY, TEXAS |
| | § | |
| DESCON CONSTRUCTION, L.P., et al | § | |
| | § | 229th JUDICIAL DISTRICT |

**PLAINTIFF'S THIRTEENTH AMENDED ORIGINAL PETITION (b)**
**(GRULLA ELEMENTARY SCHOOL)**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff, Rio Grande City Consolidated Independent School District (RGCCISD), complaining of Defendants named below, and would respectfully show this Honorable Court as follows:

**I. Parties**

Plaintiff is situated in Starr County, Texas and is a political subdivision of the State of Texas.

Defendants, Descon Construction, L.P., and ERO International, L.P. agreed in their contracts with plaintiff to "bind themselves, their partners, successors, assigns and legal representatives to the other party (RGCCISD) to this agreement and to the partners, successors, assigns, and legal representatives of such other party in respect to covenants agreements and obligations contained in the Contract Documents", namely the construction agreement they had with plaintiff.  Therefore, plaintiff alleges J. Wayne Medlin aka/dba Descon Management, L.L.C., aka/dba Maco Management, L.L.C., aka/dba Michael C. Smith aka/dba Descon 4S, L.L.C., aka/dba Descon Construction, L.P., aka/dba Texas Descon, L.P., each individually, dba and fka Descon Construction, L.P. (hereinafter, collectively referred to as "Descon") and Daniel Block and Eli R. Ochoa each individually and each aka/dba ERO International, L.L.P., and

1

aka/dba ERO Architects (hereafter, correctively referred to as "ERO") have privity with plaintiff. Each of the above named entities and persons are doing business under their assumed or common names and pursuant to Texas Rule of Civil Procedure 28 each is liable to Plaintiff for purposes of plaintiff enforcing their substantive rights. Plaintiff would also show that on January 25, 2006 Descon Construction, L.P. was renamed to its successor company Texas Descon, L.P. under a licensing agreement to allegedly carry on the tradition and reputation of Descon Construction, L.P., The successor company Texas Descon, L.P. was founded by its partner Michael C. Smith.

No service is necessary on the substituted persons and/or entities as the original commencement of suit was effective notice to each party pursuant to TRCP 28.

Defendants, Halff Associates, Inc. and Menton J. Murray, II PE., have appeared and answered.

## II. Discovery Control Plan

Plaintiff requests that discovery be conducted pursuant to TRCP 190.3(1), Level 3, as it seeks monetary relief over one million dollars and judgment for all other relief to which Plaintiff is entitled.

## III. Venue

Venue is mandatory in Starr County, Texas pursuant to CPRC sect. 15.011 because this action is for recovery of damages to real property. Venue is also proper in Starr County under the general venue rule CPRC sect. 15.002 because all or a substantial part of events or omissions giving rise to the claims against the Defendants occurred in Starr County.

## IV. Breach of Contract and Implied and

## Express Warranty of Good and Workmanlike Manner

This suit arises from the construction of the Grulla Elementary school which will be referred to herein as ("the Project").

Defendants, Descon, ERO, Block, Ochoa, Halff & Murray were involved in the design and/or construction of the Project. Plaintiff would show that Defendants' breach of contract and failure to design and construct the project in a good and workmanlike manner and breach of express warranties was a proximate cause of damages and losses to Plaintiff. Plaintiff would show Defendants breached their contracts by one or more acts or omissions identified in the previously attached certificates of merit which are incorporated herein and one or more of the following ways:

1. Failure to follow the plans and specifications;

2. Failure to implement and install specified components and materials;

3. Failure to properly sequence work with and between the various trades;

4. Failure to construct the project pursuant to minimal industry standards;

5. Substituting without authority materials and/or equipment with cheaper and lower quality materials and/or equipment and failing to properly credit Plaintiff for the cost difference;

6. Failure to comply with applicable codes and/or standards;

7. Failure to construct the project in a good and workmanlike manner; and

8. Breach of express warranties.

## V. Negligence of Halff/Murray

Plaintiff sues Halff and Murray for their negligence which is a proximate cause of Plaintiff's damages and losses.

## VI. Interest

Plaintiff sues for and is entitled to pre-judgment and post-judgment interest at the maximum rates allowed by law.

## VII. Damages

Plaintiff will show it has sustained actual and physical damages to tangible property in the past, and after completion of the Project, and will sustain damages in the future, for which the Defendants are liable. Such damages should not exceed fifteen million dollars and include but are not limited to the following:

1. The difference between the value of the Defendant's workmanship, services and materials and the value actually received;

2. The reasonable and necessary cost to remediate, repair, or replace Defendants' defective workmanship;

3. Reasonable and necessary expenses incurred in attempting to mitigate Plaintiff's losses;

4. Reasonable and necessary costs to provide alternative facilities during the time period the subject building is unusable or impaired;

5. Damages to the Project caused by water intrusion;

6. Reasonable and necessary attorney's fees pursuant to CPRC Chapter 38, based upon the attorney hours worked, hourly rate, the Arthur Andersen and Johnson factors, plaintiff will move the Honorable Court to determine an appropriate

4

lodestar adjustment by multiplying plaintiff's attorney's fees upward, for which presentment is hereby made; and

7. Damage to other portions and contents of Plaintiff's building separate from the remedial cost damages caused by Defendants.

## VIII. Joint and Several Liability

Plaintiff would show that all Descon and ERO entities and partners are vicariously, jointly and severally liable to plaintiff for their respective damages.

PLAINTIFF DEMANDS A JURY TRIAL.

Respectfully submitted:

*/s/ Norman Jolly*

By: _____

Norman Jolly
TBA# 10856920
Michael B. Jolly
TBA# 10856910
James J. Parker
TBA# 15488020
Hamilton G. Rucker
TBA# 24067850
405 Main, Suite 1000
Houston, Texas 77002
Tel: (713) 237-8383
Fax: (713) 237-8385

Martie Garcia Vela
100 West 5th Street
Rio Grande City, TX 78582
Tel: (956) 488-8170
Fax: (956) 488-8129

Eric Jarvis
5804 N. 23rd Street
McAllen, Texas 78504
Tel: (956) 451-5247
Fax: (956) 687-4001

5

ATTORNEYS FOR PLAINTIFF

## **CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing was forwarded to all counsel of record, pursuant to the Rules of Procedure, on this the 29th day of April, 2015.

*/s/ Norman Jolly*

Norman Jolly

# Tab 10

CAUSE NO. DC-14-46

| RIO GRANDE CITY CONSOLIDATED | § | IN THE DISTRICT COURT OF |
| INDEPENDENT SCHOOL DISTRICT | § | |
| | § | |
| VS. | § | STARR COUNTY, TEXAS |
| | § | |
| DESCON CONSTRUCTION, L.P., | § | |
| ERO INTERNATIONAL, LLP, | § | |
| DANIEL L. BLOCK, ELI R. OCHOA | § | |
| HALFF ASSOCIATES, INC. and | § | |
| MENTON J. MURRAY, III, P.E., et al | § | 229th JUDICIAL DISTRICT |

## PLAINTIFF'S NOTICE OF INTENT TO USE BUSINESS RECORDS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Rio Grande City Consolidated Independent School District, and files its

Notice of Intent to Use Business Records, pursuant to Texas Rules of Evidence 803(6) and

902(10).

1.     Affidavit of David Winters-McDonald, Custodian of Records for MPC Studios;

such records are attached as Exhibit A.


Respectfully submitted:

*/s/ Norman Jolly*

By:     _____

Norman Jolly
TBA# 10856920
Michael B. Jolly
TBA# 10856910
James Parker
TBA# 15488020
Hamilton Rucker
TBA# 24067850
405 Main, Suite 200
Houston, Texas 77002
Tel: (713) 237-8383
Fax: (713) 237-8385

1

Martie Garcia Vela
100 West 5th Street
Rio Grande City, Texas 78582
Tel: (956) 488-8170
Fax: (956) 488-8129

Eric Jarvis
6521 N. 23rd Street
McAllen, TX 78504
Tel: 956-618-3211

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing was forwarded to all counsel of record, pursuant to the Rules of Procedure, on this the 1st day of May, 2015.

*/s/ Norman Jolly*

_____

Norman Jolly

2

# AFFIDAVIT

STATE OF TEXAS §
§
County of Cameron §

    Before me, the undersigned authority, personally appeared David Winters - McDonald who, being by me duly sworn, deposed as follows:

My name is David Winter - McDonald I am of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated:

I am the custodian of records for MPC Studios. Attached hereto are _22_ pages of records from MPC Studios. These said _22_ pages of records are kept by MPC Studios in the regular course of business, and it was the regular course of business of MPC Studios for an employee or representative of MPC Studios, with knowledge of the act, event, condition, opinion, or diagnosis, recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter. The records attached hereto are the original or exact duplicate of the original.

_____
Affiant

Sworn to and subscribed before me on this the 30 day of April ,2015.

STEVEN MARTINEZ
My Commission Expires
January 10, 2016

_____
Notary Public in and for
The State of Texas



**APPLICATION FOR EMPLOYMENT**

Prospective employees will receive consideration without discrimination because of race, creed, color, sex, age, national origin, handicap or veteran status.

## PERSONAL

| Last Name | First | Middle | Date |
|---|---|---|---|
| Street Address | | | Home Telephone ( ) |
| City, State, Zip | | | Business Telephone ( ) |
| Have you ever applied for employment with us? ☐ Yes ☐ No If yes: Month and Year_____ Location_____ | | | Social Security # |
| Position Desired | | | Pay Expected |
| Apart from absence for religious observance, are you available for full-time work? ☐ Yes ☐ No If not, what hours can you work?_____ | | | Will you work overtime if asked? ☐ Yes ☐ No |
| Are you legally eligible for employment in the United States? | | | When will you be available to begin work?_____ |
| Other special training or skills (languages, machine operation, etc.) | | | |

## EDUCATION

| School | Name and Location of School | Course of Study | Years Completed | Previous Graduate | Degree or Diploma |
|---|---|---|---|---|---|
| Graduate | | | | ☐ Yes ☐ No | |
| College | | | | ☐ Yes ☐ No | |
| Business/Trade/ Technical | | | | ☐ Yes ☐ No | |
| High School | | | | ☐ Yes ☐ No | |
| Elementary | | | | ☐ Yes ☐ No | |

## Memberships in professional or trade organizations

| |
|---|
| |

© Copyright 1981, 1985, 1989, 1992, 1996 – SELECTFORM, INC., Box 3045, Freeport NY 11520

Form 22 - Printed in U.S.A.

| | |
|---|---|
| Company Name | Telephone ( ) |
| Address | Employed - (State month and year) From To |
| Name of Supervisor | Weekly pay Start Last |
| State Job Title and Describe Your Work | Reason for Leaving |

| | |
|---|---|
| Company Name | Telephone ( ) |
| Address | Employed - (State month and year) From To |
| Name of Supervisor | Weekly pay Start Last |
| State Job Title and Describe Your Work | Reason for Leaving |

| | |
|---|---|
| Company Name | Telephone ( ) |
| Address | Employed - (State month and year) From To |
| Name of Supervisor | Weekly pay Start Last |
| State Job Title and Describe Your Work | Reason for Leaving |

| | |
|---|---|
| Company Name | Telephone ( ) |
| Address | Employed - (State month and year) From To |
| Name of Supervisor | Weekly pay Start Last |
| State Job Title and Describe Your Work | Reason for Leaving |

DO NOT CONTACT

Employer Number(s)_____ Reason_____

MILITARY

Did you serve in the U.S. Armed Forces? ☐ Yes ☐ No     If "Yes," in what Branch?

Describe any training received relevant to the position for which you are applying.

If the employer has checked the box next to the question, the information requested is needed for a legally permissible reason, including, without limitation, national security considerations, a legitimate occupational qualification or business necessity. The Civil Rights Act of 1964 prohibits discrimination in employment because of race, color, religion, sex or national origin. Federal law also prohibits discrimination based on age, citizenship and disability. The laws of most States also prohibit some or all of the above types of discrimination as well as some additional types such as discrimination based upon ancestry, marital status and sexual preference.

| | | | | |
|---|---|---|---|---|
| ☐ | Provide dates you attended school: | Elementary<br>From To | ☒ | Number of dependents, including yourself |
| | High School<br>From To | College<br>From To | ☒ | Are you a Vietnam veteran?<br>☐ Yes ☐ No |
| | Other (give name and dates) | | ☒ | Sex<br>☐ Male ☐ Female |
| ☒ | Marital Status<br>☐ Single ☐ Engaged ☐ Married<br>☐ Separated ☐ Divorced ☐ Widowed | | ☐ | Date of Marriage |
| | | | ☒ | Are you a U.S. Citizen?<br>☐ Yes ☐ No |
| ☐ | What was your previous address? | | ☐ | How long at present address?<br>_____ Years |
| | | | ☐ | How long at previous address?<br>_____ Years |
| ☐ | Have you ever been bonded? ☐ Yes ☐ No<br>If "Yes," with what employers? | | ☒ | Are you over 18 years of age? ☐ Yes ☐ No<br>If not, employment is subject to verification of age. |
| ☒ | Have you been convicted of a crime in the past ten years, excluding misdemeanors and summary offenses, which has not been annulled, expunged or sealed by a court? ☐ Yes ☐ No If "Yes," describe in full. | | | |
| ☒ | State names of relatives and friends working for us, other than your spouse. | | | |
| ☒ | **Personal References** | | | |
| ☐ | | | | |

The information provided in this Application for Employment is true, correct, and complete. If employed, any misstatement or omission of fact on this application may result in my dismissal.

I understand that acceptance of an offer of employment does not create a contractual obligation upon the employer to continue to employ me in the future.

If you decide to engage an investigative consumer reporting agency to report on my credit and personal history I authorize you to do so. If a report is obtained you must provide, at my request, the name of the agency so I may obtain from them the nature and substance of the information contained in the report.

_____     _____
Date                               Signature

**REFERENCE CHECK**

| | Employer | Person Contacted | Results |
|---|---|---|---|
| 1 | | | |
| 2 | | | |
| 3 | | | |
| 4 | | | |

**TEST RESULTS**

| Administered | Raw Score | Rating | Analysis and Comments |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

**INTERVIEW RESULT**

| Interviewer Name and Comments |
|---|
| |
| |
| |

SELECTFORM, INC. believes that the information solicited from the applicant which lies outside the special section on page 3 is in full compliance with all Federal and State equal employment laws and with the Fair Credit Reporting Act. We do not assume responsibility for the user's inclusion in this "Application for Employment" of any question which may violate Federal, State or local laws and users should consult their own counsel with respect to any legal questions concerning the use of this form.

When was it Descon founded?

Descon Communities Incorporated July 1995, restructured Corporate Status to L.P. July 31, 2000 (Texas Descon L.P.) renamed to Successor Company January 25, 2006 under a licensing agreement to carry on the tradition and reputation of Descon construction, L.P.

Successor Company (Texas Descon, L.P.) was founded by Michael D. Smith.

Michael D. Smith, President

Michael has over twenty seven years of experience in the construction field. Some ~~~~~ of his past experience includes the entire construction phase from supervising of all subcontractors and their activities, daily coordination of project implementation, supervision of progress according to plans and specifications and supervising closeout of project. Michael has the experience and capability to start a job from bid process (takeoff) and take it through to final completion. Michael has worked

On all types of construction ranging from commercial, industrial, healthcare, educational, offshore drilling platforms and detention facilities. Michael is involved in overseeing the entire construction phase of multiple projects, while still assisting in estimating, bid process, submittals, change proposals, RFI's and ensuring project managers and project superintendents needs are met in the field.

 **MPC Studios**

David McDonald <mac@mpcstudios.com>

## Fwd: Employment Page
1 message

**Kate Hurry** <kate@mpcstudios.com>                    Wed, Apr 29, 2015 at 11:30 AM
To: David McDonald <mac@mpcstudios.com>

---------- Forwarded message ----------
From: **William Smith** <will@texasdescon.com>
Date: Thu, Aug 22, 2013 at 11:18 AM
Subject: RE: Employment Page
To: Kate Hurry <kate@mpcstudios.com>

He said he will work on it tonight.  As for the employment page, we use a standard form attached.

Thanks,

William C. Smith

Administrations Manager

Texas Descon, L.P.

P.O. Box 3547

McAllen, TX 78502

(956) 682-1225

(956) 682-7369

www.texasdescon.com



**From:** Kate Hurry [mailto:kate@mpcstudios.com]
**Sent:** Thursday, August 22, 2013 11:09 AM
**To:** William Smith

**Subject:** Employment Page

Hi Will,

In addition to the questions I had already sent over, I will also need the information you would like to include on the employment opportunities page. Did you have an application form you would like to include?

Thanks.

--

**Kate Hurry**
Production Director
MPC Studios Inc

*Harlingen Office:*        *McAllen Office:*
312 E. Harrison Avenue    800 N. Main Street, Suite 120
Harlingen, Texas 78550    McAllen, Texas 78501
(956) 423-2233           (956) 423-2233



--

**Kate Hurry**
Production Director
MPC Studios Inc

*Harlingen Office:*                  *McAllen Office:*
222 E. Van Buren Ave, Suite 615    800 N. Main Street, Suite 120
Harlingen, Texas 78550           McAllen, Texas 78501
(956) 423-2233                (956) 423-2233



 DOC043.PDF
722K

 **MPCStudios**                                      David McDonald <mac@mpcstudios.com>

## Fwd: Texas Descon proposal from David Watkins

**David Watkins** <david@mpcstudios.com>                               Thu, Apr 30, 2015 at 3:26 PM
To: "\"mac@mpcstudios.com\"" <mac@mpcstudios.com>

---------- Forwarded message ----------
From: **David Watkins** <no-reply@quoteroller.com>
Date: Wednesday, May 29, 2013
Subject: Texas Descon proposal from David Watkins
To: Doug Smith <doug@texasdescon.com>

Dear Doug Smith,

Thanks for meeting with me today.  You may view and authorize  Texas Descon proposal via the following URL:
http://mpcstudios.quoteroller.com/proposal/130646/6b2a30057124a3a66a327689ebe8c48b/

Upon your approval I'll have our bookkeeper Jen send your first invoice and we will reserve your production time.

Please let me know if you have any questions.

Best regards,
David Watkins
MPC Studios, inc


## David Watkins
## 956-423-2233

MPC Studios, inc. McAllen/Harlingen Texas
*Custom web design and app development since 1998*
View our Portfolio
Add me on LinkedIn

 **MPCStudios**           David McDonald <mac@mpcstudios.com>

# Fwd: Website Preview Link
1 message

**Kate Hurry** <kate@mpcstudios.com>          Wed, Apr 29, 2015 at 11:26 AM
To: David McDonald <mac@mpcstudios.com>

---------- Forwarded message ----------
From: **William Smith** <will@texasdescon.com>
Date: Mon, Sep 16, 2013 at 5:09 PM
Subject: RE: Website Preview Link
To: Kate Hurry <kate@mpcstudios.com>

Questions 1 - 3 attached. Doug's been real busy going back and forth to San Antonio were we just opened an office.

Our latest job would be the new Idea Academy Middle/High School in San Antonio.

Thanks,

William C. Smith

Administrations Manager

Texas Descon, L.P.

P.O. Box 3547

McAllen, TX 78502

(956) 682-1225

(956) 682-7369

www.texasdescon.com



**From:** Kate Hurry [mailto:kate@mpcstudios.com]
**Sent:** Friday, September 13, 2013 9:39 AM
**To:** William Smith
**Subject:** Website Preview Link

Good Morning Will,

I have included the preview link to the new website. We still need to fill in the "About Us" section.  Any luck with the information I had requested?  Is there anything I can do to assist with this?

I was also wondering if you had any recent news we could include in the blog for launch.

I look forward to your feedback on the website.  If you have any questions, please don't hesitate to contact me at 245-3279.

http://www.texasdescon.com.php53-7.dfw1-1.websitetestlink.com/

Thanks.

--

**Kate Hurry**
Production Director
MPC Studios Inc

Harlingen Office:          McAllen Office:
312 E. Harrison Avenue     800 N. Main Street, Suite 120
Harlingen, Texas 78550     McAllen, Texas 78501
(956) 423-2233             (956) 423-2233



--

**Kate Hurry**
Production Director
MPC Studios Inc

Harlingen Office:                          McAllen Office:
222 E. Van Buren Ave, Suite 615           800 N. Main Street, Suite 120
Harlingen, Texas 78550                    McAllen, Texas 78501
(956) 423-2233                            (956) 423-2233



📑 **DOC045.PDF**
    1148K



 **MPC Studios**        **David McDonald <mac@mpcstudios.com>**

# Fwd: Homepage Design
1 message

**Kate Hurry <kate@mpcstudios.com>**        Wed, Apr 29, 2015 at 11:27 AM
To: David McDonald <mac@mpcstudios.com>

---------- Forwarded message ----------
From: **Kate Hurry** <kate@mpcstudios.com>
Date: Tue, Aug 20, 2013 at 4:06 PM
Subject: Re: Homepage Design
To: William Smith <will@texasdescon.com>

HI Will,

We have pretty much got the site completed. We just need to fill in the About Us page and do the site testing on the different browsers, mobile devices, etc..

I was just wondering if Doug had finished the questions so we could wrap up the content for the About page?

Once we get those items finished I will send you the preview link.

Thanks.

On Wed, Jul 31, 2013 at 12:58 PM, William Smith <will@texasdescon.com> wrote:

> Doug is working on your questions below. The login for Network Solutions is User Id: will@texasdescon.com pass: hammerout75
>
>
> Thanks,
>
> Will
>
>
> **From:** Kate Hurry [mailto:kate@mpcstudios.com]
> **Sent:** Tuesday, July 23, 2013 11:52 AM
> **To:** William Smith
> **Subject:** Re: Homepage Design
>
>
> That is great news. We will move forward with putting together the preview site.
>
> Would you be able to provide me with some basic information about the history and management of Texas Descon.
> For example...
> When was Texas Descon founded?
>
> Who started the company?
> Who are the company principals? Did you want to include bios?

What are some of the projects you are proudest of?

Have you received any awards or recognitions?

Are you members of any trade organizations?

Do you have any special certifications or qualifications?
What sets you apart from your competitors?

These are just some ideas to give you an idea of the information that would be helpful. Please feel free to include any additional information you feel is relevant.

Also, I will need to get the network solutions login to the www.texasdescon.com domain so we will be ready for launch when the time comes.

Please let me know if you have any questions.

Thanks.

On Mon, Jul 22, 2013 at 2:19 PM, William Smith <will@texasdescon.com> wrote:

It looks great just like it is. No changes at this time.

Thanks,

William C. Smith

Administrations Manager

Texas Descon, L.P.

P.O. Box 3547

McAllen, TX 78502

(956) 682-1225

(956) 682-7369

www.texasdescon.com



**From:** Kate Hurry [mailto:kate@mpcstudios.com]
**Sent:** Thursday, July 18, 2013 10:56 AM
**To:** will@texasdescon.com
**Subject:** Homepage Design

Hi Will,

I hope you are doing well. I have attached the initial draft of the homepage design for the new website. Please review and let me know what your thoughts are.

Once we have an approved homepage we will move forward with setting up the preview site.

I look forward to your feedback.

---

**Kate Hurry**
Production Director
MPC Studios Inc

*Harlingen Office:*
312 E. Harrison Avenue
Harlingen, Texas 78550
(956) 423-2233

*McAllen Office:*
800 N. Main Street, Suite 120
McAllen, Texas 78501
(956) 423-2233

---

**Kate Hurry**
Production Director
MPC Studios Inc

*Harlingen Office:*
312 E. Harrison Avenue
Harlingen, Texas 78550
(956) 423-2233

*McAllen Office:*
800 N. Main Street, Suite 120
McAllen, Texas 78501
(956) 423-2233

**Kate Hurry**
Production Director
MPC Studios Inc

*Harlingen Office*:
312 E. Harrison Avenue
Harlingen, Texas 78550
(956) 423-2233

*McAllen Office*:
800 N. Main Street, Suite 120
McAllen, Texas 78501
(956) 423-2233



**Kate Hurry**
Production Director
MPC Studios Inc

*Harlingen Office*:
222 E. Van Buren Ave, Suite 615
Harlingen, Texas 78550
(956) 423-2233

*McAllen Office*:
800 N. Main Street, Suite 120
McAllen, Texas 78501
(956) 423-2233



 **MPCStudios**                    David McDonald <mac@mpcstudios.com>

# Fwd: Logo
1 message

**Kate Hurry** <kate@mpcstudios.com>                    Wed, Apr 29, 2015 at 11:29 AM
To: David McDonald <mac@mpcstudios.com>

---------- Forwarded message ----------
From: **William Smith** <will@texasdescon.com>
Date: Mon, Jul 8, 2013 at 10:57 AM
Subject: RE: Logo
To: Kate Hurry <kate@mpcstudios.com>

Thanks,

William C. Smith

Administrations Manager

Texas Descon, L.P.

P.O. Box 3547

McAllen, TX 78502

(956) 682-1225

(956) 682-7369

www.texasdescon.com



**From:** Kate Hurry [mailto:kate@mpcstudios.com]
**Sent:** Monday, July 08, 2013 10:34 AM
**To:** will@texasdescon.com

**Subject:** Logo

Hi Will,

When you have a chance could you send me a high-resolution or vector version of the Texas Descon logo.

Thanks.

--

**Kate Hurry**
Production Director
MPC Studios Inc

*Harlingen Office:*
312 E. Harrison Avenue
Harlingen, Texas 78550
(956) 423-2233

*McAllen Office:*
800 N. Main Street, Suite 120
McAllen, Texas 78501
(956) 423-2233



--

**Kate Hurry**
Production Director
MPC Studios Inc

*Harlingen Office:*
222 E. Van Buren Ave, Suite 615
Harlingen, Texas 78550
(956) 423-2233

*McAllen Office:*
800 N. Main Street, Suite 120
McAllen, Texas 78501
(956) 423-2233



🗋 **Texas Descon.eps**
3166K

 MPC Studios            David McDonald <mac@mpcstudios.com>

## Fwd: City of Pharr Aquatic Center

1 message

**Kate Hurry** <kate@mpcstudios.com>          Wed, Apr 29, 2015 at 11:30 AM
To: David McDonald <mac@mpcstudios.com>

---------- Forwarded message ----------
From: **William Smith** <delivery@yousendit.com>
Date: Tue, Jul 23, 2013 at 6:03 PM
Subject: City of Pharr Aquatic Center
To: kate@mpcstudios.com



# A file has been sent to you

from will@texasdescon.com via Hightail.

Here are some pictures of the just finished Pharr Aquatic Center.

 City of Pharr Aquatic Center.zip              Download

Your file will expire on **August 06, 2013 16:03 PDT** unless you     Save to Folders
Save to folders, then you will have online access anytime.

If you Save to Folders you can use the Desktop App, Mobile App and iPad App to access your files from anywhere.

© 2003-2013 Hightail Inc. 1919 S. Bascom Ave, 3rd Floor, Campbell, CA 95008
Privacy | Terms

Kate Hurry
Production Director
MPC Studios Inc

*Harlingen Office:*          *McAllen Office:*
222 E. Van Buren Ave, Suite 615    800 N. Main Street, Suite 120

Harlingen, Texas 78550
(956) 423-2233

McAllen, Texas 78501
(956) 423-2233

   

| | |
|---|---|
| **From:** | No-Reply@eFileTexas.gov |
| **Sent:** | Friday, May 1, 2015 9:35 AM |
| **To:** | Sondra Broquet |
| **Subject:** | eFileTexas.gov – Copy of Service - 5112597 |



# Copy of Service
### Envelope Number: **5112597**

This is a copy of service for the filing listed. Please click the link below to retrieve the submitted document.

| Filing Details | |
|---|---|
| **Court** | $$$courtname |
| **Case Number** | DC-14-46 |
| **Case Style** | |
| **Date/Time Submitted** | 5/1/2015 9:32:14 AM |
| **Activity Requested** | Notice |
| **Filed By** | Norman Jolly |
| **Service Contacts** | Other Service Contacts not associated with a party on the case: Barry Ray (bray@adamsgraham.com) John Griffith (jrg@rgvfirm.com) Clintsy Young (clintsy@swbell.net) Kelly Creel (kellycreel@swbell.net) Vanesa Zamora (vanesa@dwcrk.net) Douglas Walla (doug@amwlawfirm.com) Erica Garcia (egarcia@bpgrlaw.com) Marie Loonam (mloonam@heardmedackpc.com) David Medack (dmedack@heardmedackpc.com) James Davis (jdavis@heardmedackpc.com) Dolores Wright (dwright@heardmedackpc.com) Cendy Hernandez (chernandez@heardmedackpc.com) |

Dean Siotos (dsiotos@macdonalddevin.com)

Gregory Ziegler (gziegler@macdonalddevin.com)

Norman Jolly (normanjollypc@sbcglobal.net)

Martie Vela (martie.garcia@gmail.com)

Marc Villarreal (mvillarreal@southtxdefense.com)

Brian Lopez (blopez@elhouston.com)

David Dunn (dunndj@swbell.net)

Thomas Mailloux (tmailloux@bpgrlaw.com)

John Guerra (jguerra@bpgrlaw.com)

Grant Gealy (ggealy@millsshirley.com)

Robert Smith (rmsmith@cbylaw.com)

Gabriel Head (ghead@cbylaw.com)

Stephanie O'Rourke (SOrourke@cbylaw.com)

Michael Dunnahoo (mdunnahoo@rmjelaw.com)

Debbie Painter (dpainter@macdonalddevin.com)

David Dunn (dunndj@swbell.net)

Eric Jarvis (ericjarvis@rocketmail.com)

David Garza (dgarza@garzaandgarza.com)

Jason West (jwest@bpgrlaw.com)

Patrick Kasperitis (prkasperitis@swbell.net)

Gregory Ziegler (gziegler@macdonalddevin.com)

Susan Farber (sfarber@millsshirley.com)

Mindy Mufti (mmufti@elhouston.com)

Brittany Cooperrider (bcooperrider@elhouston.com)

Jason West (jwest@bpgrlaw.com)

| | Greg Ziegler (gziegler@macdonalddevin.com) |
|---|---|
| | Greg Wilkins (gcw@obt.com) |
| | Louis A. Gross (lgross@bpgrlaw.com) |

| Document Details | |
|---|---|
| Lead File: | $$$leaddocumentfilename |
| Lead File Page Count: | $$$leaddocumentpagecount |
| File Stamped Copy | https://efile.txcourts.gov/ViewServiceDocuments.aspx?ADMIN=0&SID=321aedeb-e21f-4b6c-8e04-b10f8de9cc09&RID=4320ac23-10f6-45b0-a6b5-631b183b2c24 This link is active for 7 days. |

Please do not reply to this email. It was generated automatically by eFileTexas.gov